# EXHIBIT 1

# IN RE: KAREN IOVINO V. MSA SECURITY
## OIG WHISTLEBLOWER CASE NO. 2017-0044

## KAREN IOVINO'S MEMORANDUM OF LAW

COMES NOW Karen Iovino, by counsel, and files this Memorandum in support of her claim of retaliatory discharge from her former employer, Michael Stapleton Associates, Ltd. d/b/a MSA Security (MSA).

An Affidavit from Dr. Iovino addressing some of the issues raised by MSA in the redacted file provided by OIG is attached hereto as **Exhibit A** and incorporated herein.

## STATEMENT OF FACTS

MSA had a contract with the U.S. Department of State which included the training of canines for overseas deployment. In the course of the contract, it hired Dr. Karen Iovino, initially as an independent contractor in June 2015 [Redacted Record, Page No. 000085-00088][1]. It then offered her the part time position of Veterinarian for the Canine Validation Center in Winchester, Virginia, on October 19, 2015. [Page No. 000071] Iovino accepted the position and began employment.

MSA required that Dr. Iovino sign a Nondisclosure Agreement, a copy of which is at Pages 000042-000046.

---

[1] References to the Redacted Record provided by OIG will simply be listed as Page Numbers.

MSA did not conduct annual evaluations of Dr. Iovino. However, it repeatedly recognized the value of her work by giving her a letter of commendation dated April 21, 2017 [Page No. 000013], offering her, in February 2017, the full time position which would become available in August 2017, [Page No. 000014] and promoting her to Lead ATA Veterinarian. [Page No. 000004]

Concerned with MSA practices relating to its contract with the Department of State and having had prior complaints addressed to MSA ignored, Dr. Iovino filed a complaint with the OIG Hotline on July 6, 2017. [Page No. 000001] The initial complaint dealt with waste, fraud and abuse and included contract/procurement fraud, conflict of interest/ethics violations and employee misconduct.

Dr. Iovino also contacted Cathy Read, Director, Acquisitions Management with the Department of State, about her concerns in early summer, 2017. [Page No. 000146]. Read felt that the concerns communicated by Iovino violated the MSA confidentiality agreements although OIG reminded her that confidentiality agreements in government contracts were against the law.

Dr. Iovino forwarded information to OIG in support of her complaint. [Page Nos. 000001-000002, 00006-00007]

After MSA learned that Dr. Iovino filed the complaint, MSA began a pattern of retaliation against her, including, but not limited to, the following:

- It excluded her from employee meetings [Page No. 000004];

- It directed employees not to speak to her [Page No. 000023];

- It suspended her from her employment on August 4, 2017 [Page Nos. 000024, 000031, 000033];

- It withdrew its offer of full time employment [Page Nos. 000006, 000021];

- It required that she apply online for a position she was advised she had and for which others did not have to apply[2];

- It discharged her on August 18, 2017 [Page No. 000037]; and

- Although Dr. Iovino clearly met the requirements and qualifications of the full time position, it hired another individual, using requirements that were not advertised as part of the posting of the position [Page No. 000027].

Dr. Iovino filed her complaint of retaliatory discharge on August 4, 2017. Since that time, the OIG conducted an investigation into the circumstances surrounding MSA's contract with the Department of State and Dr. Iovino's employment.

On July 5, 2018, the OIG issued its Report of Investigation Pursuant to 41 U.S.C. §4712 relating to this case (OIG Whistleblower Case No. 2-17-0044 Karen

---

[2] Applicants for other positions did not have to apply through a formal HR process. After Iovino's OIG complaint, MSA decided the ATA FT Veterinary position required applicants to apply through formal HR process which had not occurred with other positions(including veterinary positions) at the CVC.

Iovino) finding that Karen Iovino was subjected to reprisals prohibited by law. **See** Report dated July 5, 2018, attached hereto as **Exhibit B** and incorporated herein.

In August 2018, the Office of the Inspector General determined that the Nondisclosure Agreement of MSA Security Inc. which it required employees such as Karen Iovino to sign, violated federal law. See Management Assistance Report: Use of Confidentiality Agreement by a Department of State Contractor, attached hereto as **Exhibit C** and incorporated herein. The basis for this decision was that it failed to contain an exception allowing employees to report fraud, waste or abuse to federal investigative or law enforcement entities, such as OIG.

MSA contends that it was this Nondisclosure Agreement which provided the basis for the actions taken against Dr. Iovino.

On October 3, 2018, OIG determined that MSA retaliated against Dr. Iovino and ordered MSA to take certain actions, including, but not limited to, offering Dr. Iovino reinstatement to the position she held before the reprisal with the payment of compensatory damages (back pay), employment benefits, and attorneys' fees.

MSA appealed this Order to the Fourth Circuit Court of Appeals. During the interim of the appeal, the federal government shutdown in December, 2018. The Department of Justice attorney representing the State Department agreed to a remand of the case to allow MSA to supplement the administrative proceedings. The Fourth

Circuit entered its Order and mandate on March 13, 2019.

On March 19, 2019, MSA filed a civil action against Dr. Karen Iovino in the Circuit Court for Arlington, Virginia, alleging, *inter alia*, breach of the Nondisclosure Agreement, defamation, conspiracy, misappropriation of trade secrets, and tortious interference with contractual relationships. A copy of the Complaint is attached as **Exhibit D** and incorporated herein. It is noteworthy that MSA contends that the conspiracy involves *current* in addition to former employees - an attempt to chill cooperation by current employees in the ongoing OIG investigations. MSA further alleges in Paragraph 105 of the Complaint that the Non-Disclosure Agreement did not prohibit disclosure of confidential information to certain federal government entities - which is completely contrary to the findings of the Office of Inspector General as set forth in **Exhibit C**.

MSA filed discovery relating to ongoing investigations being conducted by OIG which was served with the Complaint. A copy of the discovery is attached as **Exhibit E** and incorporated herein.

MSA noticed out of state depositions in North Carolina for a prime witness in the OIG investigation, former MSA employee Zane Roberts. In addition, MSA issued a subpoena *duces tecum* directing that volumes of materials relating to the ongoing investigations be produced. A copy of the subpoena *duces tecum* and Notice to Take

Depositions are attached as **Exhibit F** and incorporated herein.

All this was done by MSA without any communication or coordination with counsel of record for Karen Iovino. This litigation is currently pending in the Circuit Court for Arlington County.

## ARGUMENT AND AUTHORITIES

**MSA subjected Dr. Karen Iovino to prohibited reprisals by retaliating against her for filing a complaint of fraud, waste and abuse with the Office of the Inspector General.**

41 U.S.C. §4712 prohibits retaliatory acts by a contractor against an employee for certain acts. Specifically, 41 U.S.C. §4172 states that "An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant." "Person or body" includes an Inspector General under 41 U.S.C. §4712(a)(2)(B).

In this case, Karen Iovino was an employee of MSA, a contractor, and the

disclosures were made to OIG with the Department of State. As such, she falls under the protections of 41 U.S.C. §4712.

On July 6, 2017, Iovino filed her initial complaint of fraud, waste and abuse with OIG. On August 4, 2017, Iovino filed her complaint of retaliation under 41 U.S.C. §4712. The retaliation complaint was timely under 41 U.S.C. §4712(b)(4).

41 U.S.C. §4712 sets for the standard for what constitutes a protected disclosure: "information that the employee reasonably believes" is evidence of gross mismanagement of the federal contract, gross waste of funds, an abuse of authority specific dangers to public health or safety or a violation of the law, rule or regulation related to a federal contract."

Dr. Iovino's complaints consisted of concerns regarding mistreatment of animals, use of government vehicles for personal purposes, conflicts of interest by a Department official, and unnecessary expenditures that were billed to the Department. The disclosure also evidenced national security threats to public health or safety because the mistreatment of canines and other misconduct undermined the canines' effectiveness in detecting terrorist threats. These complaints constitute protected disclosures under 41 U.S.C. §4712.

The issue then becomes whether Iovino was "discharged, demoted or otherwise discriminated against" as a reprisal for disclosing the information to OIG and to Cathy

Read, AQM for the State Department.

Prior to the complaint being made on July 6, 2017, the following is clearly established:

1. Karen Iovino, Lead ATA Veterinarian, worked part time and in February, 2017, was offered by Michael Ratcliff the full time veterinary position when it became available in August 2017. There was no directive that she "apply" for the position.

2. Although MSA failed to conduct annual evaluations for Dr. Iovino, she was an excellent employee, having been given a letter of commendation as recently as April 27, 2017. Her title changed to Lead ATA Veterinarian. MSA did not produce any write ups or other disciplinary action taken against her since she became an employee of MSA.

3. MSA did not exclude Dr. Iovino from staff meetings and employees were not directed not to talk to her;

4. Iovino had not been told that she needed to apply for the full time veterinarian position available in August 2017 nor did others have to apply online.

After MSA learned of the complaint filed with OIG and made to Cathy Read, AMQ, it advised Dr. Iovino that she had to apply for the full time veterinarian position, failed to select her for the full time position although it had been offered to her (and which she accepted) in February, 2017, and instead selected someone months

after her termination based upon credentials not advertised, suspended Dr. Iovino on August 4, 2017, and discharged Dr. Iovino on August 18, 2017.

Dr. Iovino established that her complaint, at a minimum, contributed[3] to, if not directly resulted in, the adverse personnel action taken against her by MSA.

At that time, the burden then shifts to the Employer to show by "clear and convincing evidence" that it would have taken the same personnel action in the absence of such disclosure. ***Craine v. National Science Foundation***, No. 16-9536 (10th Cir. Ct. of Appeals, April 26, 2017). In evaluating whether the Employer has successfully rebutted the employee's case, the three factors set forth in ***Carr v. Social Security Administration***, 185 F.3rd 1318 (Fed. Cir. 1999) continue to be considered:

[1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. See ***Miller v. Department of Justice***, No.

---

[3] Although there is no specific statutory definition of "contributing factor," the legislative history indicates it is intended to mean "any factor, which alone or in connection with other factors, tends to affect in any way the outcome." 135 Cong. Rec. 4509 (1989). The word 'contributing' is only intended to clarify that the factor must contribute in some way to the action against the whistleblower." 135 Cong. Rec. 5033 (1989).

15-3149 (Fed. Cir. 2016).

The application of the *Carr* factors to this case clearly favors Dr. Iovino. She engaged in legally protected conduct under 41 U.S.C. §4712 which reflects the weakness of the MSA evidence in support of its personnel action. The disclosures she made gave MSA an incentive to retaliate against Dr. Iovino to protect its contract, its renewal and potential liability. The timing of the events compared to the knowledge of the disclosure clearly reflect retaliation. Finally, MSA produced no evidence of similar actions against employees similarly situated who were not whistleblowers.

MSA is unable to show by "clear and convincing evidence" that it would have taken the same personnel action in the absence of such disclosure in this case. Peer Deegan, Vice President of Human resources for MSA, sent an email to Dr. Iovino on August 4 notifying her of the suspension due to "the disclosure of confidential information." [Page No. 000033].

It is significant that the non-disclosure agreement which MSA relies for much of the actions taken against Dr. Iovino upon was in fact *illegal* because it did not allow employee disclosure of fraud, waste or abuse to federal investigative or law enforcement agencies such as OIG. See **Exhibit C**. MSA's credibility as to its reasons is seriously undermined by its allegations in the Circuit Court for Arlington County that, without producing the agreement or attaching it as an exhibit, the non-

disclosure agreement in fact did not prohibit such communications and that it was legal. See **Exhibit D**, Paragraphs 104-105.

Gerald Goss, Executive Vice President of Business Development at MSA, first became aware of the issues on August 3, 2017 when he heard that Dr. Iovino emailed concerns directly to people outside of her chain of command *including* officials at the Department and including AQM and OIG. [Page No. 000142]. He heard that there was already an OIG investigation underway and further acknowledged that Dr. Iovino had already sent emails to various AQM officials at the Department of State. He placed Dr. Iovino on administrative leave while MSA investigated. **Id.**

Indeed, Dr. Iovino had been offered the full time veterinarian position in February 2017, which she accepted at that time.

*No* reasons are given by MSA for the decisions to exclude Dr. Iovino from staff meetings, directing employees not to talk to her, or requiring her to apply online for the position of full time veterinarian when previously she had been offered the position and no online applications were required. MSA claimed that the transition from part time veterinarian to full time veterinarian and the timing of Dr. Iovino's suspension was "a coincidence." [Page No. 000143]. MSA filled the full time position months after Dr. Iovino's termination, using requirements not advertised, and, in the interim, used temporary workers to perform Dr. Iovino's duties.

# CONCLUSION

Dr. Iovino made protective disclosures under 41 U.S.C. §4712 to OIG and AQM with the Department of State. After learning of the disclosures, MSA engaged in retaliatory conduct by suspending her and then terminating her, excluding her from staff meetings, directing employees not to talk to her, requiring her to apply online for a positions that MSA offered her in February 2017 and which she had accepted, and hiring a person to replace her using requirements not advertised.

MSA failed to show by clear and convincing evidence that it would have terminated Dr. Iovino, absent the protected disclosures. To the contrary, the evidence shows that although MSA did not conduct annual evaluations for her, MSA sent Dr. Iovino a letter of commendation in April 2017, and gave her the title of Lead Veterinarian. MSA did not produce any write ups or disciplinary actions taken against Dr. Iovino. MSA offered Dr. Iovino the full time position in February, 2017, which she accepted.

Dr. Iovino requests that the remedies set forth in 41 U.S.C. 4712(c), including but not limited to, offering reinstatement, compensatory damages (including back pay), employment benefits and other terms and conditions of employment that would apply if the reprisal had not been taken, and all costs and expenses (including attorneys fees) be awarded.

**KAREN IOVINO**

By _____
Counsel

Nate L. Adams, III, Esq.
VSB No. 20707
Nate L. Adams, III, P.C.
ADAMS AND JONES, PLC
11 South Cameron St.
Winchester VA 22601
(540) 667-1330
(540) 667-7165 facsimile
nadams@nadamslaw.com

Thomas M. Devine, Esq.
Government Accountability Project
1612 K St. NW, Suite #1100
Washington DC, 20006
(202) 457-0034 ext. 124
TomD@whistleblower.org

Counsel for Karen Iovino, DVM

Certificate of Service

I hereby certify that on the 5 day of July, 2019, I emailed a true copy of the foregoing pleading with exhibits to Eric N. Moore, Acting Procurement Executive, U.S. Department of State, and Ryan C. Berry, Esq., WARD & BERRY, PLLC, 2000 Pennsylvania Avenue, NW, Suite 4500, Washington DC 200006, Counsel for Michael Stapleton Associates, Ltd. d/b/a MSA.

_____

Memorandum rev2 190703.wpd