**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | |
|---|---|
| **KAREN IOVINO,** | |
| *Plaintiff,* | |
| **v.** | **CASE NO. 5:21-cv-00064** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.** **d.b.a. MSA SECURITY, INC.,** | |
| *Defendant.* | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT MSA**
**SECURITY, INC.'s MOTION TO DISMISS THE COMPLAINT**

Plaintiff Dr. Karen Iovino, by her undersigned attorneys respectfully submits this brief in opposition to the Motion to Dismiss (ECF No. 7) and Memorandum in Support (Memo. in Support) thereof (ECF 8) filed by Defendant MSA Security, Inc. (MSA), on December 10, 2021. In support of this Opposition, Plaintiff attaches four Exhibits, which are parts of the administrative record before the Department of State (DoS) and DOS's Office of Inspector General (OIG), where Plaintiff sought redress prior to filing this action in this Court. Also in support, Plaintiff concurrently files her Appendix to Dr. Iovino's Brief In Opposition to MSA's Motion To Dismiss.

## INTRODUCTION

Defendant MSA argues that this Court has no choice but to dismiss the instant Complaint filed by Plaintiff Dr. Karen Iovino because the National Defense Authorization Act (NDAA) required her to exhaust her administrative remedies before the DoS, but that she failed to do so

1

because her Complaint "is replete with novel allegations of reprisal that were not made to, nor investigated by the OIG [Office of Inspector General], nor decided by DoS [Department of State]." MSA's "Memorandum of Law in Support [its] Motion to Dismiss the Complaint." ECF No. 8, at 4. In the alternative, MSA insists this Court should strike all of Dr. Iovino's "novel allegations."

Dr. Iovino urges the Court to deny MSA's motion to dismiss or to strike because MSA is wrong both as a matter of fact and as a matter of law.

Defendant MSA is wrong as a matter of law because even the statute governing this matter, the NDAA, codified at 41 U.S.C. § 4712, does not require "issue exhaustion," as MSA contends.

Defendant MSA is wrong as a matter of fact because all of the facts and claims Dr. Iovino pleads in the instant Complaint were asserted during the administrative process by the OIG and the DoS or are "like or related" to Dr. Iovino's previously asserted facts and claims This is shown in the Appendix Dr. Iovino submits with this legal memorandum.

## **ARGUMENT**

**I.**     **MSA IS WRONG AS A MATTER OF LAW: THE NDAA DOES NOT REQUIRE "ISSUE EXHAUSTION" AND DR. IOVINO'S COMPLAINT DOES NOT CONTAIN "ANY REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER."**

### **A.     Dr. Iovino's Complaint Satisfies Fed. R. Civ. P. 12(b)(1) Because the NDAA Does Not Require Issue Exhaustion**

The legal centerpiece of MSA's motion is the "Remedy and Enforcement Authority" provision of 41 U.S.C. § 4712, the statute Dr. Iovino invoked in filing her administrative complaint with the Department of State's Office of Inspector General.

MSA begins its memorandum with a broad, unequivocal, and presumably unassailable declaration: "Exhausting administrative remedies is a prerequisite to any civil suit" and only "a whistleblowing employee who has *exhausted administrative remedies* with a cause of action against the retaliating federal contractor" may pursue such "civil suit[s]." ECF No. 8, at 7 (citation omitted; italics in the original, other emphasis added).

Given the breadth and unconditional nature of this declaration one would expect it is based on something in the U.S. Constitution, the Federal Code, the Federal Rules of Civil Procedure, the Code of Federal Regulations, the common law, or some hornbook or treatise on administrative law (such as Professor Kenneth Davis's multi-volume ADMINISTRATIVE LAW TREATISE), or a decision by the Supreme Court, the Court of Appeals, this Court, or some other court in the Fourth Circuit. MSA quotes no such authoritative text.

Instead, MSA cites a single authority for this broad declaration: *Labranche v. Department of Defense*, No. 15-2280, 2016 WL 614682 at *3, n.2 (E.D. La. Feb. 16, 2016). ECF No. 8, at 7. The reason MSA cannot cite to any other case or authority is because exhaustion is not required in every case. In fact, even a brief reflection reveals that MSA's declaration is extremely overbroad, as "any civil case" would mean administrative exhaustion would be required in garden-variety cases sounding in tort or contract as well as in probate claims and petitions for bankruptcy. But such claims do not require exhaustion or the application of any similar doctrine. In almost all such instances, the plaintiff who suffers a civil wrong (or cannot pay his or her debts or leaves an estate after death) simply goes to court.

The reason that exhaustion is not required in every cause is because "exhaustion requirements are 'largely creatures of statute.'" *Probst v. Saul*, 980 F.3d 1015, 1019 (4th Cir.

3

2020), *cert. denied*, --- U.S. ---, 141 S. Ct. 2633 (2021) (quoting *Sims v. Apfel*, 530 U.S. 103, 107 (2000)),[1] typically a "creature" of the statute that establishes the administrative regime, rights, remedies, and fora invoked by a complainant/plaintiff in a particular case.

Importantly, exhaustion is not demanded by every administrative statute. More important still, the administrative statutes that specify exhaustion vary in the kind of exhaustion required, exhaustion of <u>procedural requirements</u> as distinct from exhaustion of <u>substantive issues</u>, which is commonly referred to as "issue-exhaustion."[2] This is analogous to the fact that the Due Process Clauses of the Fifth and Fourteenth Amendments may, in a given case or series of cases, implicate procedural due process, substantive due process, or both. This has led to some understandable and persistent uncertainty in administrative law, a field which often generates more heat than light.[3]

Last year, a unanimous Supreme Court attempted to illuminate one corner of the administrative exhaustion doctrine, cautioning that "[i]ssue exhaustion" often is but "should not be confused with exhaustion of administrative remedies," *i.e.*, procedural administrative processes, "meaning that [a complainant must] proceed[] through each step of [an administrative

---

[1] *Carr v. Saul*, --- U.S. ---, 141 S. Ct. 1352, 1358, (2021); *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36, n. 6 (1952) (collecting statutes). .

[2] *See, e.g.*, *Hamze v. Cummings*, 652 Fed. Appx. 876, 879–80 (11th Cir. 2016) (unpublished) (citing *Liberty Mut. Ins. Co. v. FAG Bearings Corp*., 335 F.3d 752, 762–63 (8th Cir. 2003) (collecting cases); and *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)); *Manani v. Filip*, 552 F.3d 894, 900 n. 4 (8th Cir. 2009); *Lee v. Winston*, 717 F.2d 888, 892 (4th Cir. 1983), *aff'd*, 470 U.S. 753 (1985).

[3] Indeed, as one highly regarded senior jurist noted forty years ago, "the case law on the exhaustion of remedies doctrine is, to say the least, confused …." *Montgomery v. Rumsfeld*, 572 F.2d 250, 252 (9th Cir. 1978) (per Wallace, J.). The "confus[ion]" Judge Wallace observed decades ago has not abated since. *See, e.g., Chapman v. United Auto Workers Local 1005*, 670 F.3d 677, 683 (6th Cir. 2012); *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018).

agency's] administrative review scheme and received a 'final decision' before seeking judicial review" or filing a *de novo* action in court. *Carr v. Saul*, --- U.S. ---, 141 S. Ct. 1352, 1358 n.2 (2021).

*Carr* built on *Booth v. Churner,* 532 U.S. 731 (2001), where the Court untangled the meaning of the bedeviling phrases "administrative remedy" and "exhaustion of remedies." As *Booth* explained, "depending on where one looks, 'remedy' can mean either specific relief obtainable at the end of a process of seeking redress, or the process itself, the procedural avenue leading to some relief." 532 U.S. at 738 (citations omitted). Moreover, according to *Carr,* in construing the phrase "exhaustion of remedies," which is routinely used in administrative statutes, "the word 'exhausted' has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered" or sought. *Id.* By contrast "[i]t makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief … ." *Id*. (bracketed material in the original).

In the instant case, the administrative process established by the defense contractor employee whistleblower protection statute, the NDAA, which Dr. Iovino has invoked, Section 828 of the 2013 National Defense Authorization Act ("NDAA"), codified as 41 U.S.C. § 4712, *et seq*., is fairly straightforward:

> **(2) Exhaustion of remedies.** — If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative

5

> remedies with respect to the complaint, and the complainant may
> bring a de novo action at law or equity against the contractor,
> subcontractor, grantee, or subgrantee to seek compensatory
> damages and other relief available under this section in the
> appropriate district court of the United States, which shall have
> jurisdiction over such an action without regard to the amount in
> controversy. Such an action shall, at the request of either party to
> the action, be tried by the court with a jury. An action under this
> paragraph may not be brought more than two years after the date
> on which remedies are deemed to have been exhausted.

41 U.S.C. § 4712(c) (emphasis added).

There is no question in this case that Dr. Iovino exhausted the NDAA's administrative procedural program, that is, that she sought relief through the Department of State and that the "head of the executive agency issue[d] an order denying [the] relief" she sought under NDAA § 4712(a). See Exhibit A filed herewith.

Instead, the question here in dispute is whether Dr. Iovino also was required to exhaust, before the Department of State, every single factual link in the chain of events giving rise to her administrative claim —that MSA unlawfully discriminated against her for making disclosures protected by the NDAA. MSA construes the NDAA to require fact-by-fact exhaustion of each allegation that supports a claim, including each bit of background information. It argues that Dr. Iovino cannot allege any fact in her *de novo* Complaint in this Court unless this she alleged that precise fact in the administrative process below. MSA is wrong.

Although MSA concedes that a requirement that a claimant must exhaust all "allegations of reprisal" must be found in "the plain language of the statute, 41 U.S.C. § 4712(c)(2)" or its unambiguous legislative history, ECF No. 8, at 16, MSA cannot point to anything "plain" or unambiguous in either. This is important because the Supreme Court has stressed the general principle that courts cannot augment or "alter [a] statutory command." *Pitchess v. Davis*, 421 U.S.

6

482, 489 (1975).[4] Nor are courts "at liberty … to add to or alter the words" Congress chose in enacting a statute. *Hanover Bank v. C.I.R.*, 369 U.S. 672, 687 (1962). The Court of Appeals (citing the Supreme Court) has more specifically stressed that "courts may not require exhaustion of administrative remedies … except" — and only to the extent that — "exhaustion is expressly required by statute or rule." *Martinez v. United States*, 333 F.3d 1295, 1305 (Fed. Cir. 2003) (citing *Darby v. Cisneros*, 509 U.S. 137, 146 (1993).[5]

MSA's self-serving characterization of 41 U.S.C. § 4712(c)(2)'s "ordinary meaning" stands in stark contrast to the kind of precise language the Court of Appeals maintains must be found in a statutory exhaustion provision before a complainant will be compelled to exhaust all issues administratively. For example, two years ago the Court of Appeals held that Congress

---

[4]    *See Ross v. Blake*, 578 U.S. ---, 136 S. Ct. 1850, 1857 (2016) (noting that when "Congress sets the [exhaustion] rules[,] ... courts have a role in creating exceptions only if Congress wants them to."); and *id.* ("No doubt, judge-made exhaustion doctrines ... remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on a different footing.").

[5]    *Darby* held that "[w]hen an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is "final for the purposes of this section" and therefore "subject to judicial review" under the first sentence. While federal courts may be free to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review, § 10(c), by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." 509 U.S. at 146. See *United States v. Gaylor*, 828 F.2d 253, 256 (4th Cir. 1987) (applying the "rule of exhaustion [exclusively] in the narrow and specific circumstances prescribed by Congress."). *See also Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 502 n.4 (1982) (Congress "tailor[ed] the [§ 1983] exhaustion rule to fit the particular administrative scheme created by Congress"); *Fay v. Noia*, 372 U.S. 391, 435 (1963) *overruled in part by Wainwright v. Sykes*, 433 U.S. 72, (1977), *abrogated by Coleman v. Thompson*, 501 U.S. 722 (1991) (discussing the exhaustion standards expressly set by 28 U.S.C. § 2254). *Cf. Neal v. Goord*, 267 F.3d 116, 119 (2d Cir. 2001); *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 789 (2d Cir. 2002); *Gould v. Owens*, 383 Fed. Appx. 863, 868 (11th Cir. 2010) (unpublished).

expressly codified an issue exhaustion requirement when it enacted the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq. Thus, as the Court of Appeals explained:

> 15 U.S.C. § 78y(c)(1), … provides that '[n]o objection to an order or rule of the [Securities and Exchange] Commission ... may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.'"

*Probst v. Saul, supra.*, 980 F.3d at 1019. As the *Probst* court pointed out, other courts, including the Supreme Court, have invariably insisted that a statute contain equally clear-cut language before they will hold that the statute requires issue exhaustion. Thus, *Probst* cited, 980 F.3d at 1020-21, four decisions which demonstrate that Congress knows how to expressly demand issue exhaustion. The four cases are *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645 (1982); *Washington Ass'n for Television & Child. v. Federal Communications Comm'n*, 712 F.2d 677 (D.C. Cir. 1983); *Sims [v. Apfel*, 530 U.S. 103, 108 (2000)]; and *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

    *Woelke* held that issue exhaustion was required by the plain text of § 10(e) of the National Labor Relations Act ("NLRA"), "29 U.S.C. § 160(e), which provides that '[n]o objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.'" 456 U.S. at 665.

    *Washington Ass'n for Television & Child* held the Communications Act of 1934, 47 U.S.C. § 151 et seq., unambiguously requires issue exhaustion insofar as that Act's plain text provides: "The filing of a petition for rehearing shall not be a condition precedent to judicial review of [an FCC decision] except where the party seeking such review ... relies on questions of law or fact upon which the Commission ... has been afforded no opportunity to pass." 712 F.2d at 681 (citations omitted).

*Sims* "note[d] requirements of administrative issue exhaustion are largely creatures of statute, [that] our cases addressing issue exhaustion reflect this fact," … and that the defendant in *Sims* had not met its burden of specifying "any statute [that] requires issue exhaustion … ." 530 U.S. at 108 (citations omitted).

*Island Creek Coal Co*. explained that "[a]n issue-exhaustion mandate … could not be stated in plainer terms" than those in the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 et seq., which "tells courts: 'No objection that has not been urged before the [Federal Mine Safety and Health Review] Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.' 30 U.S.C. § 816(a)(1)." 937 F.3d at 747.[6]

The exhaustion language of the NDAA is not at all like the issue-exhaustion language of the statutes discussed in the above cases.

Furthermore, writing for the Court of Appeals in an oft-cited case, Judge Wilkinson explained that the issue exhaustion doctrine should be applied at a relatively high level of generality, rather than at a granular level of detail, especially when that doctrine is applied to anti-discrimination statutes (like Title VII) and anti-whistleblower retaliation statutes (like the NDAA). Thus, exactly because anti-discrimination statutes and anti-whistleblower retaliation statutes serve a "remedial purpose" they "should be liberally construed," *Butler v. Drive*

---

[6] Numerous other statutes contain similarly explicit exhaustion requirements. *See, e.g*., Securities Act of 1933, 15 U.S.C. § 77i(a) ("No objection ... shall be considered by the court unless such objection shall have been urged before the Commission."); Fair Labor Standards Act, 29 U.S.C. § 210(a) ("No objection ... shall be considered by the court unless such objection shall have been urged before [an] industry committee or unless there were reasonable grounds for failure so to do.").

*Automotive Industries of Am., Inc*., 793 F.3d 404, 409 (4th Cir. 2015),[7] which means the issues

exhaustion doctrine will bar a lawsuit only "if the administrative charge alleges one type of

discrimination — such as discriminatory failure to promote—and the claim encompasses another

type — such as discrimination in pay and benefits." *Chacko v. Patuxent Institution*, 429 F.3d

505, 509 (4th Cir. 2005). On the other hand, an administrative complaint will pass muster under

the issue exhaustion doctrine if "describe[s] generally the action or practices complained of," so

as to provide adequate notice to the charged party. *Balas v. Huntington Ingalls Indus., Inc.*, 711

F.3d 401, 407 (4th Cir. 2013) (citations omitted). See *Nnadozie v. Genesis HealthCare Corp.*,

730 Fed. Appx. 151, 161 (4th Circuit 2018) (unpublished).

The Court of Appeals' decision in *Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124

(4th Cir. 2002), provides a paradigmatic example of how courts carefully applied the issue

exhaustion doctrine in a case in which a Title VII complainant sought to have a district court

entertain wholly new causes of action and legal theories in his lawsuit in that court, causes of

action and legal theories — and mere "allegations" — that he had omitted from his

administrative charges. As the Court of Appeals explained in that case:

> Bryant's *EEOC charge* alleges that Bell Atlantic discriminated
> against him based upon his race. Bryant's *complaint* alleges that
> Bell Atlantic discriminated against him based upon his color, race,
> and/or sex, and retaliated against him for filing complaints of
> discrimination with the EEOC and MCHR and for filing grievance
> and arbitration proceedings. Administrative investigation of
> retaliation, and color and sex discrimination, however, could not
> reasonably be expected to occur in light of Bryant's sole charge
> of race discrimination, and the investigation of the complaint did

---

7    *See, e.g., Puryear v. County of Roanoke*, 214 F.3d 514, 522 (4th Cir. 2000); *Gary v. Air Group, Inc*., 397 F.3d 183, 190 (3d Cir. 2005); *Harrison v. Granite Bay Care, Inc*., 811 F.3d 36, 51 (1st Cir. 2016); *Farkas v. Williams*, 823 F.3d 1212, 1215 (9th Cir. 2016).

> not touch on any matters other than race discrimination. Therefore, because the scope of Bryant's complaint exceeds the limits set by the allegations of Bryant's administrative complaint, we cannot analyze the merits of Bryant's retaliation or color and sex discrimination claims.

288 F.3d at 132–33 (footnote omitted; italics in the original; other emphasis added). Several other recent Fourth Circuit decisions reached the same results for the same reasons.[8]

The lesson is plain: Congress undoubtedly has the power to compel issue exhaustion, unquestionably knows how to use that power, and writes statutes that carefully require issue exhaustion when it so chooses.

<u>Congress did not choose to do so in crafting the NDAA</u>. And the NDAA certainly does not require that complainant exhaust each and every granular fact underpinning the claim of whistleblower discrimination.

MSA impliedly concedes that Congress did not expressly require issue exhaustion in the text of the NDAA. This is shown by the fact that MSA does not point to any language in the text of the statute itself. Instead, MSA turns to a stray bit of attenuated legislative history, history which MSA says demonstrates Congress' intent to enact an issue exhaustion requirement. ECF No. 8, at

---

[8]    See *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009), *abrogated on other gr'nds by Ft. Bend County, Texas v. Davis*, --- U.S. ---, 139 S. Ct. 1843 (2019), (holding that the issue exhaustion doctrine barred the district court from considering the plaintiff's "discrimination on the basis of age, sex, or race" claims when her administrative charge raised nothing besides a claim that she suffered retaliatory discrimination because she had filed an unrelated, *i.e.*, non-"age, sex, or race" charge to the EEOC); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508–09 (4th Cir. 2005) (plaintiff could not pursue claims of harassment by co-workers in federal court when his administrative claims were limited to claims of racial discrimination by his supervisors). *See also Parker v. Reema Consulting Services, Inc.*, 915 F.3d 297, 306 (4th Cir. 2019); *Shipman v. United Parcel Serv., Inc.*, 581 Fed. Appx. 185, 187 (4th Cir. 2014) (unpublished); *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 408–09 (4th Cir. 2013).

16. In reality, as shown below, MSA's characterization of what it calls the NDAA's legislative history demonstrates nothing so much as MSA's creativity and wishful thinking.

According to MSA:

> Congress's intention was *not* to allow whistleblowers to bring a whistleblower complaint only to later bring a civil action that includes additional allegations than were brought in the initial complaint. In fact, Congress's intention was the opposite – Senator Portman said, "we would not want whistleblower reprisal allegations to serve as a pretext for an unrelated dispute with an employer."[9]

ECF No. 8, at 15-16 (italics in the original; additional emphasis added;).

The poverty of MSA's argument is demonstrated by the fact that the only legislative history it can cite in support of its theory are the inapposite comments of a single member of Congress. In the passage MSA cites, Sen. Rob Portman (R. Ohio), discussed statutes of limitations — not exhaustion of remedies — during a 2011 *ad hoc* three-person subcommittee hearing on a different statute that had been proposed in 2010. This was not a hearing regarding administrative exhaustion, in general, let alone the NDAA, in particular, which was enacted two years later and by a different Session of Congress.[10]

---

[9]    MSA must have meant to write: "additional allegations than were ***not*** brought in the initial ***administrative*** complaint."

[10]    What Sen. Portman actually said, in full, during an *ad hoc* hearing held two years before a different session of Congress enacted the NDAA*,* was:

> OK. With regard to the statute of limitations, I was curious to see that there are, in effect, sort of open rights here without a statutory period. No question we want a robust, effective whistleblower protection. We want it to be clear and well defined, as I said earlier. But I do not think we want these protections to be misused either.

Finally, even if the NDAA contained an issue exhaustion requirement — which it does

not — the Court of Appeals has cautioned that there are two reasons why an exhaustion

requirement should not be "'strictly'" enforced, *Sydnor v. Fairfax County, Va.*, 681 F.3d 591,

594 (4th Cir. 2012) (citations omitted) (per Wilkinson, J.), why an "administrative charge of

discrimination does <u>not</u> strictly limit a [federal court] suit which may follow," and why "federal

courts may still hear claims that the employee did not raise before the agency." *Stewart v. Iancu*,

912 F.3d 693, 705 (4th Cir. 2019).

The first reason why an "administrative charge of discrimination does not strictly limit a

[federal court] suit which may follow," *id.,* is that the Court of Appeals has long

-------------------

As I look at it—and tell me if I am wrong—it seems as <u>though
the statute of limitations is open</u>. For instance, <u>we would not want
whistleblower reprisal allegations to serve as a pretext for an
unrelated dispute with an employer</u>—you talked a little about that
earlier, Ms. Garrison—or as a defense against what were
considered to be legitimate personnel actions. And often, there is a
statute of limitations that is tolled upon discovery of the potential
wrongdoing.

My understanding is that the <u>whistleblower protections in
Section 1533—and this is in the American Recovery and
Reinvestment Act, in the stimulus—contained no time limit</u> within
which to file an IG complaint to secure protection against reprisals,
and there is no limit within which a civil action must be filed after
the employee has exhausted the administrative remedies.

I just wondered what you all thought about that. Do you think
that is the right approach? Do you think <u>there should be a statute of
limitations both on the filing of the reprisal complaint and bringing
a civil action</u>?

S. Hrg. 112–547 of the *Ad Hoc* Subcommittee on Contracting Oversight of the Senate Comm. on
Homeland Security and Governmental Affairs (Remarks of Senator Portman; Dec. 6, 2011;
emphasis added); <u>avail. on Jan. 8, 2022</u>, at https://www.govinfo.gov/content/pkg/CHRG-
112shrg72560/pdf/CHRG-112shrg72560.pdf.

> recognized the "generally accepted principle" that the "scope of a
> Title VII lawsuit may extend to 'any kind of discrimination like or
> related to allegations contained in the charge and growing out of
> such allegations during the pendency of the case'" before the
> agency. Put otherwise, an "administrative charge of discrimination
> does not strictly limit a Title VII suit which may follow," and
> <u>federal courts may still hear claims that the employee did not raise
> before the agency, as long as they are "like or related" and grow
> out of the allegations during the pendency of the case before the
> agency.</u>

*Stewart v. Iancu,* 912 F.3d 693, 705–06 (4th Cir. 2019) (emphasis added; citations omitted). *See*

*Sydnor*, 681 F.3d at 594; *Parker v. Reema Consulting Services, Inc.*, 915 F.3d 297, 306 (4th Cir.

2019) (per Niemeyer, J.). Accordingly, the "issues" in an administrative charge will be

considered exhausted so long as they "'describe <u>generally</u> the action or practices complained

of,'" but nothing more. *Id.* at 509 (emphasis added; citation omitted).[11]

As discussed above and as demonstrated in the attached Appendix, the issues — and the

subsidiary and constituent factual allegations — in Dr. Iovino's Complaint are very much "like

or related" to the issues and factual allegations she presented to the State Department.

The second reason why "federal courts may still hear claims that the employee did not

raise before the agency," *Stewart,* 912 F.3d at 705, is that courts have the inherent power to

excuse or overlook a complainant's lack of complete compliance with the issue exhaustion

doctrine where the parties in an administrative proceeding do not enjoy the procedural

safeguards provided in courtroom adversarial proceedings.

---

[11]    *See also Jones* v. Calvert Group, supra, 551 F.3d at 300; *Nnadozie v. Genesis HealthCare Corp.*, 730 Fed. Appx. 151, 161 (4th Cir. 2018) (unpublished); *Agolli v. Office Depot, Inc.*, 548 Fed. Appx. 871, 876 (4th Cir. 2013) (unpublished). *Cf. Edelman v. Lynchburg College*, 535 U.S. 106, 110 (2002).

Although MSA insists that the administrative complainants are just like appellants in a Court of Appeals and, like them, should not be allowed to raise issues and introduce facts on appeal that were not raised or ventilated below, the Supreme Court has held the opposite and has "allowed an exception to the issue-exhaustion requirement" whenever … an administrative proceeding is not adversarial." *Sims v. Apfel*, 530 U.S. 103, 110 (2000). *Sims* "observed that 'it is well settled that there are wide differences between administrative agencies and courts,' and we have thus warned against reflexively 'assimilat[ing] the relation of ... administrative bodies and the courts to the relationship between lower and upper courts.'" *Id.* (citations omitted). Thus, "[w]here … an administrative proceeding is not adversarial, … the reasons for a court to require issue exhaustion are much weaker" than in those administrative proceeding attended the full panoply of adversarial safeguards. *Id.*

The two report submitted by the DoS OIG to the State Department, see Exhibits B and C, make manifest that the ordinary procedural safeguards available during a typical adversarial proceeding (such as during a trial) were entirely absent in the proceedings below "One elementary component of the adversary system" that was missing below "is cross-examination, which the Supreme Court has recognized is the 'greatest legal engine ever invented for the discovery of truth.'" *Fox ex rel. Fox v. Elk Run Coal Co., Inc*., 739 F.3d 131, (4th Cir. 2014) (quoting *California v. Green*, 399 U.S. 149, 158 (1970) (internal quotation marks omitted)). *See Ward v. Johnson*, 690 F.2d 1098, 1109 (4th Cir. 1982); *Peacock v. Adams*, 915 F.2d 1565, 1990 (4th Cir. 1990). Dr. Iovino did not have the opportunity to cross-examine MSA's witnesses and representatives during the OIG investigation.

Unable to overcome these well-standing principles and longstanding precedents, MSA argues that "[t]he exhaustive framework of 41 U.S.C. § 4712 requires that [Dr. Iovino's] claims be reviewed on the administrative record, under a deferential review standard … ." ECF No. 8, at 8. The NDAA's "Remedy and Enforcement Authority" framework, 41 U.S.C. § 4712(c), has two very different components, parts which MSA conflate. The lethal defect in MSA's argument is that the part of § 4712(c)'s framework that requires deferential judicial review is the part that authorizes recourse to the appropriate "United States court of appeals," specifically § 4712(c)(5).[12] The sub-section is a valid and useful and important part of NDAA's framework. It just is not the part of that framework that Dr. Iovino invoked in the very first, "jurisdictional" paragraph of her Complaint, *i.e.*, § 4712(c)(2), <u>not</u> (c)(5).

As noted above, § 4712(c)(2) authorizes a complainant denied relief by an executive agency to "bring a *de novo* action at … in the appropriate district court of the United States" and to "request" the *de novo* action "be tried by the court with a jury." The entire point of a "*de novo* action" tried to a jury is the antithesis of a deferential law. MSA may wish it were otherwise, but this Court need not honor or enforce MSA's wishes.

---

[12]   Section 4712(c)(5), titled "Judicial review," provides in pertinent part:

> Any person adversely affected or aggrieved by an order issued under paragraph (1) may obtain review of the order's conformance with this subsection, and any regulations issued to carry out this section, in the United States court of appeals for a circuit in which the reprisal is alleged in the order to have occurred. … Review shall conform to chapter 7 of title 5.

"[C]hapter 7 of title 5" of the U.S. Code refers to the Administrative Procedure Act ("APA"), which does "require a deferential standard of review," *Kappos v. Hyatt*, 566 U.S. 431, 438 (2012) (citing 5 U.S.C. § 706). *See Defenders of Wildlife v. U.S. Dept. of the Interior*, 931 F.3d 339, 345 (4th Cir. 2019).

Importantly, although "[u]nder the APA, judicial review of an agency decision is typically limited to the administrative record" and no "new evidence" may be introduced or considered, de novo review proceedings under § 4712(c)(2) "are not so limited" and the district court "must act as a factfinder" and "may consider new evidence."." *Kappos v. Hyatt*, 566 U.S. 431, 438 (2012)  (citation omitted). Lastly, regardless of whether the district court or a jury acts as the factfinder, "it makes little sense for the district court to apply a deferential standard of review to [an agency's] factual findings that are contradicted by the new evidence." *Id.* "Consequently, the district court must make its own findings *de novo* and does not act as the 'reviewing court'" envisioned by the APA," *id.,* or § 4712(c)(2). *See Peter v. Nantkwest, Inc.*, ---U.S. ---, 140 S. Ct. 365, 369 (2019); *Bechtel v. Admin. Rev. Bd., U.S. Dept. of Labor.*, 710 F.3d 443, 450 (2d Cir. 2013); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 157-58 (4th Cir. 2014).

For these reasons, this Court does not owe and cannot provide "deference" to the agency decision below.

### B.     Both of MSA's Back-up Arguments, Relying on Fed. R.. Civ. P. 12(b)(6) and 12(f), Lack Merit

MSA argues that even if the Court rejects its motion to dismiss Dr. Iovino's Complaint, based on Fed. R.. Civ. P. 12(b)(1), the Court should still dismiss the Complaint, based on Fed. R.. Civ. P. 12(b)(6), or should strike scores of the Complaint's paragraphs, based on Fed. R.. Civ. P. 12(f). This Court should deny both back-up arguments because each lacks merit.

### 1.    MSA's Rule 12(b)(6) Motion to Dismiss Lacks Merit

Evidently realizing the weakness of its motion to dismiss Dr. Iovino's Complaint based on Rule 12(b)(1) grounds, MSA urges the Court to dismiss the Complaint because it runs afoul of Rule 12(b)(6). This Court should deny that motion, too.

As this Court recently summarized the legal standards regarding Rule 12(b)(6):

> Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

*Scarborough v. Frederick County Sch. Bd*., 517 F. Supp. 3d 569, 575 (W.D. Va. 2021), *reconsideration denied* (Mar. 9, 2021). *See Sheppard v. Visitors of Virginia State Univ*., 993 F.3d 230, 234 (4th Cir. 2021); *Lemon v. Myers Bigel, P.A*., 985 F.3d 392, 399, *cert. denied sub nom. Lemon v. Bigel*, --- U.S. ---, 142 S. Ct. 225 (2021).

MSA has not these minimal criteria. Instead, MSA has simply repackaged the arguments it made for dismissal based on Rule 12(b)(1), *i.e*., "Congress intended contractor employees to first bring their claims and allegations to the agency and then to the court system, not the reverse." ECF No. 8, at 16. MSA's repackaged argument is no better than its original one.

> **2.     MSA Has Not Met Its "Substantial Burden" Under Fed. R. Civ. P.
> 12(f) of Proving That Any Part of Dr. Iovino's Complaint Contains
> "Redundant, Immaterial, Impertinent, or Scandalous Matter" and
> that Denying MSA's Motion Will Prejudice MSA**

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike

from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." Rule 12(f) motions have been long and widely viewed with disfavor "because striking a

portion of a pleading is a drastic remedy," *United States v. Ancient Coin Collectors Guild*, 899

F.3d 295, 325 (4th Cir. 2018) (citing *Waste Mgt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347

(4th Cir. 2001), and because they are "'often sought by the movant simply as a dilatory tactic.'"

*Waste Mgt. Holdings, Inc.*, 252 F.3d at 347 (quoting 5A A. Charles Alan Wright & Arthur R.

Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)).

As such, this Court has held that "' [t]he standard upon which a motion to strike is

measured places a substantial burden on the moving party," who "[u]sually" must "show[] that

denial of the motion would prejudice" it. *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d

596, 605, 2019 WL 1394391 (W.D. Va. 2019) (citations omitted). Indeed, "a motion to strike

should only be granted when the allegations have 'no possible relation or logical connection to

the subject matter of the controversy.'" *Thornhill v. Aylor*, 3:15-CV-00024, 2016 WL 258645, at

*2 (W.D. Va. Jan. 20, 2016) (citations omitted). Thus, "'even when 'technically appropriate and

well-founded,' such motions are often 'denied in absence of demonstrated prejudice to the

moving party.'" *Palmer v. Oakland Farms, Inc.,* 5:10CV00029, 2010 WL 2605179, at *1 (W.D.

Va. June 24, 2010) (citations omitted).

MSA has not identified what is "redundant, immaterial, impertinent, or scandalous" let alone proven such. Nor has MSA alleged "show[n]" that it would suffer prejudice unless this Court granted the motion.

For these reasons, this Court should deny MSA's Rule 12(f) motion.

## II.  MSA IS WRONG AS A MATTER OF FACT: DR. IOVINO'S COMPLAINT IS <u>NOT</u> "REPLETE WITH NOVEL ALLEGATIONS OF REPRISAL"

The factual centerpiece of MSA's motion is its assertion that the instant Complaint is "replete with novel allegations of reprisal that were not made to, nor investigated by the OIG, nor decided by DoS." ECF No. 8, at 8. This contention is so crucial that MSA reiterates it, in one formulation or another, at least eight more times,[13] as if repeating this contention would make it true. MSA is wrong, however, as a matter of fact because — as detailed in Dr. Iovino's attached 80-page Appendix — the Complaint does <u>not</u> contain any "novel allegations of reprisal."

The Complaint in some places does add background and contextual facts in order to render Dr. Iovino's narrative of the events comprising her whistleblowing activity and Defendant MSA's reprisals more clear and coherent, and easier for the Defendant (and, hopefully, the Court) to follow. In fact, to excise the 69 fact paragraphs about which MSA complains — *i.e.*, 11-15, 17-24, 26-39, 41-58, 67-68, 122-138, and 164-167, see ECF No. 8, at 19 — would render the narrative choppy and less coherent. Moreover, may of those background and contextual facts

---

[13]   *See* ECF No. 8, at 10 (Dr. Iovino's complaint contains "many allegations of reprisals by MSA that … were not addressed in Iovino's July 9, 2018 Submission Titled "Karen Iovino's Memorandum of Law" and [therefore] should also be dismissed or stricken from the Complaint."); *id.* at 13-14 ("entirely new accusations and allegations of reprisal that were never brought to the DoS OIG predominate Iovino's Complaint."); *id.* at 10 (new "allegations of allegedly retaliatory conduct …are not well found [sic] and should be dismissed or stricken from the Complaint."). *See also id.* at 8, 8-9, 9, 9-10, and 10).

were, in point of fact, covered in the administrative process, as Dr. Iovino shows note in the accompanying Appendix.

Accordingly, the Court should deny both Defendant MSA's Motion to Dismiss, and its alternative Motion to Strike portions of the Complaint.

<div style="margin-left:50%;">

Respectfully submitted,

/s/ Jack Kolar

John A. Kolar (DC Bar No. 953292)
Government Accountability Project
1612 K Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 966-3311
Jackk@whistleblower.org
(Admitted *pro hac vice*)

/s/Nate L. Adams, III
VSB No. 20707
Nate L. Adams, III, P.C.
ADAMS AND ASSOCIATES
11 S. Cameron Street
Winchester, VA 22601
(540) 667-1330
nadams@nadamslaw.com

Of Counsel:
Ned Miltenberg
GAP Counsel for Constitutional and
Appellate Litigation
5410 Mohican Road -- Suite 200
Bethesda, MD   20816-2162

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2022, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Western District of Virginia by

using the CM/ECF system. I certify that the following participants in the case are registered

CM/ECF users and that service will be accomplished by the CM/ECF system.

> Ryan C. Berry (VSB 67956)
> Daniel S. Ward (VSB 45978)
> WARD & BERRY, PLLC
> 1751 Pinnacle Drive, Suite 900
> Tysons, VA 22102
> (202) 331-8160
> (202) 505-7100 Fax
> ryan@wardberry.com
> dan@wardberry.com
>
> *Attorneys for Defendant Michael Stapleton*
> *Associates, Ltd., d/b/a MSA Security, Inc.*


> /s/ John A. "Jack" Kolar