

**United States Department of State**

*Washington, D.C. 20520*
*www.state.gov*

October 30, 2019

Via Email to:
Ryan C. Berry,
Counsel for Michael Stapleton Associates, Ltd. d/b/a MSA Security
Ward & Berry
2000 Pennsylvania Avenue, N.W. Suite 4500
Washington, D.C. 20006
ryan@wardberry.com

Nate L. Adams, III, Esq.,
Counsel for Karen Iovino, DVM
Adams and Jones, PLC
11 South Cameron St.
Winchester, VA 22601
nadams@nadamslaw.com

>       Re:    Determination and Order Pursuant to 41 U.S.C. 4712
>              OIG Whistleblower Case 2017-0044 (Karen Iovino)

Dear Mr. Berry and Mr. Adams:

This letter is directed to you as counsel for MSA Security and Dr. Karen Iovino respectively in order to present to you the Determination and Order of the Department of State in the Department of State Office of Inspector General's Whistleblower Case 2017-0044. This letter is to inform you after review of the administrative record, the Department of State has determined that MSA Security did not subject the complainant, Dr. Karen Iovino, to a reprisal prohibited by 41 U.S.C. § 4712(a) and accordingly is issuing an Order pursuant to 41 U.S.C. § 4712(c) denying relief. The basis and substance of this action is set forth below.

## PROCEDURAL SUMMARY

On August 4, 2017, Dr., Iovino filed a complaint with the Department of State's Office of Inspector General's (OIG) office alleging wrongful termination from her position with MSA Security (MSA). As required by 41 U.S.C. § 4712(b), the OIG investigated the complaints and submitted its report of investigation on July 5, 2018 to the complainant, the contractor, the Procurement Executive, and the head of the agency. The report was referred to my office to make a determination whether MSA Security had subjected Dr. Iovino to a reprisal prohibited by 41 U.S.C. § 4712 and, if so, to issue an order for remedial action.

On October 3, 2018, my office issued a determination based on the OIG's investigation report concluding that MSA Security had subjected Dr. Iovino to a reprisal prohibited by 41 U.S.C. § 4712 and ordering MSA Security to take the following actions: 1) To offer Dr. Iovino reinstatement to the position she held before the reprisal, together with compensatory damages (including back pay), employment benefits and other terms and conditions of employment that would have applied to her if the reprisal had not been taken; and 2) to pay Dr. Iovino an amount equal to the aggregate amount of all costs and expenses, including attorney fees, that were reasonably incurred by the Dr. Iovino for, or in connection with, bringing the complaint regarding the reprisal.

On November 16, 2018, MSA Security filed a Petition for Review of the Order with the United States Court of Appeals. *Michael Stapleton Associates, Ltd. d/b/a MSA Security v. United State Department of State,* Appeal No, 18-2381 (4th Cir.). On February 8, 2019, the Department, acting through the Department of Justice, filed an unopposed motion to remand Dr. Iovino's complaint to the Department for further proceedings. This motion was granted on March 11, 2019, and the Court's judgment of remand took effect upon issuance of a formal mandate on May 3, 2019.

On June 17, 2019. The Department provided you both with a copy of the record compiled by the Office of the Inspector General in its investigation of the Complaint, and invited submissions to supplement the administrative record, Both parties made timely submissions on July 5, 2019 and both made timely replies on June 19, 2019. On September 12 and 13, 2019, Dr. Iovino's counsel sought to submit for the administrative record two documents that were stated to have been unavailable at the time of the earlier submissions: 1) Evaluation of the Antiterrorism Assistance Explosive Detection Canine Program, ESP-19-06 (September 2019), prepared by the Department of State Office of Inspector General, Office of Evaluation and Special Projects; and 2) a notice issued by the Virginia Board of Veterinary Medicine scheduling a conference concerning allegations made concerning the conduct of one of MSA Security's witnesses. Counsel for MSA Security has objected to the acceptance of these submissions as untimely. After review, the Department does not consider these documents to be material to its Determination or Order.

## ADMINISTRATIVE RECORD

For purposes of the Department's Determination and Order in this matter, the following documents and only those documents have been reviewed and considered:

1. Memorandum (July 5, 2019) from Jeffrey D. McDonald, Acting Assistant Inspector General to Steven A. Linick, Inspector General, Department of State, Re OIG Whistleblower Case 2017-0044 (Karen Iovino).

2. OIG Investigation Record (146 pages), provided to the parties with the Letter of Eric Moore, Acting Procurement Executive, dated June 17, 2019.

3. Letter (July 5, 2019) from Ryan C. Berry, Counsel for MSA Security to Eric Moore, together with a 15-page memorandum and 15 attachments totaling an additional 333 pages.

4. Memorandum and Exhibits totaling 149 pages submitted by counsel for Dr.Iovino on July 5, 2019.

5. MSA Security's Reply Submission (July 19, 2019), consisting of eleven files and totaling 40 pages.

6. Dr. Iovino's Reply Submission (July 19, 2019), consisting of a 5-page memorandum plus 4 pages of attachments.

## FINDINGS OF FACT

1. Karen Iovino, DVM is a licensed veterinarian. After providing services on an intermittent basis under a Consulting Agreement of June 28, 2015 (OIG Record of Investigation, at pp. 000085 to 000087), Dr. Iovino applied for employment with MSA Security and was hired as a part-time veterinarian effective October 9, 2015. OIG Record of Investigation, at p. 000060. The Personnel Action Notice made reference to a Department of State contract. SAQMM15C0239, a contract supporting the Department's Anti-Terrorism Assistance program. Id.

2. By letter dated October 15, 2015, MSA Security offered Dr. Iovino "the position of Veterinarian for the Canine Validation Center (CVC) in Winchester, Virginia, reporting to Richard Strobel, Forensic Chemist. This is a part-time, hourly position." OIG Record of Investigation, at p. 000071.

3. On October 16, 2015, Dr. Iovino signed an Employee Confidentiality, Invention Assignment and Non-Soliciation [sic] Agreement. OIG Record of Investigation, at p. 000042. This Agreement includes a very broad definition of Confidential Information and required Dr. Iovino to agree that "except as required in the performance of my employment duties and responsibilities, [I] will not disclose, publish, use or otherwise make available to the public or to any individual, firm or corporation any confidential information." Id. Dr. Iovino was also required to agree that her employment with MSA Security "remain 'at-will,' meaning that either I or the Company may, at any time, terminate my employment with or without cause and with or without notice."

4. In February 2017, Dr. Iovino learned that the Department of State contract for which she provided services would likely be amended to provide for a full-time veterinarian in lieu of a part-time one. She expected to receive assignment to this full-time position without competition. See Record of Investigation at p. 000136.

5. On or about July 6, 2017, Dr. Iovino complained to Cathy Read, the Director of the Office of Acquisition Management at the Department of State about the living and working conditions of dogs sent overseas under the Department of State contract as well as expressing other concerns with MSA Security's personnel and management practices. Ms. Read advised

Dr. Iovino to contact the Office of the Inspector General.  Record of OIG Investigation, at pp. 0000136, 0000146.

6.  On July 6, 2017, Dr. Iovino sent a complaint to the OIG hotline that listed ten examples of  what she considered to incidents of waste, fraud or abuse by MSA Security, that in addition to numerous complaints about personnel practices included "'gifting' canines to foreign countries without proper follow through to assure they are properly cared for. . . .  There are reports canines ae dying due to medical conditions/lack of veterinary care/poor working conditions."  Record of OIG Investigation at p. 000002.

7.  On July 14, 2017, Dr. Iovino was informed that her part-time veterinary position was being terminated as August 18, 2017 to be replaced by a full-time position.  She expected to receive assignment to this full-time position, but hadn't decided if she wanted to accept it.  Record of OIG Investigation, at p. 000017.

8.  On August 3, 2017, MSA Security learned of Dr. Iovino's complaints to Cathy Read and placed Dr. Iovino on paid administrative leave on August 4, 2017 "while concerns involving her disclosure of confidential information are investigated."  OIG Record of Investigation, at pp.000030 and 000031.  In connection with this suspension, Dr. Iovino was summarily denied access to the premises where she had worked.  Id.

9.  On August 18, 2017, MSA Security notified Dr. Iovino that her "part time assignment as Veterinarian has come to completion as of today."  OIG Record of Investigation, at p. 000037.

10.  Dr. Iovino applied for the full-time Veterinarian position, and was one of the two applicants (of four total) whose qualifications were considered in detail, but Dr. Lee Palmer was selected.  OIG Record of Investigation, at pp. 000116 to 000118.  The summary of the decision states:

> Though both candidates satisfy DOS criteria for the full time ATA veterinary position, Dr. Palmer's additional experience and qualifications make him the superior candidate. Both demonstrate ample medical competencies, but Dr. Palmer being a board-certified veterinary specialist with a history of EOD and human EMT work makes him a more well-rounded fit for the overall future of the Canine Validation Center, the ATA program, and the K9 industry as a whole.  Dr. Iovino's overall attitude towards the mission and inability to relate diplomatically to leadership preclude her from being selected for international missions, a key component for the full time position.  The client is simply not comfortable with us using Dr. Iovino in this capacity.  We would be fully comfortable deploying Dr. Palmer to these locations, and confident he could deliver clear and concise recommendations in a diplomatic fashion back to the client and MSA/CVC leadership.  It is for all of the above, in addition to the documented selection criteria, that we chose Dr. Lee Palmer as the overarching choice for the position of full time ATA veterinarian.

## DISCUSSION AND ANALYSIS

Authority for the conduct of this proceeding is provided under 41 U.S.C. § 4712. This statute prohibits reprisals by a Government contractor against an employee for making protected disclosures. Specifically,

> An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1). Not every disclosure of information is protected. The statute covers disclosure to the following:

> (2)PERSONS AND BODIES COVERED.—The persons and bodies described in this paragraph are the persons and bodies as follows:
> (A) A Member of Congress or a representative of a committee of Congress.
> (B) An Inspector Genera'
> (C) the Government Accountability Office.
> (D) A Federal employee responsible for contract or grant oversight or management at the relevant agency.
> (E) An authorized official of the Department of Justice or other law enforcement agency.
> (F) A court or grand jury.
> (G) A management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct.

41 U.S.C. § 4712(a)(2).

In its defense, MSA Security has presented numerous declarations from its management and staff to the effect that Dr. Iovino was a difficult employee who was inflexible and impatient (MSA 000310 to 000325) and some of her complaints about her personal treatment may not qualify for protection under the standards of 41 U.S.C. § 4712(a)(1). Nevertheless, the Department concludes that Dr. Iovino made protected disclosures by contacting the Director of the Department's Office of Acquisition Management and then the Office of the Inspector General with reasonable concerns about mismanagement, particularly about the mistreatment of animals in the course of the ATA Program supported by MSA Security.

The issue then becomes whether Dr. Iovino was "discharged, demoted or otherwise discriminated against" as a reprisal for her protected disclosures. The replacement of her part-time veterinary position with a full-time position was being discussed as early as February 2017. Dr. Iovino in a memorandum dated July 14, 2017 (Finding of Fact # 7), which was after her disclosures but before there is any evidence that MSA Security had learned of them, states that

she has been informed that her part-time position would terminate on August 18, 2017. She indicated that she expects to be offered the new full-time position but had not decided if she would accept it.

There is a direct conflict in the statements of Dr. Iovino and that of the Lead Veterinarian Michael D. Ratcliff. While Dr. Iovino has asserted in her affidavit and elsewhere that Dr. Ratcliff promised her a noncompetitive conversion to the full-time position, Dr. Ratcliff repeatedly denies having done so, (See MSA Response at MSA000323 and MSA Reply p. MSA000381). MSA Security's Chief Administrative Officer states that Dr. Ratcliff had no authority to offer the new full-time position to Dr. Iovino. See MSA Reply at p. MSA000353. In view of the formal procedures followed in offering Dr, Iovino part-time employment, including a written job offer, it does not appear that Dr. Iovino can reasonably claim that an alleged oral job offer made by a fellow employee who was neither an officer of the corporation nor in its personnel office and which is otherwise unsupported by circumstantial evidence can be held to be binding on the corporation.

Since Dr. Iovino was an at-will employee and the termination of her part-time employment on August 18, 2017 had already been announced before MSA Security learned of her protected disclosures, it appears the only reprisals that can be asserted to have resulted from the protected disclosures are:  1) Dr. Iovino's suspension with pay on August 4, 2018; and 2) her non-selection for the full-time position.

MSA Security justifies the suspension as necessary to conduct an investigation of Ms. Iovino's activities, which it believes involved unprotected as well as protected disclosures in violation of the confidentiality agreement. Without reaching the issue of whether the suspension was in fact based in part on the protected disclosures, the fact that Dr. Iovino's pay was continued until the previously announced termination of the part-time position militates against treating the suspension as a reprisal for which a remedy should be provided since Dr. Iovino suffered no monetary or other identifiable loss thereby.

Dr. Iovino did apply for the full-time position, and was considered as one of the two finalists for the position for which Dr. Lee Palmer was selected.  See Finding of Fact # 10. The administrative record amply evidences the animus the parties bear for one another, and it appears that Dr. Iovino's protected disclosures generated a significant portion of the original animus on the part of MSA Security. But the record of the hiring decision (see OIG Administrative Record, at pp. 000110 to 000131), including the resumes of the two candidates, supports the conclusion that Dr. Palmer was far more suitable to perform the duties of the new full-time position than Dr. Iovino. Accordingly, the Department determines that MSA Security has met its burden of presenting clear and convincing evidence that even though the MSA Security officials making the hiring decision were aware of the protected disclosures and likely influenced by them, such that it was a contributing factor, Dr. Palmer would certainly have been chosen over Dr. Iovino in the absence of the disclosures. See 41 U.S.C. § 4712(e)(6), which adopts the burdens of proof specified in section 1221(e) of title 5, United States Code.

Accordingly, in accordance with 41 U.S.C. § 4712 (c)(1) and DOSAR § 603.905, I hereby issue
an Order denying relief to Dr. Iovino.  Pursuant to 41 U.S.C. § 4712(c)(2), Dr. Iovino may bring
a de novo action against MSA Security in the appropriate U.S. District Court.

Sincerely yours,

Sharon D. James
Acting Procurement Executive
U.S. Department of State

cc:      Steve A. Linick, Inspector General