**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

**KAREN IOVINO,**

     ***Plaintiff,***

  **v.**

**MICHAEL STAPLETON ASSOCIATES, LTD.**
  **d.b.a. MSA SECURITY, INC.,**

     ***Defendant.***

**CASE NO. 5:21-cv-00064**

**APPENDIX TO DR. IOVINO'S BRIEF IN OPPOSITION**
**TO MSA'S MOTION TO DISMISS**

### A.  INTRODUCTION AND EXPLANATION

Defendant MSA argues that this Court should dismiss Plaintiff Dr. Karen Iovino's

Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6) — or at least strike very substantial

portions of it, pursuant to Fed. R. Civ. P. 12(f) — because MSA contends that seventy (70)

paragraphs of Dr. Iovino's Complaint contain "novel allegations of reprisal that were not made

to, nor investigated by the [Department of State's Office of the Inspector General] OIG, nor

decided by [Department of State] DoS," MSA's Memorandum of Law in Support of Its Motion,

ECF No. 8, at 8, and/or because they contain "redundant, immaterial, impertinent, or scandalous

matter." ECF No. 8, at 12. As Dr. Iovino demonstrates in her memorandum opposing MSA's

motions, the whistleblower protection statute at issue in this case, the National Defense

Authorization Act ("NDAA"), codified as 41 U.S.C. § 4712, e*t seq*., does not require "issue

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 1*

exhaustion" as a matter of law; it merely requires that Dr. Iovino have exhausted the administrative process, which she has done.

In the discussion below, Dr. Iovino discusses each of the 69 Complaint paragraphs to which MSA objects on the above grounds, and explains why such paragraph is proper to remain in the Complaint. In many instances below, although it is not legally required to show that a fact was raised in the administrative process, as demonstrated in Dr. Iovino's Brief in Opposition, in actual fact, she did raise the fact in question during that process.

Although the Administrative Record below is extensive,[1] Dr. Iovino in this Appendix relies solely upon the OIG Investigation Record (146 pages), provided to the parties with a Letter of Eric Moore, Acting Procurement Executive, dated June 17, 2019. That 146-page document is identified as Item (2) in Sharon James' letter described in note 1 above, and is filed herewith as Exhibit B.

## B. PARAGRAPH-BY-PARAGRAPH DISCUSSION

**Complaint ¶ 11 states, in full:**

---

[1] DoS official Sharon James in her October 30, 2019 email to Dr. Iovino and MSA, at pages 2-3, which letter is Exhibit A to Dr. Iovino's Opposition to Defendant's Motion to Dismiss or to Strike, identified the Administrative Record as consisting of the following six items: (1) Memorandum (July 5, 2019) from Jeffrey D. McDonald, Acting Assistant Inspector General to Steven A. Linick, Inspector General, Department of State, Re OIG Whistleblower Case 2017-0044 (Karen Iovino), which is Exhibit C to the Opposition; (2) OIG Investigation Record (146 pages), provided to the parties with the Letter of Eric Moore, Acting Procurement Executive, dated June 17, 2019, which is Exhibit B to the Opposition; (3) Letter (July 5, 2019) from Ryan C. Berry, Counsel for MSA Security to Eric Moore, together with a 15-page memorandum and 15 attachments totaling an additional 333 pages; (4) Memorandum and Exhibits totaling 149 pages submitted by counsel for Dr. Iovino on July 5, 2019; (5) MSA Security's Reply Submission (July 19, 2019), consisting of eleven files and totaling 40 pages; and (6) Dr. Iovino's Reply Submission (July 19, 2019), consisting of a 5-page memorandum plus 4 pages of attachments.

> On September 30, 2014, the State Department issued its first
> contract, in the amount of approximately $7.6 million over one
> year, to MSA for the operation and management of the CVC. In
> 2016, the CVC became operational and assumed responsibility for
> the canine training program of the Bureau of Diplomatic Security.
> In September 2015, the State Department issued an approximately
> $11 million, one-year contract to MSA for the operation of the
> CVC. Finally, in September 2016, the State Department issued a
> four-year contract with MSA for the operation of the CVC, with
> approximately $87 million obligated to date. The State
> Department's total obligations to MSA for the CVC as of the date
> of May 2021 is $123,318,765.15. (https://www.usaspending.gov,
> last accessed May 18, 2021).

**Dr. Iovino's Response to MSA's Arguments on ¶ 11:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply provides background information about the relationship and contracts between the DoS and Defendant MSA.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 12 states, in full:**

> During the time of the three contracts discussed *supra* at paragraph
> 11, Ms. Cathy J. Read was the State Department Director of
> Acquisitions Management, with ultimate responsibility for the
> three MSA contracts for the operation and management of the
> CVC with total obligations of more than $100 million.

**Dr. Iovino's Response to MSA's Arguments on ¶ 12:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply provides background information about DOS official Cathy J. Read's responsibility re the DoS-MSA contracts.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 13 states, in full:**

> On information and belief, during the time of the three contracts discussed *supra* at paragraph 11, Ms. [Sharon] James was the Division Director of the Bureau of Diplomatic Security Contracts Division, with responsibility for the three MSA contracts for the operation and management of the CVC with total obligations to date of approximately $105 million, and Ms. James was directly subordinate to Ms. Read.

**Dr. Iovino's Response to MSA's Arguments on ¶ 13:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply provides background information about DOS official Sharon James' responsibility re the DoS-MSA contracts.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule

12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 14 states, in full:**

The CVC conducts training pursuant to two State Department programs: 1) the Worldwide Protective Services program (hereafter "WPS"), which deploys the canines and their handlers to protect State Department facilities, such as embassies and consulates, and State Department personnel around the world; and 2) the Anti-Terrorism Assistance program, which supplies foreign law enforcement agencies with Explosive Detection Canines and trains canine handlers to properly handle and care for those canines.

**Dr. Iovino's Response to MSA's Arguments on ¶ 14:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply provides background information about the structure of the CVC and the services the CVS provides to the DoS, specifically to DoS' Worldwide Protective Services ("WPS") program, which deploys the canines and their handlers to protect State Department facilities, such as embassies and consulates, and State Department personnel around the world; and DoS' Anti-Terrorism Assistance ("ATA") program.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 15 states, in full:**

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 5*

In March 2016, the Bureau of Diplomatic Security's Office of
Antiterrorism Assistance signed a Memorandum of Agreement
with the CVC that established responsibility for care requirements
of dogs provided to foreign countries with CVC.

**Dr. Iovino's Response to MSA's Arguments on ¶ 15:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph simply provides background information about the CVC
and its relationship with the DoS's Bureau of Diplomatic Security.

In addition, this paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 17 states, in full:**

Beginning in 2015, Dr. Iovino and Mr. Roberts shared an
understanding that the lack of Standard Operating Procedures for
care of the gifted canines in the hands of foreign countries, the lack
of adequate veterinary care for these canines, and the lack of
adequate accountability to ensure that basic standards of care
would be met for these canines was a substantial risk to the bomb-
detection and anti-terrorism mission, and a threat to the health and
welfare of the dogs, too. They worked tirelessly to create and
promote the adoption of Standard Operating Procedures for the
health, welfare, and training of the EDCs gifted to foreign
countries.

**Dr. Iovino's Response to MSA's Arguments on ¶ 17:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal

that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply alleges the shared understanding by Dr. Iovino and Zane Roberts about deficiencies in the program and their efforts to overcome those problems.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

Moreover, the role of Mr. Roberts in the events was treated in the Administrative Record in this case. OIG Admin. Record, Exhibit B, at 000004 contains a paragraph stating as follows:

> For approx 1 1/2 years I [Dr. Iovino] have been expressing concern regarding the care of EDC's (explosive detection canines) gifted to foreign countries. [Name redacted] also expressed concerns. As PM (Program Manager) he worked to put a plan in place to ensure they received proper veterinary care. He met resistance and the plan was not put in place. Like me, he was demoted. My demotion was in Oct 2016, when Josh Carter, DoS PM, and Alan Bower, MSA Security HR/Facilities Mgr, hired Mike Ratcliff, DVM for my position without Zane's knowledge (he was my supervisor). I was demoted from Lead Veterinarian to Lead ATA (Anti-Terrorist Assistance) Veterinarian. In February 2017, I was reprimanded by Mike and Alan without Zane's knowledge or presence. The reprimand was unjust: Mike-asking the LVT(Licensed Veterinary Technician) to stay late to assist me and Alan-for 'working to hard'.

Although the name was redacted before this document was released to Dr. Iovino, it is clear from the context that the redacted name is Zane Roberts. Mr. Roberts was the Program Manager and Dr, Iovino's supervisor. See Complaint ¶ 16. Thus, in this portion of her complaint to the OIG, Dr. Iovino told the OIG that Zane Roberts and she shared the same or similar concerns about the deficiencies in care of the EDCs and strove to correct them.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 18 states, in full:**

> Beginning in late 2015, these concerns (*supra* ¶ 17) were routinely
> disclosed and discussed at the regular CVC leadership meetings
> that included the State Department's on-site Program Manager at
> CVC, Mr. Josh Carter, who was a State Department contractor, but
> not an MSA employee, and Mr. Alan Bower, then MSA Human
> Resources/Facilities Manager at CVC. Dr. Iovino was normally not
> at these meetings, but Mr. Roberts would bring up these concerns
> with the universal understanding that he was speaking for himself
> and Dr. Iovino. Mr. Carter and Mr. Bower would listen to these
> concerns that Mr. Roberts aired, but inevitably they took no action.

**Dr. Iovino's Response to MSA's Arguments on ¶ 18:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply alleges Mr. Roberts brought the concerns he shared with Dr. Iovino to the attention of the CVC management officials.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 19 states, in full:**

> In March 2016, Mr. Roberts and Mr. Carter traveled to the
> Kingdom of Jordan and reported on the poor conditions of the
> Jordanian kennels, including inadequate sanitation and health care
> and canine deaths, mostly from the canine parvovirus. The CVC
> team reported that the canines were overworked and lacked shelter,
> sanitation, and care while they were working, and no motivational
> training was provided to support the canines.

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 8*

**Dr. Iovino's Response to MSA's Arguments on ¶ 18:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply alleges that Zane Roberts and Josh Carter traveled to Jordan and reported on the poor conditions of the EDCs there and therefore provides context for Dr. Iovino's claims.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

Moreover, the trip and reports in question are treated in the Administrative Record, contrary to Defendant MSA's assertion they are not. OIG Admin. Record, Exhibit B, at 000007 states:

> During a trip overseas in June 2016 by the previous PM, elderly EDC's (from ATF program) were found in poor condition with medical conditions such has hip dysplasia, broken teeth. Many were still working past retirement age(7yo). These dogs are given away by Jordanian Commanders as 'trophies'. The kennels were/are in poor condition, Parvovirus is endemic. Puppies in their breeding program are dying. Previous PM provided a report to Leadership including pictures of the deplorable conditions. He was working to have a computer program developed so the ATA veterinarian could track the health and welfare of the EDCs. There is no mechanism for accountability on the care of the EDC's gifted to Jordan. Also, the DoS PM and previous PM traveled to Jordan in March 2016. The DoS PM [this is a reference to Mr. Carter – see Complaint, ¶ 18] saw first hand the conditions in Jordan and did nothing to improve them.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

<u>**Complaint ¶ 20 states, in full:**</u>

> The reports from the CVC trip to Jordan were shared with Dr.
> Iovino and she and Mr. Roberts renewed their vigorous advocacy
> with Mr. Carter and Mr. Bower for standards, protocols, and
> accountability that would help ensure adequate care for the canines
> gifted to foreign countries, particularly Jordan, and would maintain
> their effectiveness as Explosive Detection Canines. Again, Mr.
> Carter and Mr. Bower would listen to Mr. Roberts' concerns, but
> they took no action.

**Dr. Iovino's Response to MSA's Arguments on ¶ 20:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph refers to Zane Roberts' and Josh Carter's trip to Jordan
where they witnessed the poor conditions of the EDCs there, and alleges that Dr. Iovino and Mr.
Roberts redoubled their efforts to redress those problems. In other words, it merely provides
additional context for Dr. Iovino's claims.

In addition, this paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

Moreover, the trip and reports in question are treated in the Administrative Record,
contrary to Defendant MSA's assertion they are not. OIG Admin. Record, Exhibit B, 000007
states:

> During a trip overseas in June 2016 by the previous PM, elderly
> EDC's (from ATF program) were found in poor condition with
> medical conditions such has hip dysplasia, broken teeth. Many
> were still working past retirement age(7yo). These dogs are given
> away by Jordanian Commanders as 'trophies'. The kennels
> were/are in poor condition, Parvovirus is endemic. Puppies in their
> breeding program are dying. Previous PM provided a report to
> Leadership including pictures of the deplorable conditions. He was

working to have a computer program developed so the ATA
veterinarian could track the health and welfare of the EDCs. There
is no mechanism for accountability on the care of the EDC's gifted
to Jordan. Also, the DoS PM and previous PM traveled to Jordan
in March 2016. The DoS PM [this is a reference to Mr. Carter –
see Complaint, ¶ 18] saw first hand the conditions in Jordan and
did nothing to improve them.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 21 states, in full:

In early 2016, Mr. Carter, Mr. Roberts, and Dr. Iovino conducted a
telephone interview of Ms. Jennifer Houston for the position of
Licensed Veterinary Technician. Upon finishing the call, Mr.
Carter told Mr. Roberts and Dr. Iovino to "hire her." Dr. Iovino
suggested they postpone any hiring decision until after
interviewing another applicant who occasionally worked at CVC
as a "relief" licensed veterinary technician when Dr. Iovino was
especially in need of assistance. Mr. Carter insisted that an offer be
extended to Ms. Houston, and she was hired.

**Dr. Iovino's Response to MSA's Arguments on ¶ 21:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph simply alleges that Ms. Jennifer Houston was interviewed
and hired at the direction of Mr. Carter, and, as such, is background information.

In addition, this paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 22 states, in full:**

> When MSA hired Ms. Houston and until Dr. Iovino's unlawful termination, Ms. Houston was the only veterinary technician at CVC. As a licensed veterinary technician, the state of Virginia allowed her to administer medications and anesthesia, to monitor anesthesia, blood pressure, heart rate and oxygen levels during surgery, to perform radiology and ultrasounds procedures, to perform laboratory tests on blood, urine, and feces, to provide nursing care and treatment of hospitalized animals, and to perform dental prophylaxis. In fact, these tasks were routinely required of Ms. Houston while at the CVC.

**Dr. Iovino's Response to MSA's Arguments on ¶ 22:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply describes Ms. Jennifer Houston's duties and responsibilities, and, as such, is background information.

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 23 states, in full:**

> Dr. Iovino's responsibilities at the ATA hospital included performing frequent mission-critical surgeries, such as spay, neuter, gastropexy, and dental prophylaxis. The surgeries were

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 12*

mission-critical because they were an essential, early step in the
process of getting the canines prepared for scheduled training
courses with their prospective handlers. Dr. Iovino and the LVT
performed the surgeries together, with no other assistance, and the
trust and teamwork between the two was vital to the success of the
surgeries.

**Dr. Iovino's Response to MSA's Arguments on ¶ 23:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph simply describes Dr. Iovino's duties and responsibilities,
and as such, is background information.

In addition, this paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 24 states, in full:**

Prior to the Anti-terrorism Assistance [ATA] Program hospital
being licensed in April 2016, it was not busy enough to provide
ample work for Ms. Houston, and she was "loaned" to the
Worldwide Protective Services veterinary clinic at CVC. After the
ATA hospital was licensed in April 2016, Dr. Iovino required a
full-time LVT and asked on multiple occasions that Ms. Houston
be returned to the ATA hospital full-time, but CVC leadership,
including Mr. Carter insisted that Dr. Iovino should make do by
enlisting the Kennel Technicians for support. Dr. Iovino protested,
to no avail, that the Kennel Technicians were amply employed
with their own responsibilities and were unqualified to do all the
tasks of an LVT. MSA's withholding of a full-time LVT to assist

Dr. Iovino at the ATA hospital threatened the success of her
mission- critical work, including providing a full spectrum of
medical care for up to 30 canines.

**Dr. Iovino's Response to MSA's Arguments on ¶ 24:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph simply describes Dr. Iovino's need for a full-time LVT, and
as such, is background information.

In addition, this paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 26 states, in full:**

Beginning in about April 2016, Dr. Iovino's concerns with MSA
Security prompted her to privately document incidents of poor
treatment of staff, hiring of friends not based on merit, poor
treatment of dogs, and other incidents of misconduct. She
continued this practice until her termination in August 2017.

**Dr. Iovino's Response to MSA's Arguments on ¶ 26:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph simply describes Dr. Iovino's efforts to document the
problems and deficiencies she observed, and, as such, is contextual information.

Moreover, this information was part of the OIG's Administrative Record in this case,
specifically OIG Admin. Record, Exhibit B, at 000136, an OIG interview with Dr. Iovino on

Nov. 2, 2017 in which she discussed her documentation of her concerns about MSA's treatment of staff and canines and its favoritism in hiring decisions, *i.e.*, "OIG interview w /KI, 11/2/17: 'Dr. Iovino began documenting concerns she had with MSA in April 2016. She had multiple concerns with MSA including treatment of staff, hiring of friends, and treatment of the dogs.'"

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 27 states, in full:

> In mid-to-late 2016, having learned from Mr. Roberts that Ms. Read, the State Department Director of the Office of Acquisitions Management and ultimate State Department official with oversight authority for the MSA/CVC contract, had a substantial interest in the welfare of dogs generally, on the occasion of Ms. Read's annual visit to CVC, Dr. Iovino engaged Ms. Read in conversation about the welfare of the canines at CVC and in the foreign gifting program. This connection would later lead Dr. Iovino to disclose her concerns of canine mistreatment to Ms. Read (*infra* paragraph 81).

### Dr. Iovino's Response to MSA's Arguments on ¶ 27:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply describes Dr. Iovino's efforts to communicate to DoS official, Cathy J. Read the problems and concerns she observed at the CVC. Moreover, this information was part of the OIG's Administrative Record in this case, specifically OIG Admin.

Record, Exhibit B, at 000136, (OIG interview with Dr. Iovino 11/2/17): "Iovino complained about the living and working conditions of the dogs overseas as well as the veterinary technician to her chain of command. She then complained to Cathy Read, Director of the Department's Office of Acquisition Management."

In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 28 states, in full:**

> In August 2016, Mr. Roberts and Mr. Bower counseled Ms. Houston regarding certain performance issues. The written counseling form given to Ms. Houston indicated that Dr. Iovino was Ms. Houston's supervisor, evidence that Dr. Iovino was a supervisor in fact and that MSA treated her as a supervisor.

**Dr. Iovino's Response to MSA's Arguments on ¶ 28:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes counseling provided to LVT Jennifer Houston by Mr. Roberts and Mr. Bower. The Administrative Record does contain information about problems Dr. Iovino was having with Ms. Houston's performance. For example, the OIG Admin. Record, Exhibit B, at 000004 states that Dr. Iovino reported that

> "The LVT that was hired to assist me [Ms. Houston] … has made numerous medical mistakes(several life threatening), a is often 'no show' or late numerous times for work. She is being protected by Mike and Alan.

The Admin. Record, Exhibit B, at 000014 reports Dr. Iovino stating as follows to Dr. Mike

Ratcliff:

> Also during our meeting I brought up how Jenn was late again Wed
> Feb 22nd by 20 or so minutes (I did not mention the smell of alcohol
> on her breath). I asked what was being done about her chronic
> tardiness. He said he was tracking it. He said she gave a reason but
> he isn't sure he believes her.

In an interview dated November 2, 2017, Dr. Iovino told the OIG, in a reference
to Ms. Houston:

> Iovino also was concerned about MSA hiring friends to fill
> positions. Iovino was forced to hire a veterinary technician who
> arrived to work with alcohol on her breath and almost killed a dog
> out of negligence

This paragraph does not constitute, contain, or reference any "redundant, immaterial,
impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f)
discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 29 states, in full:

> In October 2016, Mr. Carter and Mr. Bower hired Dr. Mike
> Ratcliff to assume the position of Lead Veterinarian. Dr. Iovino
> was demoted to Lead ATA Veterinarian, and Dr. Ratcliff became
> her immediate supervisor. The hiring of Dr. Ratcliff and the
> demotion of Dr. Iovino was done without the prior knowledge of
> Mr. Roberts, the then MSA Program Manager at CVC and Dr.
> Iovino's then supervisor. Mr. Roberts was fearful that Dr. Iovino's
> demotion would prompt her resignation, but it did not.

### Dr. Iovino's Response to MSA's Arguments on ¶ 29:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower

reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes MSA's hiring of Dr. Mike Ratcliff as Lead Veterinarian in place of Dr. Iovino, who had effectively been the lead theretofore. The Administrative Record contains discussion of MSA's hiring of Dr. Ratcliff. The OIG Admin. Record at 000004, Exhibit B, indicates that Dr. Iovino told the OIG:

> My demotion was in Oct 2016, when Josh Carter, DoS PM, and Alan Bower, MSA Security HR/Facilities Mgr, hired Mike Ratcliff, DVM for my position without Zane's knowledge (he was my supervisor). I was demoted from Lead Veterinarian to Lead ATA (Anti-Terrorist Assistance) Veterinarian.

This paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 30 states, in full:

> At the October 7, 2016 meeting when Mr. Roberts informed Dr. Iovino of her impending demotion, she asked about her performance and Mr. Roberts indicated he was extremely happy with her performance, that the canines in her care were healthy, the kennel was running smoothly, and the hospital and clinic were in excellent order. Mr. Roberts further commended Dr. Iovino, stating that her recent handling of both a hyperthermic canine, " Layka 3824" and the tail amputation of "Rocco 4114" had been excellent.

### Dr. Iovino's Response to MSA's Arguments on ¶ 30:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes statements that an official of Defendant MSA made to Dr. Iovino that the company was pleased with, and had no complaints about, her performance of her job duties. The Administrative Record, Exhibit B, treats the same subject at

000014.

This paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 31 states, in full:**

> Prior to Dr. Ratcliff starting work at CVC in November 2016, Dr. Iovino had an email exchange with him to orient him to various projects, deadlines, and concerns. Dr. Iovino disclosed some of her concerns with the unreliability of Ms. Houston, the LVT, and the necessity of having a reliable LVT.

**Dr. Iovino's Response to MSA's Arguments on ¶ 31:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph describes information about communications between Dr. Iovino and Dr. Ratcliff.

This paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 32-A[2] states, in full:**

---

[2]    Dr. Iovino's Complaint mistakenly contains two paragraphs numbered "32" and two paragraphs numbered "33". For the purposes of this Appendix, they are labeled 32-A, 32-B, 33-A, and 33-B.

> On December 22, 2016, Dr. Iovino disclosed to Dr. Ratcliff that
> the previous day Ms. Houston had made an almost fatal error
> involving canine "Blake 4960." Dr. Ratcliff was in complete
> agreement with Dr. Iovino, stating via text, that the error could
> have resulted in the suffocation of Blake 4960.

**Dr. Iovino's Response to MSA's Arguments on ¶ 32-*A*:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph describes Ms. Jennifer Houston's negligence in regard to one of the canines operated on by Dr. Iovino, a subject as to which Dr. Iovino informed the OIG. See OIG's interview notes of Dr. Iovino, where she stated: "Iovino was forced to hire a veterinary technician who arrived to work with alcohol on her breath and almost killed a dog out of negligence." Admin. Record, Exhibit B, at 000136.

This paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 33-*A*[3] states, in full:**

> On Friday, December 30, 2016, Dr. Iovino disclosed to Dr. Ratcliff
> that her LVT, Ms. Houston, had left early that day and that the
> previous Friday, December 23, Ms. Houston had departed the
> facility with a great deal of work remaining incomplete. Dr.
> Iovino's concern was that Ms. Houston's leaving without finishing
> her necessary tasks represented a risk to the health and welfare of

---

[3]    Dr. Iovino's Complaint mistakenly contains two paragraphs numbered "32" and two paragraphs numbered "33". For the purposes of this Appendix, they are labeled 32-A, 32-B, 33-A, and 33-B.

the canines. Dr. Ratcliff perfunctorily dismissed Dr. Iovino's
concerns, stating "I don't argue over email."

### MSA's Arguments on ¶ 33-*A*:

MSA makes the same arguments regarding this paragraph as it does with respect to
Complaint ¶ 11, above.

### Dr. Iovino's Response to MSA's Arguments on ¶ 33-*A*

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph describes Ms. Jennifer Houston's negligence in regard to
one of the canines operated on by Dr. Iovino, a subject as to which Dr. Iovino informed the OIG.
See OIG's interview notes of Dr. Iovino, where she stated: "Iovino was forced to hire a
veterinary technician who arrived to work with alcohol on her breath and almost killed a dog out
of negligence." Admin. Record, Exhibit B, at 000136.

This paragraph does not constitute, contain, or reference any "redundant, immaterial,
impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f)
discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 32-*B*[4] states, in full:

On the morning of January 4, 2017, Dr. Iovino was called to a
meeting in the CVC conference room via an announcement over
the facility's public address system, an unusual practice that
ensured that all employees were aware of the identity of the
employee getting reprimanded. Once there, she was met by Mr.
Bower and Dr. Ratcliff. Dr. Ratcliff reprimanded Dr. Iovino for

---

[4]    Dr. Iovino's Complaint mistakenly contains two paragraphs numbered "32" and two
paragraphs numbered "33". For the purposes of this Appendix, they are labeled 32-A, 32-B, 33-
A, and 33-B.

Iovino having asked Ms. Houston to work late the previous week. Mr. Bower reprimanded Dr. Iovino for "working too hard." Dr. Iovino understood this to be a threat that she should stop making disclosures of mission threats, such as breakdowns with the foreign gifting program and the unreliable LVT. Dr. Iovino understood Mr. Bower's reprimand as threatening her with some adverse employment action if she continued to blow the whistle.

**Dr. Iovino's Response to MSA's Arguments on ¶ 32-*B*:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. Moreover, this information was part of the OIG's Administrative Record in this case, specifically OIG Admin. Record, Exhibit B, 000075: "On January 4, 2017, Dr. Ratcliff and Program Manager Alan Bower met with [Dr. Iovino] to discuss proper protocols for requiring staff to stay late and the negative attitude she often displayed at work. Charging Party did not appear responsive to the counseling." This is an excerpt from a letter by Defendant MSA's attorneys responding to Dr. Iovino's separate EEOC complaint and reflects MSA's "spin" regarding the meeting, however, it is part of the record before the OIG and DoS in this matter.

This paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 33-*B*[5] states, in full:**

---

[5] Dr. Iovino's Complaint mistakenly contains two paragraphs numbered "32" and two paragraphs numbered "33". For the purposes of this Appendix, they are labeled 32-A, 32-B, 33-A, and 33-B.

This threat (*supra* ¶ [32-*A*]) shocked Dr. Iovino and she made no reply. Her considerable professional experience allowed her to complete a full work day, including multiple mission-critical surgeries. However, as she got in her car at the end of the day, the gravity of the confrontation with the two men in the conference room hit Dr. Iovino and her hands began shaking and continued to shake during her 40-minute ride home. Notably, MSA Program Manager Mr. Roberts, Dr. Iovino's second-line supervisor, was conspicuously not present at this meeting, and in fact he was unaware of the reprimand at the time, and he was visibly upset when he learned of the reprimand.

**Dr. Iovino's Response to MSA's Arguments on ¶ 33-*B*:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. Moreover, this information was part of the OIG's Administrative Record in this case, specifically OIG Admin. Record, Exhibit B, 000075: "On January 4, 2017, Dr. Ratcliff and Program Manager Alan Bower met with [Dr. Iovino] to discuss proper protocols for requiring staff to stay late and the negative attitude she often displayed at work. [Dr. Iovino] did not appear responsive to the counseling." This is an excerpt from a letter by Defendant MSA's attorneys responding to Dr. Iovino's separate EEOC complaint and reflects MSA's "spin" regarding the meeting, however, it is part of the record before the OIG and DoS in this matter.

This paragraph of the Complaint goes on to describe Dr. Iovino's subjective response to this meeting.

This paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 34 states, in full**:

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 23*

On February 11, 2017, at the weekly veterinarians' meeting with
Dr. Iovino, Dr. Ratcliff, and Dr. Carolyn Olech, the WPS clinic
veterinarian who was responsible for reviewing medical records
and radiographs of EDC's coming the next week for validation, Dr.
Ratcliff informed the group that the State Department wanted
MSA to only authorize and conduct veterinary tests that could be
performed in-house and that out-sourcing of veterinary tests would
henceforth be prohibited. Both Dr. Iovino and Dr. Olech disclosed
to Dr. Ratcliff that the consequences of this policy would risk the
health and welfare of the dogs, and thus the agency's anti-terrorism
mission. They suggested, for example, that under this new policy, a
dog with an underlying heart murmur would not receive a
cardiology work up from a Board-certified cardiologist, which had
been past practice. Because none of the CVC veterinarians were
Board- certified, that type of specialized, diagnostic testing would
henceforth be unavailable, and dogs would possibly die in the field
from undiagnosed conditions. Dr. Ratcliff's response was to state,
incorrectly, that low-grade heart murmurs were not problematic.

**Dr. Iovino's Response to MSA's Arguments on ¶ 34:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This is simply a continuation of the narrative of events alleged by Dr.
Iovino.

This paragraph does not constitute, contain, or reference any "redundant, immaterial,
impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f)
discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 35 states, in full:**

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 24*

This new policy of prohibiting the out-sourcing of any veterinary
tests also had the effect of setting Dr. Iovino up for failure by
having her perform her duties and responsibilities regarding the
health and welfare of the canines but without the specialized
diagnostic tests and support that could only be provided by Board-
certified veterinarians. Because none of the CVC veterinarians
were Board-certified, that support and testing was only available
via out-sourcing. Dr. Iovino was uniquely situated to be adversely
impacted by this policy because she ran a full-service hospital that
performed surgeries. No other veterinarian at CVC was responsible
for that level of care.

**Dr. Iovino's Response to MSA's Arguments on ¶ 35:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This is simply a continuation of the narrative of events alleged by Dr.
Iovino, and describes Dr. Iovino's reaction to the new policy imposed by Defendant MSA.

This paragraph does not constitute, contain, or reference any "redundant, immaterial,
impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f)
discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 36 states, in full:**

At the February 11, 2017 weekly veterinarians' meeting, Dr.
Iovino and Dr. Olech also disclosed to Dr. Ratcliff that the pattern
of repeated absence and tardiness of Ms. Houston, the Licensed
Veterinary Technician, was threatening the mission of CVC
because Ms. Houston's participation was required for Dr. Iovino's
mission-critical procedures. Dr. Ratcliff repeated his oft-repeated
response, that he was "looking into Ms. Houston's behavior."

**Dr. Iovino's Response to MSA's Arguments on ¶ 36:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes problems that Dr. Iovino and others had with LVT Jennifer Houston. The Administrative Record does contain information about problems Dr. Iovino was having with Ms. Houston's performance. For example, the OIG Admin. Record, Exhibit B, at 000014 reports Dr. Iovino stating as follows to Dr. Mike Ratcliff:

> Also during our meeting I brought up how Jenn was late again Wed Feb 22nd by 20 or so minutes (I did not mention the smell of alcohol on her breath). I asked what was being done about her chronic tardiness. He said he was tracking it. He said she gave a reason but he isn't sure he believes her.

In an interview dated November 2, 2017, Dr. Iovino told the OIG, in a reference to Ms. Houston:

> Iovino also was concerned about MSA hiring friends to fill positions. Iovino was forced to hire a veterinary technician who arrived to work with alcohol on her breath and almost killed a dog out of negligence

This paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

--------------------------------------------------------------------

**Complaint ¶ 37 states, in full:**

> At the February 11, 2017 veterinarians' meeting, Dr. Iovino brought up her frustration, that unlike some other employees, MSA would not pay her overtime pay for the overtime hours she had worked. She further expressed her belief that Dr. Ratcliff's and Mr.

Bower's instruction to her to take unofficial "Paid Time Off" (hereafter "PTO") in lieu of overtime pay, was improper and a violation of the rules or regulations stipulating that the government pay MSA for the hours that the contract employees actually worked. Unofficial Paid Time Off was a practice where an employee would indicate on their timecard that they had worked and should thus be compensated, when in fact, they had not worked those hours. MSA would use that timecard to substantiate its billing records to the agency, having the agency pay MSA for those unofficial PTO hours, though the employee had not worked those hours.

### Dr. Iovino's Response to MSA's Arguments on ¶ 37:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes concerns that Dr. Iovino raised about Defendant MSA's overtime practices. The Administrative Record indicates that this was among the concerns Dr. Iovino raised during the administrative process. See Admin. Record, Exhibit B, at 000030 ("Time Keeping Practices associated with overtime."). The OIG Hotline Summary of Dr. Iovino's complaint to the OIG included:

Summary of 'waste, fraud and abuse':

1. Time sheet fraud, leaving work early yet claiming full day, OT encouraged(will receive OT one day, leave early the next but claim 8 hr day-cameras and key fobs can be checked for these inaccuracies)

2. taking PTO without claiming it

3. forcing employee(me) to take PTO and not clamining it instead of paying me for hours worked

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 27*

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

### **Complaint ¶ 38 states, in full:**

> From early 2016 to February 2017 and until MSA terminated her, Dr. Iovino's co- workers told her on numerous occasions that they had firsthand knowledge of Mr. Bower describing Dr. Iovino as a "trouble-maker" and a "pain in the ass," and expressing his animus for her. Dr. Iovino presumed that Mr. Bower's animus was a result of her multiple disclosures of issues and misconduct at CVC that evinced gross mismanagement, abuse of authority, and violation of law, rule, or regulation relating to the MSA contract.

### **Dr. Iovino's Response to MSA's Arguments on ¶ 38:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes concerns that Dr. Iovino raised about Defendant MSA's overtime practices. The Administrative Record reveals Defendant MSA's animus toward Dr. Iovino, specifically in the November 15, 2017 letter by MSA's counsel in the EEOC proceeding. Admin. Record, Exhibit B, at 000073 through 000083. This paragraph merely provides a more fulsome description of the reprisal she alleged to the OIG and the DoS.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 39 states, in full:**

In early 2017, Mr. Carter successfully pressured Mr. Roberts to step down as MSA Program Manager. Mr. Bower temporarily stepped in until February 2017, when Mr. Mike Hayes was permanently hired as the MSA Program Manager, and Mr. Bower became MSA Deputy Program Manager and Dr. Iovino's second line supervisor. Mr. Roberts remained at CVC as the titular Deputy Program Manager of ATA, with diminished responsibilities. In July 2017, MSA moved Mr. Roberts into an even more diminished role in research and development, resulting in his October 2017 resignation.

**Dr. Iovino's Response to MSA's Arguments on ¶ 39:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes organization changes at MSA, and, as such, provides background information.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

_____

**Complaint ¶ 41 states, in full:**

> On February 13, 2017, not long after Mr. Hayes displaced Mr. Roberts, Mr. Hayes had a routine introductory conversation with Dr. Iovino. Dr. Iovino disclosed to Mr. Hayes that she knew of Mr. Bower's animosity toward her and Mr. Bower's characterization of her as a "trouble-maker," but she added, that by all accounts she was a high-performing employee. Dr. Iovino also disclosed to Mr. Hayes the essential details of the January 4, 2017 ambush, where she had been called to the conference room via the public address system and improperly reprimanded by Mr. Bower and Dr. Ratcliff for having disclosed her concerns about the threat to the mission presented by the unreliability of Ms. Houston. As they wrapped up, Mr. Hayes hugged Dr. Iovino and apologized to her for that ugly episode, as well as the painful and stressful treatment she had received that day.

**Dr. Iovino's Response to MSA's Arguments on ¶ 41:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely provides a more fulsome description of the reprisal

she alleged to the OIG and the DoS.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 42 states, in full:**

At that February 13, 2017 meeting, Dr. Iovino also disclosed to Mr. Hayes her concerns that the absence and tardiness of Ms. Houston, the Licensed Veterinary Technician, was a threat to the mission of CVC because certain mission critical procedures required the assistance of Ms. Houston. Mr. Hayes stated that certain things would be changing on his watch, notably that "the days of hiring friends were over," and he assured Dr. Iovino that he would look into her concerns.

**Dr. Iovino's Response to MSA's Arguments on ¶ 42:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. As demonstrated above, Dr. Iovino's problems with, and complaints about, Ms. Houston and her threat to the CVC mission were amply discussed in the Administrative Record.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 43 states, in full**:

> At approximately 7:30 a.m. on February 24, 2017, Dr. Iovino's
> supervisor, Lead Veterinarian Dr. Ratcliff asked to speak with her,
> saying he had a problem he wanted help solving. He began by
> asking, "What can I do to make you come on full-time?" Dr.
> Iovino indicated agreement with his way of thinking and asked if
> her schedule could be three 11-12 hour days and one half-day. Dr.
> Ratcliff suggested a schedule of Monday, Wednesday, and Friday
> for nine hours per day, another day of 5-6 hours, and the balance
> made up with on-call time, working from home. Dr. Iovino said
> she would be comfortable with three 10-hour days, one half-day,
> and 4-5 hours working remotely, and Dr. Ratcliff agreed to this
> proposal. Dr. Iovino asked Dr. Ratcliff if he had to ask leadership
> for approval of this arrangement, and he said that was not
> necessary. He had been told to run his shop the way he sees fit.

**Dr. Iovino's Response to MSA's Arguments on ¶ 43:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State.

Moreover, this communication between Dr. Ratcliff and Dr. Iovino is amply described in
the Administrative Record, Exhibit B, at 000014.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

### **Complaint ¶ 44 states, in full:**

> During that February 24, 2017 conversation, Dr. Iovino asked Dr.
> Ratcliff if there had been any complaints about her performance,
> and he replied, "No. Quite the opposite, everyone loves you."

**Dr. Iovino's Response to MSA's Arguments on ¶ 44:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Moreover, this communication between Dr. Ratcliff and Dr. Iovino is amply described in the Administrative Record, Exhibit B, at 000014.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

### **Complaint ¶ 45 states, in full:**

> On March 22, 2017, Dr. Iovino and Dr. Ratcliff discussed the
> condition of "Frank 9656," a canine whose condition was
> deteriorating because of a painful hindleg that appeared to have a
> large area of devitalized tissue, necessitating amputation. Dr.
> Iovino recommended that a board-certified surgeon perform the
> amputation, because Drs. Iovino, Olech, and Ratcliff had never
> amputated a hindleg. Dr. Ratcliff insisted that Mr. Carter would
> not allow the dog to leave the site for the surgery, but provided no
> further rationale. Dr. Iovino contacted several travelling surgeons,
> but none were available in a timely manner. CVC leadership again
> set Dr. Iovino up for failure by forcing her to perform a complex

hindleg amputation under stressful circumstances. Dr. Iovino
successfully performed the amputation the following day.

**Dr. Iovino's Response to MSA's Arguments on ¶ 45:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph merely provides additional background information, and
continues the narrative of surrounding events.

Moreover, this information was part of the OIG's Administrative Record in this case,
specifically OIG Admin. Record, Exhibit B, at 000015 (MSA CEO M. O'Neill ltr of
thanks/praise to KI, 4/10.17: "On behalf of the entire MSA Security team, we wish to extend our
sincere thanks and appreciation for all of your above-and-beyond effort with Frank 9656. Frank
is happy, healthy, and well-traveled down the road to recovery in large part lo the care and
compassion which you provided. Frank suffered serious traumatic injuries to his right rear leg
and toes, along with severe damage to the tip of his tail during the morning of March I 6, 20 I 7.
You selflessly rushed in on your scheduled day off to provide emergent care and surgery. You
stepped up and did an incredible job leading the team that provided the immediate surgical care.
… While performing the surgery you displayed an unparalleled amount of surgical skill and
poise, successfully amputating the leg without complications.

This Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 46 states, in full:**

On April 1, 2017, Dr. Iovino disclosed to Dr. Ratcliff her concern
that MSA would not pay her overtime for the many overtime hours
she had spent caring for Frank 9656. Sometime later, Dr. Ratcliff
told Dr. Iovino that Mr. Bower's instructions were for her to take
unofficial PTO. Dr. Iovino reiterated her disclosure to Dr. Ratcliff

that she understood that practice to be improper because it
necessarily resulted in MSA billing the government for contractor
hours based on falsified time-keeping records.

**Dr. Iovino's Response to MSA's Arguments on ¶ 46:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph merely describes concerns that Dr. Iovino raised about
Defendant MSA's overtime practices. The Administrative Record indicates that this was among
the concerns Dr. Iovino raised during the administrative process. See Admin. Record, Exhibit B,
at 000030 ("Time Keeping Practices associated with overtime."). The OIG Hotline Summary of Dr.
Iovino's complaint to the OIG included:

Summary of 'waste, fraud and abuse':

1. Time sheet fraud, leaving work early yet claiming full day, OT

Encouraged (will receive OT one day, leave early the next but

claim 8 hr day-cameras and key fobs can be checked for these

inaccuracies)

2. taking PTO without claiming it

3. forcing employee(me) to take PTO and not claiming it instead

of paying me for hours worked

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

**Complaint ¶ 47 states, in full:**

> Beginning in early 2017, Dr. Iovino also disclosed to MSA CVC
> Program Manager Mr. Hayes, Deputy MSA CVC Program
> Manager Mr. Bower, and MSA CVC Deputy Program Manager
> Mr. James Olds her concerns of false or fraudulent government
> billing relating to the failure of MSA to pay her overtime and
> MSA's improper use of unofficial Paid Time Off.

**Dr. Iovino's Response to MSA's Arguments on ¶ 47:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely describes concerns that Dr. Iovino raised about Defendant MSA's overtime practices. The Administrative Record indicates that this was among the concerns Dr. Iovino raised during the administrative process. See Admin. Record, Exhibit B, at 000030 ("Time Keeping Practices associated with overtime."). The OIG Hotline Summary of Dr. Iovino's complaint to the OIG included:

> Summary of 'waste, fraud and abuse':
>
> 1. Time sheet fraud, leaving work early yet claiming full day, OT
> encouraged(will recieve OT one day, leave early the next but
> claim 8 hr day-cameras and key fobs can be checked for these
> inaccuracies)
>
> 2. taking PTO without claiming it
>
> 3. forcing employee(me) to take PTO and not clamining it instead
> of paying me for hours worked

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 36*

deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 48 states, in full:

> At the weekly veterinarians' meeting on April 15, 2017 with Drs.
> Ratcliff and Olech, Dr. Iovino again disclosed that she had not
> received overtime pay for the overtime hours that she had worked.
> As discussed, *supra* paragraph 46, MSA insisted on unofficial PTO
> rather than pay overtime and Dr. Iovino voiced her objections to
> this practice because it meant MSA would be fraudulently billing
> the government for contractor hours that had not been worked.

### Dr. Iovino's Response to MSA's Arguments on ¶ 48:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph merely describes concerns that Dr. Iovino raised about
Defendant MSA's overtime practices. The Administrative Record indicates that this was among
the concerns Dr. Iovino raised during the administrative process. See Admin. Record, Exhibit B,
at 000030 ("Time Keeping Practices associated with overtime."). The OIG Hotline Summary of Dr.
Iovino's complaint to the OIG included:

> Summary of 'waste, fraud and abuse':
>
>    1. Time sheet fraud, leaving work early yet claiming full day, OT
>
> encouraged(will recieve OT one day, leave early the next but
>
> claim 8 hr day-cameras and key fobs can be checked for these
>
> inaccuracies)
>
>    2. taking PTO without claiming it
>
>    3. forcing employee(me) to take PTO and not claiming it instead
>
> of paying me for hours worked

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule

12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

### **Complaint ¶ 49 states, in full:**

On April 19, 2017, Defendant's Chief Executive Officer, Mr. Michael O'Neil, described Dr. Iovino as an excellent employee and gave her a written commendation for her work.

**Dr. Iovino's Response to MSA's Arguments on ¶ 49:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely provides additional background information, and continues the narrative of surrounding events.

Moreover, this information was part of the OIG's Administrative Record in this case, specifically OIG Admin. Record, Exhibit B, at 000015 (MSA CEO M. O'Neill ltr of thanks/praise to KI, 4/10.17:

On behalf of the entire MSA Security team, we wish to extend our sincere thanks and appreciation for all of your above and-beyond effort with Frank 9656. Frank is happy, healthy, and well-traveled down the road to recovery in large part lo the care and compassion which you provided. Frank suffered serious traumatic injuries to his right rear leg and toes, along with severe damage to the tip of his tail during the morning of March I 6, 20 I 7. You selflessly rushed in on your scheduled day off to provide emergent care and surgery. You stepped up and did an incredible job leading the team that provided the immediate surgical care. … While performing the surgery you displayed an unparalleled amount of surgical skill and poise, successfully amputating the leg without complications.

This Complaint paragraph does not constitute, contain, or reference any "redundant,

immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 50 states, in full:**

> On May 8, 2017, Dr. Ratcliff excluded Dr. Iovino from a recurring meeting with a web-application developer regarding a planned medical records system upgrade. Formerly, Dr. Iovino had been invited to those meetings as a valued and active participant.

**Dr. Iovino's Response to MSA's Arguments on ¶ 50:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely provides a more fulsome description of the reprisal she alleged to the OIG and the DoS.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 51 states, in full:**

> On May 11, 2017, Dr. Iovino offered to attend the bimonthly CVC leadership meetings because of the relevance of those meetings to the ATA mission. Dr. Ratcliff denied her request, yet he asked Kennel Technician, Mr. Brett Harshberger, to attend.

**Dr. Iovino's Response to MSA's Arguments on ¶ 51:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal

that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely provides a more fulsome description of the reprisal she alleged to the OIG and the DoS.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 52 states, in full:**

In May 2017, the State Department agreed to MSA's earlier request to convert the ATA hospital veterinarian position to a full-time position, leaving the responsibilities and the position description of the position unchanged and only increasing the hours.

**Dr. Iovino's Response to MSA's Arguments on ¶ 52:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely provides a more fulsome description of the reprisal she alleged to the OIG and the DoS.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

**Complaint ¶ 53 states, in full:**

In May 2017, Dr. Ratcliff promoted Kennel Technician, Mr. Brett
Harshberger into the newly-created position of Lead Kennel
Technician, taking the responsibility for the kennel and for
supervising the other Kennel Technicians away from Dr. Iovino
and giving those responsibilities to Mr. Harshberger. MSA took
these responsibilities away from Dr. Iovino without prior
consultation with her. When she protested to Dr. Ratcliff, he stated
that it had been done so Dr. Iovino could focus on the ATA
hospital. Dr. Iovino asked Dr. Ratcliff if he, or any others had any
concerns with her performance, and he assured her there were
none. Dr. Iovino suggested that she should retain oversight of the
Kennel Technicians because they worked directly with the ATA
hospital, but her suggestion was not acted upon. Also, Dr. Iovino
explained to Dr. Ratcliff that what she most needed to maintain the
exceptional performance of the ATA hospital was a reliable
Licensed Veterinary Technician.

**Dr. Iovino's Response to MSA's Arguments on ¶ 53:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph merely provides a more fulsome description of the reprisal
she alleged to the OIG and the DoS.

Moreover, this information was part of the OIG's Administrative Record in this case,
specifically OIG Admin. Record, Exhibit B, at 000004: "One of my responsibilities was
oversight of kennel and the kennel technicians. In May 2017, without my knowledge, Mike
promoted a KT, Brett Harshberger, to lead KT and removed oversight of kennel and KT's from
my supervisory role. Per Mike, this was done to allow me to focus on the ATA Hospital.
However, the main issue was his lack of support of the needs to run a full service hospital. The
LVT that was hired to assist me who has made numerous medical mistakes (several life
threatening), a is often 'no show' or late numerous times for work. She is being protected by

Mike and Alan.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 54 states, in full:**

> On June 7, 2017, Defendant's Vice President for Business Development, Mr. Gerald Goss, praised Dr. Iovino's dedication and leadership to the company, and gave her a hand-written letter of appreciation.

**Dr. Iovino's Response to MSA's Arguments on ¶ 54:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph merely provides background information and context for Dr. Iovino's claims, as she exhausted them before the OIG and DoS.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 55 states, in full:**

> On June 14, 2017, Dr. Iovino disclosed to Drs. Ratcliff and Olech that Licensed Veterinary Technician Ms. Houston, had called in sick, impacting Dr. Iovino's ability to perform mission-critical surgeries that day. Because Dr. Ratcliff was not on-site that day,

Dr. Iovino also disclosed to Mr. Hayes the threat to the CVC
mission because of the absences and tardiness of Ms. Houston,
especially on days when mission-critical veterinary work was
scheduled. Mr. Hayes only indicated that Dr. Ratcliff was handling
the issues with Ms. Houston.

**Dr. Iovino's Response to MSA's Arguments on ¶ 55:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. Defendant MSA's similar arguments above regarding Ms. Houston are
addressed by Dr. Iovino in her responses above.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 56 states, in full:**

On June 19, 2017, Dr. Iovino disclosed to Mr. Bower and Dr.
Olech (acting as Lead Veterinarian because Dr. Ratcliff was not
on-site that day) that Ms. Houston had arrived at work with the
smell of alcohol on her breath, and that Ms. Houston's likely
intoxication was a threat to the success of a mission-critical
surgery scheduled for that day. Mr. Bower refused to take control
of the situation, forcing Dr. Iovino to perform the surgery with Ms.
Houston assisting, despite her potential impairment. Again, MSA
leadership was setting Dr. Iovino for failure by forcing her to
perform a mission-critical surgery with a Licensed Veterinary
Technician hungover at best, and potentially inebriated.

**Dr. Iovino's Response to MSA's Arguments on ¶ 56:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. Defendant MSA's similar arguments above regarding Ms. Houston are addressed by Dr. Iovino in her responses above.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 57 states, in full:**

> In June 2017, Dr. Iovino disclosed to Dr. Ratcliff that canine handlers from the Kingdom of Jordan had described to her their concerns with the treatment of canines gifted to Jordan, specifically that the dogs were being made to work in the extreme, 140-degree heat, to the point that the canines became overheated. The Jordanian handlers' concerns for the health and welfare of the dogs included their fears that these actions would result in canine deaths, and that their concerns were ignored by their Jordanian supervisors. These revelations made Dr. Iovino sufficiently concerned for the canines' welfare that she asked the Jordanians whether any of the dogs had died, and they replied "no." When Dr. Iovino made this disclosure to Dr. Ratcliff concerning the dogs' welfare and the consequent threat to the anti-terrorism mission, he told her to, "take the emotion out of your job."

**Dr. Iovino's Response to MSA's Arguments on ¶ 57:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower

reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph merely describes the manner in which Dr. Iovino became
aware that canines were being mistreated by Jordan.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

### Complaint ¶ 58 states, in full:

> In June 2017, a mentor to the Kingdom of Jordan, under contract to
> Jordan by the Department of State confided to Dr. Iovino that his
> supervisor had instructed him to alter his report on the care of
> Explosive Detection Canines and remove photographs of a
> severely emaciated dog. That report was later presented to the
> agency. Soon afterward, Dr. Iovino disclosed this incident to then
> Deputy Program Manager of ATA, Mr. Roberts.

### Dr. Iovino's Response to MSA's Arguments on ¶ 58:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State. This paragraph merely describes the manner in which Dr. Iovino became
aware that canines were being mistreated by Jordan.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 67 states, in full:**

> Dating from late 2015 until the time of her July 6, 2017 OIG
> disclosure, on numerous occasions Dr. Iovino shared concerns with
> MSA colleagues Mr. Roberts, Mr. Mark Potter, and Mr. Garrett
> Lancaster that became the subject matter of her July 2017 OIG
> disclosure. Although not couched strictly in these terms, all three
> were generally in agreement with Dr. Iovino that her concerns
> were evidence of gross mismanagement of the MSA contract, a
> gross waste of federal funds, an abuse of authority relating to the
> MSA contract, or a violation of law, rule, or regulation related to
> the MSA contract.

**Dr. Iovino's Response to MSA's Arguments on ¶ 67:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 68 states, in full:**

> On July 6, 2017, Mr. Hayes instructed Mr. Roberts to leave the
> premises for ten days. In the months prior, Mr. Roberts had raised
> many of the same concerns of gross mismanagement of the MSA
> contract, abuse of authority relating to the MSA contract, and a
> violation of law, rule, or regulation relating to the MSA contract,
> that Dr. Iovino had been raising to MSA and CVC leadership.

**Dr. Iovino's Response to MSA's Arguments on ¶ 68:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 122 states, in full:**

> **Mr. Hayes' actual knowledge.** Prior to MSA's decision to abolish Dr. Iovino's part time position, or to let it expire, and force her to apply for the full-time veterinarian position in July 2017, Dr. Iovino made two protected disclosures to the MSA Program Manager, Mr. Hayes, one in February 2017, another in June 2017. Both concerned the threats to the health and welfare of CVC canines and the anti-terrorism mission, because of the unreliability of Licensed Veterinary Technician Ms. Houston.

**Dr. Iovino's Response to MSA's Arguments on ¶ 122:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should

deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 123 states, in full:

> Dr. Ratcliff's actual knowledge. Prior to MSA's decision to
> abolish her part time position, Dr. Iovino made multiple protected
> disclosures to her supervisor, Lead Veterinarian Dr. Ratcliff, with
> the last one being in June 2017 relating to threats to the Jordanian
> canines and the anti-terrorism mission. Dr. Ratcliff was the
> selecting official who failed to select Dr. Iovino for her own
> position, albeit with seven extra hours per week.

**Dr. Iovino's Response to MSA's Arguments on ¶ 123:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 124 states, in full:

> Mr. Bower's actual knowledge. Also in June 2017, Dr. Iovino
> made a protected disclosure to MSA Deputy Program Manager Mr.
> Bower related to the threats to the health and welfare of CVC
> canines and the anti-terrorism mission because of the likely
> intoxication of the Licensed Veterinary Technician.

**Dr. Iovino's Response to MSA's Arguments on ¶ 124:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 48*

that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

───────────────────────────────────────────────

### Complaint ¶ 125 states, in full:

> Dr. Olech's actual knowledge. In June 2017, Dr. Iovino twice made protected disclosures to Dr. Olech when Dr. Olech was acting as the Lead Veterinarian because of Dr. Ratcliff's absence. Both of Dr. Iovino's disclosures to acting Lead Veterinarian Dr. Olech related to the threats to the health and welfare of CVC canines and the anti-terrorism mission because of the absences or tardiness of Licensed Veterinary Technician Ms. Houston, or because of her likely intoxication.

### Dr. Iovino's Response to MSA's Arguments on ¶ 125:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

**Complaint ¶ 126 states, in full:**

> Constructive knowledge. Beginning in January and February 2017,
> respectively, Mr. Bower and Mr. Hayes had constructive
> knowledge of Dr. Iovino's disclosures; that is, knowledge that one
> using reasonable care or diligence should have, and is thus
> attributed by law to that person.

**Dr. Iovino's Response to MSA's Arguments on ¶ 126:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

**Complaint ¶ 127 states, in full:**

> For example, on January 4, 2017, Mr. Bower participated in the
> reprimand of Dr. Iovino for her disclosures of threats to the CVC
> mission from Ms. Houston's unreliability and lack of
> dependability, intensified by her critical role to ensure the health,
> welfare, and mission- readiness of the EDCs. After that episode,
> Mr. Bower, using the reasonable care and diligence required of his
> Deputy PM position should have investigated this alleged
> misconduct. Using reasonable care and diligence, he also should
> have learned of Dr. Iovino's similar disclosures to Dr. Ratcliff, Dr.
> Olech, and Mr. Hayes in February and June 2017.

**Dr. Iovino's Response to MSA's Arguments on ¶ 127:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

———————————————————————————————————————————

**Complaint ¶ 128 states, in full:**

> Mr. Bower's constructive knowledge of the February and June 2017 disclosures of the unreliable LVT threatening the mission. Given his role as Deputy PM, his prior knowledge of the threat to the mission presented by the unreliable LVT, his daily meetings with Dr. Ratcliff, and using reasonable care and diligence, Mr. Bower should have had knowledge of Dr. Iovino's February 11, 2017 disclosure to Dr. Ratcliff of the threat to the mission because of the continuing absence and tardiness of Ms. Houston, and Dr. Iovino's June 14, 2017 disclosure to Mr. Hayes, Dr. Ratcliff, and Dr. Olech of mission-critical surgeries jeopardized because of the absence or tardiness of Ms. Houston. Mr. Bower, using the reasonable care and diligence required of his Deputy PM position, should have discovered and investigated this misconduct, which should have led to his knowledge of all Dr. Iovino's similar disclosures prior to July 2017.

**Dr. Iovino's Response to MSA's Arguments on ¶ 128:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower

reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 129 states, in full:

> The presumptive actual knowledge of Mr. Bower. In addition, Mr. Bower's actual knowledge of these disclosures (*supra* ¶ 128) is supported by Dr. Ratcliff's duty, using the reasonable care and diligence required of his managerial position, to have informed Mr. Bower of these threats to the accomplishment of the CVC mission. Mr. Bower's actual knowledge of Dr. Iovino's June 14, 2017 disclosure is further supported by the supposition that his supervisor, the MSA Program Manager Mr. Hayes and a direct recipient of that disclosure, using reasonable care and diligence should have informed his deputy, Mr. Bower, giving Mr. Bower actual knowledge. An opportunity for further investigation and discovery is expected to lead to evidence of his actual knowledge.

### Dr. Iovino's Response to MSA's Arguments on ¶ 129:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should

deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 130 states, in full:**

> Mr. Hayes' constructive knowledge of Dr. Iovino's disclosure of
> the LVT's inebriation episode. Mr. Hayes had actual knowledge of
> Dr. Iovino's February and June 2017 protected disclosures (*supra*
> ¶ 122). In addition, Mr. Hayes had constructive knowledge of Dr.
> Iovino's June 19, 2017 disclosure of the mission-critical surgery
> that was jeopardized because of the suspected inebriation of Ms.
> Houston. Using the reasonable care and diligence required of him
> in his role as MSA Program Manager, Mr. Hayes had an on-going
> duty to discover and investigate misconduct of this type, leading to
> his constructive knowledge of Dr. Iovino's June 19, 2017
> disclosure. In addition, there is reason to presume that Mr. Hayes
> had actual knowledge of Dr. Iovino's June 19, 2017 disclosure of
> Ms. Houston's likely intoxication, based on the supposition that his
> Deputy PM, Mr. Bower, a direct recipient of this disclosure, using
> the reasonable care and diligence of his position, should have
> informed Mr. Hayes, giving Mr. Hayes actual knowledge of this
> disclosure. An opportunity for further investigation and discovery
> is expected to lead to evidence of his actual knowledge.

**Dr. Iovino's Response to MSA's Arguments on ¶ 130:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 53*

**Complaint ¶ 131 states, in full:**

<u>Mr. Hayes' and Mr. Bower's constructive knowledge of Dr. Iovino's June 2017 disclosure of the threat to the mission posed by the poor treatment of the dogs in Jordan</u>. From late 2015 through June 2017, Dr. Iovino, along with Mr. Roberts made multiple disclosures to CVC Program Manager Mr. Carter, and MSA officials including Mr. Bower and Dr. Ratcliff of the threats to the anti-terrorism mission caused be the lack of Standard Operation Procedures for EDCs gifted to foreign countries, the breakdowns in care for these dogs due to inadequate veterinary care, and the lack of accountability for these dogs. For example, in June 2017 Dr. Iovino disclosed to Dr. Ratcliff her concern that the CVC anti-terrorism mission was threatened by the poor treatment of the canines in the care of the Kingdom of Jordan and the lack of any CVC or MSA oversight or accountability over the foreign gifting program. Mr. Hayes and Mr. Bower, using the reasonable care and diligence required of their positions, had a duty to investigate and discover this threat to the CVC mission, especially because it was a concern that had been regularly aired by Dr. Iovino and Mr. Roberts for over a year. Therefore, both Mr. Hayes and Mr. Bower had constructive knowledge of Dr. Iovino's June 2017 disclosure of the mistreatment of canines in Jordan. In addition, Mr. Hayes' and Mr. Bower's presumed actual knowledge of this disclosure is supported by the supposition that Dr. Ratcliff, using the reasonable care and diligence required of his managerial position, should have reported this threat to the CVC mission up his chain of command to Mr. Bower and Mr. Hayes, giving them actual knowledge. An opportunity for further investigation and discovery is expected to lead to evidence of their actual knowledge.

**Dr. Iovino's Response to MSA's Arguments on ¶ 131:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal

that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 132 states, in full:**

> Mr. Hayes' and Mr. Bower's constructive knowledge of Dr. Iovino's disclosures of MSA practices that threatened canine health and the CVC mission. Lead Veterinarian Dr. Ratcliff was the direct recipient of Dr. Iovino's February 2017 disclosure of the threat to the CVC anti-terrorism mission because of the policy that all veterinary tests were to be kept in- house. In March 2017, Dr. Iovino disclosed directly to Dr. Ratcliff that his refusal to allow Frank 9565 to be taken off-site to have a board-certified surgeon perform the hindleg amputation would substantially increase the risk to the health and welfare of the dog. Both Mr. Hayes and Mr. Bower, using the reasonable care and diligence required of their managerial positions, should have known of these disclosures and so had constructive knowledge of them. The presumption of their actual knowledge is supported by Dr. Ratcliff's duty, using reasonable care and diligence, to report the potential threat to his immediate supervisors. An opportunity for further investigation and discovery is expected to lead to evidence of their actual knowledge.

**Dr. Iovino's Response to MSA's Arguments on ¶ 132:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this

paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 133 states, in full**:

> In addition, the substance of Dr. Iovino's disclosures was routinely described and discussed with CVC Program Manager Mr. Carter, either by Dr. Iovino herself, or by Mr. Roberts with Mr. Carter's full awareness that the sources of the disclosures were both Dr. Iovino and Mr. Roberts, acting in concert. *See supra* ¶¶ 18-20. Mr. Carter was neither a State Department employee or an MSA Security employee, but as a State Department contractor and the most senior agency representative at the CVC, he communicated regularly with the on-site MSA management team of Mr. Hayes and Mr. Bower. After a reasonable opportunity for further investigation and discovery, there likely will be evidence that Dr. Iovino's disclosures to Mr. Carter were passed along to the MSA management team.

**Dr. Iovino's Response to MSA's Arguments on ¶ 133:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 134 states, in full:

> Dr. Iovino also made protected disclosures to CVC Deputy PM
> Mr. Olds, some in the presence of MSA officials. *See supra* ¶¶ 47,
> 110. Upon information and belief, all of Dr. Iovino's disclosures to
> Mr. Olds, were shared with MSA officials.

### Dr. Iovino's Response to MSA's Arguments on ¶ 134:

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

### Complaint ¶ 135 states, in full:

> Mr. Carter's presumptive actual knowledge of Dr. Iovino's OIG
> complaint. On July 17, 2017, Mr. Carter was heard shouting in the
> hallways, "whoever had filed the OIG complaint would be fired."
> Assuming Mr. Carter did not know the identity of the person who
> filed the July 6, 2017 OIG Hotline complaint and given his
> demonstrated level of animosity, Mr. Carter is presumed to have
> come up with a short list of potential whistleblowers to be fired
> and Dr. Iovino is presumed to have been on that list because of her
> multiple disclosures of concerns for the health and welfare of the
> EDCs in the foreign gifting program, and the consequent threat to

the CVC anti-terrorism mission, that she had made to MSA
officials and Mr. Carter, beginning in 2015. An opportunity for
further investigation and discovery is expected to lead to evidence
of his actual knowledge.

**Dr. Iovino's Response to MSA's Arguments on ¶ 135:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 136 states, in full:**

In addition, the OIG Hotline complaint that Mr. Carter had such a
visceral reaction to (*supra* ¶ 135) included language that reiterated
the concerns Dr. Iovino had voiced for over one-and-a-half years
and it mimicked the language she had used, "'gifting' canines to
Foreign countries without proper follow through to assure they are
cared for ……There are reports canines are dying due to medical
conditions/lack of veterinary care/poor working conditions.
Canines need to be healthy to performed their job duty (search for
explosives)." *Supra* ¶ 59. The similarity between the specifics in
the OIG Hotline complaint and Dr. Iovino's multiple prior
disclosures of the same threats to the CVC mission, supports the
assertion that Mr. Carter would have had Dr. Iovino on his short
list of whistleblowing suspects to be fired.

**Dr. Iovino's Response to MSA's Arguments on ¶ 136:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 137 states, in full:**

> On information and belief, Mr. Carter had a close personal
> relationship with MSA Deputy PM Mr. Bower, a relationship
> established because of their shared experience as former Roanoke,
> Virginia police officers.

**Dr. Iovino's Response to MSA's Arguments on ¶ 137:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 138 states, in full:**

  The grave threat to the CVC of a wide-ranging misconduct
investigation conducted by the OIG and the close relationship
between Mr. Carter and Mr. Bower support the inference that they
would have shared information about the nature of the OIG
complaint and the suspected identity of the whistleblower. If this
exchange did in fact occur, it lends further support to the assertion
that Mr. Bower had actual knowledge of Dr. Iovino's OIG Hotline
complaint on or about July 17, 2017, and that Mr. Bower would
have included Dr. Iovino on his short list of suspected
whistleblowers. An opportunity for further investigation and
discovery is expected to lead to evidence of his actual knowledge.

  **Dr. Iovino's Response to MSA's Arguments on ¶ 138:**

  Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State.

  Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

  For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

_____

**Complaint ¶ 164 states, in full:**

  MSA's tactic of summoning Dr. Iovino to a dressing down in the
conference room via the facility public address system on January
4, 2017, thus ensuring that all employees would know what
reprisal was in store if they blew the whistle, was circumstantial
evidence of MSA's efforts to chill the speech of other employees

and further evidence of a motive to retaliate. It is notable that MSA
orchestrated this near-public reprimand behind the back of Dr.
Iovino's then supervisor, Mr. Roberts, further evidence of Mr.
Bower's and Dr. Ratcliff's animus to Dr. Iovino. These indicia of
animus further support a contributing factor finding.

**Dr. Iovino's Response to MSA's Arguments on ¶ 164:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant,
immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule
12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should
deny Defendant's motion, and rule that this paragraph remains in the Complaint.

───────────────────────────────────────────────────────────

**Complaint ¶ 165 states, in full:**

MSA's efforts to set Dr. Iovino up for failure, by not allowing the
Licensed Veterinary Technician's return to the ATA hospital full-
time to support Dr. Iovino's mission- critical work, by disallowing
the outsourcing of diagnostic tests, and by refusing to allow Frank
9656 to be taken off-site for a challenging hindleg amputation,
were also circumstantial evidence of MSA's and Dr. Ratcliff's
motive to retaliate and support a contributing factor finding.

**Dr. Iovino's Response to MSA's Arguments on ¶ 165:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal
that were not made to, and investigated by the OIG, and decided by DoS. Nor does this
paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower
reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the
Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 166 states, in full:**

MSA's removal of duties from Dr. Iovino, such as her supervision of the kennel and the Kennel Technicians, MSA's exclusion of Dr. Iovino from regular meetings she had formerly attended, and Mr. Bower's instructions to front office staff to stop speaking with Dr. Iovino were an effort to diminish her responsibilities and circumstantial evidence of motive to retaliate and support a contributing factor finding.

**Dr. Iovino's Response to MSA's Arguments on ¶ 166:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

---

**Complaint ¶ 167 states, in full:**

MSA's retaliatory treatment of Mr. Roberts is also circumstantial evidence of motive to retaliate against Dr. Iovino. Mr. Roberts and

Dr. Iovino had shared many of the same concerns and disclosures with CVC leadership. Mr. Carter then pressured Mr. Roberts to step down in December 2016. MSA then suspended Mr. Roberts for ten days in July 2017, and sidelined him into a research and development position that same month. MSA's demonstrated facility with reprisal and its institutional willingness to exercise it are circumstantial evidence of a motive to retaliate against Dr. Iovino and support a contributing factor finding.

**Dr. Iovino's Response to MSA's Arguments on ¶ 167:**

Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State.

Thus, this Complaint paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

For these reasons, and those stated in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint.

Respectfully submitted,
/s/ Jack Kolar
John A. Kolar
Government Accountability Project
1612 K Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 966-3311
Jackk@whistleblower.org
(Admitted *pro hac vice*)

/s/ Nate L. Adams, III
VSB No. 20707
Nate L. Adams, III, P.C.
ADAMS AND ASSOCIATES
11 S. Cameron Street
Winchester, VA 22601
(540) 667-1330
nadams@nadamslaw.com

*Appendix to Dr. Iovino's Brief in Opposition to MSA's Motion — page 63*

Of Counsel:
Ned Miltenberg
GAP Counsel for Constitutional and Appellate
Litigation
5410 Mohican Road -- Suite 200
Bethesda, MD   20816-2162