# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | |
|---|---|
| KAREN IOVINO, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:21-CV-00064-TTC |
| ) | |
| v. ) | DEFENDANT'S REPLY |
| ) | TO PLAINTIFF'S OPPOSITION |
| MICHAEL STAPLETON ASSOCIATES, LTD., ) | TO DEFENDANT'S MOTION |
| d/b/a MSA SECURITY, INC. ) | TO DISMISS |
| ) | |
| Defendant. ) | |

Respectfully submitted,

February 4, 2022

*/s/ Ryan C. Berry*

_____
Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

    A. The NDAA and 41 U.S.C. § 4712 ................................................................2

    B. Prior to Congress Creating 41 U.S.C. § 4712, Iovino Had No Cause of Action ...........2

III. ARGUMENT .........................................................................................................3

    A. Contrary to Iovino's Argument, A Statute Need Not Specifically Include An Issue Exhaustion Requirement For A Statute To Be Interpreted To Include An Issue Exhaustion Requirement .....................................3

    B. Regardless of Whether 41 U.S.C. § 4712 Expressly Precludes This Court From Addressing Unexhausted Issues, A Court-imposed Exhaustion Requirement Is Appropriate Here ...........................................6

    C. Iovino Failed To Raise The New Issues Before The OIG .....................................10

        1. Iovino Defends The Inclusion of 38 of the 69 Challenged Paragraphs With Nothing More Than Boilerplate Language ..........................11

        2. Iovino Defends The Inclusion of 10 of the 69 Challenged Paragraphs With Arguments That Do Not Correspond To The Cited Administrative Record ..................................................................12

        3. Iovino's Arguments Regarding the Remaining 21 of the 69 Challenged Paragraphs Identifies Passages In The Administrative Record The Could Arguably Support Iovino's Position. Accordingly, MSA Withdraws Its Motion as To Those Paragraphs ...............13

    D. The Court Should Not "Excuse Or Overlook" Iovino's Admitted Noncompliance With The Issue Exhaustion Requirement ...................................13

IV. CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page**

*Agha v. Holder,*
    743 F.3d 609 (8th Cir 2014) ....................................................................................3, 4, 5

*American Genealogies, Inc. v. United States Postal Service,*
    717 F. Supp. 895 (D.D.C. 1989) ....................................................................................6

*C Street Tenants Ass'n v. Dist. Of Columbia Rental Housing Comm'n,*
    522 A.2d 524 (D.C. 1989) ........................................................................................9, 10

*Carr v. Saul,*
    141 S. Ct. 1352 (2021)....................................................................................................6

*Dano Res. Recovery, Inc. v. Dist. Of Columbia,*
    566 A.2d 483 (D.C. Cir. 1989) ......................................................................................9

*Delta Found., Inc. v. U.S.,*
    303 F.3d 551 (5th Cir. 2002) .......................................................................................8, 9

Forshey v Principi,
    284 F.3d 1335 (Fed Cir.)(*en bane*), *cert. denied* 537 U.S. 823 (2002)................................8

*Frango v. Gonzalez,*
    437 F.3d 726 (8th Cir. 2006) ..........................................................................................4

*Hormel v. Helvering,*
    312 U.S. 552 (1941)....................................................................................................7, 9

*Jackson v. Swift Eckrich,*
    53 F.3d 1452 (8th Cir. 1995) ..........................................................................................5

Kleissler v. U.S. Forest Services,
    183 F.3d 196 (3rd Cir. 1999) ........................................................................................14

*McKart v. United States,*
    395 U.S. 185 (1969)........................................................................................................5

*Mills v. Apfel,*
    244 F.3d 1 (lst Cir. 2011).............................................................................................14

*Morgan v. Principi,*
    327 F.3d 1357 (Fed. Cir. 2003)......................................................................................8

*Myers v. Bethlehem Shipbuilding Corp.*,
   303 U.S. 41 (1938)...........................................................................................................3

*Native Ecosystems Council v. Dombeck*,
   304 F.3d 886 (9th Cir. 2002) ........................................................................................14

*Probst v. Saul*,
   141 S. Ct. 2633 (2021)....................................................................................................6

*Sims v. Apfel*,
   530 U.S. 103 (2000)................................................................................................6, 7, 8

*Singelton v. Wulff*,
   428 U.S. 106 (1976).........................................................................................................9

*Unemployment Compensation Comment of Alaska v. Aragon*,
   329 U.S. 143 (1946)................................................................................................6, 7, 9

*U.S. v. L.A. Trucker Truck Lines*,
   344 U.S. 33 (1953)................................................................................3, 4, 5, 6, 7, 9, 10

*Woodford v. Ngo*,
   548 U.S. 81 (2006)...........................................................................................................5

## Statutes and Rules

5 U.S.C. § 1221(e) ..............................................................................................................9

8 U.S.C. §1252(d)(1) .................................................................................................3, 4, 5

41 U.S.C. § 4712 .........................................................................................1, 2, 5, 6, 8, 10

41 U.S.C. § 4712(b)(1) .......................................................................................................9

Fed. R. Civ. P. 12(b)(1)......................................................................................................1

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

Fed. R. Civ. P. 12(f) ......................................................................................................1, 11

## Other

*Fail to Comment at Your Own Risk: Does Issue Exhaustion Have a
Place in Judicial Review of Rules*, 70 ADMIN. L. REV. 109 (2018),
Jeff Lubbers ....................................................................................................................3

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by and through counsel, respectfully submits this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and/or Fed. R. Civ. P. 12(b)(6) or, in the alternative, to strike portions of the Complaint under Fed. R. Civ. P. 12(f).

## I. INTRODUCTION

This lawsuit was prompted by Plaintiff Karen Iovino's ("Iovino") dissatisfaction with the Department of State's ("DoS") decision to deny relief to her under 41 U.S.C. § 4712. MSA terminated Iovino on August 18, 2017, because her position was eliminated by DoS. Iovino thereafter filed a complaint with the DoS's Office of the Inspector General ("OIG") alleging that she was terminated as a reprisal for engaging in alleged whistleblowing. DoS denied Iovino relief under 41 U.S.C. § 4712. Unhappy with DoS's decision, and in an apparent effort to circumscribe DoS's authority to issue a decision under 41 U.S.C. § 4712, Iovino filed the present lawsuit on September 21, 2021, making extensive novel allegations that she did not advance during the administrative proceedings before DoS.

MSA filed a motion to dismiss maintaining, *inter alia*, that Iovino failed to exhaust her administrative remedies as to the many new and novel allegations first presented in this lawsuit. In response, Iovino argues that issue exhaustion is not required under 41 U.S.C. § 4712 and, alternatively, if issue exhaustion is a requirement under 41 U.S.C. § 4712, then the issues she first raised her Complaint (that she did not raise at the administrative level, referred to herein as the "New Issues") should not be precluded because issue exhaustion should not be strictly enforced. *See* ECF 14, pp. 2-17. Iovino is wrong. All allegations and claims based on the New Issues should be dismissed – Iovino failed to exhaust her administrative remedies as to the New Issues, which is required under 41 U.S.C. § 4712.

## II. BACKGROUND

### A. The NDAA and 41 U.S.C. § 4712

First, a point of clarification: Throughout her Opposition to MSA's Motion to Dismiss the Complaint (*See,* ECF 14, pp. 1-2, 5-6, 9, 11-13, 16), Iovino frames this case as arising under the National Defense Authorization Act ("NDAA"). That isn't quite right. The NDAA is an omnibus statute passed annually by Congress to make changes to the policies and organization of United States defense agencies and provide guidance on how military funding can be spent.

The specific statute at issue here – 41 U.S.C. § 4712 – titled "Enhancement of contractor protection from reprisal for disclosure of certain information" was initially launched as a pilot program within the Department of Defense. Its reach was extended to other federal agencies in 2016 through amendments contained within that year's NDAA. Thus, although 41 U.S.C. § 4712 was amended in 2016 as part of an annual NDAA, Iovino errs in treating the whistleblower protections extended by Congress as coterminous with *the* NDAA (e.g. when Iovino argues that the NDAA "does not require 'issue exhaustion.'" ECF 14, p. 2.).

### B. Prior to Congress Creating 41 U.S.C. § 4712, Iovino Had No Cause of Action.

Prior to 2017, the year 41 U.S.C. § 4712 became effective as to all federal agencies, there was no whistleblower statute that covered all government contractor employees. No federal cause of action existed for a DoS contractor employee like Iovino to recover against an employer for alleged whistleblowing reprisals. Nor did such a cause of action exist in Virginia pursuant to a state statute or at common law. Thus, it is only 41 U.S.C. § 4712 that make any alleged reprisal by MSA potentially actionable, and only this statute that restricts (so far as alleged whistleblowing is concerned), Virginia's at-will employment doctrine for the former employment relationship between MSA and Iovino.

### III. ARGUMENT

**A. Contrary to Iovino's Argument, A Statute Need Not Specifically Include An Issue Exhaustion Requirement For A Statute To Be Interpreted To Include An Issue Exhaustion Requirement.**

The requirement that parties first exhaust their administrative remedies, if any, initially developed as a judicial construct and now is *sometimes* reflected in statutes. Jeffery Lubbers, *Fail to Comment at Your Own Risk: Does Issue Exhaustion Have a Place in Judicial Review of Rules*, 70 ADMIN. L. REV. 109 (2018). In 1938, the Supreme Court referred to it as "the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) (holding that employers challenging National Labor Relations Board's (NLRB's) jurisdiction must complete administrative proceedings before seeking judicial intervention)).

Contrary to Iovino's argument that a statute must expressly contain an issue exhaustion requirement for one to apply, the text of a statute need *not* specifically include an issue exhaustion requirement for an issue exhaustion requirement to be interpreted. *See U.S. v. L.A. Tucker Truck Lines*, 344 U.S. 33 (1953) ("We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has the opportunity for correction in order to raise issues reviewable by the courts"); and *Agha v. Holder*, 743 F.3d 609, 616 (8th Cir. 2014) ("Although this provision refers to administrative 'remedies,' we have held that Congress likely intended by enacting § 1252(d)(1) to require that an alien not only pursue all stages of administrative review, but also raise all issues before the agency") (ellipses and internal quotation marks omitted)).

In 1952, the Supreme Court, in *L.A. Tucker Truck Lines*, applied the issue exhaustion doctrine to review of an agency adjudicative action *under a statute that did not contain an issue exhaustion provision*. In that case, a trucker petitioned the Interstate Commerce Commission ("ICC") for an extension of his route certificate. After a hearing at the administrative agency, the trucker's petition was denied. *L.A. Tucker Truck Lines*, 344 U.S. at 34. The trucker appealed, as provided for in the statute, and raised, for the very first time, the contention that the hearing examiner had been improperly appointed. *Id.* The Supreme Court affirmed the denial, reasoning that, even the though the statute did not expressly contain an issue exhaustion provision:

> [T]he Appellee did not offer nor did the court require any excuse for its failure to raise the objection upon at least one of its many opportunities during the administrative proceeding. Appellee does not claim to have been misled or in any way hampered in ascertaining the facts about the examiner's appointment. It did not bestir itself to learn the facts until long after the administrative proceeding was closed and months after the case was at issue in the District Court, at which time the Commission promptly supplied the facts upon which the contention was based and sustained.

*Id.* at 35. The Court further noted that the appeal was heard under a statute that did not contain an issue exhaustion provision and provided that "more than a few statutes" contain express issue exhaustion provisions. *Id.* at 36.

Similarly, years later, in *Agha*, an alien and his wife petitioned for review of an order from the Board of Immigration Appeals (BIA), which affirmed the Immigration Judge's denial of the alien's application for asylum. *Agha*, 743 F.3d at 612. Pursuant to the 8 U.S.C. § 1252(d)(1), the Court could review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." *Id.* at 616. The Court noted that, even though the statute only refers to "administrative remedies," Congress, by enacting the statute, likely intended to "require that an alien not only pursue all stages of administrative review, but also raise issues before the agency." *Id.* (quoting *Frango v. Gonzalez*, 437 F.3d 726, 728 (8th Cir. 2006)).

4

Under 41 U.S.C. § 4712, which is nearly identical to the statute the *Agha* Court interpreted to include an issue exhaustion requirement – 8 U.S.C. § 1252(d)(1) – a complainant can *only* bring a civil action if they have "exhausted all administrative remedies with respect to the complaint." "The exhaustion doctrine ordinarily requires a plaintiff to pursue relief, when available, from an administrative agency before proceeding to the courts." *Jackson v. Swift Eckrich*, 53 F.3d 1452, 1455 (8th Cir. 1995). The purpose of exhaustion is simple: to avoid the "premature interruption of the administrative process" and to promote judicial efficiency. *McKart v. United States*, 395 U.S. 185, 193-94 (1969). However, to fully realize the benefits of exhaustion, an agency must be given fair opportunity to consider all claims. *See Woodford v. Ngo*, 548 U.S. 81 (2006). Considering the reason for and benefits of issue exhaustion, and recognizing that, like in *Agha*, Congress likely intended that whistleblower contractors, like Iovino, pursue all stages of administrative review *and* raise all issues before the agency.

Iovino's single claim – violation of 41 U.S.C. § 4712 – is the very same complaint she brought to the OIG nearly four years ago. In this lawsuit, however, like the petitioner in *L.A. Tucker Truck Lines*, Iovino tacks on New Issues that were never raised before the administrative agency, thus depriving DoS from investigating these New Issues and issuing a decision relating to or in consideration of the New Issues. Like the trucker in *L.A. Tucker Truck Lines,* Iovino has no excuse for failing to raise the New Issues in the administrative process. As such, any claims relating to the New Issues are not properly before the Court. As a matter of statutory law, the Court may only hear issues Iovino exhausted at the administrative level.

**B. Regardless Of Whether 41 U.S.C. § 4712 Expressly Precludes This Court From Addressing Unexhausted Issues, A Court-imposed Exhaustion Requirement Is Appropriate Here.**

The Supreme Court has long held that it is inappropriate for courts to consider arguments that were not raised before an administrative agency. *See American Genealogies, Inc. v. United States Postal Service*, 717 F. Supp. 895, 800 (D.D.C. 1989) (citing *Unemployment Compensation Comment of Alaska v. Aragon*, 329 U.S. 143, 155 (1946)). In *L.A. Tucker Truck Lines*, the Supreme Court explained its rationale for a judicially-imposed issue exhaustion requirement:

> Simple fairness to those who are engaged in the tasks of administration, and to the litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the appropriate time under its practice.

*L.A. Tucker Truck Lines*, 344 U.S. at 37.

Recognizing that courts are not qualified to consider issues not raised before an administrative agency, in the absence of an express issue exhaustion provision, courts may still decide whether to require issue exhaustion. Courts may impose an issue exhaustion requirement based on "the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Sims v. Apfel*, 530 U.S. 103, 110 (2000). "Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us than the rationale for requiring issue exhaustion is at its greatest." *Carr v. Saul*, 141 S. Ct. 1352, 1354 (2021) (*quoting Sims*, 530 U.S. at 110).

Iovino relies on several Social Security benefits cases, including *Carr v. Saul*, 141 S. Ct. 1352 (2021), *Probst v. Saul*, 141 S. Ct. 2633 (2021), and *Sims,* 530 U.S. 103, to argue that a federal contractor employee is not required to exhaust their issues at the administrative level before filing suit in district court. *See* ECF 14. Iovino's reliance on these Social Security benefits cases, especially *Sims*, is fatally flawed.

In *Sims*, the Supreme Court addressed the applicability of issue exhaustion in a Social Security context. In addressing the issue, the Court acknowledged that the decision of whether to require issue exhaustion prior to judicial review of an administrative proceeding is largely dependent on the facts of each case. *Sims,* 530 U.S. at 109; *See also id.* at 113 ("The inquiry [of whether to require issue exhaustion] requires careful examination of 'the characteristics of the particular administrative procedure provided'") (O'Connor, J., concurring in part and concurring in the judgment) (citations omitted). "The desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* at 109.

Thus, after specifically finding that "the differences between courts and agencies are nowhere more pronounced than in Social Security proceedings," the *Sims* Court held that issue exhaustion was inappropriate in the context of Social Security proceedings. *Id.* at 111. In reaching this holding, the *Sims* Court found that, because disability claimants did not have the primary responsibility for identifying issues in Social Security adjudications, any justification for an issue exhaustion requirement was diminished. *See Sims*, 530 U.S. at 112 ("[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues" and "the general rule of [issue exhaustion] makes little sense in this particular context"). By contrast, the Court stated that "[w]here the parties are expected to develop the issue in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue-exhaustion is at its greatest." *Id.* at 109-110 (citing *Hormel v. Helvering*, 312 U.S. 552 (1941); *U.S. v. L.A. Tucker Truck Lines*, 344 U.S. 33 (1953), and *Unemployment Compensation Comment of Alaska v. Aragon*, 329 U.S. 143 (1946)). This is the situation facing the Court here.

In applying *Sims*, Courts uniformly have limited its holding only to those cases involving challenges to "non-adversarial" administrative actions. *See., e.g., Delta Found., Inc., v. U.S.*, 303 F.3d 551, 561 (5th Cir. 2002); *Forshey v. Principi*, 284 F.3d 1335 (Fed. Cir.) (*en banc*), *cert. denied* 537 U.S. 823 (2002) *superseded by statute on other grounds as stated in Morgan v. Principi*, 327 F.3d 1357, 1359-60 (Fed. Cir. 2003). Courts carefully examine the facts of each case to determine whether *Sims* is analogous, and routinely hold that it is not. *See id.* For example, in *Delta Foundation*, the Fifth Circuit Court of Appeals addressed a non-profit corporation plaintiff's challenge to a decision of the Department of Health and Human Services. *Delta*, 303 F.3d at 551. The Court held that, because the proceedings before the Departmental Appeals Board ("DAB") were sufficiently adversarial in nature, the holding in *Sims* was inapplicable. *Id.* at 561. In reaching its decision, the Court emphasized that both parties to the DAB proceeding could be represented and that each party participated in the development of the administrative record for the DAB's review, including written arguments supporting each party's claim. *Id.* Moreover, the Court noted that "[i]n order to promote development of the record," the DAB was authorized to request additional documents and information from each of the parties, to require briefing on various issues, and to hold conferences. *Id.*

The Social Security adjudication model, which is essentially an investigatory proceeding, in *Sims* – or in any Social Security benefits case – bears no resemblance to DoS' administrative proceedings at issue in this case. Here, the DoS process is fully "adversarial" in that the parties, rather than the Agency, have the primary responsibility for identifying and advocating the legal and factual issues. *See Sims*, 530 U.S. at 110.

For example, 41 U.S.C. § 4712 provides that a complainant – "a person who believes that the person has been subject to reprisal" – "may *submit a complaint* to the Inspector General of the

8

executive agency involved" and the Inspector General will "investigate *the complaint.*" 41 U.S.C. § 4712(b)(1). In other words, Iovino had the initial responsibility of not only identifying the legal and factual issues that the OIG would investigate, but she – the employee complainant – also had the *burden of proof* to demonstrate "that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e).

Here, as in *Delta Foundation*, both parties – Iovino and MSA – were represented by counsel, and each submitted evidentiary materials, legal memoranda, and, in true adversarial fashion, responded to the other party's allegations. *See, e.g.,* ECF 1 at ¶ 100; ECF 8-2, p. 3; and ECF 14-1, p. 2. In fact, Iovino's own Complaint explains that DoS "invited MSA and Dr. Iovino to supplement the record." ECF 1 at ¶ 100. Thus, each party was afforded ample opportunity to identify and develop issues that they each, respectively, deemed relevant. There is no dispute that the underlying DoS administrative proceeding was adversarial in nature.

The DoS administrative process resembles the "adversarial" model discussed in *Sims. See Sims*, 530 U.S. at 109 (citing *Hormel v. Helvering*, 312 U.S. 552 (1941); *L.A. Tucker Truck Lines*, 344 U.S. 33 (1953), and *Unemployment Compensation Comment of Alaska v. Aragon*, 329 U.S. 143 (1946)). Accordingly, the decision whether to invoke the doctrine of issue exhaustion is one that rests within the discretion of the Court. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

In exercising this discretion, the Court should be mindful that the purpose for which courts invoke the doctrine of exhaustion is to ensure that the integrity of the administrative process is neither compromised nor undermined. As aptly stated by the U.S. Court of Appeals for the District of Columbia Circuit, "[b]y honoring the exhaustion doctrine, courts avoid interfering with the administrative process." *Dano Res. Recovery, Inc. v. Dist. of Columbia*, 566 A.2d 483, 485 (D.C. Cir. 1989) (quoting *C Street Tenants Ass'n v. Dist. of Columbia Rental Housing Comm'n*, 522

A.2d 524, 525 (D.C. 1989)). "The rule requiring exhaustion also promotes judicial economy by resolving issues within the agency and eliminating the unnecessary intervention of the courts. *Id.* Also, were we to allow parties to circumvent agency procedures for appeal, the effectiveness of agency rules might be undermined." *Id.* In the present case, the rationale for requiring issue exhaustion is at its greatest. Iovino did *not* exhaust her administrative remedies. If this Court does not invoke the doctrine of exhaustion, it would effectively usurp the function of the administrative agency – DoS – and waste judicial resources.

Although in some cases fairness may dictate a waiver of the issue exhaustion requirement, that is not the case here. Iovino does not offer any excuse for her failure to allege the New Issues raised in her Complaint during the OIG administrative process. Moreover, there is nothing in the record to suggest that Iovino was denied any opportunity to present, develop, and fully argue any issue relevant to the OIG's determination. None of the New Issues raised by Iovino in her Complaint reflect new facts or legal points not known or available to Iovino during the administrative process. Instead, Iovino's New Issues are clearly afterthoughts "brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits." *L.A. Tucker Truck Lines*, 344 U.S. at 36. Accordingly, this Court must, assuming *arguendo* that it does not interpret 41 U.S.C. § 4712 to include an issue exhaustion requirement, impose an issue exhaustion requirement. Issue exhaustion precludes any consideration of the New Issues raised by Iovino and, as such, this Court should grant Defendants' Motion to Dismiss as to the New Issues.

**C. Iovino Failed To Raise the New Issues Before The OIG.**

Iovino argues, in the alternative, that even if issue exhaustion is required, by putting the agency on notice of her claims, she satisfied her exhaustion obligations. *See* ECF 14 p. 14. She, however, makes no genuine effort to deny that she failed to raise the New Issues at the administrative level.

Instead, she simply side-steps the matter and avers that the New Issues in her Complaint are not "new," but are, instead, "very much 'like or related' to the issues and factual allegations she presented to the State Department." ECF 14, p. 14. In other words, Iovino, wrongly argues that there was no need for her to state her issues with any degree of particularity for the OIG's investigation and an administrative decision by the empowered agency official.

Regardless, to support that her issues are not "new," she attaches, as an exhibit to her Opposition to Defendant MSA Security, Inc.'s Motion to Dismiss the Complaint, a sixty-four (64) page "Appendix" (sixty-two (62) of those pages have one and a half (1.5) spacing) in which she "explains why [each] paragraph is proper to remain in the Complaint." ECF 14-5. The Appendix goes through sixty-nine (69) paragraphs of the Complaint and attempts, through mostly boilerplate language, to argue that she "did raise the fact in question during that [administrative] process." ECF 14-5.

**1. Iovino Defends The Inclusion Of 38 Of The 69 Challenged Paragraphs With Nothing More Than Boilerplate Language.**

An examination of Iovino's 64 page 1.5 spaced "Appendix" betrays the facts that many of the New Issues have no support in the underlying OIG record. Of the 69 paragraphs identified in Iovino's hefty "appendix," 38 of these paragraphs are supported by no reference to the underlying OIG record, and just recite the following boilerplate language:

> "Contrary to MSA's argument, this paragraph does not contain any allegations of reprisal that were not made to, and investigated by the OIG, and decided by DoS. Nor does this paragraph constitute, contain, or reference a cause of action for, or a claim of, whistleblower reprisal beyond the scope of the claims that Dr. Iovino administratively exhausted to the Department of State. This paragraph simply provides background information about the relationship and contracts between the DoS and Defendant MSA.
>
> "In addition, this paragraph does not constitute, contain, or reference any "redundant, immaterial, impertinent, or scandalous matter" within the meaning of the case law applying Rule 12(f) discussed in Dr. Iovino's Brief in Opposition.

> "For these reasons, and those state in Dr. Iovino's Brief in Opposition, the Court should deny Defendant's motion, and rule that this paragraph remains in the Complaint."

Iovino utilizes this boilerplate language, and nothing else (no reference to the administrative record, no further argument, nothing else) to justify the inclusion of the New Issues presented in that paragraph of the Complaint for 38 of the 69 paragraphs at issue. *See* ECF 14-5, Dr. Iovino's Responses to MSA's Arguments on ¶¶11, 12, 13, 14, 15, 18, 21, 22, 23, 24, 31, 34, 35, 50, 54, 67, 68, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 164, 165, 166, 167.

MSA identified the exact paragraphs in the Complaint which MSA alleged were not properly before the Court. For these 38 paragraphs, the best Iovino could do was regurgitate the same meaningless boilerplate language, without any factual support. These 38 paragraphs are the "low hanging fruit" and unquestionably should be stricken from the Complaint.

**2. Iovino Defends The Inclusion Of 10 Of The 69 Challenged Paragraphs With Arguments That Do Not Correspond To The Cited Administrative Record.**

The next category of arguments found in Iovino's overwrought "Appendix" vary from the boilerplate language discussed above, but still fail to hit the mark. In these 10 paragraphs, Iovino cites the administrative record; however, the administrative record cited does not support the allegations made in the challenged paragraphs. *See* ¶¶30, 32-B, 33-B, 38, 39, 47, 48, 51, 52, 58. In Iovino's arguments for these challenged paragraphs, the challenged paragraph goes far beyond the information found in the cited administrative record. Iovino is unquestionably introducing New Issues through these paragraphs.

By way of example, paragraph 32-B (there are two paragraph 32s in Iovino's complaint, See Iovino's explanation at ECF 14-5, p. 21, fn. 4) makes an allegation of "an announcement over the

facility's public address system" that was made by MSA to "ensure[] that all employees were aware of the identity of the employee getting reprimanded." In support for this allegation, Iovino cites the OIG administrative record which states "On January 4, 2017, Dr. Ratcliff and Program Manager Alan Bower met with [Dr. Iovino] to discuss proper protocols for requiring staff to stay late and the negative attitude she often displayed at work. Charging party did not appear responsive to the counseling." *See* ECF 14-5, p. 22. This reference to the OIG administrative record simply does not support the New Issue raised in paragraph 32-B of the Complaint (e.g "there was a meeting" does not support the presence of a New Issue in the Complaint).

While this category is as not as "clear cut" as the boilerplate "low hanging fruit" identified above, these 10 paragraphs allege New Issues that were never raised in the underlying administrative proceeding and should also be stricken from the Complaint.

### 3. Iovino's Arguments Regarding The Remaining 21 Of The 69 Challenged Paragraphs Identifies Passages In The Administrative Record That Could Arguably Support Iovino's Position. Accordingly, MSA Withdraws Its Motion As To Those Paragraphs.

For the remaining 21 of the 69 challenged paragraphs, Iovino has identified passages in the OIG administrative record that provide at least colorable support for Iovino's position that the allegations raised in those paragraphs were raised in the DOS administrative proceedings. Accordingly, MSA withdraws its motion to strike paragraphs 17, 19 (mislabeled in ECF 14-5 as paragraph 18), 20, 26, 27, 28, 29, 32-A, 33-A, 36, 37, 42, 43, 44, 45, 46, 49, 53, 55, 56, and 57.

### D. The Court Should Not "Excuse Or Overlook" Iovino's Admitted Noncompliance With The Issue Exhaustion Requirement.

Iovino's final refuge, backtracking, is essentially to admit her noncompliance with the issue exhaustion requirement and argue that the court nevertheless has "the inherent power to excuse or overlook a complainant's lack of compliance with the issue exhaustion doctrine." *See* ECF 14.

Iovino is incorrect. *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 899 (9th Cir. 2002) (quoting *Kleissler v. U.S. Forest Services*, 183 F.3d 196, 202 (3rd Cir. 1999)) (it cannot be said that the "claims raised at the administrative appeal and in the federal complaint [are] so similar that the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, the same claims now raised in federal court").

In *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2011), the First Circuit upheld a district court's refusal to entertain new evidence presented by a claimant for the first time on appeal. *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2011). Specifically, appealing the Social Security Commissioner's decision to deny her disability benefits, the claimant in *Mills* had submitted new evidence to the Social Security Appeals Council. *Id.* at 3. In reviewing the Social Security Commissioner's decision, the district court held that the new evidence submitted to the Appeals Council could not be considered "because that body's refusal to grant review left in the ALJ's decision as the only one before the court and it had to be judged on the evidence before the ALJ." *Id.* at 4. Upholding the district court's decision, the Court of Appeals distinguished *Sims*, stating "[failure to raise an issue on appeal] is entirely different from failing to offer evidence in the first instance." *Id.* Moreover, the Court relied on Justice O'Connor's "swing vote" suggesting that "*Sims* rested on the distinct and narrow ground that the regulations there in question might have misled applicants as to the duty to raise issues in the Appeals Council." *Id.* Similar to *Mills*, this Court must decline to entertain the New Issues raised by Iovino in her Complaint.

### IV.  CONCLUSION

For all the reasons stated herein and in Defendant's Motion to Dismiss, MSA respectfully requests that this Court grant its motion to dismiss the Complaint or, alternatively, strike the New Issues in the Complaint that were not raised and/or decided at the administrative level and direct

Iovino to submit an amended Complaint removing the offending matter and focusing solely on the narrow issues she brought to the DOS OIG.

Respectfully submitted,

Date: February 4, 2022                                  */s/ Ryan C. Berry*
                                                        _____
                                                        Ryan C. Berry (VSB 67956)
                                                        Daniel S. Ward (VSB 45978)
                                                        WARD & BERRY, PLLC
                                                        1751 Pinnacle Drive, Suite 900
                                                        Tysons, VA 22102
                                                        (202) 331-8160
                                                        (202) 505-7100 Fax
                                                        ryan@wardberry.com
                                                        dan@wardberry.com

                                                        *Attorneys for Defendant Michael Stapleton*
                                                        *Associates, Ltd., d/b/a MSA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

>Nate L. Adams III
>Nate L. Adams III, P.C.
>ADAMS AND ASSOCIATES
>11 South Cameron Street
>Winchester, VA 22601
>(504) 667-1330
>nadams@nadamslaw.com
>
>Jack Kolar
>GOVERNMENT ACCOUNTABILITY PROJECT
>1612 K St. NW, Suite 1100
>Washington, DC 20006
>(202) 926-3311
>jackk@whistleblower.org

*/s/ Ryan C. Berry*
_____
Ryan C. Berry