**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **KAREN IOVINO,** | ) | |
| | ) | |
| **Plaintiff and** | ) | **Case No. 5:21-CV-00064-TTC** |
| **Counterclaim Defendant,** | ) | |
| **v.** | ) | |
| | ) | **DEFENDANT AND** |
| | ) | **COUNTERCLAIM PLAINTIFF'S** |
| | ) | **OPPOSITION TO PLAINTIFF** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **COUNTERCLAIM** |
| **d/b/a MSA SECURITY, INC.** | ) | **DEFENDANT'S MOTION TO** |
| | ) | **DISMISS COUNTERCLAIMS** |
| | ) | **AND OPPOSITION TO** |
| **Defendant and** | ) | **MOTION FOR JUDGMENT** |
| **Counterclaim Plaintiff** | ) | **ON THE PLEADINGS** |

Respectfully submitted,

Date: August 3, 2022

*/s/ Ryan C. Berry*

_____
Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com

*Attorneys for Defendant Michael Stapleton
Associates, Ltd., d/b/a MSA Security, Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION    .......................................................................................1

II.    BACKGROUND    ...........................................................................................1

III.    ARGUMENT    ................................................................................................3

      A.      Plaintiff Improperly Refers to Plaintiff's Confidentiality Agreement
             as a "Contract of Adhesion" ...................................................................3

      B.      MSA's Contract with Plaintiff is Legal and Enforceable ........................5

             1.    FAR § 3.909-1 Does Not Regulate Contracts Between
                    MSA and Plaintiff...............................................................................6

             2.    FAR § 3.909-1 Supports the Validity of Plaintiff's NDA ................7

             3.    Plaintiff's NDA was a Direct Requirement of the State Department ...............9

             4.    Under Both New York Law and the Language of Plaintiff's NDA
                    With MSA, the Court Can, if Necessary, Modify the NDA ...........................11

      C.      Section II.D. of Plaintiff's Motion to Dismiss is Wholly Improper .....................12

      D.      MSA'S Restrictive Covenants Do Not Violate New York Law............................14

             1.    MSA's Restrictive Covenant is Reasonable in Time and Area ......................15

                    a. Time ...................................................................................................15

                    b.   Area....................................................................................................16

             2.    MSA Has A Legitimate Interest in Protecting MSA and State
                    Department Confidential Customer Information ...............................................18

             3.    MSA's Restrictive Covenant is Not Harmful to the General Public ...............20

             4.    MSA's Restrictive Covenant is Not Unreasonably Burdensome
                    to Plaintiff .........................................................................................21

             5.    Under New York Law, the Court Can, if Necessary, Partially
                    Enforce the NDA ..............................................................................22

V.     CONCLUSION    ...........................................................................................23

**<u>TABLE OF AUTHORITIES</u>**

<u>**Cases**</u>                                                                                               <u>**Page**</u>

*AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*,
    842 N.E.2d 471 (N.Y. 2005)....................................................................13

*Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*,
    869 N.Y.S. 2d 465 (N.Y. App. Div. 2008) ......................................15, 16, 18, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................14, 18

*Battenkill Veterinary Equine P.C. v. Cangelosi*,
    768 N.Y.S. 2d 504 (N.Y. App. Div. 2003) ..........................................5

*BDO Seidman v. Hirshberg*,
    712 N.E.2d 1220 (N.Y. 1999)....................................12, 14, 15, 21, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007).....................................................................14, 18

*Brown & Brown, Inc. v. Johnson*,
    34 N.E.3d 357 (2015)................................................................14, 18, 23

*Bryant v. Ciminelli*,
    267 F. Supp. 3d 467 (W.D.N.Y. 2017) ...............................................13

*Denson v. Donald J. Trump for President, Inc.*,
    530 F. Supp. 3d 412 (S.D.N.Y. 2021) .............................................16, 21

*Elexco Land Servs., Inc. v. Hennig*,
    No. 11-CV-214, 2012 WL 5288760 at *3 (W.D.N.Y. 2012) ...........................12

*Guggenheimer v. Ginzburg*,
    372 N.E.2d 17 (N.Y. 1977).............................................................12

*In re Tester*,
    56 B.R. 208 (W.D. Va. 1985) ............................................................9

*In re Vargas Realty Enters.*,
    440 B.R. 224 (S.D.N.Y. 2010).........................................................4

*Intertek Testing Servs., N.A., Inc. v. Pennisi*,
    443 F. Supp. 3d 303 (E.D.N.Y. 2020) ...........................................17, 21

*Lucido v. Mancuso,*
    851 N.Y.S. 2d 238 (N.Y. App. Div. 2008) ......................................................9

*Ly v. New York City Emps. Ret. Syst.,*
    139 N.Y.S. 3d 261 (N.Y. App. Div. 2020) ......................................................7

*Majewski v. Broadalbin-Perth Cent. School Dist.,*
    696 N.E.2d 978 (1998)......................................................................................7

*Matter of Sandhu v. Mercy Med. Ctr.,*
    828 N.Y.S. 2d 91 (N.Y. App. Div. 2006) ........................................................4

*McGirt v. Oklahoma,*
    140 S. Ct. 2452 (2020)......................................................................................7

*Molino v. Sagamore,*
    963 N.Y.S. 2d 355 (N.Y. App. Div. 2013) ......................................................4

*Oliver Wyman, Inc. v. Eielson,*
    282 F. Supp. 3d 684 (S.D.N.Y. 2017) ...........................................................19

*People v. Golo,*
    44 N.E.3d 185 (N.Y. 2015)...............................................................................7

*People v. Jones,*
    47 N.E.3d 710 (N.Y. 2016)...............................................................................7

*People v. Smith,*
    30 N.Y.S. 3d 19 (N.Y. App. Div. 2016) ..........................................................7

*People v. Witherow,*
    164 N.Y.S. 3d 742 (N.Y. App. Div. 2022) ......................................................7

*Reed, Roberts Assocs. v. Strauman,*
    353 N.E.2d 590 (N.Y. 1976)..........................................................................14

*Silipos, Inc. v. Bickel,*
    No. 1:06-CV-02205, 2006 WL 2265055 at *5 (S.D.N.Y. Aug, 8, 2006).........19

*Triple D & E, Inc. v. Van Buren et al.,*
    339 N.Y.S. 2d 821 (N.Y. App. Div. 1972) ..................................................3, 4

## Statutes and Rules

41 U.S.C. § 4712 ...................................................................1, 3, 8, 12, 18, 20 21, 23

48 C.F.R. § 3.901 ...........................................................................................11

48 C.F.R. § 3.909 .............................................................5, 6, 7, 9, 10, 11, 12

Fed. R. Civ. P. 15 .............................................................................................9

*Fed. Acquisition Reg. - Contractor Emp. Internal Confidentiality Agreements
or Statements* (FAR CASE 2015-012), REGULATIONS.GOV,
https://www.federalregister.gov/documents/2017/01/13/2016-31497/
federal-acquisition-regulation-contractor-employee-internal-confidentiality-
agreements-or-statements. ...........................................................................5

RESTATEMENT (SECOND) OF CONTRACTS § 188(1)(a)(b) ...............................15

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), respectfully submits this Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaim and for Judgment on the Pleadings (referred to herein as Plaintiff's "Motion to Dismiss").

## I.    INTRODUCTION

Plaintiff's Motion to Dismiss states no legally adequate basis for this Court to dismiss Defendant's Counterclaim, or for the Court to render judgment on the pleadings. Rather, Plaintiff's motion provides nothing more than a narrow and misleading analysis of Plaintiff's contractual obligations with MSA. As such, and as will be discussed in detail below, Plaintiff's Motion to Dismiss should be denied.

Plaintiff filed her initial complaint on September 21, 2021, alleging a single claim of "Discrimination in violation of 41 U.S.C § 4712." ECF 1. MSA filed a motion to dismiss, or in the alternative a motion to strike, arguing, *inter alia*, that Plaintiff failed to exhaust her administrative remedies as to the many new and novel allegations first presented in her lawsuit. ECF 7, 8. On April 25, 2022, the Court granted MSA's motion to dismiss, in part, striking a number of paragraphs in Plaintiff's Complaint. ECF 26. In response, Plaintiff filed her Amended Complaint on May 2, 2022. ECF 30.

MSA filed its answer to the Amended Complaint, along with MSA's counterclaim for breach of contract, on May 16, 2022. ECF 31. MSA's breach of contract claim is not related to Plaintiff's legally permissible whistleblower activity. For the reasons stated below, Plaintiff's Motion to Dismiss should be denied.

## II.    BACKGROUND

MSA is engaged in the business of security, intelligence, and investigative services, including explosive detection canine screening services. MSA operates the Diplomatic Security

Global Canine Services Center ("GCSC") (formally known as the Canine Validation Center) in Winchester, Virginia pursuant to government contracts with the Department of State ("DoS") to train and test explosive detection canines and their handlers. ECF 31 at 41, ¶¶ 4, 7. Plaintiff was an employee of MSA from October 9, 2015 to August 18, 2017, where she served as a part-time veterinarian at the GCSC. *Id.* at 41, ¶ 12.

Plaintiff was required to sign MSA's "Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement" (the "NDA"). *See* ECF 31 at 42, ¶ 13. Plaintiff signed the NDA on October 16, 2015. *Id.* This NDA reflects MSA's requirement to the DoS per MSA's contract with the DoS. *Id.* at 41, ¶ 11. MSA's contract with the DoS "includes confidentiality provisions prohibiting MSA and its employees from communicating any non-public information about the performance of services under the contract . . . ." *Id.* ¶ 10. These "stringent requirements" in the DoS contract relate to the "protection of confidential information of the State Department and the programs services by MSA. *Id.* ¶ 9. In Plaintiff's NDA, she "agreed not to 'disclose, publish, use or otherwise make available to the public or to any individual, firm or corporation any confidential information'" throughout "the term of her employment as well as for all times thereafter" *Id.* at 42, ¶¶ 14, 15.

Plaintiff acknowledged that the confidential information to be protected "is 'special, unique and extraordinary in character, and that in the event of any breach by [Counterclaim-Defendant] of any of the terms or conditions,' MSA shall be entitled to damages or specific performance" as breach could cause "irreparable harm for which no adequate remedy at law would be available." *Id.* ¶¶ 17, 18.

In spite of the NDA's clear confidentiality restrictions, Plaintiff "repeatedly threatened to make public disclosures of confidential information." *Id.* at 43, ¶ 19. Plaintiff did make

confidential disclosures to third persons including but not limited to persons at the Washington Post and NBC 4 Washington. *Id.* at 43–44, ¶¶ 23, 24, 27, 28, 32.

Separate from Plaintiff's media disclosures (which Plaintiff improperly tries to categorize as "part and parcel" with her whistleblower disclosures), Plaintiff submitted a whistleblower hotline report to the DoS's Office of the Inspector General ("OIG") on July 6, 2017, where she made varied allegations concerning DoS operations and MSA's contracts at the GCSC. ECF 30 at 17, ¶ 61. Several weeks later, on or about July 26, 2017, Plaintiff again used the whistleblower hotline, but this time to submit a whistleblower reprisal allegation pursuant to 41 U.S.C. § 4712. *Id.* at 22, ¶ 82.

Plaintiff's position with MSA ended on August 18, 2017. Plaintiff thereafter filed a complaint with the OIG alleging that she was terminated as a reprisal for engaging in alleged whistleblowing. On October 30, 2019, DoS denied Plaintiff relief under 41 U.S.C. § 4712. *See* ECF 8-2.

## III.    ARGUMENT

Plaintiff's NDA with MSA is a valid and legally enforceable contract. Plaintiff's response to MSA's counterclaim is not a Motion to Dismiss – it is a Motion for Summary Judgment. It seeks to introduce and discuss extrinsic evidence, assumptions of fact, and improper analysis that have no place in a Motion to Dismiss. The Court should deny Plaintiff's Motion to Dismiss. MSA's Counterclaim adequately pleads MSA's claim for breach of contract.

### A.  Plaintiff Improperly Refers to Plaintiff's Confidentiality Agreement as a "Contract of Adhesion."

On page 4 of her Motion, Plaintiff refers to the NDA as a "contract of adhesion." Plaintiff is both factually and legally incorrect. Contract law generally contemplates that the parties would meet each other "on a footing of social and approximate economic equality." *Triple D & E,*

*Inc. v. Van Buren et al.*, 339 N.Y.S. 2d 821 (N.Y. App. Div. 1972). An agreement between two parties can only be considered a "contract of adhesion" if it contains terms that are unfair and nonnegotiable, and arises from a disparity of bargaining power or oppressive tactics. *Molino v. Sagamore*, 963 N.Y.S. 2d 355 (N.Y. App. Div. 2013). In evaluating whether a contract is one of adhesion, a court must consider the following factors: (1) whether the contract involves a necessity of life; (2) whether the contract terms excessively benefit the offeror; (3) whether the contract provision provides an economic or other advantage to the offeror; and (4) whether the proposed contract is offered on a take it or leave it basis. *In re Vargas Realty Enters.*, 440 B.R. 224, 237 (S.D.N.Y. 2010).

The NDA before the court meets none of these elements. This is not a matter involving a necessity of life. Rather, Plaintiff is a professional veterinarian. The NDA does not excessively benefit MSA. The terms of the NDA are a direct requirement of the DoS and are required confidentiality provisions to protect DoS and MSA information. *See infra*, Sections III.B.3., III.D.2. The NDA provides no economic or other advantage to MSA. The NDA was not offered on a "take it or leave it" basis – Plaintiff was an "at will" employee with the option of seeking employment elsewhere. *Matter of Sandhu v. Mercy Med. Ctr.*, 828 N.Y.S. 2d 91, 94 (N.Y. App. Div. 2006) (stating employment agreement was not a contract of adhesion as there was no evidence to show he was unable to read the contract or did not have the option of seeking employment elsewhere).

Here, the NDA is between two sophisticated parties, neither of which have excessive benefits over the other and does not restrict ordinary competition. *Contra*, *Triple D & E, Inc.*, 339 N.Y.S. at 830–31 (denying relief as the contract was between an unsophisticated and sophisticated party and the restrictive covenant operated to restrict ordinary competition). Plaintiff is not the first

veterinarian who has argued that a restrictive covenant in her employment agreement made it a contract of adhesion. *See Battenkill Veterinary Equine P.C. v. Cangelosi*, 768 N.Y.S. 2d 504 (N.Y. App. Div. 2003) (rejecting veterinarian's argument "without merit" that the restrictive covenant made the agreement a contract of adhesion because the restrictions were reasonable). It was not true then, and it is not true now. Given the level of sophistication of Plaintiff (a veterinarian) and her ability to be employed elsewhere, the confidentiality restrictions in Plaintiff's NDA do not make it a contract of adhesion.

### B. MSA's Contract with Plaintiff is Legal and Enforceable.

Plaintiff refers to Section 3.909 of the Federal Acquisition Regulation ("FAR") when arguing that MSA's confidentiality agreement with Plaintiff is "illegal, void and unenforceable." *See* 48 C.F.R. § 3.909; ECF 36 at 6. Plaintiff is incorrect.

FAR § 3.909[1] is part of FAR § 3.9 (Whistleblower Protections for Contractor Employees). It addresses the "Prohibition on Providing Funds to an Entity that Requires Certain Internal Confidentiality Agreements or Statements." The purpose of FAR § 3.909 is to prohibit the Government from contracting with corporations that have internal confidentiality agreements that prohibit or restrict the lawful reporting of "waste, fraud, or abuse to a designated Investigative or law enforcement representative . . . ." *See* 48 C.F.R. § 3.909-1. The "prohibition" comes by regulating federal funding (*i.e.*, refusing to fund agencies when their contractors implement restrictive internal confidentiality agreements). FAR § 3.909-1 states:

(a) The Government is prohibited from using fiscal year 2015 and subsequent fiscal year funds for a contract with an entity that requires employees or subcontractors

---

[1] While the idea of FAR § 3.909 was created in 2015, it did not become a final effective rule until January 19, 2017. *See Fed. Acquisition Reg.– Contractor Emp. Internal Confidentiality Agreements or Statements (FAR Case 2015-012)*, REGULATIONS.GOV, https://www.federalregister.gov/documents/2017/01/13/2016-31497/federal-acquisition-regulation-contractor-employee-internal-confidentiality-agreements-or-statements.

of such entity seeking to report waste, fraud, or abuse to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or subcontractors from lawfully reporting such waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

(b) The prohibition in paragraph (a) of this section does not contravene requirements applicable to Standard Form 312 (Classified Information Nondisclosure Agreement), Form 4414 (Sensitive Compartmented Information Nondisclosure Agreement), or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

*See* 48 C.F.R. § 3.909-1 (internal citations omitted).

Plaintiff's motion focuses on section (a) and ignores section (b). Plaintiff's motion misinterprets or distorts the functionality of FAR § 3.909-1 and makes a series of incorrect and multifaceted assumptions as to what this rule means for the NDA between MSA and Plaintiff.

### 1. FAR § 3.909-1 Does Not Regulate Contracts Between MSA and Plaintiff.

FAR § 3.909-1 regulates the relationship between "The Government" and "an entity" contracting with the Government. It does not regulate the relationship between MSA and Iovino. Plaintiff's statement – "In order for a confidentiality agreement to be valid, it must contain an exception or carve-out that specifically allows employees to report fraud, waste, or abuse to government officials" – is incorrect. Rather, the failure to include such a "carve-out" (as Plaintiff calls it) may affect a company's ability to obtain (or retain) federal contracts.

Iovino's assertion that, because MSA's NDA with Plaintiff did not contain the "carve-out" it "ha[s] no force and effect on [Plaintiff]," (ECF 36 at 7) is factually and legally incorrect. *Id*. FAR § 3.909 does not regulate MSA's NDA with Plaintiff. It certainly does not invalidate the NDA. Instead, what FAR § 3.909 does do is establish parameters for the Government to regulate its contracts with the private industry. FAR § 3.909 prohibits the *Government* from selecting contractors that have an internal confidentiality clause which prohibits or restricts the ability of its

6

employees to report "waste, fraud or abuse." The rule does not create a contractual relationship between the Government and an individual employee of MSA. It has no effect on a contract between MSA and one of its employees (such as the NDA).

## 2. FAR § 3.909-1 Supports the Validity of Plaintiff's NDA.

FAR § 3.909-1 prohibits the Government from entering into contracts with contractors that have "internal confidentiality agreements or statements prohibiting or otherwise restricting [] employees or subcontractors from lawfully reporting [] waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information." *See* 48 C.F.R. § 3.909-1. The language of FAR § 3.909-1 is clear and unambiguous and must be interpreted according to its plain meaning.

New York law requires a statute to be interpreted in accordance with its "plain meaning" as it "represents the most compelling evidence of the Legislature's intent." *See Ly v. New York City Emps. Ret. Syst.*, 139 N.Y.S. 3d 261 (N.Y. App. Div. 2020); *see also People v. Witherow*, 164 N.Y.S. 3d 742, 744 (N.Y. App. Div. 2022) (quoting *People v. Jones*, 47 N.E.3d 710 (N.Y. 2016)) ("'[W]hen the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used'"); *People v. Golo*, 44 N.E.3d 185, 187 (N.Y. 2015) (quoting *Majewski v. Broadalbin–Perth Cent. Sch. Dist.*, 696 N.E.2d 978 (1998)) ("'As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'"). When statutory language is clear and unambiguous, it must be construed to give its plain meaning and there is no need to "consult extratextual sources." *See McGirt v. Okla.*, 140 S. Ct. 2452 (2020); *People v. Smith*, 30 N.Y.S. 3d 19 (N.Y. App. Div. 2016).

The NDA does not restrict or otherwise prohibit Plaintiff from making disclosures regarding waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information (as listed in 41 U.S.C. § 4712(2)).

In paragraph 3 of Plaintiff's NDA, Plaintiff agreed, as a condition of her at-will employment with MSA, and in consideration of her employment and compensation with MSA, not to disclose, publish, or otherwise make available to the public or to any individual, firm or corporation any confidential information. ECF 31-1, ¶ 3. Paragraph 2 of the NDA defines confidential information as "all information . . . in whatever form . . . which is acquired by [Iovino] in the course of [Iovino's] employment in any way concerning the . . . projects, activities, business, clients, trade practices, know-how, or affairs of [MSA] . . . ." *Id.* at ¶ 2. Nothing in the NDA restricts or prohibits Plaintiff from disclosing "waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information." FAR § 3.909-1(a).

Plaintiff argues that the OIG "explicitly found MSA's NDA was illegal" citing to the Management Assistance Report published by the OIG in August 2018 (the "August 2018 OIG Report"). *See* ECF 36 at 8. The August 2018 OIG Report makes a "recommendation" to the Bureau of Administration, Office of Logistics Management ("A/LM") that it "*should* order" MSA to rescind or modify their confidentiality agreements, or else A/LM *should* terminate its contracts with MSA. *See* ECF 36-1 at 2. A mere "finding" of information in the OIG report along with lax language such as "recommend" and "should" are not direct orders of termination or rescindment, nor is it an "explicit" finding that "MSA's NDA was illegal." Once again, Plaintiff has overreached.

Plaintiff refers to the August 2018 OIG Report and makes improper assumptions about MSA's behavior after receiving the report. The NDA that Plaintiff signed was never invalidated.[2] The DoS sent a letter to MSA requesting that MSA either rescind or modify its agreements to include the necessary language because the *DoS* (not MSA) was at risk of violating the Anti-Deficiency Act on August 21, 2018, *over a year* after Plaintiff's employment with MSA ended.[3] Accordingly, MSA *modified* its existing agreements for its current employees and never rescinded any agreements or created any new agreements.[4] This modification was only requested as to *current* employees (not including former employees).[5] At this point, Plaintiff was no longer an employee at MSA.[6] Therefore, no such modification was necessary or required for her NDA. In fact, the language of FAR § 3.909-1, even taken in the light most favorable to Plaintiff (not the standard here, where Plaintiff is moving to dismiss MSA's counterclaim – quite the opposite, in fact!), does not purport to direct, control, or restrict a government contractor's contracts with its <u>former</u> employees.

### 3. <u>Plaintiff's NDA was a Direct Requirement of the State Department.</u>

As stated earlier, Plaintiff ignores FAR § 3.909-1(b), which states that "paragraph (a) . . . does not contravene requirements applicable to . . . any other form issued by a Federal department or agency governing the nondisclosure of classified information." *See* 48 C.F.R. § 3.909-1(b)

---

[2] This is a factual proffer by Counsel. If the Court deems this fact crucial at this stage (Initial pleading of MSA's Answer and Counterclaim), MSA respectfully requests leave to Amend its Answer and Counterclaim. *See In re Tester*, 56 B.R. 208 (W.D. Va. 1985) (Fed. R. Civ. P. 15 mandates that "pleadings be liberally granted"); *Lucido v. Mancuso*, 851 N.Y.S.2d 238, 239 (N.Y. App. Div. 2008) ("In the absence of prejudice or surprise resulting directly from the delay in seeking leave, such applications are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit.").
[3] *See supra* note 3.
[4] *See supra* note 3.
[5] *See supra* note 3.
[6] *See supra* note 3.

(emphasis added). MSA's contract with the DoS contains stringent confidentiality requirements.

ECF 31 at ¶ 9. The DoS contract with MSA includes the following confidentiality clause:

> The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions. They shall not communicate to any person any information known to them by reason of their performance of services under this contract which has not been made public, except in the necessary performance of their duties or upon written authorization of the Contracting Officer. All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government. Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed un- der this contract shall be published or disseminated through any media without the prior written authorization of the Contracting Officer. **These obligations do not cease upon the expiration or termination of this contract**. **The Contractor shall include the substance of this provision in all contracts of employment** and in all subcontracts hereunder.[7]

Pursuant to the above-referenced clause, MSA is required to insert a confidentiality provision in all of its employment contracts for any employees working on the contract in question (as Iovino did), which MSA does via its NDA. On October 16, 2015, Plaintiff signed MSA's NDA. *See* ECF 31-1. The restrictions found in the NDA are required by the DoS. The broad restriction on disclosure as to all matters pertaining to Plaintiff's duties and functions, and any knowledge gained by reason of performance of her services, was a flow-down requirement from DoS's contract with MSA. These restrictions are not arbitrary – they are required by the DoS.

FAR § 3.901 provides the definition of "internal confidentiality agreement," which aligns with the exception stated in FAR § 3.909-1(b):

> Internal confidentiality agreement or statement means a confidentiality agreement or any other written statement that the contractor requires any of its employees or subcontractors to sign regarding nondisclosure of contractor information, **except that it does not include** confidentiality agreements arising out of civil litigation or **confidentiality agreements that contractor employees or subcontractors sign at the behest of a Federal agency**.

---

[7] *See supra* note 3.

*See* 48 C.F.R. § 3.901 (emphasis added).

FAR § 3.909(b)'s plain meaning is clear and unambiguous. In light of the plain language in FAR § 3.909(b) and the definition of "internal confidentiality agreement" provided in FAR § 3.901, it is clear that the prohibition in FAR § 3.909(a) "does not contravene the requirements" set forth by a Federal department or agency when it comes to governing confidential information especially if such governing comes "at the behest of a Federal agency." *See* 48 C.F.R. §§ 3.901 & 3.909-1.[8] MSA's NDA is a requirement at the "behest" of DoS, as illustrated in MSA's contract with DoS. Pursuant to the confidentiality requirements set forth in the contract between DoS and MSA, MSA has all of its employees working on the DoS contract sign a NDA, including Plaintiff.

### 4. <u>Under Both New York Law and the Language of Plaintiff's NDA with MSA, the Court Can, if Necessary, Modify the NDA.</u>

Section 8(c) of Plaintiff's NDA states: "If any one or more of the provisions contained in this Agreement is held to be excessively broad as to duration, scope or activity, I agree that such provisions shall be construed by limiting and reducing them so as to be enforceable to the maximum extent compatible with applicable law." ECF 31-1, ¶ 8(c). Thus, if the Court finds that the "waste, fraud, or abuse" language needs to be incorporated to explicitly signify Plaintiff's right

---

[8] During the open comment period for FAR § 3.909, the Department of Defense, the General Services Administration, and the National Aeronautics and Space Administration issued commentary regarding the rule and its various requirements. *See supra* note 1. One comment asked whether the rule covers confidentiality agreements arising out of litigation and/or confidentiality agreements that are required by Federal agencies. *Id.* The response states, "A definition of 'internal confidentiality agreement or statement' has been added to the final rule." *Id.* This definition excludes confidentiality agreements arising out of civil litigation or ***confidentiality agreements*** that contractor employees or subcontractors sign at the ***behest*** of a Federal agency." *Id.* (emphasis added). The definition was added for a reason – to make clear the intentions of the exception laid out in subsection (b).

to report, the Court can "blue pencil" her NDA as necessary.[9] *See Elexco Land Servs., Inc. v. Hennig*, No. 11-CV-214, 2012 WL 5288760 at *3 (W.D.N.Y. 2012) (citing *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220 (N.Y. 1999).

New York permits "blue penciling" so long as (1) the unenforceable portion is not an essential part of the agreement; (2) the employer did not overreach or coerce the employee to sign the document; and (3) there is a good faith reason to protect a legitimate business interest. *Id.* The "waste, fraud, or abuse" language is not an essential part of the agreement because Plaintiff is and was permitted to disclose evidence of "gross mismanagement," "a gross waste of Federal funds," "an abuse of authority," "a substantial and specific danger to public health or safety," or "a violation of law, rule, or regulation related to a Federal contract" to the "persons and bodies" listed in 41 U.S.C. § 4712(2). *See* 41 U.S.C. § 4712.

Here, Plaintiff disclosed confidential information to media outlets such as the Washington Post (NOT included in 41 U.S.C. § 4712(2)). Second, Plaintiff willingly and voluntarily signed the NDA without coercion. Third, there is a good faith reason to protect the legitimate business interests of the DoS. *See infra* Section D.2. As such, and if deemed necessary, the Court can modify the NDA.

### C. Section II.D. of Plaintiff's Motion to Dismiss is Wholly Improper.

When considering a motion to dismiss, the Court must evaluate "whether the pleading states a cause of action, and if, from [the] complaint's four corners, factual allegations are discerned which, taken together, manifest any cause of action cognizable at law . . . ." *Guggenheimer* v. *Ginzburg,* 372 N.E.2d 17, 20 (N.Y. 1977). If "any cause of action cognizable at

---

[9] In a response to a comment on FAR §3.909, "the Councils [did] not consider it appropriate to prescribe specific language in the regulations." There is no specific language that is required. *See supra* note 1.

law" is found, the motion to dismiss will fail. *Id.* The facts presented must be viewed in the light most favorable to the Plaintiff (in this case the Counterclaim-Plaintiff). *See AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 842 N.E.2d 471, 475–76 (N.Y. 2005) ("[T]he court must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide plaintiff . . . 'the benefit of every possible favorable inference.'").

Facts outside of the four corners of a complaint may not be considered. *See Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 472 (W.D.N.Y. 2017). In *Bryant*, both parties "submitted facts which go beyond what is alleged in the complaint and include information that is neither integral to nor relied on in the complaint." *Id.* Reliance on facts outside the four corners of the complaint is "procedurally improper" as doing so would convert the pleadings to a motion for summary judgment. *Id.* at 472–73 (stating when no party is on notice of a pleading converting to a motion for summary judgment and no discovery has taken place, a conversion is improper). To avoid a procedurally improper situation, the *Bryant* Court determined it may not consider "extraneous material provided by the parties in deciding the [motion to dismiss]." *Id.* at 473.

It is telling that Plaintiff cites caselaw pertaining to motions for summary judgment, not motions to dismiss. ECF 36 at 10. Plaintiff is attempting to introduce assumptions of fact (not "facts" but "assumptions") in her motion to persuade the Court to grant a dismissal. *Id.* at 9. Plaintiff makes assumptions such as, "it is reasonable to infer . . ." *Id.* Such an "inference" is not found from any facts within the four corners of the counterclaim. Rather, Plaintiff's "inference" is created by assuming facts not in MSA's counterclaim ("facts" not offered by MSA because they are incorrect). Plaintiff states, "*it is reasonable to suppose* that whatever amended NDA adopted as a replacement would contain a similar provision, *it is also reasonable to suppose* that the new NDA would expressly 'supersede' the version Dr. Iovino had signed." *Id.* at 10. Nowhere in

MSA's counterclaim is there any reference to a "replacement" NDA, nor a "new NDA," as neither exist. *Id.* Plaintiff's motion to dismiss should not be granted based on Plaintiff's suppositions and inferences (that are found nowhere in MSA's counterclaim).

MSA's counterclaim is properly pled. The entirety of Plaintiff's argument in Section II.D. regarding a "replaced and/or superseded" agreement is wholly improper. Accordingly, Iovino's Motion to Dismiss should be denied.

### D. MSA's Restrictive Covenants Do Not Violate New York Law.

Restrictive covenants – such as noncompetition, nonsolicitation, and confidentiality agreements – are typically "strictly construed" under New York law "because of the powerful considerations of public policy which mitigate against sanctioning the loss of a person's livelihood." *See Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 361 (2015) (citation omitted). New York law determines whether a restrictive covenant is valid based on its "reasonableness." *See BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999). A restrictive covenant is reasonable if it is (1) reasonable in time and area; (2) necessary to protect the employer's legitimate interests; (3) not harmful to the general public; and (4) not unreasonably burdensome to the employee. *Id.* (quoting *Reed, Roberts Assocs. v. Strauman*, 353 N.E.2d 590 (N.Y. 1976)).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

MSA has pled facts sufficient to survive a motion to dismiss. MSA's restrictive covenants are valid under New York law, in accordance with the 4-prong test set forth originally in *BDO*

*Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999) and restated in *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 869 N.Y.S. 2d 465, 472 (N.Y. App. Div. 2008).

### 1. **MSA's Restrictive Covenant is Reasonable in Time and Area.**

Plaintiff makes a series of sarcastic statements to "prove" that MSA's confidentiality restrictions are overly broad by stating that it falls short of including "cafeteria 'lunch menus,' holiday schedules, and the lyrics to the company fight-song" and is attempting to "draft a list of topics as much to set a new world-record for excess as to protect its legitimate interests." *See* ECF 36 at 16–17. Plaintiff's hyperbolic argument actually proves MSA's point that the NDA is reasonable in time and area as it is a direct requirement of the DoS's requirements (*see supra* Section B.3.) and only purports to protect what is considered confidential information by the Federal Government (*see infra* Section D.2.).

### a. **Time**

A confidentiality agreement that is not limited in duration "does not necessarily make them *ipso facto* unenforceable." *See Ashland Mgmt. Inc.*, 869 N.Y.S. 2d at 471. If a former employee can pursue their livelihood (while still abiding by a confidentiality agreement) a time limitation is not required. *Id.* ("Protecting trade secrets and truly confidential information, however, does not have to be time limited in every instance where the covenant does not otherwise prevent a former employee from pursuing his or her livelihood or interfere with competition"). *Ashland* cites to the "basic test" for determining a reasonable time, which "is whether the restraint as to time is necessary for the protection of the promise, but neither oppressive on the promisor, nor injurious to the interests of the general public." *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 188(1)(a)(b)).

The confidentiality agreement in Plaintiff's NDA passes the *Ashland* "basic test" as Plaintiff's restraint is necessary for the protection of Federal Government information relating to MSA and the DoS. *Id.* The protection is not "oppressive" to Plaintiff or "injurious to the interests of the general public" (*see infra* Section D.3.) because none of the topics listed in Plaintiff's NDA prevent or oppress Plaintiff, in any manner, from being a veterinarian. *Id.* Plaintiff's only restriction is to not discuss or disclose the confidential information listed in Plaintiff's NDA as it relates to (and is the property of) MSA and/or the DoS. Plaintiff is perfectly capable of remaining a veterinarian and caring for animals without disclosing the Federal Government's confidential information.

### b. Area

Plaintiff's main argument regarding the "area" of a confidentiality agreement relies on *Denson v. Donald J. Trump for President, Inc. See* 530 F. Supp. 3d 412 (S.D.N.Y 2021). *Denson* is distinguishable from the facts in this case. The confidentiality agreement in *Denson* included thirty-five categories of information considered "private, proprietary, or confidential." *Id.* The information considered "confidential" included things such as "personal life," "relationships," and "business affairs," or "any information that President Trump 'insists remain private or confidential." *See id.* The Court determined that categories such as private personal information and whatever former-President Trump may deem confidential – without any further explanation – is "sufficiently broad and vague." *Id.* The confidentiality agreement in *Denson* went as far to apply to "family members" without any explanation as to who that includes, and "any legal entity 'that, in whole or part, was created by or for the benefit of or is controlled or owned by' President Trump or any of his family members." *Id.* That alone includes more than 500 companies that former-President Trump and his "family members" may be affiliated with. *Id.*

In this case, MSA provided a confidentiality agreement with topics labeled as "confidential information." ECF 31-1 The "list" Plaintiff provides in her brief regarding the topics included in Plaintiff's NDA is incorrect. *Id.* Plaintiff omits topics such as "trade secrets" and "trade practices" from the "list," but discusses them later in her brief, and improperly separates words. *See* ECF 36 at 15–16. The topics included as "confidential information" in Plaintiffs NDA are as follows:

> [T]rade secrets, projects, activities, business, clients, trade practices, know-how or affairs of the Company that provide the Company an economic advantage over its competitors, including, without limitation, all information concerning products, business formulas, discoveries, ideas, concepts, know-how, techniques, diagrams, flow charts, data, client preferences, history and other information, computer software, technology, operations, solutions, tools, marketing and development plans, investors, transactions, acquisitions, marketing plans, strategies and forecasts and other technical or business information, regarding existing and/or contemplated products, processes, techniques or know-how, or any data or information developed by me pursuant to the performance of my services hereunder.

ECF 31-1, ¶ 2.

The topics included in this list are for the purpose of "maintain[ing] and preserv[ing] the value and goodwill of the Company, as well as the proprietary and other legitimate business interests of the Company." *Id.* ¶ 8(a). MSA could have drafted a confidentiality agreement that included a laundry list of unnecessary topics such as lunch menus, holiday schedules, fight-songs, private personal information, and/or any information regarding the 500+ companies that former-President Trump or his family members own. But it did not. The NDA includes only the topics necessary to protect MSA's confidential business information and DoS's confidential information. *See e.g.*, *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 336 (E.D.N.Y. 2020) (finding that the restrictive covenants "appear to be reasonably calculated to further plaintiff's legitimate interests in protecting its goodwill, customer relationships and confidential information" and "are reasonable under the circumstances of this case.").

The confidentiality agreement in the NDA passes the *Ashland* "test." None of the topics listed in the NDA prevent Plaintiff, in any manner, from being a veterinarian, or pursuing her livelihood. *See Ashland Mgmt. Inc., v. Altair Investments NA, LLC*, 869 N.Y.S. 2d 465, 471 (N.Y. App. Div. 2008). Plaintiff's only restriction is to not discuss or disclose the confidential information listed in the NDA as it relates to (and is the sole property of) MSA and/or the DoS. Plaintiff is perfectly capable of remaining a veterinarian and caring for animals without disclosing the Federal Government's confidential information.

At this point in the litigation, MSA is only required to plead what is necessary to show that "a claim to relief [] is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). MSA has done so by providing information relating to the NDA (ECF 31, ¶¶ 11, 13, 14, 15, 16, 17, 18), and by providing information relating to Plaintiff's breach of the NDA by making disclosures to "persons and bodies" outside the scope of 41 U.S.C. § 4712(2) (ECF 31, ¶¶ 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32). Taking those statements listed above as factually true, MSA has pled facts sufficient to survive a motion to dismiss.

Dismissal at this stage in the litigation would be improper, as little discovery has taken place. *See, e.g.*, *Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 361 (2015) (Dismissal of a breach of contract claim "at this early stage of the action when little discovery has taken place" is inappropriate "based on the non-solicitation provision in [an] employment agreement.")

**2. MSA Has a Legitimate Interest in Protecting MSA and State Department Confidential Customer Information.**

In New York, "courts have recognized four legitimate interests that may be asserted to support a restrictive covenant: (1) protection of trade secrets, (2) protection of confidential customer information, (3) protection of the employer's client base, and (4) protection against

irreparable harm where the employee's services are unique or extraordinary." *See Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 694 (S.D.N.Y. 2017) (internal citations omitted).

MSA has pled facts sufficient to show that MSA's legitimate interest is the "protection of confidential customer information" concerning the DoS. *Id.* To plead that information is "confidential customer information" MSA "must demonstrate that the information is not known in the trade and is only discoverable through extraordinary efforts." *Silipos, Inc. v. Bickel*, No. 1:06-CV-02205, 2006 WL 2265055, at *5 (S.D.N.Y. Aug. 8, 2006).

All of the information provided to MSA, and MSA's employees, is direct confidential information from the DoS. In order to participate in the DoS contract, MSA had to agree to "stringent requirements relating to the protection of confidential information of the State Department." ECF 31, ¶ 9. Part of the stringent requirements includes "confidentiality provisions prohibiting MSA and its employees from communicating about non-public information about the performance of services under the contract." *Id.* at ¶ 10. Not only did Plaintiff threaten to make public disclosures of confidential information, she actually did so. *Id.* at ¶¶ 19, 20, 27, 28. This includes telling media and non-governmental entities "confidential and extremely sensitive information, some of which [Plaintiff] should not have been in possession of." *Id.* at ¶ 20. Plaintiff also "repeatedly emailed sensitive company (and/or USG) materials from her MSA email accounts to her personal email, and to third persons (outside of the Federal Government) . . . ." *Id.* at ¶ 23.

All of the information that Plaintiff disclosed to media outlets and non-governmental entities is information that the DoS deems confidential and is not public knowledge. The information is not "known in the trade" and is certainly not "discoverable through extraordinary efforts." Plaintiff gave the information to media outlets and non-governmental entities through illegal and/or impermissible measures. MSA has sufficiently pled that MSA has a "legitimate

interest" in protecting confidential customer information pursuant to MSA's confidentiality requirements set forth in the DoS contract.

### 3. MSA's Restrictive Covenant is Not Harmful to the General Public.

Plaintiff states that "disclosures about [] fraud, waste, and abuse of a government contractor are, by definition, matters of public concern because Congress has specifically authorized and encouraged such disclosures through its 2013 addition of 41 U.S.C. § 4712 . . . ." ECF 26 at 22. Plaintiff is incorrect. Section 4712(1) states in its entirety:

> An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing ***to a person or body described in paragraph (2)*** information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

*See* 41 U.S.C. § 4712(1) (emphasis added).

The "persons and bodies" described in paragraph (2) of § 4712 are as follows:

a.    A Member of Congress or a representative of a committee of Congress;
b.    An Inspector General;
c.    The Government Accountability Office;
d.    A Federal employee responsible for contract or grant oversight or management at the relevant agency;
e.    An authorized official of the Department of Justice or other law enforcement agency;
f.    A court or grand jury;
g.    A management official or other employee of the contractor, subcontractor, grantee, or subgrantee who has the responsibility to investigate, discover, or address misconduct.

*Id.* at § 4712(2).

What is *not* included on that list of allowable "persons and bodies" is notable. Plaintiff's personal email account is not included. *See* ECF 31, ¶ 23. Third persons outside of the Federal government are not included. *Id.* NBC 4, the Washington, D.C. NBC affiliate, is not included. *Id.*

at ¶ 27. The Washington Post is not included. *Id.* Ellen Nakashima at the Washington Post is not included. *Id.* at ¶ 28. David Paredes at NBC 4 Washington is not included. *Id.* Carol Morello at the Washington Post is not included. *Id.* Scott MacFarlane at NBC 4 Washington is not included. *Id.* Katie Leslie at NBC 4 Washington is not included. *Id.* Plaintiff admits to disclosing information to these individuals and media outlets. *Id.* None of the foregoing are protected disclosures to "persons or bodies" identified in 41 U.S.C. § 4712(2), nor does this civil action to enforce MSA's contract rights under the NDA constitute a "discharge" "demotion," or "discrimination as a reprisal." 41 U.S.C. § 4712(a)(1).

MSA is not asserting that Plaintiff is in violation for any protected whistleblower activity. Rather, MSA is asserting that Plaintiff violated her confidentiality restrictions by disclosing MSA's and the DoS's sensitive and confidential information to persons and bodies not included in § 4712(2)'s list of appropriate "persons and bodies." MSA's restrictive covenant is not harmful to the general public or a matter of public concern.

### 4. MSA's Restrictive Covenant is Not Unreasonably Burdensome to Plaintiff.

MSA's NDA is not unreasonably burdensome to Plaintiff, as it is reasonable in time and area, necessary to protect MSA and the DoS's legitimate interest of protecting confidential customer information and is not harmful to the general public. *See BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999).

Plaintiff argues that the *Denson* ruling applies here because Plaintiff's NDA is vague, overbroad, and contains "undefined terms" which prohibits Plaintiff from having any "way of knowing what may be disclosed . . . at any time." ECF 36 at 21. This is incorrect. The topics included in Plaintiff's NDA are for the purpose of protecting MSA and DoS's confidential information. *See e.g.*, *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 336

(E.D.N.Y. 2020) (finding that the restrictive covenants "appear to be reasonably calculated to further plaintiff's legitimate interests in protecting its goodwill, customer relationships and confidential information" and "are reasonable under the circumstances of this case."). The topics included in the NDA do not prevent Plaintiff, in any manner, from being a veterinarian, or pursuing her livelihood. *See Ashland Mgmt. Inc., v. Altair Investments NA, LLC*, 869 N.Y.S. 2d 465, 471 (N.Y. App. Div. 2008). Plaintiff's only restriction is to not discuss or disclose the confidential information listed in the NDA as it relates to and is the property of MSA and/or the DoS. Plaintiff is perfectly capable of remaining a veterinarian and caring for animals without disclosing the Federal Government's confidential information. Protecting Federal Government information is not an unreasonable request.

5. **Under New York Law, the Court Can, if Necessary, Partially Enforce the NDA.**

New York law permits partial enforcement of restrictive covenants. *See Ashland Mgmt. Inc. v. Altair Invs. NA, LLC,* 869 N.Y.S. 2d 465, 472 (N.Y. App. Div. 2008). Partial enforcement is permissible so long as it passes the common-law test for reasonableness set forth in *BDO Seidman v. Hirshberg*. *Id.* The "tripartite" test for reasonableness explains the covenant is "(1) no greater than is required for the protection of the legitimate interest of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public." *Id.* (quoting *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999)). The Court examines the facts to determine whether "the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing." *See BDO Seidman*, 712 N.E.2d at 12236. If so, "partial enforcement may be justified." *Id.*

Here, if the Court finds that a portion of the NDA is invalid, the Court may permit partial enforcement of the NDA. Plaintiff's NDA is "no greater than required for the protection of the legitimate business interest of [the DoS]" because, as stated above, the NDA's confidentiality provision is a direct requirement from the DoS and a direct flow-down from MSA's contract with the DoS. *See supra* III.B.3. The NDA does not impose "undue hardship" on Plaintiff because it only restricts Plaintiff from making unauthorized disclosures (meaning disclosures to persons and bodies not listed in 41 U.S.C. § 4712(2)). *See supra* III.D.3. The NDA is not injurious to the public because confidential documents owned by the DoS is not a matter of public concern. *Id.* Because the NDA passes the "tripartite" reasonableness test, it may be partially enforced, if necessary. The NDA can also be modified, pursuant to Section 8 of Plaintiff's NDA. ECF 31-1, ¶ 8; *see supra* Section III.B.4.

## IV.     CONCLUSION

MSA has pled facts sufficient to survive a motion to dismiss. If the court finds that MSA has not sufficiently pled facts surrounding the NDA, MSA respectfully requests the Court allow MSA to amend its counterclaim. Dismissal, without the opportunity to amend, would be inappropriate at this early stage of litigation. *See Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 361 (2015). For all the reasons state herein, Defendant MSA, respectfully requests that this Court deny Plaintiff's Motion to Dismiss and Plaintiff's Motion for Judgment on the Pleadings.

Respectfully submitted,

Date: August 3, 2022                    */s/ Ryan C. Berry*

_____
Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160

(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com

*Attorneys for Defendant Michael Stapleton*
*Associates, Ltd., d/b/a MSA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Jack Kolar
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St. NW, Suite 1100
Washington, DC 20006
(202) 926-3311
jackk@whistleblower.org

*/s/ Ryan C. Berry*

_____
Ryan C. Berry