UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **KAREN IOVINO,**<br><br>　　*Plaintiff,*<br><br>　**v.**<br><br>**MICHAEL STAPLETON ASSOCIATES, LTD.<br>　d.b.a. MSA SECURITY, INC.,**<br><br>　　*Defendant.* | **Case No. 5:21-CV-00064-TTC** |

## DR. KAREN IOVINO'S REPLY TO OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM

### 1.  The Motion to Dismiss Counterclaim  Must be Adjudicated Under Rule 56 as a Motion for Summary Judgment:

Counter-Defendant submits this Reply and the attached MSA-DoS Contract, which is referenced throughout the counterclaim, the motion to dismiss the counterclaim, the opposition to dismissal, and this reply.  Both parties are treating Dr. Iovino's motion to dismiss the counterclaim as a Fed.R.CivP. 12(d) conversion to summary judgment proceedings, each attaching evidence for the Court to consider, including MSA's attachment of the NDA to its counterclaim.  In turn, Dr. Iovino attached evidence to her Motion to Dismiss the counterclaim, i.e. the OIG report finding the NDA was unlawful for failing to comply with the FAR anti-gag rule mandate that all NDA's must explicitly incorporate notice of employee whistleblower rights to disregard the NDA and provide confidential information to listed government entities.[1]  In response to MSA's reference in its opposition the

---

[1] The Opposition does not seek to exclude the OIG report from the Court's consideration, and actively argues the merits thereof: "A mere "finding" of information in the OIG report along

documents in Counterclaim and request that the Court accept evidence proffers, Dr. Iovino in

turn now attaches the complete MSA-DoS 2016 Contract [2] downloaded from the Fourth

Circuit website where MSA had filed it as Ex. 17 in its Motion for Stay.  MSA followed suite

and attached evidence to its Opposition, i.e. the NDA itself. (ECF 31-1). Both parties have

extensively argued all of that evidence.  Therefore, the Court must either treat the motion to

dismiss counterclaim as a motion for summary judgment, or alternatively exclude the

exhibits the parties filed and their factual arguments based thereon. See Fed.R.Civ.P 12(d).[3]

---

with lax language such as "recommend" and "should" are not direct orders of termination or
rescindment, nor is it an "explicit" finding that "MSA's NDA was illegal." (Opp. p. 8).  The
OIG finding is clear and unequivocal that the 2016 NDA violates the Anti-Gag Statute,
adopted as FAR 48 C.F.R. § 3.909-2(a) et. seq.  because it does not "have a carve out that
specifically allows employees to report fraud, waste, or abuse to government officials." The
Court should give considerable weight to the OIG finding and analysis on partial summary
judgment, and accept MSA counsel's "factual proffer" without the need for amendment.

[2] Exhibit 1 hereto is the 2016 Contract, Exhibit 2 hereto is the Motion for Stay (both
excerpted).  The Court should take judicial notice of this exhibit.  See USCA4 Appeal: 18-
2381 Doc: 9 Filed: 11/16/2018 Pg: 105 of 188.  MSA's motion for stay and subsequent
remand were expressly based on the projected *de novo* whistleblower action to be filed by
Dr. Iovino in this Court.

[3] Rule 12(d) provides: " Result of Presenting Matters Outside the Pleadings. If, on a motion
under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to *and not excluded*
by the court, the motion *must be treated as one for summary judgment* under Rule 56. All
parties must be given a reasonable opportunity to present all the material that is pertinent to
the motion." (Emphasis added).  With the MSA-DoS contract and NDA in hand, and Dr.
Iovino accepting the Court's consideration of the factual content incorporated by footnotes 1
thru 8 of the counterclaim, the Court is fully equipped to determine enforceability.  As Judge
Cullen explained in *Fields v. Schmittinger*, Civil Action No. 7:21-cv-00225, 2022 U.S. Dist.
LEXIS 44575, at *6-8 (W.D. Va. Mar. 14, 2022):

> But there are exceptions to the general rule that a court may not consider any
> documents outside of the complaint when ruling on a motion to dismiss for
> failure to state a claim. See Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396
> (4th Cir. 2006). Specifically, "a court may consider official public records,
> documents central to a plaintiff's claim, and documents sufficiently referred
> to in the complaint so long as the authenticity of these documents is not
> disputed" without converting the motion to one for summary

*Reply/Request for Summary Judgment*

The factual arguments by each party about those exhibits are so pervasive that excluding

them is impracticable. Because each party has treated this matter as a Rule 12(d) conversion,

no further briefing is required and the matter is ripe for ruling.[4]

---

judgment. Id. (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999))

[4] As Judge Cullen explained in considerable detail regarding the restrictive covenants in employee NDAs in *Power Home Solar, LLC v. Sigora Solar, LLC*, Civil Action No. 3:20-cv-00042, 2021 U.S. Dist. LEXIS 163753, at *6 (W.D. Va. Aug. 30, 2021):

> The Fourth Circuit has ruled that "no formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6)motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion." Carter v. Balt. Cnty., 39 F. App'x 930, 933 (4th Cir. 2002) (per curiam) (reversing a district court for converting a Rule 12(b)(6) motion into a summary judgment motion without giving notice to the parties). A district court may also not convert a motion to dismiss without giving the plaintiff notice and a "reasonable opportunity to conduct discovery." Id.

And NDA cases on the issue of enforceability are especially appropriate for a Rule 12(d)

conversion:

> The enforceability of a restrictive covenant is a matter of law to be decided by the court. *Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*, 270 Va. 246, 618 S.E.2d 340, 342 (Va. 2005). And courts adjudicate the legality of restrictive covenants at various stages of the proceeding: some at a motion to dismiss (or demurrer in Virginia state court), and some at a motion for summary judgment. *See O'Sullivan Films, Inc. v. Neaves*, 352 F. Supp. 3d 617, 623-27 (W.D. Va. 2018)(summary judgment); *Capital One Fin. Corp. v. Kanas*, 871 F. Supp. 2d 520, 530-38 (E.D. Va. 2012) (summary judgment); *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 659-60 (W.D. Va. 2017) (motion to dismiss); *Specialty Mktg, Inc. v. Lawrence*, 80 Va. Cir. 214, 2010 WL 7375616, at *2-3 (Va. Cir. Ct. 2010) (demurrer).

2. __Statement of Undisputed Facts and Exhibits__

    __A. Statement of Facts__:  There are no factual disputes that would be material to rendering summary judgment on the enforceability of the NDA.  However, in compliance with LR 56(b),[5] the following statement of undisputed facts is submitted:

    (A)  All facts pleaded in the Counterclaim under the heading "Statement of Facts", except for legal argument and legal characterizations of those facts such as the terms "in violation of" or "in breach of".

    (B) The factual content set forth in footnotes 1 through 8 of the counterclaim.

    (C)  The following facts not specifically denied i the First Amended Complaint, Docket No. 30:

        11.  ***  In September 2015, the State Department issued an approximately $11 million, one-year contract to MSA for the operation of the CVC *** [and] in September 2016, the State Department issued a four-year contract with MSA for the operation of the CVC ***.

    (D) The following "factual proffer" by MSA[6] regarding by the OIG report:

        [1] The NDA that Plaintiff signed was never invalidated.

        [2] The DoS sent a letter to MSA requesting that MSA *either rescind or modify its agreements* to include the necessary language because the DoS (not MSA) was at risk of violating the Anti-Deficiency Act on August 21, 2018, over a year after Plaintiff's employment with MSA ended.

        [3] Accordingly, MSA modified its existing agreements for its current employees and *never rescinded any agreements* or created any new agreements.

        [4] This modification was only requested as to current employees (not including former employees).

        [5] At this point, Plaintiff was no longer an employee at MSA.

---

[5] LR 56(b) provides:  "Any motion for summary judgment or any other dispositive motion must contain a separately captioned section setting forth with specificity the material facts claimed to be undisputed together with specific record citations in support thereof."

[6] The OIG report itself sets forth most of the above factual proffer anyway.

*Reply/Request for Summary Judgment*

(Opp. p.9 and n.2, emphasis added).

**B.  Undisputed Exhibits**:  The following are the undisputed exhibits submitted by

the parties:

[1] The 2015 NDA.  Submitted by MSA with Counterclaim.

[2] The 2016 MSA contract with DoS, as filed with the Fourth Circuit by MSA as Ex. 17 to its Motion for Stay.  Submitted by Plaintiff (extracts) with this Reply.[7]

[3] First three pages of Fourth Circuit Motion for Stay identifying Ex. 17 MSA 2016 contract with DOS.  Submitted by Plaintiff (extracts) with this Reply.

[4] OIG report finding the 2015 NDA failure to comply with FAR anti-gag provision. Submitted by Plaintiff with this Reply.

## 3.  The NDA is Unenforceable because it Violates the Anti-Gag FAR:

The NDA is not only unenforceable and unmodifiable under New York Law, but

under the federal FAR anti-gag rules that the OIG cited. Now seeing that the anti-gag rules of

the FAR will trap MSA unless it can sustain an exception to applicability, the company

makes a hard attempt to claim the NDA with Dr. Iovino was "at the behest" of the DoS.  It

grossly fails in the attempt.

In a significant escalation of the paragraphs 9 to 11 of the Counterclaim, MSA makes

strong allegations that the NDA resulted from government fiat. Para. 11 only pleaded:

Pursuant to the confidentiality requirements in MSA's State Department contract, MSA entered into a "Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement" with Iovino.

But now in its opposition, that paragraph has essentially been repleaded to state the

government itself is the real party in interest that imposed the NDA on Plaintiff:

---

[7] The 2015 and 2016 DoS contracts with MSA contained the same requirements for confidentiality and whistleblower rights notifications.  In both its Counterclaim and Opposition, MSA refers to both contracts in the singular.

*Reply/Request for Summary Judgment*

> The restrictions found in the NDA are required by the DoS. The *broad restriction on disclosure* as to all matters pertaining to Plaintiff's duties and functions, and any knowledge gained by reason of performance of her services, was *a flow-down requirement from DoS's* contract with MSA. These restrictions are not arbitrary – *they are required by the DoS.*

(Opp. p. 10, emphasis added). [8]  MSA pleads the following "Special Contract Requirements"

contract provision H-009 labelled "Safeguarding Information" from contract number

SAQMMA16D0106 dated December 17, 2016 in support of enforceability:

> The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions. They *shall not communicate to any person any information known to them by reason of their performance of services under this contract* which has not been made public, except in the necessary performance of their duties or upon *written authorization of the Contracting Officer*. All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and *become the exclusive property of the U.S. Government.* Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed under this contract shall be published or disseminated through any media without the prior *written authorization of the Contracting Officer*. These obligations do not cease upon the expiration or termination of this contract. *The Contractor shall include the substance of this provision in all contracts of employment* and in all subcontracts hereunder.

(Opp. p. 11, emphasis added, Ex. 1 hereto).  The Opposition concluded: "Pursuant to the

above-referenced clause, MSA is required to insert a confidentiality provision in all of its

employment contracts ***."  However, as detailed below, MSA never did insert the

substance of the H-009 language in its NDA with Dr. Iovino.  The following claim in the

Opposition is clearly in error:

> Pursuant to the above-referenced clause, MSA is required to insert a confidentiality provision in all of its employment contracts for any employees working on the contract in question *(as Iovino did), which MSA does via its NDA.*

---

[8] Plaintiff stipulates that these revisions of the counterclaim should be allowed by the Court.

*Reply/Request for Summary Judgment*

(Opp. 10, emphasis added).  MSA did not do this with her NDA.  MSA agrees as it must that

the OIG's citation to FAR § 3.909-(b) codified as 48 C.F.R. § 3.909-2(a) is a correct

recitation, to wit:

> Since 2015, Congress has annually enacted a provision that prohibits Federal
> agencies from using appropriated funds for any contract "with an entity that
> requires employees or contractors of such entity seeking to report fraud,
> waste, or abuse to sign internal confidentiality agreements or statements
> prohibiting or otherwise restricting such employees or contactors from
> lawfully reporting such waste, fraud, or abuse to a designated investigative or
> law enforcement representative of a Federal department or agency authorized
> to receive such information."1Inorderfor a confidentiality agreement to be
> valid, it must have a carve out that specifically allows employees to report
> fraud, waste, or abuse to government officials.

The Opposition also admits its NDA with Dr. Iovino did not contain such a provision.

MSA draws the wrong legal conclusions.  First, it misunderstands its proffered facts

to mean that, per the OIG recommended options, "no such *modification* was necessary or

required for her NDA." (Opp. p. 9, emphasis added). However, a modification would be

moot to the DoS since Dr. Iovino had already been fired.  Instead, the appropriate OIG option

was to "promptly rescind" the NDA, since MSA fully intended to enforce the unlawful

agreements against former employees like Dr. Iovino.[9]

Second, MSA is also wrong in thinking that it was exempted under the "internal

confidentiality agreement" provision of FAR § 3.909-1(b), codified as 48 C.F.R. § 3.909-

2(a).  MSA's legal premise is ironically correct that the exception would apply to

"confidentiality agreements that contractor employees or subcontractors sign *at the behest of

a Federal agency*", but as set forth below, factually wrong because Dr. Iovino's NDA did not

---

[9] The issue of what to do with former employee NDAs was not the subject of the OIG report.
The OIG recommendation did not limit itself to current or former employees, but as a
practical matter, that is what DoS needed to avoid future violations of the Anti-Deficiency
Act it cites.

*Reply/Request for Summary Judgment*

meet that exception. Her NDA does not even reference a federal agency, a federal contract, or any kind of external law, much less claim that it is the product of the H-009 DoS fiat, or is intended to protect *government information or interests*. Quite the opposite.

Third, the NDA literally does not contain any provision for an employee to seek approval to transmit confidential information outside the company. Under H-009, Dr. Iovino would have been referred to the DoS contract officer to seek such approval. But the MSA NDA is an absolute prohibition of any disclosures to anyone, anywhere, no exceptions ever. As such, if the "internal confidentiality agreement" exception of FAR § 3.909-1(b) is inapplicable, MSA has conceded the violation.[10] The undisputed facts are clear that the NDA MSA had Dr. Iovino sign failed to meet that exception.

**4. Dr. Iovino's NDA was not "at the Behest of" the Federal Government:**

MSA argues that it was exempt from having to include the mandatory whistleblower anti-gag clause "Requirement to Inform Employees of Whistleblower Rights"[11] in the NDA because the NDA was presented to Dr. Iovino "at the behest" of the government. The DoS H-009 "special contract provision" provided that employees like Dr. Iovino must be told the "substance" of the purposes and processes for handling government confidential information under the NDA. That H-009 mandate is: "The Contractor shall include *the substance of this*

---

[10] Summary judgment can be rendered here without joining the Department of State as a party since the Court will have no need to construe any provision of its contract with MSA that would determine any right of DoS. That is because MSA already implemented the OIG ruling that the 2015 NDAs violated the FAR anti-gag rules. However, Dr. Iovino would contend if the matter of the government's own contract enforceability does come before the Court, then the DoS contract provision upon which MSA relies for its "at the behest of" argument is itself in violation of the anti-gag FAR rule.

[11] Section I of the DoS contract itself also required the provision as "Contract Clause" 52.203-17 "Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights (Apr 2014)".

*Reply/Request for Summary Judgment*

*provision in all contracts* of employment and in all subcontracts hereunder." (Hereafter "the substance of" clause). A contractor like MSA cannot claim the "behest of" NDA exception allowed by the "internal confidentiality agreement" provision of FAR § 3.909-1(b), *infra*, if that NDA fails to comply with the substance clause of H-009. That is, the FAR § 3.909-1(b) "at the behest of" clause and H-009 "substance of" clause are mutually dependent in any enforcement context. Not informing employees in the NDA that the confidential information belonged to the government and that the government could authorize them to disclose it was a material breach of the MSA-Dos contract. It undermines MSA's "at the behest of" argument that the NDA was mandated by and in furtherance of a government contract.[12]

No federal ownership, interest, or governmental nexus of any kind is referenced in the NDA as the H-009 "substance of" clause absolutely required. That makes it impossible for MSA to prove the following "behest of" assertions since each is belied by the text of the NDA itself:

[1] [T]here is a good faith reason to protect *the legitimate business interests of the DoS*. (Opp. p. 12, emphasis added).

[2] *All of the information provided to* MSA, and *MSA's employees*, is direct confidential information *from the DoS*. (Opp. p. 19, emphasis added).

[3] *All of the information that Plaintiff disclosed* to media outlets and non-governmental entities *is information that the DoS deems confidential* and is not public knowledge. (Opp. p. 19, emphasis added).

[4] The NDA is not injurious to the public because confidential documents *owned by the DoS* is not a matter of public concern. (Opp. p23, emphasis added).

---

[12] Dr. Iovino is skeptical of MSA's entire "behest of" exception legal argument, and rebuts it as a matter of law in the next section. However, given MSA can't meet that exception even if it exists, judgment can be entered on either argument.

*Reply/Request for Summary Judgment*

> [5] The confidentiality agreement in Plaintiff's NDA passes the Ashland
> "basic test" as Plaintiff's restraint is necessary *for the protection of Federal
> Government information* relating to MSA and the DoS. (Opp. p16, emphasis
> added).[13]

In addition to MSA's default of the H-009 "special contract requirements" and the 52.203-17

"contract clause", MSA's five "behest of" arguments above explicitly establish that *all the*

*confidential material Dr. Iovino disclosed belonged to DoS, not to MSA*, despite the NDA

claiming MSA was the exclusive owner.

First, MSA claims Dr. Iovino disclosed email, documents and records, and

photographs generated during the performance of work under the contract.[14]  All were the

property of the government under H-009:  "All documents and records (including

photographs) generated during the performance of work under this contract shall be for the

sole use of and *become the exclusive property of the U.S. Government."*  (Emphasis added).

Second, MSA's NDA falsely informed Dr. Iovino that MSA and *not the government*,

owned all the confidential information.  Para. 4 of the NDA provides:

> Return of Confidential Information: *All confidential information*, together
> with all notes and records relating thereto, and all copies, duplicates,

---

[13] By MSA's own authorities, it cannot pass the tests for the court to fix the NDA with
Iovino:

> Partial enforcement is permissible so long as it passes the common-law test
> for reasonableness set forth in BDO Seidman v. Hirshberg. Id. The "tripartite"
> test for reasonableness explains the covenant is "(1) no greater than is required
> for the protection of the legitimate interest of the employer; (2) does not
> impose undue hardship on the employee; and (3) is not injurious to the
> public." Id

[14] See Counterclaim Compl., Docket No. 31,  ¶ 24: "Counterclaim-Defendant's unauthorized
disclosures include, but are not limited to, internal MSA emails, photographs, reports, and
assessments concerning MSA's State Department contract."  See also  *Id.* ¶ 38:
"Counterclaim-Defendant breached the Non-Disclosure Agreement when she disclosed
MSA's confidential information, including confidential internal communications,
confidential internal photographs, to the Washington Post and NBC 4 Washington."

*Reply/Request for Summary Judgment*

reproductions, facsimiles or except thereof in my possession, *are the exclusive property of the Company*. \*\*\*

(Emphasis added).[15]

Third, Dr. Iovino's NDA reflects on its face that it was not even remotely tailored to implement H-009.

Finally, in addition to MSA ignoring the H-0009 mandate that MSA employees be informed that they are handling confidential government materials, the NDA also failed to inform Dr. Iovino that she could seek permission to disclose the animal mistreatment information and photos "upon written authorization of the Contracting Officer". Not being informed of that channel for official disclosure served only the private interests of MSA, and not at all the interest of the government.

MSA's "at the behest of" argument must be rejected as a matter of fact.

---

[15] The NDA does not define this "confidential information" *as that of the governmen*t, nor as having been acquired in service *of the government contract*. But the NDA makes clear in para. 2 that:

> 2. Confidential Information: I acknowledge that for the purposes of this Agreement, the term confidential information means all information financial, technical or otherwise in whatever form written, oral or otherwise which is disclosed to me or *acquired by me in the course of my employment* \*\*\* or any data or information developed by me pur*suant to the performance of my services* hereunder.

(Emphasis added). That is the same definition of confidential information contained in the MSA-DoS contract being performed by MSA employees: "any information known to them by reason of their performance of services under this contract". Thus, MSAs NDA claimed exclusive ownership of confidential information owned exclusively by the "U.S. Government."

*Reply/Request for Summary Judgment*

**5.  Federal Anti-Gag Rules Establish Critical Whistleblower Disclosure Channels to Prevent Contractors Like MSA from Impeding the Flow of Regulatory Information from Employees Like Dr. Iovino:**

In federal whistleblower statutes, "Congress made crystal clear its intent that *any* whistleblower who reports misconduct via one of the enumerated channels be protected under federal whistleblower statutes." *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 449 (S.D.N.Y. 2013).  Congress prescribes whistleblower disclosure channels so that regulatory agencies can get the information they need to protect the public good. *See Doyle v. United States Sec'y of Labor*, 285 F.3d 243, 254 (3d Cir. 2002) *dissent* ("compelling public interest in keeping channels of information open");  *Passaic Valley Sewerage Comm'rs v. United States Dep't of Labor*, 992 F.2d 474, 479 (3d Cir. 1993) (whistleblower "protection is necessary to prevent [governmental] channels of information from being dried up by employer intimidation", cited by *Gaffney v. Riverboat Servs.*, 451 F.3d 424, 450 n.28 (7th Cir. 2006)). "An employee's communications can fall into three categories: (1) disclosures made as part of normal duties through normal channels, (2) disclosures made as part of normal duties outside of normal channels, and (3) disclosures made outside of normal or assigned duties."  *Killgore v. Specpro Prof'l Servs., LLC*, No. 5:18-cv-03413-EJD, 2019 U.S. Dist. LEXIS 218561, at *19-20 (N.D. Cal. Dec. 19, 2019).

The federal "Anti-Gag Statute" which prohibits contractor internal NDA's that do not explicitly protect whistleblower disclosure channels is found in section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts. The anti-gag rules have been explicitly codified in the Federal Acquisition Regulation (FAR) to enforce the rules in every aspect of contracting regarding MSA from bidding and selection to contract

operation to enforcement. *See* 48 C.F.R. §§ 3.909-1, 3.909-2, 3.909-3, 52.203-18 and 52.203-19. Under this cradle-to-grave in the lifecycle of federal contracts, non-compliance means no federal funds can be paid to the contractor.[16] These FAR rules mandate that standard and special provisions be inserted in all contracts to prevent disclosure channel obstruction.[17]  All federal employee supervisors are also prohibited from allowing or enforcing gag provisions within the workforce of civil servants and contractor employees they manage.  5 USC § 2302(b)(13).

MSA's opposition argues for a legally absurd exception to anti-gag rule requirements. The company contends that under it's NDA, 48 C.F.R. § 52.203-19 gives it a pass on including anti-gag language otherwise required.  MSA claims that its confidentiality agreement with Dr. Iovino was promulgated "at the behest of a Federal agency".[18]  However, § 52.203-19 subsection (a) allows only limited special exceptions from the subsection (b) anti-gag provision in the exceptional circumstances.  Those are "confidentiality agreements

---

[16] Hence, the OIG report (ECF Doc. 36-1) concluded: "Until MSA Security rescinds or modifies its confidentiality agreement, the Department is at risk of violating the Anti-Deficiency Act."  The footnote to this conclusion states:

> 31 U.S.C. § 1341(a)(1)(A). The Department has no funds available for a contract with an entity that uses a prohibited confidentiality agreement, so any funds expended for such a contract would exceed the amount available for such an obligation. Government Accountability Office, Anti-Deficiency Act—Applicability to Statutory Prohibitions on the Use of Appropriations (B-317450, March 23, 2009).

[17] Thus, the DoS-MSA contract contains mandatory contract clause 52.203-17, "Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights (Apr 2014)".

[18] At the "behest" of means "a command, injunction, bidding, "*Progressive Cas. Ins. Co. v. FDIC*, 80 F. Supp. 3d 923, 947 (N.D. Iowa 2015), or "an order, command, or earnest request". *Bernstein v. Genesis Ins. Co*., 90 F. Supp. 2d 932, 938 (N.D. Ill. 2000).  It does not mean an ordinary contract provision.

*Reply/Request for Summary Judgment*

arising out of civil litigation" or federal agency prescribed NDAs for particular employees or

subgroups, i.e., where "contractor employees *** sign at the behest of a Federal agency."[19]

MSA's position on its face sparks natural skepticism.  First, courts do not read one

section of a statute or regulation to nullify the adjoining section absent clear drafter intent

appearing in the text. *See United States v. Farkas*, 149 F. Supp. 3d 685, 698 (E.D. Va. 2016),

citing *Liteky v. United States*, 510 U.S. 540, 553, n.2 (1994) ("it is

poor statutory construction to interpret (a) as nullifying the limitations (b) provides, except to

the extent the text requires".)  Second, courts will not adopt regulatory constructions that are

absurd when viewing the overall regulatory context. *United States v. Boynton*, 63 F.3d 337,

344 (4th Cir. 1995) explained:

> And just as interpretations of a statute which would produce absurd results are
> to be avoided if alternative interpretations consistent with the legislative
> purpose are available, so too interpretations of a regulation which would
> produce absurd results may be avoided by adopting an alternative
> interpretation consistent with the regulation's purpose.

(Internal quotes and citations omitted.)   MSA's position is legally absurd because if the

subsection (a) language "at the behest of" simply means generally required of contractors,

--------

[19] The exception appears to have been made effective in January 2017 long after Dr.
Iovino's NDA and the MSA 2015 and 2016 contracts. § 52.203-19 states:  "As prescribed
in 3.909-3(b), insert the following clause: Prohibition on Requiring Certain Internal
Confidentiality Agreements or Statements (Jan 2017) ***".  As to NDA that predated this,
subsection (c) deals with retroactivity:

> (c) The Contractor shall notify current employees and subcontractors that
> prohibitions and restrictions of any preexisting internal confidentiality
> agreements or statements covered by this clause, to the extent that such
> prohibitions and restrictions are inconsistent with the prohibitions of this
> clause, are no longer in effect.

MSA has not contended it gave Dr. Iovino any such notification. And of course, MSA
appears to assume that the OIG didn't know anything about this "at the behest of" exception.

*Reply/Request for Summary Judgment*

then the anti-gag requirement of subsection (b) was automatically obliterated by subsection (a).[20]  MSA has not argued its contract is in some special class of DoS contracts, or that Dr. Iovino is a special contractor employee that DoS commanded be exempt from an anti-gag NDA.

### 6.  <u>Federal Courts Applying New York NDA Law say no to "Blue Penciling" NDA Modifications</u>:

Given the wholesale violation of the H-009 "special contract requirements" and the 52.203-17 "contract clause", the NDA could hardly be more in violation of public policy. To survive in any form, the NDA would need this Court to rewrite it.  To that New York courts give a fervent "no".  As held in *Denson v. Donald J. Trump for President, Inc*., 530 F. Supp. 3d 412, 435-36 (S.D.N.Y. 2021):

> So-called "blue penciling" by courts typically involves paring down restrictive covenants — generally non-compete provisions — as to their duration and geographical scope. The paring down — simple in nature — takes place in the context of granting injunctive relief. *** "Blue penciling" is not appropriate here. As an initial matter, "blue penciling" in this case would involve much more than a paring down of duration and geographical scope. In order to render the non-disclosure and non-disparagement provisions enforceable, the court would have to engage in a wholesale re-drafting of these provisions.

The court concluded:

> The Employment Agreement's non-disclosure provision does not meet any of the elements of the Ashland test. As to whether the provision is "reasonable in time," the provision has no time limitation. It applies "[d]uring the term of

---

[20] Subsection (b) provides:

  (b) The Contractor shall not require its employees or subcontractors to sign or comply with internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or subcontractors from lawfully reporting waste, fraud, or abuse related to the performance of a Government contract to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information (*e.g.*, agency Office of the Inspector General).

*Reply/Request for Summary Judgment*

your service and at all times thereafter.")As to the scope of the provision, it is — as a practical matter — unlimited. "Confidential Information" includes thirty-five categories of "private, proprietary, or confidential" information. Many of the categories — including "personal life," "relationships," and "political and business affairs" — are vague, and none of the categories are further defined or limited.

Id at 432. MSA's claims it meets the *Ashland* test strains credulity. *Cambridge Capital LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 470-71 (S.D.N.Y. 2021):

> Under Ruby Has's interpretation, Cambridge Capital would be liable for breach of the NDA if 15 or 20 or 50 or more years after the event, it somehow let slip information about Ruby Has's financial performance in 2020 or the terms under which it was willing to sell a portion of its company to Cambridge Capital. The law, however, disfavors agreements to keep non-trade-secret information confidential for a duration that is not limited even where the agreement is drafted explicitly to contain no limitation.

The same result must obtain here.

Paragraph 3 of the NDA sets its term as perpetual for Dr. Iovino: "During the term of my employment, and for all times thereafter." H-009 appears to suffer a somewhat lesser legal flaw: "These obligations do not cease upon the expiration or termination of this contract." That does not state perpetuality like MSA does but it is still impermissibly indeterminate. See, *Power Home Solar, LLC v. Sigora Solar, LLC*, Civil Action No. 3:20-cv-00042, 2021 U.S. Dist. LEXIS 163753, at *19-21 (W.D. Va. Aug. 30, 2021), *Darton Environmental, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1030 (W.D. Va. 2018), and *Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 341 (E.D. Va. 2015), *aff'd*, 690 F. App'x 822 (4th Cir. 2017). The court will not enforce such NDAs.

Respectfully submitted,

/s/ Thad M. Guyer

_____
Thad M. Guyer
T.M. Guyer and Ayers & Friends, PC

*Reply/Request for Summary Judgment*

John A. Kolar
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K Street, N.W. Suite 1100
Washington, D.C. 20006

 Nate L. Adams III
(VSB No. 20707)
ADAMS AND ASSOCIATES, , P.C.
11 S. Cameron Street
Winchester, VA 22601

Ned Miltenberg
LAW OFFICES OF NED MILTENBERG
5410 Mohican Road -- Suite 200
Bethesda, MD 20816

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the below listed counsel for the Defendant at the address and by the methods indicated on August 8, 2022:

Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102

(202) 331-8160
(202) 505-7100 Fax

ryan@wardberry.com dan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd. d/b/a MSA Security, Inc.*

Methods of Service:

      Email: Yes
      US Mail:  No

                          /s/ Thad M. Guyer

                          _____

                          Thad M. Guyer

*Reply/Request for Summary Judgment*