**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | |
|---|---|
| **KAREN IOVINO,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**MICHAEL STAPLETON ASSOCIATES, LTD. d.b.a. MSA SECURITY, INC.,**<br><br>*Defendant.* | Case No. 5:21-CV-00064-TTC |

**PLAINTIFF'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND OBJECTIONS TO PROPOSED ORDER PROVISIONS**

Plaintiff opposes entry of MSA's Motion for Protective Order and specific provisions of the proposed protective order, as specific in Exhibit 1 hereto.[1] Exhibit 2 hereto, Plaintiff's letter legal brief to MSA dated July 12, 2022, sets forth her legal points and authorities in support of this opposition and objections. Plaintiff's counsel referenced this letter in his argument during the October 12, 2022 teleconference.

This discovery dispute does not arise in vacuum, and courts are required to consider the specific claims and contexts of the litigation for which a party seeks to prevent democratic transparency to the public and press.[2] The presumption is against protective orders which

[1] Exhibit 1 is a redline by Plaintiff of MSA's proposed protective order [ECF Doc. #64]. To achieve the FRCP Rule 1 just, speedy and inexpensive determination of this action, Plaintiff does not object to most of the proposed protective order provisions given that the AEO and "Highly Confidential" categories have been removed.

[2] On May 10 and May 25, 2022, respectively, Dr. Iovino served Plaintiff's first and second Requests for Documents and First Set of Interrogatories. On June 9, 2022, MSA responded with objections and refusals to produce the requested documents. After five months, not a single document has been produced.

obstruct the public's access to their courts, and a court is obligated to identify the justifications for that obstruction. Simply adopting a version of MSA's proposed protective order without findings of justification cannot suffice. MSA has a burden of proof and persuasion that any protective order whatsoever is required,[3] and the Court needs to state how that burden has been met. Because of the public's interests, a court may not simply adopt a stipulated protective order, it must be an affirmative judicial act based on the demonstrated merits.

Dr. Karen Iovino and the Government Accountability Project press public transparency with its opposition and objections against the apparently once joint efforts of MSA and DoS to defeat it.[4] The federal "Anti-Gag Statute" prohibits contractor confidentiality policies and

---

[3] As recently made clear:

> [T]he party "resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). Thus, once the moving party has made "a prima facie showing of discoverability," the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought "is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery." *Id.* (internal quotation marks omitted).

*Res. at Winchester I, LLC v. R 150 SPE, LLC*, Civil Action No. 3:21cv00008, 2022 U.S. Dist. LEXIS 177447, at *15-18 (W.D. Va. Sep. 28, 2022) (Hoppe, J.).

[4] After the AUSA stated in the teleconference that DoS "does not have a dog in this fight", it is unclear if such a joint effort still exists. In any event, the DoS could not, nor MSA as its proxy, impose its contract provisions and policies by inventing confidentiality barricades against the public that Congress has not directed. Robert MacLean and the Government Accountability Project successfully pressed this transparency argument in a related government gag order context for our clients in *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 397, 135 S. Ct. 913, 922-23 (2015):

> The situation is different when it comes to a statute giving an agency discretion to prohibit the disclosure of information. The information is not prohibited from disclosure by statute regardless of what the agency does. It is the agency's exercise of discretion that determines whether there is a prohibition at all. Thus, when Section 114(r)(1) gave the TSA the discretion to prohibit the disclosure of information, the statute did not create a prohibition—it gave the TSA the power to

provisions that do not explicitly protect whistleblower disclosure channels is found in section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts. The anti-gag rules have been explicitly codified in the Federal Acquisition Regulation (FAR) to enforce the anti-gag rules in every aspect of contracting regarding MSA from bidding and selection to contract operation to enforcement. *See* 48 C.F.R. §§ 3.909-1, 3.909-2, 3.909-3, 52.203-18 and 52.203-19.[5] These FAR rules mandate that standard and special provisions be followed in imposing confidentiality restrictions on employees.[6] DoS managers and Touhy officials, like all federal employee supervisors, are prohibited from allowing or enforcing gag provisions within the workforce of civil servants and contractor employees they manage. 5 USC § 2302(b)(13).

---

> create one. And because Section 114(r)(1) did not create a prohibition, MacLean's disclosure was not "prohibited by law" under Section 2302(b)(8)(A), but only by a regulation issued in the TSA's discretion

This Court should be mindful of the statutory context of the present case in considering whether to enable MSA to free-wheel a stamp of "Confidential" on every relevant document in this case pursuant to proposed protective order Paragraph 2(a)(3) and Paragraph 23.

[5] Under this cradle-to-grave lifecycle of federal contracts, non-compliance means no federal funds can be paid to the contractor. Hence, the OIG report (ECF Doc. 36-1) concluded: "Until MSA Security rescinds or modifies its confidentiality agreement, the Department is at risk of violating the Anti-Deficiency Act." The footnote to this conclusion states:

> 31 U.S.C. § 1341(a)(1)(A). The Department has no funds available for a contract with an entity that uses a prohibited confidentiality agreement, so any funds expended for such a contract would exceed the amount available for such an obligation. Government Accountability Office, Anti-Deficiency Act—Applicability to Statutory Prohibitions on the Use of Appropriations (B-317450, March 23, 2009).

[6] Thus, the DoS-MSA contract contains mandatory contract clause 52.203-17, "Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights (Apr 2014)".

The final minutes of the Court's October 12, 2022 teleconference with the parties over this discovery dispute became confusing and contentious with MSA raising an alarm that the Government Accountability Project was pursuing its public interest mission at the expense of Dr. Iovino.[7] Despite five references to DoS indirect control over discovery in this case, including a specific *Touhy* reference on page three of the parties Joint Statement of the discovery dispute, MSA asserted in the teleconference that the *Touhy* issue was not before the Court.[8] It made that insistence even after the AUSA stated DoS did "not have a dog in the fight" regarding the protective order conflict. The Court indicated it was not sufficiently familiar with Paragraph 24 (and hence Paragraph 2(a)(iii) as well) of MSA's proposed protective order. Paragraph 24, now

---

[7] Such dog whistles in Virginia were struck down in *NAACP v. Button*, 371 U.S. 415, 438, 83 S. Ct. 328, 340-41 (1963):

> Specifically, Virginia contends that the NAACP's activities in furtherance of litigation, being "improper solicitation" under the state statute, fall within the traditional purview of state regulation of professional conduct. However, the State's attempt to equate the activities of the NAACP and its lawyers with common-law barratry, maintenance and champerty, and to outlaw them accordingly, cannot obscure the serious encroachment worked by Chapter 33 upon protected freedoms of expression.

Thankfully, this Court intervened when MSA went so far as to urge the Court to prescribe in advance how it would punish GAP and Dr. Iovino should they illicitly transgress the protective order's proposed gag provisions.

[8] Page 3 of the Joint Statement, which Plaintiff's counsel read to the Court in the first three minutes of his argument, contains the following assertion by Defendant:

> While Plaintiff's counsel might seek to make a cottage industry out of suing Defendant, allowing the willy-nilly sharing of such confidential information should not be tolerated (much less encouraged) by the Court. Perhaps more importantly, having such a glaring "hole" in the protective order would give the Department of State an even greater case of heartburn and would likely have a further chilling/delaying effect on the *Touhy* process.

renumbered as Paragraph 23 in MSA's proposed protective order filed with the Court after the teleconference [ECF Doc. # 64] provides:

> 23. Any documents related to Contract No. SAQMMA16D0106, may only be produced and/or used in this litigation pursuant to the Department of State's ("DoS") approval of a *Touhy* request by the requesting party.

Proposed Paragraph 23 must be read in conjunction with Proposed Paragraph 2(a)(iii) which provides:

> "Confidential Information" shall mean all documents and testimony, and all information contained therein, containing: *** Any documents deemed Confidential Information by the United States Government, including, but not limited to documents related to Contract No. SAQMMA16D0106.

Adopting these provisions would render entry of the protective order, and the teleconference discussion, a farce because MSA has already stated unequivocally in the record [9] that it must and shall designate every document relevant to this case as "Confidential".

Pursuant to 48 C.F.R. § 52.203-19, MSA claimed in its Opposition to Motion to Dismiss Counterclaim [ECF Doc. # 46] that its confidentiality rules were promulgated "at the behest of a Federal agency".[10] In paragraphs 9 to 11 of its Counterclaim [ECF Doc. #31, p.41], MSA asserted that this confidentiality rule is the product of government fiat. Para. 11 pleaded:

---

[9] The following exhibits are already in the record at the indicated ECF Docket #s:

> [1] The 2016 MSA contract with DoS, as filed with the Fourth Circuit by MSA as Ex. 17 to its Motion for Stay. [ECF Doc. # 48-1].
>
> [2] First three pages of Fourth Circuit Motion for Stay identifying Ex. 17 MSA 2016 contract with DOS. [ECF Doc. # 48-2].
>
> [3] OIG report finding the 2015 NDA failure to comply with FAR anti-gag provision. [ECF Doc. # 36-1].

[10] At the "behest" of means "a command, injunction, bidding, "*Progressive Cas. Ins. Co. v. FDIC*, 80 F. Supp. 3d 923, 947 (N.D. Iowa 2015), or "an order, command, or earnest request".

> Pursuant to the confidentiality requirements in MSA's State Department contract, MSA entered into a "Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement" with Iovino.

MSA further elaborated in its Opposition to Motion to Dismiss Counterclaim [ECF Doc. #46, p. 15]:

> The restrictions found in the NDA are required by the DoS. The *broad restriction on disclosure* as to all matters pertaining to Plaintiff's duties and functions, and any knowledge gained by reason of performance of her services, was *a flow-down requirement from DoS's* contract with MSA. These restrictions are not arbitrary – *they are required by the DoS*.

(Emphasis added). MSA's Opposition insists its must follow the DoS contract and implement the following "Special Contract Requirements", i.e. contract provision H-009 labelled "Safeguarding Information" from contract number SAQMMA16D0106 dated December 17, 2016, in support of enforceability:

> All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and *become the exclusive property of the U.S. Government.* Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed under this contract shall be published or disseminated through any media without the prior *written authorization of the Contracting Officer*. These obligations do not cease upon the expiration or termination of this contract.

(ECF Doc. #46, p. 15, Emphasis added).

To adopt MSA's proposed protective order paragraphs 2(a)(iii) and 23 would be to doom this case to even more outrageous delay and continuing discovery disputes.

Respectfully submitted,

/s/ Thad M. Guyer

______________________________
Thad M. Guyer
T.M. Guyer and Ayers & Friends, PC

---

*Bernstein v. Genesis Ins. Co.*, 90 F. Supp. 2d 932, 938 (N.D. Ill. 2000). It does not mean an ordinary contract provision.

John A. Kolar
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K Street, N.W. Suite 1100
Washington, D.C. 20006

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the below listed counsel for the Defendant at the address and by the methods indicated on October 13, 2022:

Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102

(202) 331-8160
(202) 505-7100 Fax

ryan@wardberry.com dan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd. d/b/a MSA Security, Inc.*

*And*

Krista Consiglio Frith
Assistant United States Attorney
Virginia Bar No. 89088
United States Attorney's Office
P. O. Box 1709
Roanoke, VA 24008-1709
Telephone: (540) 857-2250
Facsimile: (540) 857-2283
E-mail: Krista.Frith@usdoj.gov

*Attorney for U.S. Department of State*

Methods of Service:

Email: Yes
US Mail: No

/s/ Thad M. Guyer
______________________________
Thad M. Guyer