EXHIBIT 2

GOVERNMENT ACCOUNTABILITY PROJECT

1612 K Street NW Suite 1100
Washington, DC, 20006
(202) 457-0034
Whistleblower.org

July 12, 2022 (Corrected version sent at 5:05 pm)

Via Electronic Mail

Daniel Ward, Esq.
Ward & Berry, PLLC
2000 Pennsylvania Ave, N.W.
Suite 7000
Washington, D.C. 20006

**RE: Dr. *Karen Iovino v. Michael Stapleton Assoc., Ltd.*, Case No. 5:21-CV-00064- TTC (W.D. Va.) — Response to MSA's June 24, 2022 letter regarding "*Touhy* regulations"**

Dear Dan:

This is in response to your letter dated June 24, 2022. We continue to contend that MSA has a duty to respond and produce pursuant to Plaintiff Dr. Iovino's discovery requests notwithstanding any provision(s) of its contract with the Department of State ("DoS"). MSA is in serious default of that duty, and MSA's default is prejudicing Dr. Iovino's ability to prove her case, not to mention making it impossible for MSA to establish its asserted counterclaim against her. Your letter ignores the most elementary principles about discovery in Federal court litigation governed by the Federal Rules of Civil Procedure. Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In fact, Rule 26(a)(1)(A)(ii) imposes an obligation on a party to disclose **prior to, and in the absence of, receiving a discovery request**:

> a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that **the disclosing party has**

**in its possession, custody, or control and may use to support its claims or defenses….**

Rule 34, providing for requests for documents, is consistent. Rule 34(a) provides in pertinent part: "A party may serve on any other party a request within the scope of Rule 26(b) . . . (1) to produce . . . (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations— . . . ." Plaintiff Iovino has served two of such sets of Rule 34 requests for documents on MSA. MSA has yet to produce even a single item in compliance with those requests. Under both rules, the test for whether a "party" (MSA here) has an obligation to disclose a document is whether that party has a document in its "possession, custody, or control." The test manifestly is **NOT** whether a party "owns" a document. *See, e.g., Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 n.3 (D. Colo. 1992).

"The federal courts have universally held that documents are deemed to be within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials or has the legal right to obtain the documents on demand." *Id.* at 110. *See also Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Under Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand.") "Control" also includes the "practical ability to obtain the materials sought on demand." *Steele Software Systems, Corp. v. DataQuick Information Systems, Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006); *Southampton Pointe Property Owners Association, Inc. v. OneBeacon Insurance Company*, 2013 WL 12241830 (D. S.C. Aug. 27, 2013) ("While the U.S. Court of Appeals for Fourth Circuit has not interpreted 'control' for the purposes of Rule 34, other U.S. Court of Appeals and District Courts within this Circuit have defined control to mean either (1) the legal right to obtain the document on demand; or (2) **the practical ability to obtain the document**.) (emphasis added).

Relevant factors in determining whether a party to whom a Rule 34 request is directed has "control" over documents of a third party include "whether the related entities exchange documents in the ordinary course of business, and whether the nonparty has participated in the litigation." *Steele Software Systems, Corp. v. DataQuick Information Systems, Inc.*, at 564.

Here, it is apparent that MSA and the DoS exchange documents in the ordinary course of their contractual dealings. MSA is obligated under its contract to deliver various documentary deliverables and reports to the DoS. For example, See Contract SAQMMA16D0106, section 3.7.2, MSA provides "Log Reports" and "Incident Reports"; Clause F-003, "Reporting Deliverables". And, MSA cannot reasonably deny that DoS' contracting officer directs various aspects of MSA's overall (but not necessarily day-to-day) performance, at least some of which directions are in the form of written memorandum, orders, emails, etc.

It also is apparent that the nonparty DoS has participated in the litigation, albeit indirectly, by guiding and ratifying, if not directing, MSA conduct of the litigation. For example, in his sworn declaration dated July 5, 2019, Mr. Gerald Goss, a member MSA's executive management team stated that MSA, in placing Dr. Iovino on administrative leave with pay, obtained the concurrence of the DoS. See GAPKI 000533-000534. According to Alan Bower, one of MSA's Deputy Project Managers, it was the DoS which decided to replace Dr. Iovino's position as a part-time veterinarian with a full-time veterinarian. GAPKI 000547.

Therefore, MSA must produce the documents requested by Dr. Iovino regardless of whether Iovino could otherwise attempt to obtain them through a Touhy request she might serve on the DoS. *See Hellebuyck v. Gucci America, Inc.,* 2020 WL 9549907 (E.D. Va. Jul. 13, 2020) ("Accordingly, [Plaintiff] must produce these documents regardless of whether Defendant could otherwise retrieve them via a subpoena duces tecum [to a third party]."). The decisive fact is that MSA has control of the documents, and it cannot, by its simple say-so, transform its own obligation to respond to plaintiff's Rule 34 party discovery into a task that Iovino is required to perform by submitting a demand directly to the DoS.

The mere existence of a confidentiality interest by a third party does not create a privilege or right on MSAs part to refuse discovery, as we established in my prior letter to you dated June 20, 2022. Your response stated that the authorities we cited in our June 20 letter involved non-governmental entities and therefore are not apposite to this dispute. To the contrary, the same principles apply where it is a government agency that asserts the confidentiality interest.

An example of a case involving a governmental claim of confidentiality is *Resolution Trust Corp. v. Deloitte & Touche*, full citation above. There, a Rule 34 request was directed to the Resolution Trust Corporation (RTC), a U.S. government entity. The defendant, Deloitte and Touche moved to compel the RTC to produce documents it had requested under Rule 34. The defendant sought, among other things, documents owned by a separate government agency, the Office of Thrift Supervision (OTS). The RTC objected on the grounds that (a) OTS and RTC are separate and distinct legal entities; (b) by regulation and agreement, all OTS documents remain its property and may not be released by RTC; and (3) OTS prohibited the disclosure to third parties of any information or documents owned by OTS. 145 F.R.D. at 109-110. In other words, that decision involved a factual scenario analogous to the instant case, where Iovino has directed her request to MSA, and MSA objects on the ground that the DoS owns the documents, and has prohibited production to third parties without its approval. The court in *Deloitte and Touche* held that the RTC had control over the OTS' documents such that the RTC could be compelled to produce those documents.

The *Deloitte and Touche* court followed the Supreme Court's decision in *Societe Internationale v. Rogers*, 357 U.S. 197 (1958) ("*Societe*"). The court explained that there the Societe brought suit against the government under the Trading with the Enemy Act. The government sought documents from the Societe pursuant to Rule 34. Although the documents were in the physical possession of a Swiss banking firm, there was no doubt that the Societe could obtain he subject materials from the Swiss bank on demand. Nevertheless, the Societe refused to comply with the request for production because Swiss law prohibited disclosure of bank records. The Supreme Court rejected the Societe's contention that the interdictions of Swiss law precluded a finding that it had "control" over the documents within the meaning of Rule 34. 145 F.R.D. at 111, and was obligated to produce them.

In *Deloitte and Touche*, the district court further analyzed the question as whether the Rules of Civil Procedure governing discovery in federal courts can be abrogated by agency regulations. The court explained that those courts which have considered that issue have uniformly answered the query in the negative. *Citing United States v. Reynolds*, 345 U.S. 1, 9-10, (1953) ("Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."); *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 383 (10th Cir.1964) (Federal agencies are bound by the discovery rules in the same

manner as any other litigant.); *Forstmann Leff Associates, Inc. v. American Brands, Inc.,* 1991 WL 168002 (S.D.N.Y.1991) ("[W]hile section 510.5(b) permits the OTS to withhold documents from disclosure on the basis of privilege, it is the court's function to determine whether such documents must be produced."); *Merchants Nat 'l Bank and Trust Co. of Fargo v. United States,* 41 F.R.D. 266, 268 (D.N.D.1966) ("While the statute gives the Secretary the right to restrict disclosure, Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers.' "). 145 F.R.D. *id.*

In *Deloitte and Touche*, the court concluded that

> The Court finds no compelling reason to relieve the RTC from the relatively straightforward discovery methods outlined in Rule 34 simply because the source agency [the OTS] has attempted to mandate a different procedure.

The court noted that the RTS, Deloitte and Touche's opponent, had a great advantage in that it had access to the OTS's documents. The court noted that

> The defendants [Deloitte and Touche] should not be relegated to the much more cumbersome procedure of serving a subpoena on the OTS and then litigating any objections to the subpoena in Washington, D,C. simply to obtain the same documents which the plaintiff RTC can and has obtained from OTS on request.

Similarly, here, MSA should not be allowed to relegate Iovino to the much more cumbersome procedure of serving a Touhy request (or subpoena) on the DoS, when MSA has a right to obtain those documents and provide them to Iovino, as it has a duty to do under Rule 34. This would place MSA at a very great and unfair advantage over Dr. Iovino since MSA can obtain those documents by going to the DoS itself and obtaining them based on its contractual standing.

The case law cited in your June 24, 2022 letter is not to the contrary. You argue that it is plaintiff Iovino who has the burden of filing a Touhy request with DoS, rather than MSA who has the duty to obtain the documents for production to Iovino. In *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 28 (D.D.C. 2005), a plaintiff sought to depose a former Ambassador and an FBI agent. Plaintiff Iovino is not seeking in her discovery requests thus far to depose U.S. Government employees. She is seeking documents in the possession, custody or control of a private entity, MSA. For the reasons explained above, MSA has an obligation to comply and produce the documents; if necessary, MSA may have to obtain permission from DoS to produce them, but that does not shift the burden to Iovino to request such material from the DoS under Touhy. *Owens* is simply inapposite.

The Fourth Circuit decision of *Smith v. Cromer*, 159 F.3d 875, 878 (4th Cir. 1998) also involves a request for depositions of Federal employees, and likewise is inapposite to plaintiff Iovino's Rule 34 request.

You further assert in your June 24 letter that MSA itself is bound by the DoS' Touhy regulations. We doubt that MSA must make a formal Touhy request each and every time it needs to use a document generated by DoS in the course of its performance of the contract, let alone to utilize documents that MSA itself generates during performance.

I think what you intended to say is, not that MSA is required to comply, but that MSA is protected against document requests directed to it by DoS' Touhy regulations. The only authority

you cite for that proposition is the definition of "employee" in the regulation. You contend that the definition at 22 C.F.R. § 172.1(b) renders MSA an "employee" of the DoS. We submit that you are misreading that definition. A careful reading of § 172.1(b), in its entirety, fails to establish that MSA qualifies as one of the sub-set of employees under the *Touhy* regulations.

Section 172.1 provides the "definitions" for all the relevant terms of the DoS's *Touhy* regulations. Section 172.1(b) provides, in full:

> For purposes of this part, and except as the Department may otherwise determine in a particular case, the term employee includes the Secretary and former Secretaries of State, **and all employees and former employees of the Department of State or other federal agencies who are or were** appointed by, or **subject to the supervision, jurisdiction, or control of the Secretary** of State or his Chiefs of Mission, whether residing or working in the United States or abroad, **including** United States nationals, foreign nationals, and **contractors**.

(Emphases added).

Like many regulations, § 172.1(b) — which is comprised of a single, multi-clause sentence — is not a model of clarity. In order to parse this 85-word sentence properly, it is useful to do what many courts recommend in construing constitutions, statutes, and regulations, that is, to diagram it. *See United States v. Nishiie*, 996 F.3d 1013, 1022 (9th Cir. 2021), *cert. denied,* No. 21-6453, 2022 WL 1205873 (U.S. April 25, 2022); *United States v. Burke,* 633 F.3d 984, 992 (10th Cir. 2011); *Evelyn V. v. Kings County Hosp. Ctr.*, 819 F. Supp. 183, 186 (E.D.N.Y. 1993); *Leis v. Opportunity Consultants*, 441 F. Supp. 1314, 1315 (S.D. Ohio 1977); *United States v. Nejad*, 436 F. Supp. 3d 707, 727 (S.D.N.Y. 2020).

When § 172.1(b) is diagrammed, it reads as follows:

> For purposes of this part, and except as the Department may otherwise determine in a particular case, **<u>the term employee includes</u>**:
>
> [A] the Secretary and former Secretaries of State,
>
> and
>
> [B] **all employees and former employees of**
>
> **[1] the Department of State**
>
> or
>
> [2] **other federal agencies who are or were**
>
> [a] appointed by,
>
> or
>
> [b] **subject to the supervision, jurisdiction, or control of the Secretary of State** or his Chiefs of Mission,

[i] whether

[*a*] residing

or

[*b*] working in the United States or abroad, including

[*i*] United States nationals,

[*ii*] foreign nationals, and

[*iii*] contractors.

From this breakdown, it can clearly be seen that the language "United States nationals, foreign nationals, and contractors" modifies "subject to the supervision, jurisdiction, or control of the Secretary of State or his Chiefs of Mission," which, in turn, modifies "other federal agencies." MSA (to our knowledge) has never been a "federal agency," and, therefore, does not qualify as an employee of the DoS under this definitional section of the DoS' Touhy regulations.

The question whether someone is a "contractor" to the government, or an "employee" of the government often arises in lawsuits under the Federal Tort Claims Act, 28 U.S. Code Chapter 171. A court will determine a party to be an employee of the Government for the purposes of the FTCA "if the Government enjoys the power to control the detailed physical performance of the contractor, ... or if the Government in fact supervises the day-to-day operations" of the contractor." *Gibbons v. Fronton, DO, et al.*, 533 F.Supp.2d 449, 453 (S.D.N.Y. 2008), citing *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir.1994) (emphasis in original; internal quotation marks and citations omitted). In distinguishing "instrumentalities" and "agencies" from "contractor[s]," courts consider the power of the Government to "control the detailed physical performance of the contractor," *Logue v. United States*, 412 U.S. 521, 527–28 (1973), and, similarly, whether the United States has the right to supervise the "day-to-day operations" of the contractor, *United States v. Orleans*, 425 U.S. 807, 813–14 (1976). exception." *Hsieh v. Consol. Eng'g Servs., Inc.*, 569 F.Supp.2d 159, 176 (D.D.C.2008); *see also Orleans*, 425 U.S. at 815 ("Thus, ... the question ... is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its daily operations are supervised by the Federal Government.").

MSA is responsible for its day-to-day activities under its contract with the DoS, and that contract provides that MSA employees are not DoS employees. For example, the contract defines MSA's Project Manager as being "head of the daily operations at the CVC." See Contract SAQMMA16D0106, section 3.1 Project Manager at p. 18 of 81. Clause H-008 directs that "Contractor personnel must take the following actions to identify themselves as non-federal employees" and "Contractor personnel may not utilize Department of State logos or indicia on business cards." Thus, the contract treated neither MSA nor its employees as DoS employees. Consequently, MSA does not fall within the scope of the definitional section of the DoS' Touhy regulations.

Finally, as you know, "*Touhy* and the regulations adopted pursuant to the Housekeeping Statute," 5 U.S.C. § 301 "merely allow for the 'centralizing [of an agency's] determination as to whether subpoenas ... will be willingly obeyed or challenged.'" *United States v. Rosen*, 520 F. Supp. 2d 802, 809 (E.D. Va. 2007) (quoting *United States ex rel Touhy v. Ragen*, 340 U.S. 462,

468 (1951)). Significantly, neither the Housekeeping Statute not the *Touhy* regulation promulgated under the authority of that statute, do not and "cannot confer on the Executive Branch the unilateral or unreviewable power to refuse to comply with a valid subpoena. *Rosen*, 520 F. Supp. 2d at 809. As Congress explained in enacting the Housekeeping Statute, "[t]his section does not authorize withholding information from the public or limiting the availability of records to the public."

As a result, "'*Touhy* may [not] be used as a tool by the executive to usurp the judiciary's role in determining what evidence will enter into the courtroom.'" *Rosen*, 520 F. Supp. 2d at 810 n.15 (quoting *Streett v. United States*, No. CIV.A.96–M–6–H, 1996 WL 765882, at *4 (W.D. Va. Dec.18, 1996)). Furthermore, as another District Court recently explained:

> these internal regulations, promulgated under the federal "housekeeping statute," 5 U.S.C. § 301, also create no substantive rights in favor of the Government. There is no "independent privilege to withhold government information or shield federal employees from valid subpoenas" that arises from the regulations. [*U.S. E.P.A. v. General Elec. Co.,* 197 F.3d 592, 598 (2d Cir. 1999) (quoting *Exxon Shipping Co. v. U.S. Dep't of Interio*r, 34 F.3d 774, 780 (9th Cir. 1994)). Nor could there be, as § 301 expressly provides that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301; *see also Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) ("[N]either the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court.").

*Lamb v. Wallace*, 7:16-CV-44-FL, 2018 WL 847242, at *5 (E.D.N.C. Feb. 13, 2018).

For all these reasons, we must reject your contention that it is Dr. Iovino's responsibility to submit a *Touhy* request to the DoS and, we look forward to receiving those documents that are responsive to Dr. Iovino's Rule 34 requests as soon as possible so MSA's refusal does not further impede Dr. Iovino's prosecution of her claims.

Of course, we are happy to speak further with you on the phone about this dispute in an effort to resolve it. Please send some dates and times next week when you are available, as I will be out on leave the remainder of this week. If we cannot work out a satisfactory plan for MSA to turn over the requested documents, we will need to seek court resolution.

Sincerely,

/s/ *Jack Kolar*

John A. ("Jack") Kolar