## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

_____

DR. KAREN IOVINO,

   *Plaintiff and*
   *Counterclaim Defendant,*

 v.

MICHAEL STAPLETON ASSOCIATES,
LTD., d.b.a. MSA SECURITY, INC.,

   *Defendant and*
   *Counterclaim Plaintiff.*
_____

Case No. 5:21-CV-00064
Hon. Thomas T. Cullen, U.S.D.J.
Hon. Joel Hoppe, U.S.M.J.

## PLAINTIFF'S MEMEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL DISCOVERY

I.  SUMMARY OF ARGUMENT ........................................................... 6

II.  FACTUAL AND PROCEDURAL BACKGROUND........................................... 7

III. MSA'S CONFIDENTIALITY ARGUMENT IS SPURIOUS BECAUSE THE COURT HAS ALREADY REJECTED IT........................................................... 12

IV. DEFENDANT MSA'S POSITION CONFLICTS WITH THE BASIC RULES OF DISCOVERY IN THE FEDERAL COURTS ESTABLISHED BY CONGRESS........................................................... 13

  A. Courts Must Exercise the Discovery Authority that Congress and Article III Gives Them........................................................... 13

  B. That Which MSA Controls is that which MSA Must Produce Under Discovery Rules and Orders Regardless of Who Owns It .................................................... 16

V.  THE EXISTENCE OF A CONFIDENTIALITY AGREEMENT WITH A NON-PARTY, EVEN IF IT IS THE GOVERNMENT, CANNOT DEFEAT RULE 34 AND DISCOVERY ORDERS........................................................... 18

VI. MSA COULD NOT SUCCESSFULLY INVOKE *TOUHY* EVEN IF IT HAD STANDING TO DO SO........................................................... 19

VII. MSA CANNOT SHIFT THE BURDEN OR RESPONSIBILITY FOR DELAY IN ESI DISCOVERY TO PLAINTIFF .................................................... 20

  A. ESI Protocols in Context........................................................... 20

B. MSA is not Exempted from Rule 34 Deadlines Because it Chooses to Physically
Review for Privilege Each Document Returned in an ESI Search ...................... 21

VIII.    CONCLUSION..................................................................................................... 24

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Carpenter v. United States*, 138 S. Ct. 2206, 2250 (2018) ................................... 14

*Chrysler Corp. v. Brown*, 441 U.S. 281, 309 n. 39 (1979) ................................... 18

*Cudahy Packing Co. v. Holland*, 315 U.S. 357, 364, 62 S. Ct. 651, 655 (1942) ............... 13

*Harlow v. Fitzgerald*, 457 U.S. 800, 817 n.28, 102 S. Ct. 2727, 2737 (1982) ................ 13

*Henderson v. United States*, 517 U.S. 654, 668, 116 S. Ct. 1638, 1646 (1996) ............... 13

*Herbert v. Lando*, 441 U.S. 153, 175 (1979) ................................................ 15

*Hickman v. Taylor*, 329 U.S. 495, 500–01 (1947) ............................................ 14

*Kastigar v. United States*, 406 U.S. 441, 443 (1972) ....................................... 14

*Sibbach v. Wilson & Co.*, 312 U.S. 1, 9, 61 S. Ct. 422, 424 (1941) ......................... 13

*Swidler & Berlin v. United States,* 524 U.S. 399, 411–12 (1998). ........................... 14

*Touhy v. Ragen*, 340 U.S. 462, 468 (1951) ................................................... 8

*Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825) ................................... 13

## FOURTH CIRCUIT CASES

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390,
    402 (4th Cir. 2003)...................................................................... 14

*COMSAT Corp. v. NSF*, 190 F.3d 269, 272 n.3 (4th Cir. 1999 .................................. 12

*McClure v. Ports*, 914 F.3d 866, 875 (4th Cir. 2019) ....................................... 15

*Smith v. Cromer*, 159 F.3d 875, 889 (4th Cir. 1998) ........................................ 18

*Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 (4th Cir. 2001) .......................... 15

## FOURTH CIRCUIT DISTRICT COURT CASES

*Burd v. Ford Motor Co.*, No. 3:13-cv-20976, 2015 U.S. Dist. LEXIS 88518, at *24
    n.3 (S.D. W. Va. July 8, 2015)........................................................... 21

*Good v. Am. Water Works Co.*, Civil Action No. 2:14-01374, 2014 U.S. Dist. LEXIS 154788,
    at *4-5 (S.D. W. Va. Oct. 29, 2014) ..................................................... 21

*Lamb v. Wallace*, 7:16-CV-44-FL, 2018 WL 847242, at *5 (E.D.N.C. Feb. 13, 2018).............. 19

*Mayor & City Council of Balt. v. Unisys Corp.*, No. JKB-12-614, 2014 U.S. Dist. LEXIS
    206018, at *3-4 (D. Md. June 6, 2014)................................................... 21

*National Union Fire Insurance Company of Pittsburgh, Pa, et al v. Porter Hayden Co.*,
    2012 WL 628493 (D. Md. Feb. 24, 2012 .................................................. 17

*Southampton Pointe Property Owners Association, Inc. v. OneBeacon Insurance Company*,
    2013 WL 12241830 *2 (D. S.C. Aug. 27, 2013)............................................ 15

*Steele Software Systems, Corp. v. DataQuick Information Systems, Inc.*, 237 F.R.D. 561,
    564 (D. Md. 2006) ..................................................................... 15

*Streett v. United States*, No. CIV.A.96–M–6–H, 1996 WL 765882, at *4
    (W.D. Va., Dec. 18, 1996) ............................................................. 19

*Young v. State Farm Mut. Auto. Ins. Co.*, 169 F.R.D. 72, 77-80 (S.D.W.Va.1996 .......................... 17


**OTHER CIRCUIT APPEALS CASES**

*Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 318 U.S. App. D.C. 214,
    86 F.3d 1208, 1212 (D.C. Cir. 1996) .................................................................................. 12
*In re Bankers Trust Co.,* 61 F.3d 465, 472–73 (6th Cir. 1995).......................................................... 19
*Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ................................................................. 15
*Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381,
    383 (10th Cir.1964)........................................................................................................... 18
*U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1254 (8th Cir. 1998) ............... 18


**OUT OF CIRCUIT DISTRICT COURT CASES**

*In re Subpoena Duces Tecum Served on Bell Communications Research, Inc.*, 1997 WL 10919
    (S.D.N.Y. Jan. 13, 1997)................................................................................................... 17
*Bobreski v. EPA*, 284 F. Supp. 2d 67, 73 (D.D.C. 2003)................................................................ 12
*Da Silva Moore v. Publicis Groupe*, 287 F.R.D. 182, 190-92 (S.D.N.Y. 2012) .............................. 23
*DeGeer v. Gillis*, 755 F.Supp.2d 909, 918 (N.D. Ill. 2010)............................................................. 21
*Hyles v. New York City*, 2016 U.S. Dist. LEXIS 100390, at *4 (S.D.N.Y. Aug. 1, 2016 ................ 22
*I.E.E. Int'l Elecs. & Eng'g, S.A. v. TK Holdings Inc.*, 2013 WL 12183637, at *1 (E.D. Mich. June
    24, 2013)........................................................................................................................... 17
*In re Rivastigmine Patent Litigation*, 237 F.R.D. 69, 87 (S.D.N.Y. 2006) ...................................... 21
*Kelly v. Romines*, 2012 WL 681806, at *6 (D.N.M. Feb. 27, 2012) ................................................. 17
*Kleen Products LLC v. Packaging Corp. of Am.*, 10 C 5711, 2012 U.S. Dist. LEXIS 139632,
    2012 WL 4498465, at *19 (N.D. Ill. Sept. 28, 2012) ....................................................... 21
*Merchants Nat 'l Bank and Trust Co. of Fargo v. United States*, 41 F.R.D. 266, 268 (D.N.D.1966)18
*Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008)........................ 21
*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 461
    (S.D.N.Y. 2010) ............................................................................................................... 23
*Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 n.3 (D. Colo. 1992) ................ 15
*Rio Tinto PLC v. Vale S.A.,* 306 F.R.D. 125, 127 (S.D.N.Y. 2015) ................................................. 22
*Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 106 (E.D.Pa.2010)...................................................... 21
*Zoom Imaging, L.P. v. St. Luke's Hosp. & Health Network*, 513 F. Supp. 2d 411, 417 (E.D. Pa.
    2007)................................................................................................................................. 17


**STATUTES**

17th section of the Judiciary Act ...................................................................................................... 13
41 U.S.C. § 4712............................................................................................................................... 6
5 U.S.C. § 301 ........................................................................................................................... 12, 19
Federal Rules of Civil Procedure Amendments Act of 1982, § 2, 96 Stat. 2527 ............................. 13

## RULES

Fed. R. Civ. P. 1 .................................................................................................... 23
Fed. R. Civ. P. 26(a)(1)(A)(ii) ................................................................................ 15
Fed. R. Civ. P. Rule 37(a)(3 ..................................................................................... 5
Fed. R. Civ. P. Rule 37(a)(3)(B)(iv) ........................................................................ 5
FRE 502 ................................................................................................................. 21

## REGULATIONS

22 C.F.R. § 172 .................................................................................................. 8, 9

## OTHER AUTHORITIES

*The Sedona Principles, Second Edition: Best Practices Recommendations & Principles for
Addressing Electronic Document Production* (Principle Six) (2007 Annotated Version) ........... 21

## I.  SUMMARY OF ARGUMENT

Plaintiff's Motion to Compel is filed under Fed. R. Civ. P. Rule 37(a)(3)(B)(iv), and its single objective is to promptly obtain documents, images, emails, text messages, and other responsive Electronically Stored Information (ESI).[1]  Defendant has offered two justifications for not having substantially responded with documents to Plaintiff's Rule 34 Request for Production of documents and things (RFP): (1) Defendant is not willing to risk breach of its contract with the Department of State (DoS) which expressly prohibits any disclosure of program materials without prior DoS approval.  And (2) the ESI search keywords proposed by Plaintiff are overly broad and yield search results in the tens of thousands, and because MSA lawyers insist on manually reviewing every document returned, that volume could take months.

To these justifications, Plaintiff responds as follows:

(1) Under Article III and the separations of powers, the court is the sole arbiter of the scope and methods of discovery, and under Rule 26(c) the court has already decided that all relevant DoS documents must be provided.  Specifically, the court has already overruled MSA's request to delay production pending Touhy review, and required that responsive DoS documents be produced subject to confidentiality stamping under Para. 2(a)(iii) of the protective order.[2] Despite this carte blanche right conferred by the court on MSA, it has not produced a single program document, and asserts that if the subject matter involves the DoS contract, then the DoS owns and has the sole right

---

[1] Fed. R. Civ. P. Rule 37(a)(3) provides, in pertinent part: "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: … (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."

[2] As of this filing, the Magistrate has set a schedule for further consideration of Para. 2(a)(iii).

to control every email, webmail, text messages, calendar entry and phone message recording.  This eviscerates the protective order.

(2) The final responsibility for searching MSA's information technology devices (ITD)[3] is MSA.  Although keywords suggested by Plaintiff may be an aid and therefore can be ordered by the court if the parties do not stipulate, the burden remains with the ITD owner and provider to comply with Rule 34.  Plaintiff has suggested that if the keyword approach is impracticable, then MSA has a duty to use technology assisted review of the ITDs it owns or controls.  Defendant has not agreed to do so.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

1.  Dr. Iovino commenced this lawsuit on September 21, 2021. She filed the action against her former employer, MSA, under the whistleblower protection provisions of 41 U.S.C. § 4712, which Congress enacted in 2016 specifically for the protection of employees of a federal "contractor, subcontractor, grantee, or subgrantee." § 4712(a)(1).

2.  Following the Court's partial granting, but mainly denial, of what it construed as Defendant MSA's motion to strike, Dr. Iovino filed an Amended Complaint, on May 2, 2022, which is the operative complaint in this case.

---

[3] "*Information technology device* means equipment or associated software, including programs, applications languages, procedures, or associated documentation, used in operating the equipment which is designed for utilizing information stored in an electronic format. 'Information technology device' includes but is not limited to computer systems, computer networks, and equipment used for input, output, processing, storage, display, scanning, and printing." It includes computers, external storage drives, mobile phones, tablets, USB thumb drives, and SD cards, as well as associated "accounts" for email, webmail, text messages, cloud storage, and social media posts. https://www.lawinsider.com/dictionary/information-technology-device, last accessed November 10, 2022.

3.  On May 10, 2022, Dr. Iovino served her First Set of Requests for Production of Documents to Defendant (First Requests). A true and correct copy of these First Requests numbered 1-19, are attached as Exhibit B to the Kolar Dec.

4.  Defendant MSA responded to the First RFP on June 9, 2022. See Kolar Dec., Exhibit C, which is a true and correct copy of MSA's response. MSA objected to all 19 of Dr. Iovino's numbered requests, except for No. 2, principally on the ground "that [they] seek[] information or documents subject to confidentiality restrictions of a third party," namely, the DoS.[4] As for Item No. 2 of the First RFP, it requested:

> all documents referenced in paragraph II.b. of Defendant's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26[(a)(1)(A)(ii)], dated February 25, 2022.

5.  Thus, Dr. Iovino simply asked MSA to produce the documents MSA itself had identified in its own initial disclosure, which consisted of the administrative record from the parties' proceedings before the DoS' Office of Inspector General. MSA responded that "[w]ithout waiving [its other] objections, Defendant will produce any materials from the Administrative Record in its possession, custody and control."

6.  To date, 5 months later, with a fact discovery cut-off currently scheduled at the end of this calendar year, MSA has not produced any documents in response to Dr. Iovino's request No. 2.

---

[4] MSA also objected based on a variety of other grounds, namely, that all or many of the Requests were "compound, vague, ambiguous, and/or [did] not describe the item or category of documents requested with reasonable particularity"; were duplicative of others of Dr. Iovino's requests; or because they seek documents "that are readily or more accessible to Defendant from Defendant's own files, from documents or information in Defendant's possession, or from documents or information that Defendant previously produced to Plaintiff," see Kolar Dec., Exhibit C, p. 3, whatever this means. None of these objections hold merit, and the Court should overrule them.

7. Dr. Iovino served her Second RFP on May 25, 2022 (Second Requests). See Kolar Dec., Exhibit D. This made additional requests numbered 20-33. MSA served a response on June 24, 2022.

8. MSA again produced no documents, instead objecting on the ground that the requested documents were subject to alleged confidentiality restrictions of the DoS. See Kolar Dec., Exhibit E, p. 5. MSA did not object that any of the 33 RFPs were irrelevant under FRCP 26(b)(1).

9. The parties then engaged in a repeated meet and confer processes over the ensuing 5 months.

10. MSA's Responses to Dr. Iovino's Document Requests provided scant explanations for its principal objection – that the requested documents are "subject to confidentiality restrictions of" the DoS. In MSA's responses to Dr. Iovino's First Set of Interrogatories, Number 1 --- which she filed on June 24, 2022, see Kolar Dec., Exhibit F --- MSA answered:

> Requestors of official government information are required to follow an agency's *Touhy* regulations when making their request for official government information. *See* 22 C.F.R. § 172 et seq.; *see also Touhy v. Ragen*, 340 U.S. 462, 468 (1951). It is up to Plaintiff (not Defendant) to obtain authorization through DoS's *Touhy* regulations in requesting official government information for use in Plaintiff's case. MSA is bound by the U.S. Department of State's ("DoS") *Touhy* regulations, found at 22 C.F.R. § 172 et seq. The DoS *Touhy* regulations include contractors within the definition of employee at § 172.1(b) ("the term employee includes . . . United States nationals, foreign nationals, and contractors."). Any information that a DoS contractor obtains "as part of their official duties or because of their official status within the Department while such individuals were employed by or served on behalf of the Department" is treated by DoS as official information. *Id.* § 172.1(d). The relevant contract between DoS and MSA contract reiterates this point: "All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government."

(Emphases added, see Kolar Dec., Exhibit F, pp. 2-3).

11.  Similarly, MSA's Response to Interrogatory No. 2 states, in pertinent part:

> MSA is bound by the DoS's *Touhy* regulations, found at 22 C.F.R. §
> 172 et seq. The DoS *Touhy* regulation includes contractors within the
> definition of employee at § 172.1(b) ("the term employee includes . . .
> United States nationals, foreign nationals, and contractors."). Any
> information that a DoS contractor obtains "as part of their official duties
> or because of their official status within the Department while such
> individuals were employed by or served on behalf of the Department"
> is treated by DoS as official information. *Id.* § 172.1(d). The relevant
> contract between DoS and MSA contract reiterates this point: "All
> documents and records (including photographs) generated during the
> performance of work under this contract shall be for the sole use of and
> become the exclusive property of the U.S. Government."

*Id.*, pp. 3-4.

12.  On October 12, 2022, the Magistrate held a hearing, transcript excerpts (TR) of which

are Kolar Decl. Exhibit K. Para. 24 of MSA's proposed protective order stated:

> Any documents related to contract [number] may only be produced and/or used in this
> litigation pursuant to the Department of State's approval of a *Touhy* request by the
> requesting party.

13.  The Magistrate's Confidentiality Order [ECF # 67] stuck this paragraph 24 (which had

become para. 23 after the MSA draft removed the AEO paragraphs, see ECF # 66 docket text)[5] and

the Touhy pre-approval requirement in its entirety.  That stricken paragraph was the only provision

in MSA's proposed protective order that would have conditioned responses to Plaintiff's RFP on

DoS "approval".

---

[5] The Order ECF # 66 provides:

> ORAL ORDER granting [64] Motion for Protective Order, for the reasons stated
> during the October 12 hearing. Additionally, the Court further modifies the proposed
> Protective Order, for example *by removing Paragraph 23*, to tailor the scope of the
> Protective Order to providing procedures for the production and use of Confidential
> Information in this case.

(Emphasis added).

10

14.  Prior to this ruling, MSA had urged the Magistrate to confine access to the contract

documents to Attorney's Eyes Only (AEO):

> MR. WARD So given that case, I don't know how MSA can be a *good steward of*
> *Department of State's information about a very sensitive program* if we don't have
> a separate category saying: Okay, Mr. Guyer and your team of lawyers, you can see this,
> but you can't share it with the plaintiff because the plaintiff has a predisposition of
> sharing with the media. That's our concern.

(Ex. K, TR p. 17, emphasis added).

15.  After the Magistrate rejected the AEO requirement, and after MSA's claim that it must

be "good steward of Department of State's information about a very sensitive program", the DoS

attorney made clear that it was not adopting MSA's *good steward* position:

> [Assistant U.S. Attorney] MS. [Krista] FRITH: Thank you, Your Honor. I don't have
> anything particular to say. *You know, the Department of State really doesn't have a*
> *dog in this fight.* We're not a party to the litigation and we have not been involved in
> this dispute over the protective order.

(Ex. K, TR p. 23, emphasis added).

16.  On October 24, 2022, Plaintiff for the second time provided search terms to MSA after

it complained that those earlier submitted led to overly broad. (Kolar Decl. paras. 16-18, Ex. L,

search terms).

17.  On October 25, 2022, MSA claimed the list was too extensive in an email exchange

with Plaintiff: "115 search terms pretty unreasonable. Could you give me a list of 25?"  Plaintiff

responded:

> Keep in mind, we have no FRCP obligation to submit search terms, MSA controls the
> relevant documents, emails and text messages and has the sole obligation to respond
> under Rule 34 with the ESI that MSA in good faith determines is responsive in the
> context of relevance, the claims and counterclaim pleaded, and MSA's Rule 26
> disclosures. Any competent IT department is able to combine our suggested search
> terms with your mandatory search terms and return the relevant results. ***

We are concerned with undue delay due to your statement during today's conference that MSA lawyers need to review all ESI before being produced to determine privilege. We disagree. Your IT people should be applying standard privilege search terms like "legal advice", "anticipate litigation", etc combined with lawyers be in the content of or as senders or recipients of the emails and texts.***

(Kolar Decl. para. 13, Ex. J).

18.  To date, Defendant MSA has produced a total of 41 pages of documents. See Kolar Dec., para. 13. In contrast, Dr. Iovino has produced almost 6,000 pages to MSA. Id.

## III.  MSA'S CONFIDENTIALITY ARGUMENT IS SPURIOUS BECAUSE THE COURT HAS ALREADY REJECTED IT

MSA contends yet again even after the entry of the "confidentiality order" (ECF # 67) following the Magistrate's Text Order ECF #66 specifically noting that *Touhy* pre-approval para. 23 was also stricken; and following the AUSA stating unequivocally that DoS "does not have a dog in this fight", that MSA *need not produce the bulk of responsive documents* to Plaintiff's RFP *until DoS gives consent* under Contract SAQMMA16D0106,[6] which provides in pertinent part:

The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions. They shall not communicate to any person any information known to them by reason of their performance of services under this contract which has not been made public, except in the necessary performance of their duties or upon written authorization of the Contracting Officer. ***

Kolar Dec., Exhibit A, clause H-009.

_____

[6] This is the contract specifically referred to in the Confidentiality Order para. 2(a)(iii),  A true and correct copy of relevant pages of this Contract is attached as Exhibit A to the Declaration of John A. Kolar dated November 8, 2022 (Kolar Dec.) filed in support of this motion. Paragraph 2 of the Confidentiality Order [ECF #67] provides:

When used in this Order, the term: (a) "Confidential Information" shall mean all documents and testimony, and all information contained therein, containing: (iii) Any documents *deemed Confidential Information by the United States Government*, including, but not limited to documents *related to* Contract No. SAQMMA16D0106.

Thus, the court has already adjudicated this issue ruling that MSA must produce the Para. 2(a)(iii) documents but can mark them "confidential".

## IV. DEFENDANT MSA'S POSITION CONFLICTS THE BASIC RULES OF DISCOVERY IN THE FEDERAL COURTS ESTABLISHED BY CONGRESS

MSA's position flaunts its basic obligation under the Federal discovery rules. Its contract with the DoS does not exempt MSA from its obligation to produce relevant, non-privileged documents within its possession, custody, or control. Nor does the contract create a privilege on MSA exempting it from discovery and compliance with this Court's orders.

### A. Courts Must Exercise the Discovery Authority that Congress and Article III Gives Them

Judges and magistrate judges have a weighty obligation to protect the Article III judicial power from direct encroachment by executive agencies in failing to comply with discovery rules and orders. A government contractor like MSA has no authority or delegated authority to claim proxy powers of an executive agency to resist discovery, nor to invoke the agency's *Touhy* procedures.[7] The Federal Rules of Civil Procedure were authorized by Congress at the founding of the republic

---

[7] *Touhy* applies only when the agency is not a party in the litigation. When it is a party, it must obey discovery orders like any private party. *Touhy* has no application except where a federal agency that has expressly adopted *Touhy* rules assert them. A private party cannot assert *Touhy* rules because Congress has not given that authority to anyone other than executive agencies. As explained in *Bobreski v. EPA*, 284 F. Supp. 2d 67, 73 (D.D.C. 2003):

> Pursuant to 5 U.S.C. § 301, the federal "housekeeping" statute, an agency may create procedures for responding to subpoenas and requests for testimony. *COMSAT Corp. v. NSF*, 190 F.3d 269, 272 n.3 (4th Cir. 1999). Specifically, section 301 authorizes the head of an agency to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." *** Once an agency has enacted valid *Touhy* regulations, *an agency employee cannot be forced* to testify. *Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 318 U.S. App. D.C. 214, 86 F.3d 1208, 1212 (D.C. Cir. 1996).

(Emphasis added). "An agency employee cannot be forced" to provide agency discovery, but a private party like MSA here has no such privilege to resist discovery rules and orders.

13

and are the embodiment of Article III power to adjudicate. As stated in *Henderson v. United States*, 517 U.S. 654, 668, 116 S. Ct. 1638, 1646 (1996):

> [Under] the Rules Enabling Act *** the Rule was enacted into law by Congress as part of the Federal Rules of Civil Procedure Amendments Act of 1982, § 2, 96 Stat. 2527. As the United States acknowledges, however, a Rule made law by Congress supersedes conflicting laws no less than a Rule this Court prescribes.

"Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes or constitution of the United States". *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9, 61 S. Ct. 422, 424 (1941).[8] Congress can and does periodically limit judicial power by amending the rules, demonstrating the "intention of Congress not to give unrestricted authority" to the courts to compel testimony. *Cudahy Packing Co. v. Holland*, 315 U.S. 357, 364, 62 S. Ct. 651, 655 (1942). Absent a constitutional or judicially recognized privilege, an executive agency refusal to provide "discovery of this kind frequently could implicate separation-of-powers concerns". *Harlow v. Fitzgerald*, 457 U.S. 800, 817 n.28, 102 S. Ct. 2727, 2737 (1982). It is rare that "discovery should not be allowed" in civil litigation against the government", occurring only when a "threshold immunity question is resolved" in its favor. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). MSA is not the government, and has not been authorized

---

[8] Citing *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825):

> The 17th section of the Judiciary Act, and the 7th section of the additional act, empower the Courts respectively to regulate their practice. It certainly will not be contended, that this might not be done by Congress. The Courts, for example, may make rules, directing the returning of writs and processes, the filing of declarations and other pleadings, and other things of the same description.

by Congress to speak for the government, and therefore has no basis in law to not comply with this court's discovery rules and orders.[9]

The discovery rules embodied in Fed. R. Civ. P. 26 through 37 effectuate not just private interests, but the principle that "the public ... has a right to every man's evidence." As explained in *Hickman v. Taylor*, 329 U.S. 495, 500–01 (1947):

> The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. *** Thus, civil trials in the federal courts no longer need be carried on in the dark. *The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial*.

 (Emphasis added; footnote omitted). *See also, Swidler & Berlin v. United States,* 524 U.S. 399, 411–12 (1998). For these reasons, the discovery rules have long been "accorded a broad and liberal treatment." *Hickman,* 329 U.S. at 507 (footnotes omitted). *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted."). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either

---

[9] MSA's position is antithetical to Anglo-American jurisprudence. As the Supreme Court has explained, the power of courts to compel testimony and require other evidence from parties in litigation --- including everything within a party opponent's "knowledge and discovery", was established by statute in England as early as 1562. Lord Bacon observed in 1612 that all subjects owed the King their "knowledge and discovery."*Kastigar v. United States*, 406 U.S. 441, 443 (1972) (footnotes omitted). Colonial Americans honored this fundamental common law principle long before the American Revolution began:

> Compulsory process was also familiar to the founding generation in part because it reflected "the ancient proposition of law" that "' "the public ... has a right to every man's evidence."'" ... That duty could be "onerous at times," yet the Founders considered it "necessary to the administration of justice according to the forms and modes established in our system of government."

*Carpenter v. United States*, 138 S. Ct. 2206, 2250 (2018) (citations omitted).

party may compel the other to disgorge whatever facts he has in his possession." *Id.* These principles apply with particular force to "discovery requests [for documents, which] are 'broadly favored and should be liberally granted.'" *McClure v. Ports*, 914 F.3d 866, 875 (4th Cir. 2019) (citations omitted).[10]

### B. That Which MSA Controls is that which MSA Must Produce Under Discovery Rules and Orders Regardless of Who Owns It:

Under the discovery rules, the test for whether a "party" has an obligation to disclose a document is whether that party has a document in its "possession, custody, or control." Fed. R. Civ. P. 26(a)(1)(A)(ii). "The federal courts have universally held that documents are deemed to be within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials or has the legal right to obtain the documents on demand." *See, e.g., Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 n.3 (D. Colo. 1992). *See also Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Under Fed.R.Civ.P. 34, control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand.") "Control" also includes the "practical ability to obtain the materials sought on demand." *Steele Software Systems, Corp. v. DataQuick Information Systems, Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006); *Southampton Pointe Property Owners Association, Inc. v. OneBeacon Insurance Company*, 2013 WL 12241830 *2 (D. S.C. Aug. 27, 2013) ("While the U.S. Court of Appeals for Fourth Circuit has not interpreted

---

[10]   Exemptions from discovery rules "are not favored, and even those[privileges] rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando*, 441 U.S. 153, 175 (1979). The Court of Appeals has instructed that "'a court must begin with 'the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'" *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 (4th Cir. 2001) (emphases added; citation omitted).

16

'control' for the purposes of Rule 34, other U.S. Court [sic] of Appeals, and District Courts within this Circuit, have defined control to mean either (1) the legal right to obtain the document on demand; or (2) the practical ability to obtain the document."

Relevant factors in determining whether a party to whom a Rule 34 request is directed has "control" over documents of a third party include "whether the related entities exchange documents in the ordinary course of business, and whether the nonparty has participated in the litigation." *Steele Software Systems, Corp. v. DataQuick Information Systems, Inc.*, at 564. Here, it is apparent that MSA and the DoS exchange documents in the ordinary course of their business dealings.[11] DoS' contracting officer directs various aspects of MSA's overall performance, but all contractual documents remain within MSA's control.[12]

The DoS further directly participated in this litigation by appearing, through Assistant United States Attorney Krista Frith, at a hearing before Judge Hoppe. When *directly asked by Judge Hoppe* for her comments, she responded: "You know, the Department of State really doesn't have a dog in this fight." Kolar Dec., Exhibit G, p. 23, lines 7-11 (emphasis added). As explained in the fact section above, following this hearing, Judge Hoppe deleted the requirement in MSA's proposed

---

[11] For example, pursuant to Contract SAQMMA16D0106, section 3.7.2, MSA provides "Log Reports" and "Incident Reports" to DoS. Clause F-003, is titled "Reporting Deliverables," thereby showing that MSA regularly provides certain kinds of report to DoS in the ordinary course of contract performance.

[12] It also is apparent that the nonparty DoS has participated in the investigation by the OIG of Dr. Iovino's administrative complaint, and in the litigation, albeit indirectly, by guiding and ratifying, if not directing, MSA's conduct of the litigation. For example, in his sworn declaration dated July 5, 2019, Mr. Gerald Goss, a member MSA's executive management team stated that MSA, in placing Dr. Iovino on administrative leave with pay, obtained the concurrence of the DoS. See Kolar Dec., Exhibit H ¶ 12. According to Alan Bower, one of MSA's Deputy Project Managers, it was the DoS which decided to replace Dr. Iovino's position as a part-time veterinarian with a full-time veterinarian. Kolar Dec., Exhibit I, ¶ 9.

order directing Dr. Iovino to obtain Touhy approval from the DoS before MSA produces documents

in discovery.

## V.    THE EXISTENCE OF A CONFIDENTIALITY AGREEMENT WITH A NON-PARTY, EVEN IF IT IS THE GOVERNMENT, CANNOT DEFEAT RULE 34 AND DISCOVERY ORDERS

The mere existence of a confidentiality interest by a third party does not create a privilege or

right on MSA's part to refuse discovery. In *National Union Fire Insurance Company of Pittsburgh,*

*Pa, et al v. Porter Hayden Co.,* 2012 WL 628493 (D. Md. Feb. 24, 2012), the court held that

"[t]here is no privilege for documents merely because they are subject to a confidentiality

agreement, and confidentiality agreements do not necessarily bar discovery that is otherwise

permissible and relevant."[13]

The same principles apply where it is a government agency that asserts the confidentiality

interest. An example of a case involving a governmental claim of confidentiality is *Resolution Trust*

*Corp. v. Deloitte & Touche*, *id.* There, a Rule 34 request was directed to the Resolution Trust

Corporation (RTC), a U.S. government entity. In *Deloitte and Touche*, the court concluded that:

> The Court finds no compelling reason to relieve the RTC from the relatively
> straightforward discovery methods outlined in Rule 34 simply because the source
> agency [the OTS] has attempted to mandate a different procedure.

---

[13] *See also Young v. State Farm Mut. Auto. Ins. Co.*, 169 F.R.D. 72, 77-80 (S.D.W.Va.1996); *Kelly v. Romines*, 2012 WL 681806, at *6 (D.N.M. Feb. 27, 2012) ("When balanced against the need for discovery in litigation, confidentiality agreements cannot preclude otherwise permissible discovery."); *I.E.E. Int'l Elecs. & Eng'g, S.A. v. TK Holdings Inc.*, 2013 WL 12183637, at *1 (E.D. Mich. June 24, 2013) ("To conclude that confidentiality agreements bar such discovery would clearly impede the truth-seeking function of discovery in federal litigation as all individuals and corporations could use confidentiality agreements to avoid discovery."); *Zoom Imaging, L.P. v. St. Luke's Hosp. & Health Network*, 513 F. Supp. 2d 411, 417 (E.D. Pa. 2007) (confidentiality agreements do not preclude disclosure for purposes of discovery); and *In re Subpoena Duces Tecum Served on Bell Communications Research, Inc.*, 1997 WL 10919 (S.D.N.Y. Jan. 13, 1997) (allowing third party to decline to produce documents based on a confidentiality agreement with another "would clearly impede "the truth-seeking function of discovery in federal litigation").

Federal Courts do not defer to the confidentiality determinations of others, even when the other is the United States. *Deloitte and Touche* cited *United States v. Reynolds*, 345 U.S. 1, 9-10, (1953) for the rule that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." As the court concluded in *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 383 (10th Cir.1964), federal agencies are bound by the discovery rules in the same manner as any other litigant. And in *Merchants Nat 'l Bank and Trust Co. of Fargo v. United States,* 41 F.R.D. 266, 268 (D.N.D.1966), the court ruled that "[w]hile the statute gives the Secretary the right to restrict disclosure, judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."

## VI.  MSA COULD NOT SUCCESSFULLY INVOKE *TOUHY* EVEN IF IT HAD STANDING TO DO SO

*Touhy* cannot operate to prevent the public from obtaining government records otherwise available under FOIA.  § 301 is a mere "office 'housekeeping' statute, enacted [in 1789] to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents." *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 n. 39 (1979) (quoting H.R. Rep. No. 85–1461 (1958)). *See Smith v. Cromer*, 159 F.3d 875, 889 (4th Cir. 1998). As the Eighth Circuit explained in *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1254 (8th Cir. 1998)*,* the notion that § 301 "authorize[s] withholding information from the public or limiting the availability of records to the public … contradicts the plain meaning of the statute and the jurisprudence of the Supreme Court." *Id.,* 132 F.3d at 1254. As *O'Keefe* elaborated:

> In *Chrysler Corp. v. Brown,* 441 U.S. 281, 310 (1979), the Supreme Court examined the housekeeping Statute and held that it does not provide statutory authority for substantive regulations. *** In so ruling, the Court noted that Congress had looked carefully at the statute in 1958, *** originally was adopted in 1789 to provide for the

day-to-day office housekeeping in the Government departments," and that attempts to construe it as something more was "'misuse'" which "'twisted'" the statute.

*Id.*  Congress' 1958 amendment to § 301 has particular resonance in discovery disputes, as the Sixth

Circuit held in rejecting arguments much like those MSA raises here.

> If Congress were to limit a federal district judge's authority to order discovery according to the interest of [a federal agency], the ability of a federal court to perform its most basic function of deciding "cases and controversies" under Article III of the Constitution would be notably impaired.

*In re Bankers Trust Co.,* 61 F.3d 465, 472–73 (6th Cir. 1995) (Merritt, C.J., concurring).  As a

result, "*Touhy* may [not] be used as a tool by the executive to usurp the judiciary's role in

determining what evidence will enter into the courtroom.'" *Rosen,* 520 F. Supp. 2d at 810 n.15

(quoting *Streett v. United States,* No. CIV.A.96–M–6–H, 1996 WL 765882, at *4 (W.D. Va., Dec.

18, 1996)). Furthermore, as *Lamb v. Wallace,* 7:16-CV-44-FL, 2018 WL 847242, at *5 (E.D.N.C.

Feb. 13, 2018) explained:

> [T]hese internal regulations, promulgated under the federal "housekeeping statute," 5 U.S.C. § 301, also create no substantive rights in favor of the Government. There is no "independent privilege to withhold government information or shield federal employees from valid subpoenas" that arises from the regulations. Nor could there be, as § 301 expressly provides that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301***.

*Lamb v. Wallace,* 7:16-CV-44-FL, 2018 WL 847242, at *5 (E.D.N.C. Feb. 13, 2018) (emphasis

added).

## VII.  MSA CANNOT SHIFT THE BURDEN OR RESPONSIBILITY FOR DELAY IN ESI DISCOVERY TO PLAINTIFF

### A.  ESI Protocols in Context

In 2006, the U.S. Supreme Court's amendments to the Federal Rules of Civil

Procedure created a category for electronic records that, for the first time, explicitly named emails

and instant message chats as likely records to be archived and produced when relevant. The

formalized changes to the Federal Rules of Civil Procedure in December 2006 and in 2007

effectively forced civil litigants into a compliance mode with respect to their proper retention and

management of electronically stored information (ESI). The party possessing the ESI has the burden

of management and production of it under Rule 34.  Since almost every "document" in every case is

now ESI, defendant companies are expected to professionally manage it with IT staff or consultants.

Every government contractor, such as MSA, is subject to audit and inventory demands, particularly

where the agency asserts an "ownership" interest. MSA, therefore, is presumed to be able to respond

to standardized RFPs for its ESI. MSA has "physical access" to the company's IT network and to

the text media of any of its employees and former employees. For ESI that exists only in "cloud

storage", it can arrange thorough searches with the host company having the physical access.

### B. MSA is not Exempted from Rule 34 Deadlines Because it Chooses to Physically Review for Privilege Each Document Returned in an ESI Search

MSA may, if it chooses, hire a team of outside lawyers or paralegals to review every

document for privilege if it does not trust the normal IT means for doing so automatically.  The

current reality in ESI discovery is that "keyword" searches for an expected small number of

documents may still suffice, but modern operating programs have enabled much more cost-effective

ESI searches and management through "technology assisted review" (TAR).  While courts are

loathe to order a company to use a particular search methodology, courts do not hesitate to enforce

Rule 34 ESI *timely* production consistent with The Sedona Principles: "Best Practices

Recommendations & Principles for Addressing Electronic Document Production".[14]  As explained

---

[14] See, www.TheSedonaConference.org.  See also, *Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, No.
6:12-cv-00023, 2012 U.S. Dist. LEXIS 182046, at *3-4 n.1 (W.D. Va. Dec. 27, 2012):

> he Sedona Principles state that "parties should confer early in discovery regarding the
> preservation and production of electronically stored information when these matters
> are at issue in the litigation and seek to agree on the scope of each party's rights and

in *Mayor & City Council of Balt. v. Unisys Corp.*, No. JKB-12-614, 2014 U.S. Dist. LEXIS 206018,

at *3-4 (D. Md. June 6, 2014):

> A categorical log may be used in place of a traditional, itemized log "where (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well-grounded." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (quoting *In re Rivastigmine Patent Litigation*, 237 F.R.D. 69, 87 (S.D.N.Y. 2006)); *see also* Fed. R. Civ. P. 26 Commentary (stating that where voluminous documents are claimed to be privileged, a categorical description may be more appropriate than a log that lists particularized details). Regardless, a party must still "justify its assertion of privilege with regard to each category, and the description of each category must provide sufficient information for [the opposing party] to assess any potential objections to the assertions of attorney-client privilege." *Orbit One*, 255 F.R.D. at 109. The Sedona Principles suggest that it is best practice for the parties to "agree to accept privilege logs that will initially classify categories or groups of withheld documents" where an enormous amount of electronically stored information is involved. Judge Paul W. Grimm, Charles S. Fax, and Paul Mark Sandler, *Discovery Problems and Their Solutions*, 90 (2nd ed. 2009).

Use of bulk logs are common in contemporary litigation since the advent of the Rule 502

"clawback" in 2008.[15] As discussed in *Good v. Am. Water Works Co.*, Civil Action No. 2:14-01374,

2014 U.S. Dist. LEXIS 154788, at *4-5 (S.D. W. Va. Oct. 29, 2014):

---

> responsibilities." The Sedona Conference, <u>The Sedona Principles, Second Edition: Best Practices Recommendations & Principles for Addressing Electronic Document Production</u> (Principle Six) (2007 Annotated Version); <u>see also Kleen Products LLC v. Packaging Corp. of Am.</u>, 10 C 5711, 2012 U.S. Dist. LEXIS 139632, 2012 WL 4498465, at *19 (N.D. Ill. Sept. 28, 2012) (endorsing a collaborative approach in ESI discovery, noting the importance of starting this approach early in the case, and discussing the Sedona Conference).

> See also, *Burd v. Ford Motor Co.*, No. 3:13-cv-20976, 2015 U.S. Dist. LEXIS 88518, at *24 n.3 (S.D. W. Va. July 8, 2015) ("With regard to electronic discovery many courts have looked to the Sedona Principles and Sedona Commentaries thereto, which are 'the leading authorities on electronic document retrieval and production.'" *DeGeer v. Gillis*, 755 F.Supp.2d 909, 918 (N.D. Ill. 2010) (quoting *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 106 (E.D.Pa.2010)).

[15] FRE 502 provides uniformity in the treatment of privilege waivers resulting from the inadvertent disclosure of documents. Because the rule's requirements are fact intensive and sometimes onerous,

> In 2008, Congress adopted Federal Rule of Evidence 502. Rule 502 was designed to address concerns about broad waiver doctrines that were proliferating in decisional law. *** Even prior to the adoption of Rule 502, the civil litigation process, especially in the most complex of cases, was trending toward "'quick peek' or 'clawback' agreements [that] might . . . enable[e] the party seeking discovery earlier access to discovery material via the 'quick peek' and/or enabling the party producing the information to 'clawback' privileged materials mistakenly produced without risk of being found to have waived." Id.

Again, MSA can do it all manually, but it can't do it slowly.

If MSA can't do it within the Rule 34 timeline, then MSA must become more

technologically engaged with technology assisted review (TAR). In *Hyles v. New York City*, 2016

U.S. Dist. LEXIS 100390, at *4 (S.D.N.Y. Aug. 1, 2016), the court explained:

> Hyles absolutely is correct that in general, TAR is cheaper, more efficient and superior to keyword searching. In March 2009, the "dark ages" in terms of ediscovery advances, this Court described problems with keywords and the need for "careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords.'" *** In again approving the use of TAR in 2015, I wrote that "the case law has developed to the point that it is now black letter law that where the producing party wants to utilize TAR for document review, courts will permit it." *Rio Tinto PLC v. Vale S.A.,* 306 F.R.D. 125, 127 (S.D.N.Y. 2015) (Peck, M.J.).

The choice is MSA's on how do the ESI search, but not as to when:

> Under *Sedona Principle 6*, the City as *the responding party is best situated to decide how to search for and produce ESI responsive* to Hyles' document requests. Hyles' counsel candidly admitted at the conference that they have no authority to support their request to force the City to use TAR. The City can use the search method of its choice. If Hyles later demonstrates deficiencies in the City's production, the City may have to re-do its search. But that is not a basis for Court intervention at this stage of the case.

---

parties increasingly stipulate to "clawback" of privileged materials without meeting its requirements.  Subdivision (d) gives courts the authority to enter a blanket clawback order as part of a protective order providing that inadvertently produced documents can be returned upon demand without waiving the attorney-client privilege, regardless of the circumstances.  Plaintiff is willing to submit to such an order.

See https://www.sbwllp.com/federal-rule-of-evidence-502d-reducing-the-cost-of-clawback/

(Emphasis added). "Thus, despite what the Court might want a responding party to do, Sedona

Principle 6 controls." *Id.*. As the Court in *Da Silva Moore v. Publicis Groupe*, 287 F.R.D. 182, 190-

92 (S.D.N.Y. 2012) found:

> Computer-assisted review appears to be better than the available alternatives, and thus should be used in appropriate cases. While this Court recognizes that computer-assisted review is not perfect, the Federal Rules of Civil Procedure do not require perfection. See, e.g., *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 461 (S.D.N.Y. 2010). Courts and litigants must be cognizant of the aim of Rule 1, to "secure *the just, speedy, and inexpensive determination*" of lawsuits. Fed. R. Civ. P. 1.

(Emphasis added). MSA is best situated to decide how to search, but the court and the rules set the

deadlines. MSA's deadline has long since passed.

## VIII. CONCLUSION

MSA has not obeyed court rules and order. Dr. Iovino has a right to timely receipt of

discovery responses as the reciprocal to her timely provision of it to MSA. And while MSA can

exercise its prerogatives to choose ESI discovery methodologies under Sedona Principle 6, it must

be sanctioned for its failure meet the Rule 34 deadline or seek an extension thereof.

Respectfully submitted,

/s/ Thad M. Guyer

_____
Thad M. Guyer (ORSB No. 821443)
John A. Kolar (DCB No. 953292)
Nate L. Adams III (VSB No. 20707)

GOVERNMENT ACCOUNTABILITY PROJECT
1612 K Street, N.W., Suite 1100
Washington, DC 20006
(202) 966-3311
Jackk@whistleblower.org

Nate L. Adams III (VSB No. 20707)
11 S. Cameron Street
Winchester, VA 22601
(540) 667-1330

nadams@nadamslaw.com

Attorneys for Plaintiff