Exhibit H

**MSA Security** :
:
:
v. : **OIG Whistleblower Case 2017-0044**
:
**Karen Iovino** :

## DECLARATION OF GERALD GOSS
## TO SUPPLEMENT THE ADMINISTRATIVE RECORD

I, Gerald Goss, declare under the penalty of perjury:

1. I am over the age of eighteen years and have personal knowledge of the matters stated below.

2. I have been a member of the executive management team at Michael Stapleton Associates, Ltd. d/b/a MSA Security ("MSA") since 2015 and have oversight responsibility for MSA's federal programs in addition to leading business development.

3. Dr. Karen Iovino ("Iovino") was employed as a part-time veterinarian at the Canine Validation Center ("CVC") until August 18, 2017.

4. When I wrote a hand-written thank you note to Iovino in June of 2017 it was in recognition of a particular surgery she performed on a dog named "Frank."

5. In May 2017, the Department of State (the "Department") indicated to MSA that it wanted MSA to replace the part-time CVC veterinarian position held by Iovino with a new full-time position.

6. This change was required by the growing scope of the CVC program and the increasing operational tempo which demanded greater veterinary resources to maintain the well-being of the dogs.

7. The Department foresaw an increased need to send the veterinarians overseas and work in potential combat areas and so indicated a preference that the new full-time position be filled by someone with military background and international experience.

8. On August 3, 2017, Alan Bower, Deputy Program Manager, notified me that Iovino had made threats to disclose CVC information to non-governmental sources, including the media. This was the first time I became aware any CVC issues raised by Iovino.

9. We were greatly concerned that Iovino may have, or was considering, engaging in discussions with media and other third-party personnel regarding confidential and privileged information.

10. Bower told me that Iovino had specifically mentioned having confidential pictures of canines with health issues, information regarding the behavior of Department officials, and other items which MSA could not substantiate, but that were not within the purview of her job and she should not have had access to or knowledge about.

11. For that reason, we decided to place Iovino on administrative leave with pay while concerns regarding her threatened disclosure of confidential information were investigated, including how she received access to some of the information she purported to have.

12. In order to provide the Department with notice of what had happened but also advance notice of the prospect that Iovino may disclose publicly to media sources certain confidential information of MSA and/or the Department, I provided a transparent and comprehensive report to the Department on August 4, 2017, explaining MSA's actions in restricting Iovino's access to the CVC and suspending her with pay, noting the concurrence of Department officials with MSA's decision, stressing that MSA encourages its employees to report irregularities to the OIG, and clearly articulating that Iovino's suspension with pay was to ensure the protection of confidential and privileged information while MSA investigated. I expressly stated that MSA encourages employees to report any irregularities to the OIG, and that MSA would never retaliate against any employee for doing so.

13. MSA terminated Iovino about two weeks later not because of her reporting to the OIG, but because the part-time position she held ceased to be funded by the Department. As previously noted, this had been the Department's plan since May 2017.

14. MSA's investigation of Iovino's activities was conducted by company forensic and investigative personnel who are independent of the CVC's operations.

15. This included discussions with various people and review of correspondence, laptops and cell phones went on for 6 weeks; however, with all sensitive MSA information secured, Iovino's facility access ended, and her employment concluded, the investigation concerning her was largely moot.

16. I was interviewed by OIG Investigators on April 4, 2018. I was outraged when I read the July 5, 2018 OIG Report because it selectively and misleadingly quoted the report I submitted to the Department on August 4, 2017, as well as my April 4, 2018 interview with the OIG Investigators.

17. The OIG Report falsely quotes me as "justif[ying] [Iovino's] suspension based upon the fact that Iovino's contacts with AQM and OIG violated company protocol because she did not raise these concerns within MSA."

18. My concern over what the OIG Report calls "chain of command issues" has been misconstrued by the OIG. The reasons for my concern over "chain of command issues" is that as an MSA executive, I am interested in maintaining an effective corporate ethics and compliance program where employees freely and safely voice any concerns they have to the management team.

19. As previously noted, this was the first time I had been made aware of Iovino having any concerns about the CVC. We only found out indirectly because one of the kennel technicians

3

passed that information on to management. I saw that as a "chain of command issue", because MSA can't effectively address allegations of misconduct if it isn't made aware of the allegations in the first place.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 05, 2019

Gerald Goss