```
                 Iovino v. Michael Stapleton Associates, LTD, 5:21cv64,
                                       10/12/2022

 1                         UNITED STATES DISTRICT COURT
                       FOR THE WESTERN DISTRICT OF VIRGINIA
 2                              HARRISONBURG DIVISION


 3    ****************************************************************

 4   KAREN IOVINO,                   CIVIL CASE NO.:  5:21CV64
                                     OCTOBER 12, 2022,  11:02 A.M.
 5                                   TELEPHONIC MOTIONS HEARING
              Plaintiff,
 6   vs.

 7   MICHAEL STAPLETON              Before:
     ASSOCIATES, LTD.,               HONORABLE JOEL C. HOPPE
 8                                   UNITED STATES MAGISTRATE JUDGE
              Defendant.             WESTERN DISTRICT OF VIRGINIA
 9
     ****************************************************************
10
     APPEARANCES:
11

12   For the Plaintiff:       THAD M. GUYER, ESQUIRE
                              T.M. Guyer & Friends, PC
13                            116 Mistletoe Street
                              Medford, OR 97501
14                            206-954-1293

15
                              JOHN A. KOLAR, ESQUIRE
16                            KENDRICK HOLLEY, ESQUIRE
                              Government Accountability Project
17                            1612 K Street, NW, Ste 1100
                              Washington, DC 20006
18                            202-926-3311


19

20   FTR OPERATOR:  Karen Dotson


21

22   Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR

23                    255 West Main Street, Suite 304
                      Charlottesville, Virginia  22902
24                    434.296.9284
              PROCEEDINGS RECORDED BY ELECTRONIC RECORDING;
25   TRANSCRIPT PRODUCED BY COMPUTER.
```

1 things in direct violation of her confidentiality agreement.
2 She had leaked them in breach of that, and thus causing us to
3 be in violation of our obligations to the Department of State.
4 But this is the first time it's being litigated.  So she has
5 not -- I don't have evidence that plaintiff is someone who
6 flouts protective orders.  But I would rather build a fence
7 before the horses get out, because I know that these horses
8 run, and they've run to the press in the past.
9          So I'm concerned that -- I understand we need to
10 litigate this case.  I understand that she has claims that she
11 wants litigated -- the plaintiff has claims that she wants
12 litigated.  But we've also seen, A, a predisposition in
13 discovery responses in this case admitting that that was
14 because she did, admitting that she did communicate with a
15 number of different media outlets about these materials, about
16 this program.
17          So given that case, I don't know how MSA can be a
18 good steward of Department of State's information about a very
19 sensitive program if we don't have a separate category saying:
20 Okay, Mr. Guyer and your team of lawyers, you can see this, but
21 you can't share it with the plaintiff because the plaintiff
22 has a predisposition of sharing with the media.  That's our
23 concern.
24          THE COURT:  Well, and I understand your concern.  I
25 hear your concern that there's -- that you're worried about

1  some track record of disclosure of the information.  I think

2  it's a different situation when there's a court order that says

3  this information can be disclosed to a limited number of people

4  for use in this case only; and that if there's a violation, the

5  party can be found in contempt of court.  I mean, there will

6  be -- there can be evidentiary hearings on that.  There can be

7  monetary sanctions imposed.  There can be evidentiary sanctions

8  imposed as well that they can cause significant problems for,

9  for litigating the case from any party that improperly

10 discloses information in violation of a protective order.

11          Sanctions are serious.  That's part of -- one of the

12 reasons for the protective order is to make sure that people

13 follow its terms.  I think that that should give MSA and the

14 Department of State some confidence that any materials that are

15 turned over to the plaintiff and her counsel would be used

16 properly, and would be used consistent with the terms of the

17 protective order.

18          MR. WARD:  Your Honor, I agree with you.  I think

19 that we can -- if we're going to have the sharpest teeth in

20 that particular dog's mouth for that -- for those sanctions,

21 any and all possible sanctions -- then, you know, I don't think

22 we need AEO.  I would want it to be -- I don't know how much

23 you want to codify that in the protective order or just -- you

24 know, for me if I know that, you know, everyone hears this and

25 understands that there are sanctions, but we may want to have a

1  Court today.

2              MR. GUYER:  What is before the Court -- I agree with
3  that, Your Honor, but this is directly -- this directly is
4  called into question by paragraph 24 of the confidentiality
5  order proposed by MSA.  Twenty-four states -- and this is on
6  page 9, the last page -- 24 states, Any documents related to
7  contract -- which is what we're here on -- may only be produced
8  and/or used in this litigation pursuant to the Department of
9  State's approval of a *Touhy* request by the requesting party.

10             That is totally unworkable, and this simply cannot
11 stay in the order.  And the reason that I wanted the Department
12 of Justice to appear here today is because they need to tell us
13 now if they want this in this order or not, because they're the
14 only ones with an interest in paragraph 24, Your Honor.  Now is
15 the time for them to speak up because we're in a federal
16 courthouse now.  We are looking at a situation of extraordinary
17 delay in this case with this relationship between MSA.  So I
18 ask you, Your Honor, to get that clarification.  Does DOJ take
19 the position stated in 24?

20             MR. WARD:  Your Honor, if I may?

21             THE COURT:  Sure.  And I have to say I'm not up to
22 speed on any of the *Touhy* proceedings.

23             MR. WARD:  Your Honor, all I was going to say is that
24 this is a sandbag.  You know, Your Honor asked for a joint
25 statement.  We provided a joint statement.  We addressed those