IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KAREN IOVINO, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:21-cv-00064 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL STAPLETON ASSOCIATES, ) | By:    Hon. Thomas T. Cullen |
| LTD. d/b/a MSA Security, Inc., ) | United States District Judge |
| ) | |
| Defendant. ) | |

This action concerning alleged retaliation in violation of 41 U.S.C. § 4712 and a breach of contract counterclaim[1] is before the court on Plaintiff Dr. Karen Iovino's motion to amend the Confidentiality Order[2] (the "Confidentiality Order") (ECF No. 68) entered by Magistrate Judge Hoppe on October 13, 2022 (ECF No. 67)[3]. The motion has been fully briefed by the

---

[1] Iovino is a veterinarian who, in a prior job, treated dogs that are specially trained to assist law enforcement agencies recover explosives. She brought this suit against her former employer, Defendant Michael Stapleton Associates, Ltd. ("MSA")—a United States Department of State ("State Department") contractor that trains explosive detection canines ("EDC's")—claiming that her employment contract with MSA was not renewed in violation of 41 U.S.C. § 4712, which protects whistleblowers working for government contractors. MSA asserts a counterclaim alleging that Iovino's whistleblowing caused it reputational and financial harm, and is suing her for breach her employment contract's Non-Disclosure Agreement.

[2] For purposes of clarification, the parties refer to a "protective order" as the general term for orders defining specific discovery as confidential. The final document entered by Magistrate Judge Hoppe, which is the subject of this Opinion, is styled "Confidentiality Order," and will be referred to as such. (*See* Confidentiality Order [ECF No. 67].)

[3] The court notes that the present motion was previously referred to Magistrate Judge Hoppe. On October 27, 2022, Plaintiff also objected to Judge Hoppe's decision to enter the Confidentiality Order (Pl.'s Appeal of Magistrate Order [ECF No. 71]); that objection was stayed pending further briefing on the matter (ECF No. 79). The parties subsequently briefed this issue as a motion to amend, but the court notes that the briefs submitted to Magistrate Judge Hoppe on Plaintiff's motion to amend are on the same issues that this court was asked to consider on Iovino's appeal. Accordingly, the court will review Judge Hoppe's entry of the Confidentiality Order under the standard of review provided by Fed. R. Civ. P. 72(a) ("The district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or contrary to law.").

parties, and Judge Hoppe held a hearing with the parties on October 12. (*See* ECF No. 76.) The court has reviewed all the relevant pleadings and the transcript of the arguments before Judge Hoppe; further oral argument is not necessary for this court to render its decision on the outstanding issues. For the reasons explained below, the court finds that MSA has demonstrated good cause for entry of the Confidentiality Order (and specifically paragraph 2(a)(iii) of that order). The court will therefore deny Iovino's motion to amend (and necessarily overrule her objections to Judge Hoppe's order) and affirm the entry of the Confidentiality Order.

## I. RELEVANT PROCEDURAL BACKGROUND

The parties have unnecessarily complicated their dispute over one paragraph of the Confidentiality Order, filing both a motion for reconsideration as well as an objection/appeal related to, virtually, the same issue. As such, the court will briefly outline the relevant procedural history.

Discovery matters in this case were referred to Magistrate Judge Hoppe on January 26, 2022. (ECF No. 17.) As there were still two pending motions to dismiss, however, there was not much movement on the discovery front until September 13, 2022. On that date, the parties submitted a joint statement explaining that they were "at a standstill in their efforts to agree on the terms of a stipulated protective order" and provided their respective positions on the principal points of contention.[4] (Joint Statement Disc. Dispute p. 1 [ECF No. 81].)

---

[4] The joint statement demonstrated that the parties were far apart with respect to how a potential protective order should be structured, its breadth, and its application. Both parties submitted proposed drafts but could not agree on several grounds. (Joint Statement Disc. Dispute p. 2.) Specifically, Iovino was unwilling to agree to a protective order that included an attorney's eyes-only provision ("AEO"), limited her attorneys' ability to share discovery with other clients in separate but related matters, or was based on a boilerplate template. (*Id.* at 1–2.) On the other hand, MSA advocated for an AEO provision and was hesitant to agree to any protective

Following a review of the joint statement, Magistrate Judge Hoppe conducted a hearing on October 12, 2022, to determine whether a protective order should be entered, and if one should, its scope. (ECF No. 62; *see generally* Hr'g Tr. [ECF No. 76].) The hearing became contentious at points as the parties substantially disagreed regarding the format and scope of any proposed protective order. (*See, e.g.*, Hr'g Tr. at 24, 26, 28.)

At the hearing, the parties reiterated many of their concerns that were outlined in their joint statement, albeit in greater detail. Iovino noted her concerns regarding potential AEO provisions, and she argued that Paragraph 2(a)(iii) of MSA's proposed protective order[5] would permit MSA to deem every discoverable document confidential, an unwarranted power she argued would impede discovery. (Hr'g Tr. p. 7–8.) MSA's concerns primarily related to the extent that "Confidential Information" would be shared with witnesses, leaked, or otherwise disclosed to the public based on Iovino's admitted leaking of MSA documents in the past, their subsequent dissemination to "several media outlets," and her counsels' ulterior motives as attorneys for an organization that is dedicated to, among other things, uncovering government malfeasance. (*Id.* at 17–19.)

At the close of the hearing, Magistrate Judge Hoppe ordered the parties to submit their edits and objections on the final Confidentiality Order. (Hr'g Tr. p. 27 ¶¶ 2–20.) Iovino objected to several portions of the proposed Confidentiality Order, which were represented

---

order permitting disclosure to non-parties based on Iovino's admission that she has previously disclosed MSA and State Department documents to the media. (*Id.* at 2–3).

[5] Paragraph 2(a)(iii) of MSA's proposed protective order provided that "Confidential Information shall mean all documents and testimony, and all information contained therein, containing . . . Any documents deemed Confidential Information by the United States Government, including, but not limited to documents related to Contract No. SAQMMA16D0106." (MSA Proposed Protective Order ¶ 2(a)(iii) [ECF No. 81-2].)

in proposed edits submitted to Judge Hoppe on October 13, 2022. (*See* Iovino's In-line Objections [ECF No. 65].) Later that same day, Magistrate Judge Hoppe entered the Confidentiality Order at issue. (ECF No. 67.) The final version of the Confidentiality Order substantially sustained Iovino's objections—striking the AEO and *Touhy*-regulation[6] provisions—and it provided recourse for court review of documents that she contends are improperly designated as confidential.[7] Thereafter, Iovino filed the present motion to amend the Confidentiality Order, arguing a lack of good cause for Paragraph 2(a)(iii) specifically,[8] which provides:

> When used in this order . . . "Confidential Information" shall mean all documents and testimony, and all information contained therein, containing . . . Any documents deemed Confidential Information by the United States Government, including, but not limited to documents related to Contract No. SAQMMA16D0106.

(Confidentiality Order ¶ 2(a)(iii).)

After the motion to amend was fully briefed, but before Magistrate Judge Hoppe could rule on the matter, Iovino filed objections to Judge Hoppe's entry of the Confidentiality Order. (ECF No. 71.) To conserve judicial resources, the court stayed the appeal pending further briefing on the motion to amend. (ECF No. 79.) Magistrate Judge Hoppe then ordered further briefing on the issue of whether there was good cause to enter Paragraph 2(a)(iii) of the

---

[6] *Touhy* regulations refer to the processes for requesting U.S. government documents and witnesses in court proceedings, as first discussed in depth in the Supreme Court's ruling in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

[7] All AEO and *Touhy* provisions that were included in MSA's Proposed Protective Order were excised from the final Confidentiality Order. (*Compare* MSA Proposed Protective Order ¶¶ 22, 23 and Confidentiality Order.)

[8] Paragraph 2(a)(iii) of MSA's Proposed Protective Order was included in the final Confidentiality Order.

Confidentiality Order (ECF No. 80).[9] Because the briefing on the motion to amend and the appeal of Magistrate Judge Hoppe's decision essentially raise the same issue, the court, in the interest of judicial expediency, has decided to take up the issue as an objection on the limited issues raised by Iovino.

## II. STANDARD OF REVIEW

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery orders, within 14 days of the order. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1). "A magistrate judge's nondispositive ruling will be set aside only if it is clearly erroneous or contrary to law." *Norris v. Excel Indus., Inc.*, No. 5:14-CV-00029, 2015 WL 4431022, at *2 (W.D. Va. July 20, 2015) (cleaned up) (quoting Fed. R. Civ. P. 72(a)). The court reviews the magistrate judge's decisions on questions of law under the "contrary to law" standard. *Clinch Coal. v. U.S. Forest Serv.*, No. 2:21CV00003, 2022 WL 1018840, at *3 (W.D. Va. Apr. 5, 2022). "If an order fails to apply or misapplies relevant statutes, case law, or rules of procedure, it is contrary to law." *Norris*, 2015 WL 4431022, at *2 (cleaned up) (quoting *Buford v. Ammar's Inc.*, No. 1:14cv00012, 2014 WL 753083, at *1 (W.D. Va. Nov. 24, 2014)). "In the context of Rule 72(a), this 'contrary to law' standard is equivalent to de novo review." *Clinch Coal.*, 2022 WL 1018840, at *3 (quoting *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15CV00057, 2017 WL 2210520, at *2 (W.D. Va. May 19, 2017)).

---

[9] Iovino's motion to amend the Confidentiality Order is based on the same grounds as her objection to Magistrate Judge Hoppe's decision to enter the Confidentiality Order. Both motions argue that there was insufficient good cause for the entry of the Confidentiality Order, and that ¶ 2(a)(iii) of the Confidentiality Order is contrary to law. (*See* Pl.'s Mot. to Am. at 1 [ECF No. 68]; Pl.'s Appeal of Magistrate Order at 2–3.)

### III. ANALYSIS

In her appeal of Magistrate Judge Hoppe's decision to enter Paragraph 2(a)(iii) of the Confidentiality Order and subsequent briefs on the good-cause issue, Iovino argues that Judge Hoppe did not make an independent finding of good cause to include Paragraph 2(a)(iii) in the Confidentiality Order, and she essentially challenges the paragraph based on its "umbrella" applicability. Iovino also asserts that Paragraph 2(a)(iii) is contrary to law. (Pl.'s Mot. to Am. at 1; Pl.'s Appeal of Magistrate Order at 1–2; Pl.'s Reply Br. Mot. to Am. at 1 [ECF No. 87].) MSA disagrees, contending that, given the sensitive nature of the underlying dispute, the State Department's integral role in it, and Plaintiff's admitted leaking to various media outlets, there is ample good cause to include Paragraph 2(a)(iii) in the Confidentiality Order. (Def.'s Resp. Mot. to Am. at 2 [ECF No. 85].) Because Iovino's challenge to the Confidentiality Order is specific to Paragraph 2(a)(iii), the court addresses that provision only.

Rule 26(c) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The party seeking a protective order has the burden of establishing good cause by demonstrating that specific prejudice or harm will result if no protective order is granted." *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (cleaned up) (quoting *Phillips v. Gen. Motors Corp.,* 307 F.3d 1206, 1210–11 (9th Cir.2002)). As the party moving for the protective order, MSA has the burden to establish good cause for the inclusion of Paragraph 2(a)(iii) into the Confidentiality Order. In other words, MSA must show that public disclosure of the materials subject to Paragraph 2(a)(iii) will harm them. The court finds that MSA has met this burden.

As an initial matter, MSA's contract with the State Department (the "Contract") defines State Department materials as "[a]ll documents and records generated during the performance of work under this contract . . . ." (Def.'s Resp. Mot. to Am. at 2.) The Contract strictly mandates MSA to keep all State Department materials confidential. *Id.* The State Department has also asserted as much in a letter from Randal Wax to John Kolar concerning Iovino's *Touhy* request, stating, "As MSA is a government contractor and not an employee of the government, MSA is not in a position to produce to third-parties such documents that are subject to government protections without the government's review *and appropriate protections*." (Kolar Letter, Sept. 16, 2022 [ECF No. 60-2] (emphasis added)).

MSA would undoubtedly be in breach of its contractual obligations with the State Department if it disclosed materials to Iovino without a confidential designation. Moreover, Iovino has, by her own admission, previously leaked confidential MSA and State Department materials to various news outlets, which MSA claims caused them both pecuniary and reputational harm. (*Id.*) This is not to say that Iovino will leak documents again, or that her counsel will disclose documents to outside entities, but MSA is justifiably concerned about additional disclosures that would potentially cause additional harm if Paragraph 2(a)(iii) is not included in the Confidentiality Order. Moreover, MSA's contract—and the attendant discovery sought by Iovino—pertain to training EDC's for the State Department for a variety of applications, including anti-terrorism initiatives and embassy-security protocols.[10] Insofar

---

[10] Indeed, on December 6, 2022, the State Department filed a statement of interest regarding Iovino's separate, but related, motion to compel discovery in this case. (*See* ECF No. 90.) The statement included the declaration of Michael D. Caramelo—Division Chief for the Freedom of Information Act and Privacy Act Division—in which he stated that materials related to the Contract may contain sensitive information including: the nature and duties of EDC's; how they are trained; what security and threat risks they are trained to detect; sensitive information concerning relationships with foreign nations; the quantity and location of EDC teams; after action

as the proposed Confidentiality Order would prevent unauthorized, wholesale disclosure of these sensitive materials, it furthers important government interests. Accordingly, the court believes there is good cause for inclusion of Paragraph 2(a)(iii) in the Confidentiality Order.

Iovino counters that "the court must protect the public's interest in State Department program documents." (Pl.'s Reply Br. Mot. to Am. at 3.) In so doing, she conflates the issues. The matter before the court is the orderly administration of *discovery*; the public generally has no interest or right to documents that are exchanged during that process, but that are not attached to or referenced in public filings to substantiate or advance a party's litigation position. *See Rushford v. New Yorker Man., Inc.*, 846 F.2d 249, 252–53 (4th Cir. 1998) (noting that the First Amendment right to access civil proceedings is generally limited to civil trials and documents filed with a motion that "adjudicates substantive rights and serves as a substitute for trial," such as a summary judgment motion). At bottom, the public's interest lies in the evidence Iovino presents in court to substantiate her allegations, not to every document exchanged in every civil action in every court in the country as part of *discovery. See, e.g.*, *De Simone v. VSL Pharm., Inc.*, 2022 WL 13955292, at *2 (D. Md. Oct. 24, 2022) (noting that the public's interest "in a dispute . . . that had no bearing on the merits of this case . . . is virtually nonexistent").

Moreover, Iovino minimizes the real harm that could inure to MSA and the State Department if Paragraph 2(a)(iii) is not included in the Confidentiality Order. Iovino instead

---

reports; personally identifiable information of people not relevant to the litigation; and materials protected by attorney-client privilege, deliberative process privilege, or other privileges that could be asserted by the State Department. (Michael D. Caramelo Decl. ¶ 5, Dec. 5, 2022 [ECF No. 90-1].)

asserts that "the burden is on MSA, document by document, to prove they are still confidential." (*Id.* at 2.)[11] But doing so would unnecessarily encumber the entire discovery process; Iovino is requesting tens of thousands of documents apparently owned by State Department, many of which contain sensitive information, as discussed *supra.* Indeed, the entry of a blanket or umbrella protective order, as here, is commonplace in cases involving the production of highly sensitive or proprietary information, or where discovery is expected to be voluminous. *See Norris,* 2015 WL 4431022, at *2 ("An umbrella protective order identifies categories of documents subject to protection and may be utilized when parties to litigation anticipate discovery to be voluminous" and "has 'become a common feature of complex litigation in the federal courts' and is meant to 'expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication.'" (quoting *Minter v. Wells Fargo Bank, N.A.*, Civil Nos. WMN–07–3442, WMN–08–1642, 2010 WL 5418910, at *3 (D. Md. 23 Dec. 2010))).

The umbrella Confidentiality Order here is permissible—and, the court takes pains to say, advisable—because discovery will most certainly be voluminous and the Confidentiality Order will (hopefully) expedite the production of documents as opposed to mandating a document-by-document review of thousands of documents. *See Pearson v. Miller,* 211 F.3d 57, 73 (3d Cir. 2000) ("[A] district court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection."); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 946 (7th Cir.1999) (holding that "[t]here is no objection to an order that allows the parties to keep their trade

---

[11] To be sure, if MSA abuses the process, Iovino has recourses, including sanctions.

secrets (or some other properly demarcated category of legitimately confidential information) out of the public record"). Indeed, an order of this type is permitted provided that the court finds that good cause exists to protect specific categories of documents described in the order. *U.S. ex rel. Davis*, 753 F. Supp. 2d at 566.

Once there is good cause for a protected category, the parties "may designate whether discovery materials fall within . . . the enumerated good[-]cause categories set forth in the protective order," and, in the event that a party challenges an opposing party's designation of a particular document, "the party seeking to avoid [public] disclosure has the burden of persuading the court that the designated material falls within a particular good[-]cause category." *Id.* at 566–67. The Confidentiality Order here provides that if there is a "[d]ispute[] regarding the propriety of a designation of particular Confidential Information or information protected by the attorney-client privilege, work product doctrine, or other protection," it shall be submitted to the court subject to the "burdens of proof established by applicable law." (Confidentiality Order ¶ 14.) Therefore, if Iovino contests the designation of certain materials with respect to Paragraph 2(a)(iii), she may submit her objection to the court. MSA would then be required to establish its claim—subject to the applicable burden established by Rule 26— that those specific materials qualify for protection under Paragraph 2(a)(iii).

Finally, the court notes that the wide scope of and potential costs associated with the requested discovery requested may not be commensurate to the discrete nature of Iovino's claims and the amount of damages sought.[12] Insofar as the Confidentiality Order permits the production of huge amounts of data, while preventing the unjustified disclosure of sensitive

---

[12] Iovino's claim is $152,433.52 total. (*See* Ex. H [ECF No. 88-8].)

documents and records that may ultimately prove irrelevant to Iovino's claims *in this litigation*, it protects the interests of all involved.

## IV. CONCLUSION

For these reasons, the court finds that MSA has demonstrated good cause for the inclusion of Paragraph 2(a)(iii) in the Confidentiality Order. Because there is good cause to enter the Confidentiality Order—and specifically Paragraph 2(a)(iii)—Iovino's objections to Magistrate Judge Hoppe's ruling will be overruled, and her motion to amend the protective order will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 12th day of December, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE