**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | |
|---|---|
| **DR. KAREN IOVINO,** ) | |
| ) | |
| *Plaintiff and* ) | |
| *Counterclaim Defendant,* ) | **Case No. 5:21-CV-00064** |
| ) | |
| v. ) | **Hon. Thomas T. Cullen, U.S.D.J.** |
| ) | **Hon. Joel C. Hoppe, U.S.M.J.** |
| **MICHAEL STAPLETON ASSOCIATES,** ) | |
| **LTD.,** *d.b.a.* **MSA SECURITY, INC.,** ) | |
| ) | **April 28, 2023** |
| *Defendant and* ) | |
| *Counterclaim Plaintiff.* ) | |

## Plaintiff Iovino's Sixth Status Report on Discovery

Plaintiff, Dr. Karen Iovino, by her undersigned attorneys, submits this Sixth Status Report on Discovery in compliance with the Court's February 17, 2023 Oral Order, Document Number ("D-") 106. Based on its own status reports, it appears that Defendant MSA Security (MSA) has been fairly diligent in collecting responsive documents and providing them to the Department of State (DoS) for the latter's review. The DoS' review has been both unduly slow. Once DoS completes its processing, it releases the documents back to MSA to had over to Plaintiff.

First, DoS is reviewing documents at a snail's pace, such that the Court's Amended Scheduling Order (ECF 112) cannot possibly be met. To date, MSA has produced only approximately 3,970 pages of documents, leaving 5,586 still to be produced.[1] In other words,

---

[1] MSA produced a ninth tranche of documents as of 12:41 pm EDT today. Plaintiff has not had sufficient time to review and analyze these documents before finalizing and filing this status report.

despite the passage of many months, defendant MSA has turned over to Dr. Iovino only 40% of the responsive documents it owes her. MSA produced its eighth and latest tranche of documents on April 25, 2023, 39 days after its last prior tranche, which was turned over on March 17, 2023.

From a litigation viewpoint, the most probative documents, the "hot documents" if you will, are emails internal to MSA's supervisors and managers revealing their reactions and discussion of Dr. Iovino's reported concerns about its management deficiencies, the mistreatment of the canines, and its termination of Dr. Iovino; and emails between DoS personnel and MSA employees regarding the same subjects. Other kinds of documents requested are helpful, such as the administrative record, contracts, organization charts, internal MSA policies and procedures, but do not go to the core of the dispute as directly as emails and other contemporaneous communications.

For example, in the latest tranche of documents produced earlier this week totaling 1,037 pages, only approximately 40 pages appear to be emails. The remaining nearly 1000 pages are proposals by MSA to DoS for a contract, contracts or task orders, or work performance plans. It appears that many are duplicative of documents MSA produced in its earlier tranches. There are many inadequately explained redactions.

To date, it appears MSA has produced only one email by MSA to the DoS: an August 4, 2017 email from Gerald Goss of MSA to the two DoS contracting officer's representatives (COR), Loren Bachman and Josh Carter, regarding MSA's contention that Dr. Iovino intended to make unauthorized disclosure of information in violation of an NDA, and MSA's decision to place her on administrative leave with pay.

MSA produced two seemingly identical versions of this August 4, 2017 email except for an unwarranted redaction in one of them. The version bates stamped IOVINO_00000268-270

shows the recipients were Bachman and Carter; in the other version, bates-stamped

IOVINO_00000051-53, MSA or DoS redacted Josh Carter's name. This and additional instances

suggest that MSA/DoS was careless and applied inconsistent considerations in making

redactions to the documents. In addition, neither has produced an adequate log or explanation of

redactions and the reasons therefor.[2]

As far as internal company communications regarding Dr. Iovino are concerned, plaintiff

has not taken an exact count, but estimates that MSA had produced no more than a couple hundred

pages. That is a very small percentage of the 3,970 pages produced to date.

Moreover, communications between MSA and the DoS that a reasonable person would

expect to exist have not been produced so far. For example, according to a letter prepared by

Sharon James the DoS Acting Procurement Executive, on July 6, 2013, Dr. Iovino complained to

Ms. Cathy Read, Director of Acquisition of the DoS, about the poor treatment of canines being

sent overseas as well MSA's Security's personnel and management practices. Ms. Read advised

plaintiff to report her concerns to the OIG. IOVINO_00000003-04.

If Ms. Read followed usual and standard business practices, she would have made an

internal written memorialization of Dr. Iovino's report to her on such an important subject matter,

but thus far MSA has produced no such document. Similarly, MSA has not produced any such

documents from other DoS employees interfacing with MSA regarding the contract.

---

[2] A log of sorts was produced, apparently by the DoS, on April 5, 2023, titled "DOS Confidentiality/Privilege Assertions and Previously Existing Redactions, which fails to provide any reasons for redacting material. It only shows whether a redaction was made, and whether it was made by DoS itself or appears to have been made by the OIG of the DoS. It has one entry per document, even for those where there are multiple redactions. In short, there is not redaction-by-redaction justification where MSA/DoS has deleted information. Moreover, this redaction log, such as it is, is manifestly incomplete. For example, bates-stamped document IOVINO_00002575 is redacted in its entirety. The entire page is blacked out. Yet, this document is not accounted for on the redaction log.

Further, the OIG Report states: "In mid-July [2017], a DS employee provided Dr. Iovino's name and information about her concerns to various MSA officials." IOVINO_00000010. It is logical to infer that the unnamed "DS employee" was Ms. Read. Yet, MSA has not produced any documents regarding her communications with MSA officials about this, nor have any MSA officials admitted in OIG interviews that they received such information from Ms. Read (or any other DoS official) in mid-July 2017. This timing is important because it shows that MSA knew of Dr. Iovino's whistleblowing to DoS earlier than MSA now asserts it knew, and that, of course, bears on the so-called knowledge-timing test for whether a protected disclosure was a contributing factor in MSA taking a negative personnel action toward plaintiff.

Perhaps MSA and/or DoS are retaining these kinds of "hot documents" until the final stage of the document production process, but no matter what the explanation is, the failure to produce such to date makes it impossible for Plaintiff to meet the current deadlines in the Court's amended scheduling order.

MSA also has not produced its versions of the disclosures it contends Iovino made to various reporters, journalists, and media outlets in violation of her NDA as required by RFPs 23-30, with the exception of a very few pages, or documents supporting MSA's contention that it was harmed by those disclosures (RFP 31-33). In fact, the 8/4/2017 email from Mr. Goss to the DoS states, contrary to MSA's claim in its counterclaim, that "At the time of this email, there are no mission impacts to the Department of State Contract [from Iovino's alleged disclosures]. All duties and operations continue IAW the expectations of the contract." IOVINO_00000052. It is difficult to understand how MSA plans to prove its counterclaim if it lacks such evidence. Again, it is possible the Defendant and/or the DoS may be "slow-rolling" their production of these items; we have no way of knowing, but we cannot adequately prepare Dr. Iovino's defense to the

counterclaim with timely production.

Finally, the privilege logs produced so are by MSA are inadequate. For example, none of the entries asserting attorney-client privilege or attorney work-product identify by name the counsel whose connection to the document is at the basis of the claim. For example, the privilege log entry for 00001468 states: "Summary of Iovino's conduct at MSA prepared by counsel in anticipation of litigation." The line for this document identifies the document's "type" as "pdf" which is the format, not the type (e.g., letter, email, etc.) The log also does not identify the author, recipients, or date of the document.

Plaintiff is still reviewing the privilege log against the documents produced and may wish to supplement its position on the inadequacy of the log.

Respectfully submitted on this 28th day of April 2023 by:

/s/ Thad M. Guyer

_____
Thad M. Guyer
T.M. Guyer and Ayers & Friends, PC
(Admitted *pro hac vice)*

John A. Kolar
(DC Bar No. 953292)
Government Accountability Project
1612 K Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 926-3311
Jackk@whistleblower.org
(Admitted *pro hac vice*)

Nate L. Adams III
(VSB No. 20707)
ADAMS AND ASSOCIATES, , P.C.
11 S. Cameron Street
Winchester, VA 22601
(540) 667-1330
nadams@nadamslaw.com