UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **DR. KAREN IOVINO,** | ) |
| | ) |
| *Plaintiff and* | ) |
| *Counterclaim Defendant*, | ) Case No. 5:21-CV-00064 |
| | ) |
| v. | ) Hon. Thomas T. Cullen, U.S.D.J. |
| | ) Hon. Joel C. Hoppe, U.S.M.J. |
| **MICHAEL STAPLETON ASSOCIATES,** | ) |
| **LTD.,** *d.b.a.* **MSA SECURITY, INC.,** | ) |
| | ) June 9, 2023 |
| *Defendant and* | ) |
| *Counterclaim Plaintiff*. | ) |
| | ) |

**Plaintiff Iovino's Ninth Status Report on Discovery**

Plaintiff, Dr. Karen Iovino, by her undersigned attorneys, submits this Ninth Status Report on Discovery in compliance with the Court's February 17, 2023 Oral Order, Document Number ("D-") 106.

"It feels good to be lost in the right direction." – *Unknown*. Thousands of pages have been provided over the last three months, but what is not there is disorienting. In its Status Report filed today (D-131), the Department of State (DoS) avers that it has completed reviewing all documents that Defendant MSA Security, Inc. (MSA) has provided to DoS as responsive to Plaintiff's document requests. Yet MSA's production of documents has obvious defects and is inadequate when measures against the discovery requests. The parties will agree that the discovery and trial dates in the Amended Scheduling Order (Dkt 112, March 17, 2023) are not

1

sustainable.

The detailed break out of documents produced by MSA and DoS in our prior status report, the Eighth (see D-130) is illustrative of the kinds of documents MSA produced in its final tranche, turned over to Plaintiff on Tuesday of this week, June 6, 2023. Again, across all of MSA's document tranches, there is a paucity of emails relating to MSA's termination of Plaintiff, the issue at the heart of this case. Most of the documents produced this week consist of contracts, contract proposals, etc. just as with the prior tranche whose contents were broken down in the Eighth report To be sure, those are responsive to Plaintiff's RFP No. 11.

But even more important are communications between MSA and DoS referencing the reasons for terminating Dr. Iovino. Thus far, MSA has produced *only a single* communication between it and DoS about the firing of Dr. Iovino. That is an August 4, 2017 email from Gerald Goss of MSA to the DoS contracting personnel regarding MSA's contention that Dr. Iovino intended to make unauthorized disclosure of information in violation of an NDA, and MSA's resulting decision to place her on administrative leave with pay. See Exhibit A attached hereto.

In that email, Mr. Goss makes several statements that suggest the existence of relevant documents, *which MSA has never produced as far as we can discern.* For example, Mr. Goss informed the Contracting Officer (CO) that:

> MSA is conducting an internal Administrative investigation as well as a forensic computer investigation to ensure confidential and privileged information has been protected. MSA will provide a report of our findings upon completion to the Department of State regarding the outcomes of the investigation as well as this employee matter.

See Exhibit A, p. 2, first full paragraph. MSA has not produced those MSA reports to Dr. Iovino.

Mr. Goss referenced "an incident report to DSS [Diplomatic Security Service]." Exhibit A, p. 2, 4th bullet point. MSA has not produced such report.

2

Exhibit B hereto is a July 26, 2017 email from Peter Deegan of MSA to Dr. Iovino regarding an gender and age discrimination claim that Iovino filed against MSA. Among other things, Mr. Deegan stated: "Additionally, if you have concerns (aside from your complaint of sex and age discrimination), we must make the client aware, as well as notify the IG of the issues for investigation." Given Mr. Deegan's assertion of such a duty on the part of MSA, a reasonable person would expect to see in MSA's document productions, additional contemporaneous reports by MSA to DoS on Dr. Iovino's concerns than the single email of Mr. Goss (Exhibit A).

Another example of an expected set of documents that should exist, but that are missing from MSA's productions to date, are any communications between Ms. Cathy Read, DoS Director of Acquisition Management, and persons at MSA (requested in RFP No. 3). For example, according to a letter prepared by Sharon James the DoS Acting Procurement Executive, on July 6, 2013, Dr. Iovino complained to Ms. Cathy Read, Director of Acquisition of the DoS, about the poor treatment of canines being sent overseas as well MSA's Security's personnel and management practices. Ms. Read advised plaintiff to report her concerns to the OIG. IOVINO_00000003-04.

If Ms. Read followed usual and standard business practices, she would have made an internal written memorialization of Dr. Iovino's report to her on such an important subject matter, but thus far MSA has produced no such document. Similarly, MSA has not produced any such documents from other DoS employees interfacing with MSA regarding the contact.

Further, the OIG Report states: "In mid-July [2017], a DS employee provided Dr. Iovino's name and information about her concerns to various MSA officials." IOVINO_00000010. It is logical to infer that the unnamed "DS employee" was Ms. Read. Yet, MSA has not produced any documents regarding her communications with MSA officials about this, nor have any MSA officials admitted in OIG interviews that they received such information from Ms. Read (or any

3

other DoS official) in mid-July 2017. This timing is important because it shows that MSA knew of Dr. Iovino's whistleblowing to DoS earlier than MSA now asserts it knew, and that, of course, bears on the so-called knowledge-timing test for whether a protected disclosure was a contributing factor in MSA taking a negative personnel action toward plaintiff.

MSA also has not produced its versions of the disclosures it contends Iovino made to various reporters, journalists, and media outlets in violation of her NDA as required by RFPs 23-30, with the exception of a very few pages, or documents supporting MSA's contention that it was harmed by those disclosures (RFP 31-33). In fact, the 8/4/2017 email from Mr. Goss to the DoS states, contrary to MSA's claim in its counterclaim, that "At the time of this email, there are no mission impacts to the Department of State Contract [from Iovino's alleged disclosures]. All duties and operations continue IAW the expectations of the contract." IOVINO_00000052. It is difficult to understand how MSA plans to prove its counterclaim if it lacks such evidence. Again, it is possible the Defendant and/or the DoS may be "slow-rolling" their production of these items; we have no way of knowing, but we cannot adequately prepare Dr. Iovino's defense to the counterclaim without timely production.

The DoS asserts in its status report filed today D-131:

> DOS has not withheld any documents and has made minimal redactions for sensitive State Department information that are self-evident and do not require a privilege log.

We disagree with that statement. MSA and/or DoS have redacted the identities of its contracting personnel in thousands of pages of documents when our documents requests seek that very information. It is certainly relevant that we discover the involvement of the contracting officer, contracting officer's representatives (CORs), and any other DoS employee's involvement in adverse actions against Dr. Iovino. The statute governing this

action states in pertinent part:

> a reprisal described in paragraph (1) is prohibited even if it is undertaken at the request of an executive branch official, unless the request takes the form of a non-discretionary directive and is within the authority of the executive branch official making the request.

Thus, the names of DoS employees are clearly not outside the permissible bounds of proper discovery, and MSA/DoS should be directed to "un-redact" that information.

Moreover, MSA/DoS has not explained the grounds for its redactions. Instead, they assert that the grounds "are self-evident and do not require a privilege log." We disagree. Dr. Iovino should not be expected to read their minds. They must provide a privilege log with explanations for their redactions.

Respectfully submitted on this 9th day of June 2023 by:

/s/ Thad M. Guyer

_____

Thad M. Guyer
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe, PO Box 1061
Medford, OR 97501
(206) 535-2395
thad@guyerayers.com
(Admitted *pro hac vice*)

John A. Kolar
(DC Bar No. 953292)
Government Accountability Project
1612 K Street, N.W., Suite 1100
Washington, D.C. 20006

Nate L. Adams III
(VSB No. 20707)
ADAMS AND ASSOCIATES, , P.C.
11 S. Cameron Street
Winchester, VA 22601

5