CLERK'S OFFICE U.S. DISTRICT COURT
AT HARRISONBURG, VA
FILED

May 23, 2024

LAURA A. AUSTIN, CLERK
BY: s/ K. Dotson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| KAREN IOVINO, | ) | |
| Plaintiff, | ) | Civil Action No. 5:21-cv-00064 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| MICHAEL STAPLETON ASSOCIATES, | ) | By:  Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

This matter is before the Court on Defendant Michael Stapleton Associates' ("MSA")

motion for a protective order under Rule 26(c)(1) of the Federal Rules of Civil Procedure. ECF

No. 151. The motion relates to Plaintiff Karen Iovino's requests to depose six current or former

MSA employees about matters relevant to the parties' claims and defenses in this action.[1] *See*

*generally* Def.'s Br. in Supp. 5–8, ECF No. 151-1; *id.* Ex. A, Emails Dated Nov. 22, 2023 to

Nov. 30, 2023, ECF No. 151-2, at 2–5. MSA contracts with the United States Department of

---

[1] The parties and the Court are familiar with those claims and defenses, as well as the parties' past discovery disputes. For background on the nature of this lawsuit and relevant procedural history, see the Memorandum Opinions and Orders entered by the Honorable Thomas T. Cullen, presiding District Judge, on April 25, 2022, ECF Nos. 25, 26 (Iovino's claims); August 25, 2022, ECF Nos. 55, 56 (MSA's defenses and counter-claim); December 12, 2022, ECF Nos. 93, 94; and January 12, 2023, ECF No. 97 (concluding that the State Department's Touhy regulations applied to Iovino's Rule 34 requests served on MSA insofar as those requests sought documents "generated during the performance of work under" MSA's contract with the agency).

Emails between the parties' attorneys identify the six "present/former MSA employees" in the context of Iovino's counsel trying to schedule Rule 30(b)(6) depositions. *See* Def.'s Br. in Supp. Ex. A, Emails from T. Guyer to D. Ward (Nov. 21, 2023, 11:48 AM & Nov. 22, 2023, 1:17 PM), ECF No. 151-2, at 4–5. Based on the available record, it appears that Iovino seeks to depose these witnesses in their capacities as MSA's designated officers, managing agents, or "other persons who consent to testify on its behalf," Fed. R. Civ. P. 30(b)(6). *See, e.g.*, Def.'s Br. in Supp. Ex. A, Email from T. Guyer to D. Ward (Nov. 29, 2023, 5:38 PM) ("Notwithstanding that MSA controls its own employees, I understand your position to be that you will not produce them because of the DOS position [that Touhy regulations apply to Iovino's deposition request]. . . . I am going to seek permission to file a motion to compel MSA to produce these witnesses, let the government have its say, and then the judge make his decision."), ECF No. 151-2, at 3; *id.*, Email from T. Guyer to D. Ward (Nov. 21, 2023, 11:48 AM) ("Attached is the previous notice of deposition with the matters specified."), ECF No. 151-2, at 5. Accordingly, this Memorandum Opinion & Order refers to these six current or former employees as "MSA's Rule 30(b)(6) designees."

State "to support the department's anti-terrorism programs" by training "explosive detection canines for foreign law enforcement and deployment to U.S. facilities abroad." Mem. Op. of Apr. 25, 2022, at 2 (citing Compl. ¶ 14, ECF No. 1). "Iovino worked as a veterinarian for MSA from October 2015 until August 2017." *Id.* (citing Compl. ¶ 16). She alleges that MSA's decision not to renew her contract violated 41 U.S.C. § 4712, "which protects whistleblowers working for government contractors. MSA asserts a counterclaim alleging that Iovino's whistleblowing caused it reputational and financial harm." Mem. Op. of Dec. 12, 2022, at 1 n.1. It is suing her for breaching her employment contract's non-disclosure agreement. *Id.*

## I. Background

Iovino's counsel intends to ask MSA's Rule 30(b)(6) designees about documents, records, and other information generated or acquired as part of MSA's work under its contract with the State Department. Def.'s Br. in Supp. Ex. A, ECF No. 151-2, at 2–3; *see also* Mem. Op. of Dec. 12, 2022, at 7–8 & n.10. That contract states in relevant part:

> The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions. They shall not communicate to any person any information known to them by reason of their performance of services under this contract which has not been made public, except in necessary performance of their duties or upon written authorization of the Contracting Officer.[2] All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government. . . . These obligations do not cease upon the expiration or termination of this contract. The Contractor shall include the substance of this provision in all contracts of employment and in all subcontracts hereunder.

Decl. of John Kolar, Esq., Ex. A (page from MSA-DOS contract issued Aug. 17, 2016), ECF No. 82-3, at 8; *see also* Mem. Op. of Dec. 12, 2022, at 7 (citing Notice of Appearance Ex. B, Letter

---

[2] The contract's cover page identifies a named State Department employee as the "Contracting Officer." ECF No. 82-3, at 2.

from R. Wax to J. Kolar Re: Touhy Request 1 (Sept. 6, 2022), ECF No. 60-2, at 1). MSA and its

employees have an obligation to safeguard all State Department information and materials, even

after this contract ends. Kolar Decl. Ex. A, ECF No. 82-3, at 8; *see also* Mem. Op. of Dec. 12,

2022, at 7 ("MSA would undoubtedly be in breach of its contractual obligations with the State

Department if it disclosed materials to Iovino without a confidential designation.").

      Separately, MSA argues that Iovino's Rule 30(b)(6) deposition requests are subject to the

State Department's Touhy regulations[3] insofar as those requests would require MSA's

---

[3] "Pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called Touhy regulations to govern the conditions and procedures by which their employees" can disclose official "work-related" materials and information in response to a discovery request or demand made in litigation. *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (DHS agent's testimony); *see also United States v. Timms*, 844 F. App'x 658, 659 (4th Cir. 2021) (per curiam) (tangible items in DOJ custody); *United States v. Williams*, 170 F.3d 431, 431 (4th Cir. 1999) (FBI agent's files). These particular "housekeeping" regulations, 5 U.S.C. § 301, get their name from the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), which applied an earlier version of § 301 in "holding that agencies may legitimately promulgate regulations governing employee testimony [or other disclosure] and may, pursuant to those regulations, forbid an employe to testify [or otherwise disclose official agency information] in a court proceeding." *Soriano-Jarquin*, 492 F.3d at 504 (citing *Touhy*, 340 U.S. at 468); *see generally Touhy*, 340 U.S. at 463, 467–68 (affirming the statutory validity of a DOJ regulation instructing that, whenever a DOJ employee was served with a subpoena seeking official DOJ materials or information, the employee, unless otherwise expressly authorized, must "refuse to obey" the subpoena "on the ground that the disclosure of such [materials] is prohibited by this regulation"); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69–70 (4th Cir. 1989) (discussing the same).

      For years, the Fourth Circuit has explained that a federal agency's authority to regulate the dissemination of official information and materials—including its "power to refuse compliance with a subpoena" commanding such disclosure in private litigation—finds its roots in sovereign immunity. *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) ("[I]t is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena."); *accord Kasi v. Angelone*, 300 F.3d 487, 503–04 (4th Cir. 2002) (collecting cases); *Williams*, 170 F.3d at 433–34; *Smith v. Cromer*, 159 F.3d 875, 878–81 (4th Cir. 1998); *Boron Oil Co.*, 873 F.2d at 70–71; *see generally FDIC v. Meyer*, 510 U.S. 471, 475 (1997) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). This is because "the nature of [a] subpoena proceeding against a federal employee to compel him to testify about [or otherwise divulge] information obtained in his official capacity is inherently that of an action against the United States. . . . [S]uch a proceeding 'interferes with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Boron Oil Co.*, 873 F.2d at 70–71 (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (brackets omitted)); *accord COMSAT*, 190 F.3d at 278. An agency's Touhy regulations set out uniform "procedures and conditions" through which officials exercise this discretion on a case-by-case basis whenever they apply. *Soriano-Jarquin*, 492 F.3d at 504; *accord Timms*, 844 F. App'x at 659–60; *COMSAT Corp.*, 190 F.3d at 278; *Williams*, 170 F.3d at 434; *Boron Oil Co.*, 873 F.2d at 69–71; *see also* Mem. Op. of Jan. 12, 2023, at 2 n.3

designee(s) to disclose "any information relating to material contained in the files of the Department[] or any information acquired while the [deponent] . . . is or was an employee of the Department as part of the performance of that person's duties or by virtue of that person's official status," 22 C.F.R. § 172.1(a)(2). *See generally* Def.'s Br. in Supp. 5–6, 9–13. "For purposes of this part, and except as the Department may otherwise determine in a particular case, the term employee" is defined broadly to include:

> the Secretary and former Secretaries of State, and *all employees and former employees of the Department of State . . . who are or were* appointed by, or *subject to the supervision, jurisdiction, or control* of the Secretary of State or his Chiefs of Mission, whether residing or working in the United States or abroad, *including* United States nationals, foreign nationals, and *contractors*.

22 C.F.R. § 172.1(b) (emphasis added). Section 172.4 in turn prohibits an "employee" from giving "oral or written testimony by deposition . . . concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status[] unless authorized to do so by" the State Department in accordance with these regulations. *Id.* § 172.4(a). Section 172.5 requires "the party seeking such . . . . testimony" to submit to the State Department a request "set[ting] forth in writing, with as much specificity as possible, the nature and relevance of the official information sought." *Id.* § 172.5(a).[4] State Department officials will then decide whether and to

---

("These regulations set up the procedure by which State Department officials make decisions about whether an employee called upon to testify or to produce evidence in litigation is permitted to disclose the requested information." (citing 22 C.F.R. § 172.1)). In the Fourth Circuit, a litigant seeking protected agency information is "requir[ed] . . . to comply with the [agency's] regulations as a prerequisite to obtaining" it. *See Williams*, 170 F.3d at 434; *accord Timms*, 844 F. App'x at 659–60; *Soriano-Jarquin*, 492 F.3d at 504.

[4] "For purposes of this part, official information means all information of any kind, however stored, that is in the custody and control of the Department, relates to information in the custody and control of the Department, or was acquired by Department employees as part of their official duties or because of their official status within the Department while such individuals were employed by or served on behalf of the Department." *Id.* § 172.1(d).

what extent the "employee" will be allowed to "produce, disclose, release, comment upon, or testify concerning" matters that were both "specified in writing and properly approved by the appropriate" official. *Id.*; *see also* Mem. Op. of Jan. 12, 2023, at 2 (citing 22 C.F.R. § 172.8).

MSA and its employees are State Department contractors. Def.'s Br. in Supp. 5; *see also* Kolar Decl. Ex. A, ECF No. 82-3, at 8; Letter from R. Wax to J. Kolar re: *Touhy* Request 1, ECF No. 60-2, at 1 (noting that "MSA is a government contractor" and therefore "is not in a position to produce to third-parties [any] documents that are subject to Government protections without the Government's review and appropriate protections" (citing 22 C.F.R. § 172.8(a)(2)). MSA maintains that, because "contractors" are "employees" for purposes of applying the State Department's Touhy regulations, 22 C.F.R. pt. 172, MSA cannot let its Rule 30(b)(6) designees testify about the contract-related materials or information that Iovino seeks unless those individuals are authorized to do so in accordance with the agency's regulations. *See generally* Def.'s Br. in Supp. 5–13 (discussing 22 C.F.R. §§ 172.1(a)–(d), 172.3(a), 172.4(a), 172.5(a)). The State Department submitted a statement of interest, 28 U.S.C. § 517, endorsing this position. *See* ECF No. 157, at 1, 3–4.

Iovino's counsel has acknowledged on the record that the documents Iovino requested from MSA under Rule 34, "insofar as they were 'generated during the performance of work under the State Department contract,' are subject to the State Department's *Touhy* regulations." Mem. Op. of Jan. 12, 2023, at 2 (brackets omitted). Iovino sent the State Department a detailed document request in July 2022, ECF No. 88-2, at 2–9, and has since received more than 1,000 pages of responsive materials cleared through the Touhy-review process, *see, e.g.*, Pl.'s Eighth Status Report (May 26, 2023), ECF No. 130; Pl.'s Ninth Status Report (June 9, 2023), ECF No. 133.

When it came to the Rule 30(b)(6) depositions, however, Iovino's counsel objected to following the Touhy process. *See generally* Def.'s Br. in Supp. Ex. A, Emails Dated Nov. 29–30, 2023, ECF No. 151-2, at 2–3. On November 29, MSA's attorney told Iovino's counsel that the State Department's "position is that [he] would need to submit a Touhy request . . . stat[ing] the topics [he] would be exploring in each deposition." *Id.*, Email from D. Ward to T. Guyer (Nov. 29, 2023, 3:05 PM), ECF No. 151-2, at 3. MSA's attorney promised to "move forward promptly" with scheduling the Rule 30(b)(6) depositions once the Department approved Iovino's requests. *Id.* Iovino's counsel responded, "No way we will agree to a Touhy process for non-government employees of a private contractor." *Id.* Ex. A, Email from T. Guyer to D. Ward (Nov. 29, 2023, 5:38 PM), ECF No. 151-2, at 3. To him, the fact "that MSA controls its own employees," without more, meant that Iovino could "compel MSA to produce these witnesses" for Rule 30(b)(6) depositions—even if Iovino intended to ask about MSA's work for the State Department. *See id.*

The next day, a State Department attorney-advisor explained, "[t]o the extent the parties are seeking to depose DOS employees or contractors concerning their work on DOS contracts in the *Iovino v. MSA* litigation, the DOS *Touhy* regulations require DOS approval. DOS *Touhy* regulations indicate that employees, former employees, and contractors are covered by the regulations." *Id.*, Email from J. Greenstein to T. Guyer & D. Ward (Nov. 30, 2023, 1:21 PM), ECF No. 151-2 at 2. She promised to "work expeditiously to review and ensure a DOS response to any *Touhy* requests for depositions." *Id.* She also listed specific things the parties could do to "expedite DOS review," and she offered to accept a courtesy copy of Touhy requests by email because "mail to DOS is often delayed." *Id.* Again, Iovino's counsel refused. *See* Email from T. Guyer to J. Greenstein (Nov. 30, 2023, 3:05 PM), ECF No. 151-2, at 2. Iovino "will not submit

any Touhy requests to DOS." *Id.* MSA therefore seeks a Rule 26(c) protective order requiring

both parties to comply with the State Department's Touhy regulations in this case. *See* Def.'s

Mot. for Prot. Order 1; Def.'s Proposed Order, ECF No. 151-3, at 1–3. The motion has been fully

briefed, ECF Nos. 151-1, 157, 162, 166, and argued, ECF No. 170.

## II. Standard of Review

"A party or any person from whom discovery is sought may move for a protective order

in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "The court may, for good

cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense." *Id.* Rule 26(c)(1) authorizes protective orders specifying terms for the

discovery, "prescribing a discovery method other than the one selected by the party seeking

discovery," and "forbidding inquiry into certain matters, or limiting the scope of . . . discovery to

certain matters." Fed. R. Civ. P. 26(c)(1)(B)–(D). The "party seeking a protective order has the

burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result

if no protective order is granted.'" *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D.

Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2003)); *see

also Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006). Trial courts have "broad

discretion . . . to decide when a protective order is appropriate and what degree of protection is

required." *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) (quoting *Seattle

Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

## III. Discussion

MSA has shown good cause for a protective order requiring the parties in this case to

follow the State Department's Touhy regulations whenever "official Department information is

sought, through testimony or otherwise, by a request or demand," 22 C.F.R. § 172.1(d), for

discovery otherwise allowed by Rule 26(b)(1). *Cf.* Fed. R. Civ. P. 26(c)(1)(G) (authorizing protective orders "requiring that a trade secret or other confidential information . . . be revealed only in a specified way"). First, Judge Cullen has concluded that Iovino's "requested documents, insofar as they were 'generated during the performance of work under the State Department contract,' are subject to the State Department's *Touhy* regulations." Order of Jan. 12, 2023, at 2 (brackets omitted). Iovino's counsel "acknowledged [this point] during the hearing" on her motion to compel MSA's Rule 34 productions, *id.*, which Judge Cullen denied as premature, *see id.* at 1–4. At the very least, Judge Cullen's ruling necessarily implies that Iovino's requests for MSA's Rule 30(b)(6) testimony relating to or derived from these *same* documents are subject to the same regulations. *See id.* at 2 n.3; *cf. Epperson v. Smith*, No. 4:16cv50, 2022 WL 2287416, at *4 (W.D. Va. June 24, 2022) (Cullen, J.) ("Law of the case 'applies both to questions actually decided as well as to those decided by necessary implication.'" (quoting *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. U.S.*, *LLC*, 469 F. Supp. 3d 505, 524 (E.D. Va. 2020)). Judge Cullen also indicated that the State Department's Touhy regulations apply whenever the agency must decide "whether an employee called upon to testify or to produce evidence in litigation [will be] permitted to disclose the requested information." Order of Jan. 12, 2023, at 2 n.3.

When I asked Iovino's counsel why Judge Cullen's decision was not the law of the case on this issue, counsel stated that he "disagreed" with the decision and there was "no basis in law" for applying the State Department's Touhy regulations to "non-documentary" information like deposition testimony. *But see* 22 C.F.R. §§ 172.1(a)–(d), 172.4(a), 172.5(a); *cf. Soriano-Jarquin*, 492 F.3d at 504 (concluding that DHS's Touhy regulations applied to defendant's subpoena seeking federal immigration agent's trial testimony in federal criminal prosecution). Instead,

counsel insisted that the United States—which is not a party to this litigation—must send an attorney to the parties' Rule 30(b)(6) depositions so he or she can object, on a question-by-question basis, to any requests calling for official State Department information. *Contra COMSAT Corp.*, 190 F.3d at 279 (explaining that "[w]hen an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources," and upholding NSF's decision not to comply with plaintiff's third-party subpoena "demand[ing] the presence of agency employees at depositions, which would measurably strain agency resources and divert NSF personnel from their official duties"). Judge Cullen's prior order necessarily rejected this position as inconsistent with the State Department's Touhy regulations and binding Fourth Circuit precedent. *See* Order of Jan. 12, 2023, at 2–3.

Iovino's argument against MSA's motion for a protective order focuses on a threshold issue: Do the State Department's Touhy regulations apply to deposition testimony of State Department contractors about State Department work? She does not expressly challenge that the State Department's Touhy regulations (22 C.F.R. part 172) represent a valid exercise of the agency's authority under 5 U.S.C. § 301. *See generally* Pl.'s Br. 2–9.[5]

---

[5] To the extent Iovino challenges the State Department's "authority [to] include 'contractors'" within the category of "employees" covered by its Touhy regulations, she asserts only that "5 U.S.C. § 301 does not give agencies th[is] authority." *Id.* at 7. However, she also correctly points out that "[m]any agencies include the term 'contractor' as a category of 'employee' in their *Touhy* regulations promulgated under 5 U.S.C. § 301." *Id.* at 2. Several federal courts have held that those regulations are valid and must be complied with when a litigant seeks protected agency information from the agency's employee. *See, e.g.*, *Armstrong v. Arcanum Grp., Inc.*, 250 F. Supp. 3d 802, 803–04 (D. Colo. 2017) (in plaintiff's whistleblower suit against a federal contractor, the Department of Interior's Touhy regulations applied to plaintiff's third-party subpoena seeking deposition testimony from another of the contractor's former employees); *Texas v. Lueck*, No. 4:16cv130, 2016 WL 11774021, at *5 (E.D. Tex. Apr. 15, 2016) (concluding that the SSA's Touhy regulations, which defined "employee" as any person currently or previously "subject to SSA's jurisdiction or control" including a "contractor," applied to a subpoena directed to non-party HHS contractor's employee); *Hoffman v. BLR Grp. of Am.*, No. 08cv5, 2009 WL 367755, at *1–2 (S.D. Ill. Feb. 12, 2009) (concluding that plaintiff seeking to depose "an employee of a [DOD] contractor" was required to follow DOD's Touhy regulations applicable to all "DOD personnel to

Instead, Iovino argues that the State Department's decision to "include the term 'contractor' as a category of 'employee' in their Touhy regulations promulgated under 5 U.S.C. § 301" means that "the agency 'contractor' has an identical status to [the] agency 'employee'" *for all purposes*, "unless the regulations limit the contractor's inclusion in that definition." Pl.'s Br. in Opp'n 2. "Consequently, *if the contractor is sued*, it is the same as suing an agency employee, *which is the same as suing the agency* for purposes of § 301. As such, under the Supreme Court's *Touhy* doctrine, the doctrine has no application to limiting documents or testimony of government contractors named or joined as defendants in civil litigation." *Id.* (emphasis added). Her argument concludes, "[b]y suing MSA under § 4712, Dr. Iovino sued an 'employee' of the State Department, *which under § 301 means the DoS is a party to the litigation* and *Touhy*[] therefore does not apply." *Id.* (emphasis added). Iovino does not cite any binding authority to support this conclusion. *See generally id.* at 2–7 (discussing *Menocal v. GEO Group, Inc.,* No. 14:cv2887, 2017 WL 4334000, at *2–4 (D. Colo. June 6, 2017)).

In any event, her argument simply does not make sense. Section 301 is a "housekeeping" statute that gives federal agencies authority to promulgate regulations governing their own affairs, including "the conduct of [their] employees . . . and the custody, use, and preservation of [their] records, papers, and property." 5 U.S.C. § 301. The State Department's decision to exercise that authority by promulgating Touhy regulations to manage dissemination of confidential information does not waive the agency's sovereign immunity from suit. *See generally Smith*, 159 F.3d at 878–81; *Meyer*, 510 U.S. at 475 (absent an express statutory waiver, "sovereign immunity shields the Federal Government and its agencies from suit"). It certainly does not make the State Department a "party" to any lawsuit that someone brings against one of

---

include 'other specific individuals hired though contractual agreements by or on behalf of the Department'").

its contractors. *See generally Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011) ("In general, a 'party' to litigation is one by or against whom a lawsuit is brought, or one who becomes a party by intervention, substitution, or third-party practice."). Moreover, Judge Cullen has already concluded, in a different but related context, that the State Department "is not a party" to this action. *Cf.* Mem. Op. of Jan. 12, 2023, at 3 ("[A] motion to compel in this case is not the proper remedy for Iovino. The Fourth Circuit has held that when a government agency is not a party, *as here*, 'the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas." (emphasis added) (quoting *COMSAT Corp.*, 190 F.3d at 274)).

I disagree with Iovino's position. Bringing a lawsuit against a contractor *for* a federal agency, without more, does not make the federal agency *itself* a "party" to that lawsuit. Fed. R. Civ. P. 10(a), 15(c)(2), 24(b)(2); *see COMSAT Corp.*, 190 F.3d at 272–72 & n.3, 278 (noting that NSF was "not a party" to underlying breach-of-contract suit between plaintiff and "an NSF awardee," and upholding NSF's decision not to comply with plaintiff's third-party subpoena for documents and "employee testimony" where NSF followed its Touhy regulations); *Armstrong*, 250 F. Supp. 3d at 803–05 (noting that the BLM was not a party to a whistleblower suit between BLM contractor and its former employee, and upholding BLM's decision under that agency's Touhy regulations that another of the contractor's former employees should not testify about information she learned while performing her official BLM duties or because of her official status as a BLM "employee"); *Anchorage v. Integrated Concepts & Research Corp.*, 1 F. Supp. 3d 1001, 1006–16 (D. Alaska 2014) (explaining that a municipality's breach-of-contract suit against a federal contractor was not a suit against the federal agency itself, and that Rule 19 did not require the agency to be joined as a party simply by virtue of its contract with the defendant).

Iovino filed her § 4712 complaint against MSA alone. Compl. 1. She did not name the State Department or any of its officers in the caption of her complaint, Fed. R. Civ. P. 10(a), and she has not asked for a summons or tried to serve process on the State Department in accordance with Rule 4. *Cf. Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (explaining that a person or entity whom the complaint names as a defendant "becomes a party officially . . . only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend"). Thus, I find that the State Department is not a party to this case and, as such, it must be treated like any other federal agency that is not a party to an action between private parties—even if one of those parties is a federal contractor. *See COMSAT Corp.*,190 F.3d at 272–73, 278; *Armstrong*, 250 F. Supp. 3d at 803–05; *Anchorage*, 1 F. Supp. 3d at 1006–16; *cf. M.R. v. Dreyfus*, 697 F.3d 706, 735 (9th Cir. 2012) (noting that a statement of interest filed by the United States "under 28 U.S.C. § 517 is comparable to amicus brief" and does not confer "party" status on the United States or the federal agency that it represents). Specifically, I find that the State Department's Touhy regulations apply to the parties' requests or demands to depose any current or former State Department employee or contractor, including current or former MSA employees who worked under MSA's contract with the Department, regarding information or materials that are State Department property, 22 C.F.R. § 172.1(d). *See Hoffman*, 2009 WL 367755, at *1–2 (concluding that plaintiff seeking to depose "an employee of a [DOD] contractor" was required to follow DOD's Touhy regulations applicable to all "DOD personnel to include 'other specific individuals hired though contractual agreements by or on behalf of the Department'"). Iovino's reliance on *Menocal*, 2017 WL 4334000, at *2–4, to support her contrary position is not persuasive.

Finally, MSA has demonstrated specific prejudice or harm will result if no protective order is granted. Judge Cullen entered his prior discovery order in January 2023. By June, the State Department had issued Touhy decisions authorizing MSA to produce, and MSA had produced to Iovino's counsel, "thousands of pages" in response to her Rule 34 requests. *See* Pl.'s Ninth Status Report 1. In November, the State Department's attorney told counsel that any requests "to depose DOS employees or contractors concerning their work on DOS contracts" in this litigation were subject to the agency's Touhy regulations, and that she would "work expeditiously to review and ensure a DOS response." Def.'s Br. in Supp. Ex. A, Email from J. Greenstein to T. Guyer & D. Ward (Nov. 30, 2023, 1:21 PM), ECF No. 151-2 at 2. MSA's attorney told Iovino's counsel that he would "promptly" schedule the Rule 30(b)(6) depositions once the State Department approved her deposition requests. Notwithstanding Judge Cullen's prior order, Iovino "will not submit any Touhy request to DOS" unless and until this Court says she must. The course that Iovino insists upon to depose MSA's employees "would undoubtedly [cause MSA to] breach [] its contractual obligations with the State Department," Order of Dec. 12, 2022, at 7, if it allowed its Rule 30(b)(6) designees to testify about official Department information without proper authorization. Forcing MSA to violate the Touhy regulations and breach its contract with the State Department would cause MSA prejudice.

## IV. Conclusion

Defendant MSA's Motion for Protective Order, ECF No. 151, is hereby **GRANTED**. Any party that seeks to obtain deposition testimony from current and former State Department employees or contractors, including current or former MSA employees, regarding information related to MSA's contract with the State Department shall follow the State Department's Touhy regulations.

The parties are directed to file a status report within thirty (30) days regarding Plaintiff's request to depose MSA employees and the State Department's response to Plaintiff's Touhy request.

It is so ORDERED.

ENTER: May 23, 2024

Joel C. Hoppe
United States Magistrate Judge