IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

**KAREN IOVINO**,

    Plaintiff

v.                                                                                                       Civil Action No. 5:21-cv-00064

**MICHAEL STAPLETON ASSOCIATES,
LTD**. d/b/a **MSA SECURITY, INC**.,

    Defendant.
_____

**PLAINTIFF'S RULE 72(a) OBJECTIONS
TO MAGISTRATE'S MEMORANDUM OPINION & ORDER**

Submitted by:

Thad M. Guyer (Oregon 821443)
John A. Kolar (DCB No. 953292)
Nate L. Adams III (VSB No. 20707)

GOVERNMENT ACCOUNTABILITY PROJECT
1612 K Street, N.W., Suite 1100
Washington, DC 20006
(202) 966-3311
Jackk@whistleblower.org

Nate L. Adams III (VSB No. 20707)
11 S. Cameron Street
Winchester, VA 22601
(540) 667-1330
nadams@nadamslaw.com

T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501
(206) 941-2869
thad@guyerayers.com

Attorneys for Plaintiff

**TABLE OF CONTENTS**

I. RULE 72 REVIEW STANDARDS ................................................................................... 3

II. THE TOR MISAPPLIED 41 U.S.C. § 4712 BY ALLOWING DOS TO RESTRICT DISCOVERY IN THIS WHISTLEBLOWER RETALIATION CASE ......................... 4

    A. The Plain Language and Purpose of § 4712 Foreclose Imposing Touhy Restrictions on Discovery in Whistleblower Cases: ................................................................................ 4

    B. The TOR Undermines Congress's Intent to Provide Robust Judicial Remedies for Whistleblowers: .................................................................................................................. 6

III. THE TOR FAILED TO PROPERLY APPLY THE PERSUASIVE REASONING OF THE MENOCAL DECISION ................................................................................................. 7

    A. A. Menocal Squarely Rejected Imposing Touhy Restrictions on Discovery from a Contractor Defendant: ....................................................................................................... 8

    B. The TOR Brushed Aside Menocal Without Addressing Its Compelling Logic: ................. 9

IV. THE TOR VIOLATED SEPARATION OF POWERS BY ALLOWING DOS TO CONTROL DISCOVERY IN A CASE TO WHICH IT IS NOT A PARTY .............................. 10

    A. Granting a Non-Party Agency Veto Power Over Discovery from a Defendant Violates Separation of Powers: ...................................................................................................... 10

    B. The TOR's Reasoning Conflicts with Supreme Court Precedent Rejecting Agency Overreach: ........................................................................................................................ 11

V. THE TOR MISAPPLIED THE LAW OF THE CASE DOCTRINE ................................... 12

    A. Judge Cullen's Prior Order Did Not Address or Decide the Applicability of Touhy to Party Depositions: ...................................................................................................................... 13

    B. The TOR Overread Judge Cullen's Ruling and Disregarded Key Distinctions Between Document Requests and Depositions: ............................................................................ 14

VI. THE TOR WOULD LEAD TO AN ABSURD RESULT REQUIRING DOS APPROVAL FOR WHISTLEBLOWERS TO TESTIFY ABOUT THE VERY WRONGDOING THEY REPORTED ................................................................................................................... 15

    A. Requiring Whistleblowers to Obtain Agency Approval to Testify Would Eviscerate the Protections of § 4712: ..................................................................................................... 15

    B. The TOR Did Not Address This Fundamental Conflict with the Whistleblower Statute: 17

VII. CONCLUSION ............................................................................................................... 17

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff Karen Iovino respectfully objects to Magistrate Judge Joel C. Hoppe's Memorandum Opinion & Order (ECF No. 172) ("*Touhy* Order" or "TOR") granting Defendant Michael Stapleton Associates, Ltd.'s ("MSA") motion for a protective order. The TOR erroneously concluded that the Department of State's ("DoS") Touhy regulations, 22 C.F.R. Part 172, apply to limit Iovino's right to depose MSA's employees regarding MSA's contract with DoS. For the following reasons, this Court should vacate the TOR and order that the depositions proceed without requiring DoS's approval under the Touhy regulations.

## I. RULE 72 REVIEW STANDARDS

Rule 72(a) provides that the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Iovino's objections are directed to the TOR's legal conclusions, which are reviewed de novo to determine if they are "contrary to law."   In the Fourth Circuit, an order is "contrary to law" if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United Therapeutics Corp. v. Watson Labs, Inc.*, No. 3:17-cv-00081, 2017 WL 2483620, at *1 (E.D. Va. June 7, 2017). Even if the law is unsettled, a magistrate judge's ruling is properly rejected as "contrary to law" if it misapplies governing legal standards or relevant precedents. Id.  The key issues here - whether *Touhy* applies to discovery requests to a contractor defendant, and if so, whether DoS's *Touhy* regulations validly cover that context - are not squarely resolved by binding Fourth Circuit precedent. In reviewing the TOR's legal conclusions on these novel issues, the Court should consider the text and purpose of relevant statutes, persuasive authorities from other courts, and applicable principles of administrative law. If the TOR misapplied these sources or neglected critical arguments, its legal conclusions must be set aside under Rule 72(a).

## II. THE TOR MISAPPLIED 41 U.S.C. § 4712 BY ALLOWING DOS TO RESTRICT DISCOVERY IN THIS WHISTLEBLOWER RETALIATION CASE

The magistrate judge fundamentally erred by failing to recognize that allowing DoS to limit discovery through its Touhy regulations undermines the whistleblower protections Congress enacted in 41 U.S.C. § 4712. The TOR's reasoning cannot be squared with the plain language and core purposes of this critical statute.[1]

### A. The Plain Language and Purpose of § 4712 Foreclose Imposing Touhy Restrictions on Discovery in Whistleblower Cases:

Section 4712's text and structure demonstrate Congress's clear intent to provide robust protections for contractor employees who disclose wrongdoing related to government contracts.[2] The

---

[1] Contrary to the magistrate judge's suggestion that Iovino's counsel "acknowledged" the requested documents are subject to the State Department's Touhy regulations (TOR at 8), counsel has consistently maintained that the court, not the agency, must control the discovery process under the Federal Rules of Civil Procedure. See, e.g., Pl.'s Reply to MSA's Resp. to Mot. to Amend-Correct Protective Order at 3-4, ECF No. 87 (arguing the court must protect the public interest in DoS documents and that a "civil litigation confidentiality order is not a substitute or alternative to FOIA"); Pl.'s Rule 72 Objs. to Magistrate Protective Orders at 9, ECF No. 71 (asserting MSA and DoS are subject to Rule 26 and 34 except as to classified information, and that DoS lacks authority to unilaterally impose "confidentiality barricades" on the court); Pl.'s Mot. for Entry of Rule 72(a) Written Order at 1-2, ECF No. 68 (arguing the court cannot restrict discovery without a finding of "good cause" under Rule 26(c), notwithstanding DoS's position); Oct. 12, 2022 Hrg. Tr. at 24 (challenging inclusion of Touhy procedures in the protective order as "totally unworkable"). At no point has Iovino's counsel indicated that DoS may prohibit the production of documents in MSA's possession in response to Rule 34 requests based solely on the agency's assertion of Touhy. To the contrary, counsel has repeatedly made clear that the court must independently assess the propriety of any confidentiality designations and discovery restrictions under the governing Federal Rules, regardless of DoS's regulatory scheme. The TOR's contrary finding misreads the record and Iovino's consistent legal position.

[2] The legislative history of 41 U.S.C. § 4712 documents Congress's intent to enhance accountability for both contractors and the agencies that oversee them. Congress intended the statute to promote accountability not just for government contractors, but also for the agencies responsible for overseeing them. The Senate Report accompanying the 2013 NDAA, which first enacted the core provisions now codified at § 4712, explained that the law aimed to prevent agencies from "interfering with the right of a contractor employee to blow the whistle on wrongdoing." S. Rep. No. 112-155, at 148 (2012). The Report noted that agencies had previously "used gag orders, non-disparagement agreements and other restrictive policies to silence

*Rule 72 Objections -4-*

statute prohibits retaliation against an employee who reports "evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract." 41 U.S.C. § 4712(a)(1). This whistleblower provision expressly shields disclosures not only to agency officials and to Congress, but also to "a court or grand jury." Id. § 4712(a)(2).  Touhy regulations cannot obstruct those disclosures to a court. Congress's inclusion of the "court or grand jury" language is significant. It shows that § 4712 is designed to protect whistleblowers not just when they report internally up the chain of command, but also when they go outside the agency and provide evidence directly to federal judicial proceedings. This purposeful reference to courts makes clear that Congress intended to guarantee whistleblowers an avenue to pursue retaliation claims in a judicial forum, without needing the agency's blessing. Reading the statute to allow the agency to cut off access to judicial discovery and block whistleblowers from gathering evidence for use in court would eviscerate this vital safeguard and cannot be squared with § 4712's plain terms.

---

whistleblowers," allowing "problems at troubled contractors [to] go undetected." Id. at 2. To combat this, § 4712 "prohibit[s] the government and contractors from initiating confidentiality agreements in an attempt to prevent federal contractor employees from reporting fraud, waste and abuse." Id. at 5.

The House Report on the 2016 NDAA, which made § 4712's protections permanent, further underscores Congress's goal of countering agency efforts to limit contractor disclosures. The Report states that § 4712 is designed to ensure "accountability and oversight in Federal contracting" by "enhanc[ing] and strengthening . . . rights and protections for whistleblowers employed by contractors." H.R. Rep. No. 114-102, at 207 (2015). Emphasizing the need to safeguard disclosures to entities outside the contracting agency, the Report stresses that § 4712 protects employees who disclose misconduct "to a broad range of entities, including . . . Congress, the courts, agency IGs, and Federal law enforcement agencies." Id. This history refutes any suggestion that Congress intended to allow agencies to use Touhy regulations to restrict the evidence available in whistleblower cases and thereby insulate their own behavior from judicial scrutiny. To the contrary, it shows Congress enacted § 4712 to provide robust protection for contractor employees who shed light on the very type of agency mismanagement at issue here.

*Rule 72 Objections* -5-

The broader structure and purpose of the statute reinforce this conclusion. Section 4712 establishes a multi-tiered enforcement scheme to ensure that whistleblowers have a meaningful remedy against retaliation. If an employee believes they have suffered reprisal, they may submit a complaint to the Inspector General of the agency that awarded the contract. 41 U.S.C. § 4712(b). The Inspector General must then investigate and submit a report to the agency head, who is required to determine whether there is sufficient basis to conclude that prohibited retaliation occurred. Id. § 4712(c)(1). The statute also provides that if the agency head denies relief or fails to issue an order within 210 days, the whistleblower may then bring "an action at law or equity for de novo review" in federal court and seek a jury trial. Id. § 4712(c)(2). Touhy regulations cannot limit this recourse.

This detailed enforcement mechanism underscores Congress's intent to provide a fail-safe for whistleblowers in case the contracting agency refuses to hold its contractors accountable. By empowering whistleblowers to proceed to court and have their retaliation claims heard de novo if the agency process proves futile, § 4712 ensures an impartial judicial backstop against agency intransigence or foot-dragging. Allowing agencies to impede whistleblowers from obtaining discovery in these de novo proceedings through Touhy restrictions would destroy the independence of the judicial remedy and give agencies the very veto power over whistleblower claims that Congress sought to prevent. It would render the statutory promise of a meaningful day in court illusory.

> B. **The TOR Undermines Congress's Intent to Provide Robust Judicial Remedies for Whistleblowers:**

The TOR's application of Touhy in this case defeats Congress's core aims in enacting § 4712. There can be little doubt that Congress added the robust judicial review provisions because it recognized that contractor employees are often uniquely positioned to uncover waste, fraud, and abuse, yet face powerful disincentives to coming forward. The statute's legislative history confirms

that Congress sought to combat the "chilling effect" that "prevent[s] contractor employees from reporting waste, fraud, and abuse" out of fear that doing so "could result in their termination." S. Rep. No. 114-270, at 2 (2016). By establishing an unimpeded path to an independent federal court forum, § 4712 assures potential whistleblowers that they can sue and obtain meaningful remedies if they suffer reprisal. The goal is to counteract the disincentives that would otherwise deter them from revealing wrongdoing that agencies may prefer to suppress.

The TOR subverts this clear legislative plan by letting the agency use Touhy to control the courthouse doors and decide what evidence a whistleblower can present to substantiate their claims. Under the magistrate's reasoning, DoS can limit depositions of contractor witnesses and thereby restrict the proof available in the very judicial proceedings that Congress deemed essential to protect whistleblowers. This would force whistleblowers to rely on the agency's largesse to obtain testimony needed to demonstrate retaliation—an approach fundamentally at odds with Congress's vision of an independent judicial check. It would recreate the very chilling effect that § 4712 was intended to eliminate, deterring contractor employees from exposing misconduct by making it inordinately difficult to prove retaliation without the agency's cooperation and approval.

### III. THE TOR FAILED TO PROPERLY APPLY THE PERSUASIVE REASONING OF THE MENOCAL DECISION

The magistrate judge compounded his errors by giving short shrift to directly relevant authority that undercuts the TOR's reasoning. In particular, the judge failed to properly grapple with the *Menocal v. GEO Group* decision, which persuasively held that an agency cannot invoke Touhy regulations to restrict discovery from a contractor defendant. Although Menocal is not binding, it presents a compelling template for addressing the precise issue here and avoiding the separation-of-powers problems the TOR's approach creates.

### A. **Menocal Squarely Rejected Imposing Touhy Restrictions on Discovery from a Contractor Defendant:**

In *Menocal*, the plaintiffs were current and former detainees who brought a putative class action against a private contractor, GEO Group, Inc., for alleged violations of the Trafficking Victims Protection Act. 113 F. Supp. 3d at 1127–28. GEO operated a detention facility under contract with DHS's Immigration and Customs Enforcement. When the plaintiffs sought discovery from GEO, it tried to avoid producing documents by invoking DHS's Touhy regulations. Id. at 1128. GEO argued that as a contractor, it qualified as an "employee" under those regulations and thus could not provide the requested information absent DHS authorization. Id.

The *Menocal* court resoundingly rejected GEO's novel attempt to use Touhy to shield itself from discovery in a suit to which it was a party. The court started from the premise that "the Touhy doctrine was borne out of the Supreme Court's decision in United States ex rel. *Touhy v. Ragen,* 340 U.S. 462 (1951)," which recognized an agency's authority to promulgate regulations governing how its employees respond to subpoenas. Id. at 1129. But Touhy and its progeny do not apply, the court explained, where the agency or its employees are themselves parties to the litigation. Id. In that situation, the court held, "the Touhy doctrine has no application to limiting documents or testimony of government contractors named or joined as defendants in civil litigation." Id.

The *Menocal* court found this distinction between party and non-party status dispositive. It explained that Touhy regulations are designed to protect agencies and their employees from becoming entangled in litigation "when that agency or its 'employees' are not parties to the litigation." Id. (emphasis added). The "conspicuous and sensible purpose" is to prevent federal employees from "being dragged willy-nilly into private litigation" and to centralize the agency's litigation defense. Id. at 1130. But once an agency or its employees are named as defendants, those interests dissipate. At

that point, allowing the defendant to use Touhy to create "obstacles or shields from normal rules of discovery" would be "anathema to basic principles of civil litigation in federal court." Id.

The court found GEO's contrary position indefensible. By arguing that its contractor status allowed it to "shield itself from the very discovery that the Federal Rules permit and encourage based on an stretched reading of DHS'[s] Touhy regulations," GEO was claiming "a special privilege that even government agencies do not enjoy." Id. This assertion, the court concluded, was "simply offensive to the judicial process." Id. It created a "significant separation of powers problem" by allowing DHS to usurp the court's authority to control discovery and determine what evidence is admissible. Id.

### B. The TOR Brushed Aside Menocal Without Addressing Its Compelling Logic:

Despite the obvious parallels to this case, the TOR gave *Menocal* and its reasoning short shrift. MSA occupies the same position as GEO—it is a defendant in a civil case trying to use its status as an agency contractor to avoid the normal discovery rules applicable to parties. Like GEO, MSA has latched onto an aggressive reading of the contracting agency's Touhy regulations—which define "employee" to cover contractors—to argue that it can resist depositions of its own employees absent agency approval. And as in *Menocal*, this untenable position would allow DoS to interfere with the court's authority to manage the discovery process and determine what evidence the parties may obtain. Rather than meaningfully address these striking similarities, the magistrate judge simply brushed *Menocal* aside as a non-binding district court case. TOR at 9. But the TOR did not explain why *Menocal's* sound logic should not apply with equal force here. This cursory treatment of Menocal was a critical oversight. No other decision has squarely addressed the question presented here—whether a private party can resist discovery by cloaking itself in an agency's Touhy regulations simply because it happens to be a contractor. The dearth of authority on this novel issue only enhances Menocal's persuasive value as the most factually analogous precedent. By engaging in

a thoughtful analysis of how standard Touhy principles map onto the contractor scenario, Menocal offers a valuable template for resolving the question of first impression before this Court. Its emphasis on the fundamental distinction between seeking discovery from the agency or its employees as compared to a contractor defendant is compelling and should have factored heavily in the TOR's analysis.

Indeed, Menocal's logic carries particular force in the context of a whistleblower retaliation suit under § 4712. As explained, Congress provided whistleblowers an unimpeded right to pursue claims against a contractor in court precisely because it worried agencies would be tempted to shield wrongdoing by impeding investigations or delaying relief. Allowing a contractor defendant to co-opt agency Touhy regulations to thwart discovery in such cases would create perverse incentives by making retaliation harder to prove. A contractor could punish whistleblowers secure in the knowledge that the agency can choke off damaging testimony and documents under the guise of Touhy. This Court should reject such a troubling outcome, which would turn § 4712 on its head and immunize the very retaliation Congress sought to prevent. Menocal's more sensible rule reserving Touhy for subpoenas to agencies or employees, not contractor defendants, avoids this problem.

## IV. THE TOR VIOLATED SEPARATION OF POWERS BY ALLOWING DOS TO CONTROL DISCOVERY IN A CASE TO WHICH IT IS NOT A PARTY

The magistrate judge's ruling also cannot be reconciled with bedrock separation-of-powers principles. By allowing DoS to dictate what evidence is discoverable from MSA as a party defendant, the TOR improperly surrendered judicial authority to control the litigation process. This error independently warrants reversal.

### A. **Granting a Non-Party Agency Veto Power Over Discovery from a Defendant Violates Separation of Powers:**

It is axiomatic that the judiciary has exclusive authority to manage discovery and control access to evidence in cases before the court. As the Supreme Court has long made clear, "[j]udicial

*Rule 72 Objections* -10-

control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953). This principle is "embedded in our separation of powers doctrine," which requires the courts to "remain the final arbiter of what evidence may be introduced" and prevents "government agencies from determining what evidence is admissible in federal court." *Menocal*, 113 F. Supp. 3d at 1130–31. Fidelity to the separation of powers is essential to "preserv[ing] the integrity of the judicial process" against encroachment by the "political branches." *In re United States*, 138 S. Ct. 443, 445 (2017). This improperly "shift[s] control over what evidence is admissible away from the courts" and onto the executive branch. Menocal, 113 F. Supp. 3d at 1131.

In *Reynolds*, the Supreme Court rejected the government's attempt to use an evidentiary privilege to shield an accident report from discovery in a tort suit between private parties. 345 U.S. at 4-5. The Court held that the judiciary, not the executive, must determine whether a privilege applies, stressing the need for the "court itself" to assess if the requisites for invoking the privilege are met. Id. at 8. "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers," no matter how "scrupulous[]" they may be. Id. at 9-10.

### B. The TOR's Reasoning Conflicts with Supreme Court Precedent Rejecting Agency Overreach:

The Supreme Court's recent decision in *Department of Homeland Security v. MacLean* further illustrates the impropriety of allowing DoS to control the evidence available in litigation against its contractor. There, the Court rejected DHS's attempt to prohibit disclosure of information by a former air marshal through an agency regulation. 574 U.S. 383, 391–92 (2015). The Court emphasized that, under the statute's plain language, only Congress can prohibit disclosure of information obtained by agency employees in the course of their duties. Id. at 392. Absent a clear

statutory basis, an agency cannot rely on its own regulations to impose such restrictions and punish employees for revealing information about the agency's activities. Id. at 393-94.

*MacLean's* logic reinforces the problems with the TOR's approach. Here, as in *MacLean*, DoS is attempting to condition disclosure about its contractor's activities not through any statutory authority, but based solely on its own regulatory definition of "employee." In effect, DoS claims the power to shield all information about its contractors' work from discovery, even in cases where the contractor is sued for misconduct. But Congress has not authorized such a sweeping, across-the-board privilege for contractor communications. Just as DHS could not prohibit disclosures by fiat in *MacLean*, DoS cannot unilaterally declare contractor depositions off-limits in private litigation. Even DoS's own regulations do not purport to give it the blanket authority to condition discovery from contractor defendants that the TOR envisions. The regulations allow private litigants to seek DoS approval to depose "employees," including contractors, through a Touhy request identifying "the nature and relevance of the official information sought." 22 C.F.R. § 172.5(a). They then mandate a case-by-case assessment of the particular information requested and the burdens disclosure would impose on the agency. Id. § 172.7. Nothing in the regulations suggests that DoS can simply deem all testimony by contractor employees presumptively subject to its control. Yet that is the regime the TOR would institute by freeing MSA to resist any deposition of its employees, even before a specific request is made. This Court should reject such an extravagant assertion of agency authority that even DoS's regulations do not support.

V. THE TOR MISAPPLIED THE LAW OF THE CASE DOCTRINE

In addition to its other legal errors, the magistrate judge improperly treated Judge Cullen's earlier ruling regarding document subpoenas as binding under the law-of-the-case doctrine. But a careful reading of Judge Cullen's opinion confirms that it did not address, let alone decide, the separate question of whether Touhy applies to block depositions of a contractor defendant's employees. The

TOR's misguided reliance on that ruling to foreclose Iovino's distinct challenge to MSA's deposition objections was unfounded.[3]

### A. Judge Cullen's Prior Order Did Not Address or Decide the Applicability of Touhy to Party Depositions:

The magistrate judge's law-of-the-case holding rested on a footnote in Judge Cullen's opinion noting that the State Department's Touhy regulations apply whenever the agency must decide whether an employee called upon to testify or to produce evidence in litigation will be permitted to disclose the requested information. TOR at 8 (quoting *Iovino v. Michael Stapleton Assocs., Ltd*., 2022 WL 17592541, at *2 n.3 (W.D. Va. Dec. 12, 2022)). The TOR reasoned that this language "necessarily implie[d]" that Judge Cullen's earlier conclusion that Touhy applied to document requests to MSA "would apply to deposition testimony about the same topics covered by the document requests." TOR at 8. That inference was unwarranted. Judge Cullen's prior opinion dealt solely with the distinct issue of whether Iovino had to follow DoS's Touhy regulations before demanding that MSA produce documents in response to Rule 34 requests for production. See *Iovino*, 2022 WL 17592541, at *1. Iovino's document requests sought "materials 'generated during the performance of work under MSA's contract" with the DoS and if sought directly from DoS *rather than through a contractor* might be subject to DoS's regulations in claims not brought under Section 4712. See, id. at *2. The court noted that DoS "asserted 'control' over documents generated under its contract with MSA." Id. at *7.

Judge Cullen had no occasion to consider the separate question of how Touhy would apply to deposition testimony—especially from a party defendant's employees, as opposed to the agency

---

[3] In oral argument, the Magistrate suggested that if Judge Cullen erroneously reported that Plaintiff had acquiesced to application of Touhy for the original protective order, then a motion to reconsider should be filed. Therefore, Plaintiff asks this Court to reconsider that erroneous conclusion.

*Rule 72 Objections* -13-

itself. His opinion did not analyze any of the arguments Iovino raises here about the impropriety of allowing DoS to dictate the evidence available from MSA in a suit to which DoS is not a party. Thus, contrary to the TOR's assumption, the prior ruling did not decide the deposition issue "by necessary implication." *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019) (law of the case covers only issues "decided by necessary implication").

### B. The TOR Overread Judge Cullen's Ruling and Disregarded Key Distinctions Between Document Requests and Depositions:

The TOR's law-of-the-case finding also overlooked critical differences between the document demands at issue in Judge Cullen's prior order and the deposition subpoenas at issue here. Whereas Rule 34 allows a party to request documents from another party that are within the responding party's "possession, custody, or control," Fed. R. Civ. P. 34(a)(1), no such limitation applies to depositions. Iovino is entitled to depose MSA's employees under Rule 30 regardless of whether DoS asserts "control" over the information they possess. The scope of discoverable information is necessarily broader for depositions than document subpoenas. This distinction matters because Judge Cullen premised his earlier Touhy ruling on the fact that the documents Iovino requested from MSA were in DoS's "control" since they were "generated during the performance of work under [the] contract." *Iovino*, 2022 WL 17592541, at *7. That factor is irrelevant for depositions, which can cover any non-privileged information relevant to the claims and defenses. Fed. R. Civ. P. 26(b)(1). MSA's witnesses are subject to deposition regardless of whether DoS controls documents related to their testimony.

The TOR ignored these differing standards and treated Judge Cullen's document ruling as dictating the same result for depositions. But the prior order's reasoning cannot be mechanically extended to the distinct deposition context. The mere fact that DoS controls some documents MSA holds does not mean it also controls its employees' testimony—especially about matters beyond the

strict performance of the contract. The TOR cited nothing in the prior order equating MSA's contractual duty to protect documents with a duty to prevent depositions. By eliding this distinction, the magistrate judge stretched Judge Cullen's actual holding well beyond its limited scope. Worse, the TOR wholly ignored the parts of Judge Cullen's opinion that undermine its expansive view of DoS's authority. Judge Cullen noted the "discrete nature" of Iovino's claims and emphasized that the protective order was targeted to "prevent[] the unjustified disclosure of sensitive documents and records that may ultimately prove *irrelevant*" to those claims. Iovino, 2022 WL 17592541, at *10 (emphasis added). This language shows the court viewed DoS's interest in the litigation as limited to specific documents related to contract performance, not a blank check to veto depositions.

## VI. THE TOR WOULD LEAD TO AN ABSURD RESULT REQUIRING DOS APPROVAL FOR WHISTLEBLOWERS TO TESTIFY ABOUT THE VERY WRONGDOING THEY REPORTED

When the TOR's reasoning is taken to its logical conclusion, it leads to a manifestly absurd, unjust result that would make a mockery of the whistleblower protections Congress enacted in § 4712. This Court should reject such an outrageous outcome and vacate the TOR.

### A. Requiring Whistleblowers to Obtain Agency Approval to Testify Would Eviscerate the Protections of § 4712:

In this case, Iovino's counsel represents three whistleblowers who have come forward to report misconduct by MSA and DoS: Iovino herself, Garrett Lancaster, and Carolyn Olech. Each of them worked for MSA on the DoS contract at issue, and Lancaster has a Section 4712 case before this Court. They allege that MSA and DoS were complicit in various legal violations and safety breaches, and that MSA unlawfully retaliated against them when they blew the whistle, including by terminating Lancaster and refusing to renew Iovino's contract. That retaliation is exactly what § 4712 prohibits. Under the TOR's astonishing logic, however, these whistleblowers would have to obtain DoS's permission to testify about their own mistreatment. Lancaster, for

instance, could not be deposed about MSA's alleged retaliation without first getting a green light from the very agency he reported for wrongdoing. Iovino would have to clear her testimony about MSA's misconduct and DoS's alleged complicity with the agency accused of turning a blind eye to that malfeasance. The TOR would thus give DoS the power to silence the whistleblowers and shield the reported misdeeds from judicial scrutiny.

This counterintuitive conclusion eviscerates the whistleblower protections Congress so carefully enacted in § 4712. It cannot be squared with the statute's express guarantee of a federal court remedy against retaliation, which ensures whistleblowers an opportunity to prove contractor wrongdoing before an independent tribunal. 41 U.S.C. § 4712(c)(2). Nor can it be reconciled with § 4712's core aim of encouraging contractor employees to disclose misconduct to external investigators, including "a court or grand jury." Id. § 4712(a)(2). Forcing whistleblowers to obtain approval from the agency they reported just to give testimony would turn the statute on its head and "make a mockery of the law." *Bostock v. Clayton County,* 140 S. Ct. 1731, 1752 (2020).

The TOR's approach would create a Catch-22 for § 4712 whistleblowers. To have any hope of DoS authorizing their testimony, they would first have to provide a detailed preview summarizing their allegations against MSA and DoS itself. See 22 C.F.R. § 172.5(a) (Touhy request must describe "with as much specificity as possible, the nature and relevance of the official information sought"). That submission would effectively force whistleblowers to reveal their case and litigation strategy to DoS lawyers, who could then work to undermine their claims. It would "give the agency a roadmap of [the whistleblower's] case before the evidence is fully developed" and deny them any chance at fair process. *United States v. Mosby*, 2021 WL 2827893, at *4 (D. Md. July 7, 2021) (rejecting similar agency attempt to screen defendant's

subpoenas). This Court should refuse to bless such a "procedural quagmire for whistleblowers" that enables the retaliating agency "to control the evidence" against it. Id.

### B. The TOR Did Not Address This Fundamental Conflict with the Whistleblower Statute:

Despite the obvious problems its reasoning creates for whistleblowers, the TOR did not reconcile its Touhy ruling with § 4712's promise of an unimpeded path to judicial relief. Allowing an agency to muzzle whistleblower testimony under the guise of Touhy would fundamentally subvert the purpose of § 4712. It would deny whistleblowers the very "day in court" Congress guaranteed them to prove contractor retaliation. 41 U.S.C. § 4712(c)(2). The statute's unambiguous text leaves no room for DoS to arrogate such a gatekeeper role, and the TOR identified no statutory authority for the unprecedented whistleblower-silencing regime it endorsed. By rigidly applying DoS's regulatory definition of "employee" without considering § 4712's express safeguards, the magistrate judge lost sight of the wood for the trees. He reached a problematic conclusion that even DoS has never embraced—that whistleblowers must seek agency approval to testify about their own protected disclosures.

## VII. CONCLUSION

The objections develop the legal framework within which the magistrate's errors must be evaluated. This Court should sustain Plaintiff Iovino's objections, vacate the TOR, and order that the proposed depositions proceed without requiring DoS preapproval under the Touhy regulations. The magistrate judge's decision misapplies relevant statutes, fails to consider persuasive precedent, violates separation-of-powers principles, and disregards key arguments and

statutory protections for whistleblowers. Vacating the TOR is essential to ensure that whistleblowers can fully present their claims in federal court and obtain the judicial remedies Congress intended.

Respectfully submitted,

/s/ Thad M. Guyer

Thad M. Guyer
Attorney for Plaintiff

*Rule 72 Objections -18-*