IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KAREN IOVINO, | ) | |
| | ) | |
|     **Plaintiff and** | ) | Case No. 5:21-CV-00064-TTC |
|     **Counterclaim Defendant,** | ) | |
| v. | ) | |
| | ) | **DEFENDANT AND** |
| | ) | **COUNTERCLAIM PLAINTIFF'S** |
| | ) | **OPPOSITION TO PLAINTIFF** |
| MICHAEL STAPLETON ASSOCIATES, LTD., | ) | **AND COUNTERCLAIM** |
| d/b/a MSA SECURITY, INC. | ) | **DEFENDANT'S RULE 72(a)** |
| | ) | **OBJECTIONS TO** |
| | ) | **MAGISTRATE'S** |
|     **Defendant and** | ) | **MEMORANDUM OPINION &** |
|     **Counterclaim Plaintiff** | ) | **ORDER** |

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by counsel, respectfully submits this opposition to Plaintiff and Counterclaim Defendant Karen Iovino's ("Plaintiff" or "Iovino") Rule 72(a) objections to the Magistrate Judge Hoppe's May 23, 2024 Memorandum Opinion and Order (ECF No. 172) (the "Order").

    **I.    INTRODUCTION**

On May 23, 2024, this Court entered the Order granting MSA's motion for a protective order and directing "[a]ny part that seeks to obtain deposition testimony from current and former State Department employees or contractors, including current or former MSA employees, regarding information related to MSA's contract with the State Department . . . [to] follow the State Department's *Touhy* regulations." ECF 172 at 13. The Order directs Iovino to follow the United States Department of State ("DoS") *Touhy* regulations (2 C.F.R. § 172 *et seq.*) to obtain the deposition testimony she currently seeks.

From the beginning of this case, Iovino has been required to follow DoS's *Touhy* regulations, which she has fought each step of the way. Now, frustrated yet again by this Court's

Order, Iovino filed objections to the Order citing erroneous and/or non-existent case law in yet another futile attempt to subvert and/or undermine DoS's *Touhy* regulations. Two of the cases Iovino cites in her brief do not exist – *United Therapeutics Corp. v. Watson Labs, Inc.*, No. 3:17-cv-00081, 2017 WL 2483620, at *1 (E.D. Va. June 7, 2017) and *United States v. Mosby*, 2021 WL 2827893, at *4 (D. Md. July 7, 2021) (ECF 173 at 3, 16) and many other "quotes" from various case law cited in Iovino's brief does not exist in the case law cited. Undersigned counsel does not presume that this use of erroneous case law was intentional, it looks more like ChatGPT run amok. At the very least, this imaginary legal support speaks to the infirmity of Plaintiff's legal argument and calls into question the credibility of Iovino's arguments in this latest assault on DOS's *Touhy* regulations. For these reasons, and as will be outlined in greater detail below, Plaintiff's objections to the Order should be OVERRULED.

**II.     LEGAL STANDARD**

Federal Rules of Civil Procedure ("FRCP") Rule 72(a) applies to nondispositive matters and allows a party to serve objections to a magistrate judge's order. FRCP 72(a) states that, upon objection, "the district judge in the case must consider timely objections and modify or set aside any part of the order that is *clearly erroneous or is contrary to law*." *Id.* (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.").

This Court "review[s] the magistrate judge's decision on questions of law under the 'contrary to law' standard." *See Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-cv-00064, 2022 WL 17581491, at *3 (W.D. Va. Dec. 12, 2022) (quoting *Clinch Coal. v. U.S. Forest Serv.*, 597 F. Supp. 3d 916, 921 (W.D. Va. 2022)). "If an order fails to apply or misapplies relevant

statutes, case law, or rules of procedure, it is contrary to law." *Norris v. Excel Indus., Inc.*, No. 5:14-CV-00029, 2015 WL 4431022, at *2 (W.D. Va. July 20, 2015) (finding the magistrate judge's determination that good cause existed for confidential designations was not clearly erroneous or contrary to law). "In the context of Rule 72(a), this 'contrary to law' standard is equivalent to de novo review." *Iovino*, 2022 WL 17581491, at *3 (quoting *Clinch Coal.*, 597 F. Supp. 3d at 921)).

### III.  ARGUMENT

Plaintiff objects to Judge Hoppe's well-reasoned opinion by citing case law and quotes that do not exist and, separately, by making arguments she failed to make in the underlying briefing for the protective order. All of Plaintiff's arguments fall short of the standard required to overturn a magistrate judge's decision under 28 U.S.C. § 636(b)(1) and FRCP 72(a).

#### A. The Order Does Not Misapply 41 U.S.C. § 4712 or Undermine Congress's Intent.

Iovino argues that the Order misapplies 41 U.S.C. § 4712 and "restricts" or "limits" discovery. ECF 173 at 4–7. These assertions are incorrect. Section 4712(c) provides remedies and explains enforcement authority once an inspector general has submitted a report regarding a whistleblower's complaint. One of the allowable remedies is to have a court judicially review the inspector general's report. Specifically, § 4712(c)(5) states:

> Any person adversely affected or aggrieved by an order issued under paragraph (1) may obtain review of the order's conformance with this subsection, and any regulations issued to carry out this section, in the United States court of appeals for a circuit in which the reprisal is alleged in the order to have occurred. No petition seeking such review may be filed more than 60 days after issuance of the order by the head of the executive agency. Review shall conform to chapter 7 of title 5. Filing such an appeal shall not act to stay the enforcement of the order of the head of an executive agency, unless a stay is specifically entered by the court.

When a statute is clear and unambiguous, "the court's interpretative task is at an end, and the statute must be applied in accordance to its plain meaning." *McCauley v. Purdue Pharma, L.P.*,

224 F. Supp. 2d 1066, 1069 (W.D. Va. 2002) (citing *Hall v. McCoy*, 89 F. Supp. 2d 742, 744–45 (W.D. Va. 2000); *Johnson v. Garraghty*, 57 F. Supp. 2d 321, 325–26 (E.D. Va. 1999)). The court may not look past the plain meaning of the statute. *Id.*; *see also Crespo v. Holder*, 631 F.3d 130, 136 (4th Cir. 2011) ("The Supreme Court has stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430, (1981))). If the plain language of a statute is unambiguous, "we are not simply free to ignore unambiguous language because we can imagine a preferable version." *Id.* (quoting *Sigmon Coal Co., Inc. v. Apfel*, 226 F.3d 291, 308 (4th Cir. 2000)).

  Plaintiff asserts that a plain reading of § 4712 "foreclose(s) imposing Touhy restrictions on discovery in whistleblower cases." Rather than reading the statute on its face (as one should do when making a "plain reading" argument), Plaintiff dives into the legislative history and congressional intent of the statute in an attempt to convince the court that § 4712 "clearly" states that *Touhy* regulations do not apply to whistleblowers. There are many problems with that theory—mainly, nothing in the statute mentions *Touhy* or the discovery process in general. A true plain reading of § 4712 shows that the statute is clear and unambiguous, and does not provide for the relief that Plaintiff is requesting in her objections to the Order.

  For these reasons, Iovino's objections should be OVERRULED.

### B. The Order Does Not Misinterpret or Misapply *Menocal v. GEO Grp., Inc.*

Iovino argues that the Order misinterpreted *Menocal v. GEO Grp., Inc.*,[1]—a nonbinding District of Colorado case. ECF 173 at 7–10. Specifically, Iovino claims that the Court "fail[s] to properly grapple with *Menocal v. GEO Group* decision, which persuasively held that an agency cannot invoke Touhy regulations to restrict discovery from a contractor defendant." *Id.* at 7. The Order specifically states that *Menocal* is not persuasive.

As stated in MSA's March 21, 2024 Reply in Support of its Motion for a Protective Order (ECF 166 at 3–6), Plaintiff's reliance on *Menocal v. GEO Grp., Inc.*, is misguided. In *Menocal*, "current and former detainees of the Aurora Detention Facility . . . allege that, in operating the Facility, GEO Group, Inc. ("GEO") forced them to labor in violation of the Trafficking Victims Protection Act and was justly enriched by their work." *Menocal v. GEO Grp., Inc.*, No. 14–cv–02887–JLK, 2017 WL 4334000, at *1 (D. Colo. June 6, 2017). GEO withheld documents and information requested in discovery citing Department of Homeland Security's ("DHS") *Touhy* regulations and stating DHS had not given GEO permission to produce the documents and/or information. *Id.* at *1–2. DHS's *Touhy* regulations are codified at 6 C.F.R. § 5.44(a) and include "contractors" in the definition of "employee" for purposes of the regulation under § 5.41(c). The *Menocal* court held that GEO failed to demonstrate good cause for a protective order. *Menocal*, 2017 WL 4334000, at *4.

As MSA previously (and successfully) argued in its March 21, 2024 brief (ECF 166), *Menocal* differs from this case in a number of ways. First, there is no indication that a

---

[1] Iovino provides 113 F. Supp. 3d at 1130–31 as the citation for "*Menocal*" but no such citation exists. ECF 173 at 8. For purposes of clarity, MSA assumes that Iovino refers to *Menocal v. GEO Grp., Inc.*, No. 14–cv–02887–JLK, 2017 WL 4334000 (D. Colo. June 6, 2017), which was cited in the underlying briefing.

confidentiality order was entered into in *Menocal*. Second, there is no indication that GEO had a confidentiality clause in its contract with DHS or was bound by any confidentiality restrictions. Third, there is no indication that GEO handled sensitive DHS information that needs to be protected in public litigation. Fourth, there is no indication that GEO produced any documents to Menocal. Rather, GEO argued that, based on DHS's *Touhy* regulations alone, GEO was permitted to withhold information requested from it through litigation. *Id.* at *1.

Here (and unlike the facts in *Menocal*), MSA's work supports a "sensitive government program" and risks violating its contract with DoS if it provides current and/or former DoS employees or MSA employees (who are DoS contractors) for depositions without DoS approval. *See* ECF 90 (12/06/22 Statement of Interest of the U.S. Department of State). The relevant contract between DoS and MSA states that "[a]ll documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government." ECF 46 at 10 (Def's Opp'n to Pl's Mot. to Dismiss). MSA is not able to approve the requested depositions of current and/or former employees without Plaintiff submitting a *Touhy* request *because* of the confidentiality restrictions outlined in its contract with DoS. If the Court does not grant a protective order, MSA risks breaching its contract with DoS and subjecting itself to the repercussions that come with breaching a U.S. Government contract.

Further (and unlike the facts in *Menocal*), MSA risks its status as a government contractor if it provides current and/or former DoS employees or MSA employees (who are DoS contractors) for depositions without DoS approval. As this Court has already recognized, MSA's contract with DoS deals with a "sensitive government program" containing a multitude of information including anti-terrorism initiatives and embassy-security protocols that are not publicly available. *See* ECF

6

90; ECF 93 at 7 (12/12/22 Memorandum Opinion). Because of this sensitive government program information, MSA's contract with DoS "strictly mandates MSA to keep all State Department materials confidential." ECF 93 at 7.

Given the nature of this lawsuit, and the facts alleged therein, MSA is rightfully concerned with Plaintiff's tendency to share leaked or otherwise undisclosed information to the public. As this Court previously stated, "MSA is justifiably concerned about additional disclosures that would potentially cause additional harm" if confidentiality restrictions were not ordered in this case. *Id.*

In *Menocal*, there is no indication that GEO produced any documents. As mentioned above, MSA has produced over 9,000 pages of documents to Plaintiff throughout this litigation. Many of those documents were reviewed by DoS prior to production, as confirmed in the various status reports submitted in this case by MSA and DoS. MSA and DoS have worked expeditiously (including MSA's attorneys' spending scores, if not hundreds, of hours) to get Plaintiff her requested discovery. At no point during this litigation has MSA (or DoS) stated that Plaintiff is *not* entitled to civil discovery. Any suggestion to the contrary is wrong. As shown in MSA's underlying motion, DoS is only requesting that Plaintiff provide a list of topics <u>she will be exploring in each deposition to understand whether Plaintiff is seeking any</u> confidential information, information that could threaten national security, or privileged state secrets. ECF 151-2 at 3.

Plaintiff's reliance on *Menocal* is improper. *Menocal:* (1) analyzes an entirely different agency's (DHS's) *Touhy* regulations; (2) no confidentiality restrictions appear to be in DHS's contract with GEO; and (3) the contract between DHS and GEO does not appear to govern a sensitive government program containing a multitude of information including anti-terrorism initiatives and embassy-security protocols.

7

For these reasons, Iovino's objections should be OVERRULED.

### C.  The Order Does Not Violate Separation of Powers.

Iovino argues that the Order "violate[s] the separation of powers by allowing DOS to control discovery in a case to which it is not a party." ECF 173 at 10–12.

First, it appears that Plaintiff now agrees that DoS is not a party in this litigation. Iovino has switched her position as to whether DoS is a party many times in this litigation. During the January 8, 2024 hearing before Magistrate Judge Hoppe (ECF 148, ECF 151-1 at 1 n.1), Plaintiff argued that DoS's *Touhy* regulations do not apply to this case because it is a dispute between private parties. At that same hearing, Plaintiff then (rather confusingly) also argued that DoS is a "party" to this case—making the litigation between a private party and the U.S. Government. Then, in the underlying briefing for the protective order, Plaintiff argued that she sued MSA as an "'employee' of the State Department, which under § 301 means the DoS is a party to the litigation and *Touhy*, therefore has no application." ECF 162 at 2. This came after Plaintiff argued for *months* that MSA was *not* an employee under DoS's *Touhy* regulations. Now, after the Order, Plaintiff claims that DoS is not a party (which MSA agrees it is not). Plaintiff seems to argue whatever she can (even if that means arguing the exact opposite of what she previously argued) to avoid DoS's *Touhy* regulations.

Second, the Order does not give DoS "veto" power that Iovino decries. ECF 173 at 10. Rather, the Order requires that Iovino "follow the State Department's Touhy regulations" when seeking "information or materials that are State Department property." ECF 172 at 12–13. The Order provides ample legal authority in support of this well-reasoned decision.

The Order explains: "For years, the Fourth Circuit has explained that a federal agency's authority to regulate the dissemination of official information and materials—including its 'power

8

to refuse compliance with a subpoena' commanding such disclosure in private litigation—finds its roots in sovereign immunity." *Id.* at 3 n.3 (internal citations omitted). The Order goes on to say that "the nature of a subpoena proceeding against a federal employee to compel him to testify about or otherwise divulge information obtained in his official capacity is inherently that of an action against the United States. . . . Such a proceeding 'interferes with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Id.* (internal citations omitted).

Iovino cites *U.S. v. Reynolds*, where the Government is a party, to argue that executive officers cannot control the evidence in a case. ECF 173 at 10–11. Iovino does not properly articulate what *U.S. v. Reynolds* found. *U.S. v. Reynolds* is a case dealing with the Federal Tort Claims Act and the U.S. Military. 345 U.S. 1 (1953). *US. v. Reynolds* states as follows:

> Judicial experience with the privilege which protects military and state secrets has been limited in this country. English experience has been more extensive, but still relatively slight compared with other evidentiary privileges. Nevertheless, the principles which control the application of the privilege emerge quite clearly from the available precedents. ***The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party.*** It is not to be lightly invoked. There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.

345 U.S. at 8 (emphasis added).

Although this matter does not deal with the Federal Tort Claims Act or the U.S. Military, the Order, alongside the Confidentiality Order already entered in this case (ECF 67), does exactly what *U.S. v. Reynolds* states is appropriate under these circumstances. The privilege relating to DoS documents and information belongs to DoS. MSA is in no position to claim or waive that privilege. Therefore, it is necessary for DoS to review the documents and/or information for

privileged or confidential information. The way the DoS completes that review is through the *Touhy* process. The Confidentiality Order and the Order ensure that process is followed. ECF 67 at 1; ECF 172 at 13.

Further, Iovino cites *Dep't of Homeland Sec. v. MacLean* to argue that she, as an (ex) employee of a federal contractor can disclose any information (even if confidential or sensitive) obtained by her in the course of her duties at MSA without any repercussions. ECF 173 at 11–12; *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015). This is clearly incorrect. Further, Iovino's history of leaking information about this sensitive government program, and her currently stated cavalier attitude regarding the continued disclosure of such information (ECF 173 at 11–12) further strengthen the need for the protections established by this Court in the Confidentiality Order (ECF 67) and the protective order (ECF 172). *Dep't of Homeland Sec. v. MacLean* determines whether a plaintiff's disclosures, as a whistleblower, were prohibited by law. *See generally*, *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015). The case does not discuss how an agency should (or should not) act in the discovery process.

Iovino also cites to *Menocal v. GEO Grp., Inc.*[2], which as discussed above, does not apply to this case for various reasons, and to *In re United States*, 138 S. Ct. 443, 445 (2017), which (once again) does not quote the language that Iovino cites in her brief.

For these reasons, Iovino's objections should be OVERRULED.

### D. The Order Properly Applies "the Law of the Case Doctrine."

Iovino argues that the Order improperly relies on "Judge Cullen's earlier ruling regarding document subpoenas as binding under the law-of-the-case doctrine." ECF 173 at 12–15. To make this point, Iovino cites *Graves v. Lioi,* 930 F.3d 307 (4th Cir. 2019) to argue that Judge Cullen's

---

[2] *See supra* note 1.

10

January 12, 2023 order (ECF 97) (the "01/12/23 Order") about the applicability of DoS's *Touhy* regulations did not "by necessary implication" include deposition testimony. *Id.* at 14; *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019). However, that quoted language appears nowhere in *Graves*. In fact, the case stands for the opposite position. *Graves* states: "[T]he doctrine contemplates that the same legal ruling will continue to apply despite the varying standards that may apply in subsequent stages of litigation; the court's decision of law continues to govern the 'same issues in *subsequent stages* in the same case.'" *Graves*, 930 F.3d at 340 (internal citations omitted) (emphasis in original).

The well-reasoned Order clearly illustrates why Judge Cullen's 01/12/23 Order (ECF 97) established the law of the case in this matter with relation to the applicability of DoS's *Touhy* regulation to discovery in this case. See ECF 172 at 7–9. The Order states that Judge Cullen not only ruled that DoS's *Touhy* regulations apply to document requests, but "also indicated that the State Department's Touhy regulations apply whenever the agency must decide 'whether an employee called upon to testify or to produce evidence in litigation will be permitted to disclose the requested information.'" *Id.* at 8 (quoting ECF 97 at 2 n.3).

Judge Hoppe cites Judge Cullen's 01/12/23 Order in the Order because Judge Cullen's 01/12/23 Order resolved the issue of whether DoS's *Touhy* regulations apply in this case. Judge Cullen's 01/12/23 Order is the "law of the case" which "supports 'finality and efficiency in the judicial process.'" *U.S. ex rel. Staley v. Columbia/HCA Healthcare Corp.*, 587 F. Supp. 2d 757, 761 (W.D. Va. 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

11

The Order clarifies that it is not the "law of the case" doctrine that is at issue here, but rather, Iovino's refusal to follow the "law of the case" simply because she "disagrees with it." ECF 172 at 8. Mere disagreement with the law of the case does not mean that it is inapplicable.

For these reasons, Iovino's objections should be OVERRULED.

### E. The Order Does Not Require Whistleblowers to Obtain Agency Approval to Testify.

Nothing in the Order requires whistleblowers to obtain agency approval to testify, yet Iovino argues that it does as a reason to overturn the Order. ECF 173 at 15–17. FRCP 72(a) allows a party to file objections "to the order." This ground should be denied in its entirety because Iovino is "objecting" to language that is not in the Order and is therefore improper.

To justify her (improper) assertion that whistleblowers need to obtain agency approval in order to testify, Iovino cites a case (and law) that does not exist—*United States v. Mosby*, 2021 WL 2827893, at *4 (D. Md. July 7, 2021). *Id.* at 16. Specifically, Iovino states:

> It would "give the agency a roadmap of [the whistleblower's] case before the evidence is fully developed" and deny them any chance at fair process. United States v. Mosby, 2021 WL 2827893, at *4 (D. Md. July 7, 2021) (rejecting similar agency attempt to screen defendant's subpoenas). This Court should refuse to bless such a "procedural quagmire for whistleblowers" that enables the retaliating agency "to control the evidence" against it. Id.

ECF 173 at 16–17.

Despite a diligent search, Undersigned counsel cannot find this case, or the language quoted.

The other case Iovino cites— *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1752 (2020)— exists, but is a U.S. Supreme Court case where a "gay county employee brought Title VII action against county, alleging sexual orientation discrimination in termination of employment as child

12

welfare advocate." ECF 173 at 16 (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1752 (2020)). Of note, Iovino states:

> Forcing whistleblowers to obtain approval from the agency they reported just to give testimony would turn the statute on its head and "make a mockery of the law." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1752 (2020).

*Id.* The language quoted in Iovino's brief does not appear in *Bostock.* Because Iovino fails to object to anything in the Order, and cites erroneous case law to make those objections, this Court should OVERRULE Iovino's objections.

## IV. CONCLUSION

For all the reasons discussed above, Defendant and Counterclaim Plaintiff, MSA, respectfully requests this Court OVERRULE Plaintiff's Rule 72(a) Objections and deny any relief sought therein.

Respectfully submitted,

Date: June 20, 2024                 */s/ Daniel S. Ward*

　　　　　　　　　　　　　　　　　　　　　　　 _____
Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

>Nate L. Adams III
>Nate L. Adams III, P.C.
>ADAMS AND ASSOCIATES
>11 South Cameron Street
>Winchester, VA 22601
>(504) 667-1330
>nadams@nadamslaw.com
>
>Jack Kolar
>GOVERNMENT ACCOUNTABILITY PROJECT
>1612 K St. NW, Suite 1100
>Washington, DC 20006
>(202) 926-3311
>jackk@whistleblower.org
>
>Thad M. Guyer
>116 Mistletoe Street
>P.O. Box 1061
>Medford, OR 97501
>(206) 954-1203
>thad@guyerayers.com

*/s/ Daniel S. Ward*

_____

Daniel S. Ward