CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

July 24, 2024

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

KAREN IOVINO,                               )
                                            )
                Plaintiff,                  )       Civil Action No. 5:21-cv-00064
                                            )
v.                                          )       **MEMORANDUM OPINION**
                                            )
MICHAEL STAPLETON ASSOCIATES,               )       By:    Hon. Thomas T. Cullen
LTD. d/b/a MSA Security, Inc.,              )              United States District Judge
                                            )
                Defendant.                  )

Nearly three years ago, Plaintiff Karen Iovino sued Defendant Michael Stapleton Associates, Ltd. d/b/a MSA Security, Inc. ("MSA") for allegedly violating a federal whistleblower law. The parties have engaged in a lengthy and contentious discovery process since then, and the case is back before the court on Iovino's objections to the Honorable Joel C. Hoppe, United States Magistrate Judge, granting MSA's motion for a protective order. Iovino's objections are incorrect on the merits and appear to cite fictitious cases and made-up quotations. For the reasons discussed below, the court will overrule Iovino's objections, affirm the entry of the protective order, and require Iovino's attorneys to show cause why they should not be sanctioned under Federal Rule of Civil Procedure 11(c).

## I.    RELEVANT BACKGROUND

For reasons that continue to confound the court, the parties have turned a straightforward case into a protracted discovery battle. Their dispute *du jour* centers on whether Iovino must comply with the United States Department of State's ("State Department") *Touhy*

regulations[1] to depose six current or former MSA employees about information related to MSA's contract with the agency.

MSA is a federal contractor that has an agreement with the State Department to train explosive detection canines. The company employed Iovino as a veterinarian for approximately two years before firing her in August 2017. Iovino believes she was fired for reporting alleged issues about MSA's contract with the State Department to that agency's Office of Inspector General. She filed a one-count complaint against MSA in September 2021, claiming that its decision to terminate her constituted unlawful whistleblower retaliation in violation of 41 U.S.C. § 4712. (*See generally* Compl. [ECF No. 1]; Am. Compl. [ECF No. 30].) MSA denies those allegations and brought a counterclaim against Iovino for purportedly violating a non-disclosure agreement by sharing confidential information with third parties, including the news media. (*See* Counterclaim ¶¶ 34–49 [ECF No. 31].)

Despite these limited claims, the case has been bogged down by discovery issues for the past two years. Relevant to the instant objections, the court ruled in January 2023 that the State Department's *Touhy* regulations apply to Iovino's document requests under Federal Rule of Civil Procedure 34 insofar as the requested documents were "generated during the performance of work under" MSA's contract with the State Department. (Order, Jan. 12, 2023, at 2 [ECF No. 97] [hereinafter First *Touhy* Order].) Following that Order, the parties adhered to the State Department's *Touhy* process for Iovino's Rule 34 requests, and MSA produced thousands of pages of documents to her. (*See* Pl.'s Ninth Status Report at 1 [ECF No. 133].)

---

[1] *Touhy* regulations refer to the processes for requesting official information from U.S. government agencies in court proceedings, as first discussed in depth in the Supreme Court's ruling in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

The current discovery dispute is similar and stems from Iovino's desire to depose six current or former MSA employees, under Rule 30(b)(6), about their work on MSA's contract with the State Department. In November 2023, Iovino notified MSA of her intent to depose these individuals, and MSA agreed to "move forward promptly with the scheduling of [the] depositions" once the State Department approved Iovino's *Touhy* request. (ECF No. 151-2 at 3.) Iovino, however, disagreed with the suggestion that she would need to comply with the *Touhy* regulations for these depositions and said that there was "no way [she] will agree to a *Touhy* process for non-government employees of a private contractor." (*Id.* (cleaned up).) Even though the State Department indicated it would "work expeditiously to review and ensure a . . . response to any *Touhy* requests for depositions," Iovino's attorneys dug in their heels and refused to submit any such requests. (*Id.* at 2–3.) MSA, therefore, moved for a protective order that required Iovino to comply with the State Department's *Touhy* regulations when seeking official agency information through the deposition testimony of current or former MSA or State Department employees. (ECF No. 151.)

The court referred MSA's discovery motion to Judge Hoppe under 28 U.S.C. § 636(b)(1)(A). (*See* Am. Scheduling Order ¶ 16 [ECF No. 112].) Following an extended briefing period and hearing, Judge Hoppe issued a Memorandum Opinion and Order granting MSA's motion and entering the requested protective order. (*See generally* Mem. Op. & Order, May 23, 2024 [ECF No. 172].) In his decision, Judge Hoppe relied, in part, on this court's prior ruling that the State Department's *Touhy* regulations apply to Iovino's document requests. (*See id.* at 8–9.) He also did not find convincing Iovino's argument that an unpublished, district court decision from 2017 counseled against applying *Touhy* to her deposition requests. (*See id.*

at 12 (finding unpersuasive Iovino's reliance on *Menocal v. GEO Grp., Inc.*, No. 14-cv-02887, 2017 WL 4334000, at \*2–4 (D. Colo. June 6, 2017)).) Finally, he determined that a protective order was appropriate because MSA would be harmed—by way of breaching its State Department contract—if it did not comply with the agency's *Touhy* regulations before allowing Iovino to depose the Rule 30(b)(6) designees. (*Id.* at 13.)

Iovino noted timely objections to Judge Hoppe's decision on June 7, 2024, arguing that the protective order should be vacated because his determination that the State Department's *Touhy* regulations apply to her deposition requests is contrary to law. (Pl.'s Objs. [ECF No. 174].) Shockingly, her objections rely, in part, on citations to sources and quotations that appear not to exist. MSA highlighted those mysterious citations in its brief opposing Iovino's objections. (Def.'s Opp'n Br. [ECF No. 175].) Iovino did not file a reply, leaving unrebutted the allegations of fabricated citations, and her objections are ripe for decision.[2]

## II.   STANDARD OF REVIEW

When a party files objections to a magistrate judge's order on a non-dispositive motion, the court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The court reviews the magistrate judge's decisions on questions of law under the "contrary to law" standard, which is "equivalent to de novo review." *Clinch Coal. v. U.S. Forest Serv.*, 597 F. Supp. 3d 916, 921 (W.D. Va. 2022) (cleaned up). A decision is

---

[2] Iovino filed a "Statement of Supplemental Authority" 13 days after MSA submitted its response. (Suppl. Authority [ECF No. 176].) Neither the Scheduling Order nor the Local Rules contemplates this type of filing, and it is untimely to the extent Iovino intended for it to be construed as her reply brief. (*See* Am. Scheduling Order ¶ 12 (requiring a party to submit a reply brief within seven days of the filing of a brief in opposition).) Nonetheless, the court considered Iovino's supplemental authority, along with each of the parties' other filings related to the protective order. The court dispenses with oral argument because it would not aid in the decisional process.

"contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *In re Eli Lilly & Co.*, 580 F. Supp. 3d 334, 337 (E.D. Va. 2022) (internal quotations omitted). "That reasonable minds may differ on the wisdom of a legal conclusion does not mean it is clearly erroneous or contrary to law," and "it is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge." *Stone v. Trump*, 356 F. Supp. 3d 505, 511 (D. Md. 2018) (cleaned up).

## III.   ANALYSIS

### A.  Iovino's Objections

Iovino's primary objection is that Judge Hoppe "erroneously concluded" the State Department's *Touhy* regulations apply to her requests to depose MSA employees about the company's contract with the agency. (Pl.'s Objs. at 6.) She also advances a number of ancillary objections to Judge Hoppe's decision. But none of her objections demonstrate that Judge Hoppe's ruling was contrary to law. The court will overrule them and affirm the entry of the protective order.

As a threshold matter, the State Department is not a party to this litigation. (*See* First *Touhy* Order at 3.) Iovino concedes this in her instant objections (*see* Pl.'s Objs. at 13), and she previously acknowledged as much on the record (*see, e.g.*, Hr'g Tr., Oct. 12, 2022, 5:16–19 [ECF No. 76]). But in an earlier brief opposing MSA's motion for a protective order, she at times asserted that the State Department is a defendant.[3] (*See* ECF No. 162 at 2, 5–7.) In an

---

[3] As part of that argument, Iovino claimed "courts are virtually unanimous" that the *Touhy* doctrine does not apply when the federal government is a party to litigation. (ECF No. 162 at 6.) Iovino is correct that certain courts have concluded as much. *See Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 380 (Fed. Cl. 2010) (collecting district court decisions). But the court would be remiss not to point out that the question remains open in the Fourth Circuit. *Cf. United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) ("The defendant claims at

effort to lay the argument to rest, the court reiterates that the State Department is *not* a party in this case.[4]

## 1. Iovino's Primary Objection

The court will overrule Iovino's primary objection that Judge Hoppe incorrectly determined her deposition requests are subject to the State Department's *Touhy* regulations. The regulations are valid and unambiguously apply to her requests.

It is well settled that federal agencies have the power to promulgate and enforce *Touhy* regulations. *See, e.g.*, *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277–78 (4th Cir. 1999); *Soriano-Jarquin*, 492 F.3d at 504; *United States v. Williams*, 170 F.3d 431, 433–34 (4th Cir. 1999); *Smith v. Cromer*, 159 F.3d 875, 878 (4th Cir. 1998); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69–70 (4th Cir. 1989); *Donatoni v. Dep't of Homeland Sec.*, 184 F. Supp. 3d 285, 287–88 (E.D. Va. 2016); *Nowlan v. Nowlan*, 543 F. Supp. 3d 324, 367 (W.D. Va. 2021), *aff'd*, No. 21-1965, 2022 WL 34141 (4th Cir. Jan. 4, 2022); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2020 WL 1496466, at *2 (W.D. Va. Jan. 17, 2020); *Owens v. Republic of Sudan*, 864 F.3d 751, 781 n.3 (D.C. Cir. 2017), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020). Additionally, the plain language of the State Department's *Touhy* regulations establish that they cover Iovino's requests to depose six current or former MSA employees about information they obtained while working on MSA's contract with the agency. The individuals Iovino seeks to depose are "employees" under the *Touhy* regulations because they are, or were,

---

the outset that *Touhy* regulations do not apply to cases in which the United States is a party, but neither the authorizing statute, 5 U.S.C. § 301, nor the [agency] regulations . . . impose any such limitation."). In any event, the court need not decide the issue here because the State Department is *not* a party to this matter.

[4] This should be self-evident because the State Department is not named as a defendant in Iovino's complaint, has not been served with process, and has not been joined or intervened.

contractors with the State Department. *See* 22 C.F.R. § 172.1(b) ("[T]he term *employee* includes . . . all employees and former employees of the Department of State . . ., including . . . contractors."). She "requests . . . depositions" about "information acquired while [each person] . . . is or was an employee of the [State] Department as part of the performance of that person's duties." *Id.* § 172.1(a)(2); *see also id.* § 172.1(d) ("*[O]fficial information* means all information . . . that is in the custody and control of the [State] Department, relates to information in the custody and control of the [State] Department, or was acquired by [State] Department employees as part of their official duties . . . while such individuals were employed by or served on behalf of the [State] Department."). And because she seeks "official [State] Department information . . ., through testimony or otherwise," from those people, she "must . . . set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought." *Id.* § 172.5(a).

The State Department's *Touhy* regulations are clear on their face that they encompass deposition requests like Iovino's, so the court must apply the regulations as written rather than contorting their language to reach the anomalous result Iovino suggests. *See, e.g.*, *Harris v. Norfolk S. Ry. Co.*, 784 F.3d 954, 962 (4th Cir. 2015) (quoting *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012)) ("If [a] regulation's language 'has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written.'"). Judge Hoppe's decision granting the protective order did precisely that, so it is not contrary to law. As such, the court will overrule Iovino's primary objection that the State Department's *Touhy* regulations do not apply to her instant deposition requests.

### 2. Iovino's Ancillary Objections

The court will also briefly discuss Iovino's six ancillary objections to Judge Hoppe's decision. Four of the objections focus on agency power to control discovery. Iovino also objects on the grounds that Judge Hoppe did not adequately distinguish *Menocal*, 2017 WL 4334000, and misapplied the law of the case doctrine. None of Iovino's ancillary objections carry the day.

### i. Agency Power to Control Discovery

Iovino argues that Judge Hoppe's decision to grant the protective order was improper because it gives the State Department unwarranted control of discovery, which: (1) defies the text and purpose of 41 U.S.C. § 4712; (2) violates separation-of-powers principles; (3) restricts whistleblowers' ability to testify about wrongdoing without agency approval; and (4) cuts against recent Supreme Court decisions that limit agency power. (*See generally* Pl.'s Objs.; Suppl. Authority.) The court addresses each of these arguments in turn.

Iovino first asserts that applying the State Department's *Touhy* regulations to her deposition requests is contrary to the text and purpose of 41 U.S.C. § 4712. (Pl.'s Objs. at 7–10.) The court disagrees. The text of § 4712 neither mentions nor otherwise contemplates altering a federal agency's *Touhy* regulations—nor does § 4712 contemplate modifying 5 U.S.C. § 301, the authorizing statute for *Touhy* regulations—and the court is "not at liberty to rewrite [§ 4712] to reflect a meaning [Iovino] deem[s] more desirable." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008). Instead, the court "must give effect to the text Congress enacted." *Id.* Because § 4712's text does not restrict the State Department's *Touhy* regulations in any way, the protective order in this case is not contrary to the statute. Lacking a serious textual

argument, Iovino leans on discrete pieces of § 4712's legislative history in an attempt to discern a Congressional "intent" that favors her point of view. She claims that applying the State Department's *Touhy* regulations to her deposition requests will allow "the agency . . . to control the courthouse doors," which goes against § 4712's purpose of allowing whistleblowers to freely pursue claims in judicial proceedings. (Pl.'s Objs. at 9–10.) Her own litigation in this matter, however, belies that assertion. Iovino has brought a detailed whistleblower claim in federal court, filed numerous motions, obtained substantial discovery in compliance with the State Department's *Touhy* regulations, and otherwise zealously litigated her case for nearly three years. As she has ably demonstrated, the regulations do not have a chilling effect on whistleblowers' ability to bring claims in court. Iovino's objection that the protective order is contrary to 41 U.S.C. § 4712 will be overruled.

Next, Iovino argues that the protective order creates a separation-of-powers issue by allowing the State Department to control discovery in this case. (Pl.'s Objs. at 13–15.) That assertion is again incorrect on the law and disproven by this matter's procedural history. True, Iovino's discovery requests are slightly more onerous because she must follow the State Department's *Touhy* process. But the State Department does not control discovery; the court does. If the agency refuses to produce or allow testimony about certain information, Iovino can challenge those decisions in this court. *See COMSAT Corp.*, 190 F.3d at 274. The *court* will then determine whether the State Department must disclose the challenged information. *See id.* at 277–78. The court's control is apparent through its active role in this matter's discovery process in which it has ruled on two extensive motions (ECF Nos. 82, 151), overseen significant document disclosure (*see* ECF Nos. 109–11, 113–33), and held four discovery

hearings to date (ECF Nos. 62, 141, 149, 168). That involvement and Iovino's ability to seek redress in this court if she disagrees with the State Department's *Touhy* decisions establish that the protective order does not create a separation-of-powers issue by impermissibly encroaching on the court's control of litigation. Her objection will be overruled.

The court also declines to take the bait on Iovino's objection that the protective order "taken to its logical conclusion . . . leads to [the] manifestly absurd, unjust result" that the State Department could silence whistleblowers because they would need the agency's permission to testify. (Pl.'s Br. at 18–20.) Despite this alarmist contention, Iovino cites no cases where this has actually happened, even though whistleblower protection laws have existed since the nation's founding. *See* Alexander J. Kasner, *National Security Leaks and Constitutional Duty*, 67 Stan. L. Rev. 241, 270 (2015) ("America passed its first whistleblower protection law in 1778."). Moreover, if such an unlikely scenario occurred, Iovino does not explain why a litigant could not challenge it in court at that time or why Congress could not step in to rectify the issue. *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 614 (2007). Ironically, Iovino's argument is what seems "absurd" here, as she attempts to give it credibility by citing to a purportedly fictitious case and a non-existent quotation from a Supreme Court decision. (*See* Def.'s Opp'n Br. at 12–13 (discussing Iovino's supposedly fake citations).) At bottom, courts "decide cases one at a time" based on concrete issues, not remote hypotheticals. *See United States v. Hillary*, 106 F.3d 1170, 1173 (4th Cir. 1997); *cf. Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 194 n.16 (1999) (quoting R. Bork, *The Tempting of America: The Political Seduction of the Law* 169 (1990)) ("Judges and lawyers live on the slippery slope of analogies; they are not

supposed to ski it to the bottom."). The court follows that bedrock principle here and will overrule this objection.

Iovino's last objection related to agency power fares no better. In a statement of supplemental authority, she provides a brief description of three recent Supreme Court decisions dealing with federal agencies to argue they foreclose applying the State Department's *Touhy* regulations to her deposition requests. (*See* Suppl. Authority at 1–2 (citing *Ohio v. Env't Prot. Agency*, 144 S. Ct. 2040 (2024); *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024)).) But none of those decisions even tangentially deal with *Touhy* or whistleblower laws, so they are of little relevance to the discrete issues currently before this court. Accordingly, to the extent Iovino's statement of supplemental authority was an objection, it does not show Judge Hoppe's decision was contrary to law and will be overruled.

Overall, each of Iovino's four arguments about agency power and control of discovery are misguided and appear rooted, at least partially, in a belief that State Department actors will nefariously restrict evidence in this case so that she cannot adequately litigate her claim. Iovino, of course, is entitled to her own views, no matter how far-fetched, but the court finds no factual support for that subversive speculation and will overrule her objections.

### ii.  Distinguishing *Menocal*

Iovino next objects to the protective order because, according to her, Judge Hoppe gave "short shrift" to a Colorado district court case on which she relied, *Menocal*, 2017 WL 4334000, and did not apply that opinion's "sound logic." (*See* Pl.'s Objs. at 10–13.) Judge Hoppe correctly pointed out—as Iovino concedes—that *Menocal* is not binding on this court,

and he found the decision unpersuasive. (Mem. Op. & Order, May 23, 2024, at 10, 12.) Iovino takes issue with Judge Hoppe's lack of a detailed explanation for why he found the opinion unpersuasive, but she does not explain how his finding is contrary to law. The court is also not aware of a single case that has relied on *Menocal* to support sidestepping a federal agency's *Touhy* regulations.[5] Simply because Judge Hoppe has a different view than Iovino of an outlier opinion that is not binding on this court does not mean his decision is contrary to law. *See Stone*, 356 F. Supp. 3d at 511. Iovino's objection based on *Menocal* will be overruled.

### iii. Law of the Case

Finally, Iovino objects to the protective order because she contends that Judge Hoppe misapplied the law of the case doctrine. The court will overrule this objection as well.

"Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. U.S., LLC*, 469 F. Supp. 3d 505, 524 (E.D. Va. 2020) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)). This prudential doctrine "advances the interests of efficiency and judicial economy" by "bar[ring] a party from resurrecting issues that were previously decided or decided by necessary implication." *Chase v. Dep't of Pub. Safety & Corr. Servs.*, No. CV ELH-18-2182, 2020 WL 1914811, at *11 (D. Md. Apr. 20, 2020) (cleaned up).

---

[5] The court notes that multiple other non-binding decisions run contrary to *Menocal* and enforced an agency's *Touhy* regulations when a party sought information from a contractor, or similar third-party, who fell under the regulations' definition of employee. *See Liptak v. Ramsey Cnty.*, No. CV 16-225, 2016 WL 5662082, at *12 (D. Minn. Aug. 24, 2016); *Hoffman v. BLR Grp. of Am., Inc.*, No. CIV. 08-005, 2009 WL 367755, at *2 (S.D. Ill. Feb. 12, 2009); *Mickendrow v. Watner*, No. CV 20-007 (JMV), 2021 WL 2821176, at *4–5 (D.N.J. July 7, 2021); *Texas v. Lueck*, No. 416-cv-00130, 2016 WL 11774021, at *5 (E.D. Tex. Apr. 15, 2016).

Iovino contends that Judge Hoppe was incorrect in applying the law of the case doctrine here because the court's previous *Touhy* decision only explicitly ruled on Iovino's *document* requests, while the current matter deals with her *deposition* requests. That argument reads the First *Touhy* Order much too narrowly and ignores that her document requests were the only issue before the court at that time.

The court previously decided that the State Department's *Touhy* regulations apply to Iovino's discovery requests related to official information, including testimony sought from agency employees. (*See* First *Touhy* Order at 2, 2 n.3.) In addition to that prior decision aligning with well-settled law on *Touhy* regulations, *see supra* § III.A.1, the law of the case doctrine counsels in favor of following the decision here to avoid relitigating a decided issue and further delaying justice for the litigants by perpetuating this already drawn-out case. *See Mar-Bow Value Partners, LLC*, 469 F. Supp. 3d at 524–25. Iovino's objection to the contrary will be overruled.

In sum, none of Iovino's objections show that Judge Hoppe's decision was contrary to law, so the court will overrule each and affirm the protective order.

## B.  Show Cause

Federal Rule of Civil Procedure 11(c) allows district courts to sanction parties that make court filings for an improper purpose or with frivolous arguments, as well as for other reasons. This, of course, includes when attorneys act in bad faith and engage in deliberate misconduct in an attempt to deceive the court. *Parker v. N.C. Agr. Fin. Auth.*, 341 B.R. 547, 554 (E.D. Va. 2006), *aff'd sub nom. Iles v. N.C. Agr. Fin. Auth.*, 249 F. App'x 304 (4th Cir. 2007). And it includes when attorneys do not take the "necessary care in their preparation" of court filings because such filings are an abuse of the judicial system, "burdening courts and individuals alike with

needless expense and delay." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990). Indeed, a key purpose of Rule 11 is to incentivize attorneys "to stop, think[,] and investigate more carefully before serving and filing papers." *Id.* (cleaned up). If counsel relies on artificial intelligence or other technology to draft a filing, the attorney is still responsible for ensuring the filing is accurate and does not contain fabricated caselaw or quotations. *See, e.g.*, *Mescall v. Renaissance at Antiquity*, No. 3:23-cv-00332, 2023 WL 7490841, at *1 n.1 (W.D.N.C. Nov. 13, 2023) (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)).

Here, Iovino's brief objecting to Judge Hoppe's ruling cites multiple cases and quotations that the court, and MSA, could not find when independently reviewing Iovino's sources. Specifically, Iovino cites the following two cases that do not appear to exist: *United Therapeutics Corp. v. Watson Labs, Inc.*, No. 3:17-cv-00081, 2017 WL 2483620, at *1 (E.D. Va. June 7, 2017), and *United States v. Mosby*, 2021 WL 2827893, at *4 (D. Md. July 7, 2021). (*See* Pl.'s Objs. at 6, 19–20.) She also cites a Supreme Court opinion and Fourth Circuit opinion that exist, but attributes quotations to those decisions that do not appear in them. (*See id.* at 17 (representing that *Graves v. Lioi*, 930 F.3d 307 (4th Cir. 2019), includes the phrase "decided by necessary implication"), 19 (representing that *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020), includes the phrase "make a mockery of the law").) And she indicates that *Menocal*, a decision she puts great weight on in her objections, is a reported opinion at 113 F. Supp. 3d 1125, even though the reporter reference denotes a much earlier decision in the same litigation that had nothing to do with *Touhy* regulations. (*See* Pl.'s Objs. at 3, 11–13.)

MSA flagged each of these discrepancies in its opposition brief and posited that they were the result of "ChatGPT run amok." (Def.'s Opp'n Br. at 2, 5 n.1, 11, 13.) Even though

Iovino provided the court supplemental authority to support her objections after MSA raised this issue, she puzzlingly has not replied to explain where her seemingly manufactured citations and quotations came from and who is primarily to blame for this gross error. This silence is deafening.

Accordingly, to uphold the integrity of these proceedings and understand where the purportedly false references originated, the court will order Iovino's counsel to show cause why they should not be sanctioned and/or referred to their respective state bars for professional misconduct.

## C. Procedure Moving Forward

This matter is almost three years old, and the parties and court have expended significant resources litigating discovery fights that are disproportionate to the claims at issue.[6] *See* Fed. R. Civ. P. 26(b)(1) (stating that discovery must be "proportional to the needs of the case"). It is time to move forward. Both parties have an interest in resolving this matter and, apart from potentially counsel, it is not in anyone's best interest to continue battling over legal theories and hypotheticals that are not determinative of the parties' discrete claims. Accordingly, the court will order the parties to complete discovery by the end of this year, file any dispositive motions by the end of January 2025, and contact the Clerk to reschedule the case for trial in mid-2025.

The court expects MSA and the State Department to abide by their representations that they will expeditiously process Iovino's discovery requests and will not unduly restrict her

---

[6] As a reminder, Iovino sets forth a single claim against MSA. (*See* Am. Compl. ¶¶ 170–77.) And MSA asserts one counterclaim against Iovino. (*See* Counterclaim ¶¶ 34–49.)

access to deposing relevant individuals. It also expects that the parties confer in good faith, at length if necessary, to settle any future discovery disagreements. To ensure that discovery continues to progress, the court will direct the parties and the State Department to file concise reports on the status of Iovino's *Touhy* requests and any other open discovery items.

## IV.   CONCLUSION

For the foregoing reasons, the court will deny Iovino's objections to Judge Hoppe's decision and affirm the entry of the protective order. The court will further order Iovino's attorneys to show cause as to why they should not be sanctioned and reset the discovery and dispositive-motion deadlines to move this litigation along.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 24th day of July, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE