## UNITED STATES DISTRICT COURT WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

|  |  |
|---|---|
| **KAREN IOVINO,** | |
| Plaintiff, | |
| **v.** | CASE NO. 5:21-cv-00064 |
| **MICHAEL STAPLETON ASSOCIATES, LTD. d.b.a. MSA SECURITY, INC.** | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM SUPPORTING MOTION TO STAY PROCEEDINGS PENDING COLLATERAL ORDER APPEAL TO THE FOURTH CIRCUIT

I.    BACKGROUND ................................................................................................................ 3

II.   LEGAL STANDARD......................................................................................................... 4

III.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS ................................................ 4

   A.    Appealability Under the Collateral Order Doctrine ............................................. 4

      1.    Conclusive Determination of a Disputed Question ........................................ 4

      2.    Resolving an Important Issue Completely Separate from the Merits ............................ 5

      3.    Effectively Unreviewable on Appeal from a Final Judgment ....................... 6

   B.    Success on the Merits......................................................................................... 8

      1.    Section 4712 Protects Whistleblowers' Right to Litigate Free from Agency Interference and Chilling of Witnesses.................................................................................. 9

      2.    As a Private Party, MSA Cannot Invoke DoS's Touhy Regulations ........................... 12

      3.    Applying Touhy to Discovery Propounded on MSA Would Raise Serious Separation of Powers Concerns .......................................................................................... 14

IV.   IRREPARABLE INJURY TO PLAINTIFF ABSENT A STAY ........................................ 15

V.    NO SUBSTANTIAL INJURY TO MSA OR DOS............................................................ 17

VI.   ISSUANCE OF A STAY MEETS THE PUBLIC INTEREST............................................ 18

VII. PLAINTIFF SHOULD NOT BE PUT TO A HOBSON'S CHOICE OF WAIVING OR
MOOTING HER *TOUHY* CHALLENGES ................................................................................ 19

VIII. CONCLUSION .......................................................................................................................... 20

Plaintiff, Karen Iovino, through her undersigned counsel, files this Memorandum Supporting Motion to Stay Proceedings Pending Decision on Appeal to the Fourth Circuit ("Motion").

## I. BACKGROUND

Plaintiff filed a Notice of Appeal on July 30, 2024 (ECF No. 179) and an amended Notice of Appeal on August 2, 2024 (ECF No. 180), appealing (1) Judge Cullen's July 24, 2024 Order and Opinion (ECF Nos. 177-178) affirming and overruling Plaintiff's Rule 72(a) Objection to Magistrate Judge Hoppe's Order; and (2) the May 23, 2024 Order (ECF No. 172) by Magistrate Judge Hoppe granting Defendant's Motion for Protective Order and ordering that Plaintiff must follow the United States Department of State's ("DoS") *Touhy* regulations in order to obtain deposition testimony from Defendant's employees and representatives in accordance with Fed. R. Civ. P. 30(a) and 30(b)(6) in this private whistleblower action. Plaintiff requests that this Court stay the current proceedings, except those related to paragraph 2 of Judge Cullen's July 24, 2024 Order (ECF No. 178), pursuant to Fed. R. App. Proc. 8(a)(1)(A) and Fed. R. Civ. P. 62, until the U.S. Court of Appeals for the Fourth Circuit has ruled on Plaintiff's interlocutory appeal of these rulings.[1]

---

[1] No reply was filed by Iovino to MSA's Rule 72 response supporting the Magistrate's issuance of the protective order. That is because no local rule of the Western District of Virginia authorizes a party filing an objection under Rule 72 to file a reply to the adverse party's response to that objection. LR 11(c)(1) applies only to motions practice. The uniform understanding of district courts in the Fourth Circuit is that Rule 72 allows exactly one statement of positions from each side. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 2018 WL 6795832, at *1, 2018 U.S. Dist. LEXIS 222951, at *15 (E.D. Va. Nov. 9, 2018) (reply not warranted by Federal Rule of Civil Procedure 72(b)(2), the court's Referral Order, or the Local Civil Rules); *Carrier-Tal v. McHugh*, 2016 WL 9185306, 2016 U.S. Dist. LEXIS 194489, at *2 n.1 (E.D. Va. Feb. 3, 2016) ("a reply is not provided for in Rule 72(a) or the accompanying advisory notes"); *Krings v. AvL Techs.*, 2022 WL 821428, 2022 U.S. Dist. LEXIS 47907, at *2 n.1 (W.D.N.C. Mar. 17, 2022) ("Replies in support of objections are not contemplated by the Federal Rules of Civil Procedure.

## II.   LEGAL STANDARD

"In considering a motion to stay pending appeal, the court must evaluate the following factors: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, 2024 WL 3236410, at \*2 (W.D. Va. June 28, 2024) (citations omitted).

## III.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

### A.   <u>Appealability Under the Collateral Order Doctrine</u>

The Supreme Court has long recognized that certain collateral orders may be immediately appealed, even though they do not terminate the litigation. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949).  To qualify for immediate appeal under the collateral order doctrine, an order must [1] conclusively determine a disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment. *Under Seal v. Under Seal*, 326 F.3d 479, 483 (4th Cir. 2003) (*citing Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995), *citing Cohen*). The court's orders ruling that Plaintiff must comply with DoS's *Touhy* regulations to obtain deposition testimony from Defendant's employees and representatives fit all three requirements.

#### 1.   *Conclusive Determination of a Disputed Question*

The first requirement of the *Cohen* doctrine is met because the court's order and opinion affirming the magistrate's ruling conclusively determines the disputed question of whether

---

<u>See</u> Fed. R. Civ. P. 72(b)(2) (allowing for the filing of objections and responses to a magistrate judge's recommendation).").

DoS's *Touhy* regulations apply to depositions of MSA employees in this whistleblower retaliation action. The court's ruling on this issue is not tentative, informal, or subject to revision. Rather, these orders definitively hold that Dr. Iovino must comply with DoS's *Touhy* regulations before deposing MSA's employees. This conclusive determination aligns with the Supreme Court's guidance in *Johnson v. Jones*, where the Court noted that "[t]he requirement that the district court's order 'conclusively determine' the question means that appellate review is likely needed to avoid th[e] harm," that would be caused by a failure to review the decision immediately. 515 U.S. 304, 311, 115 S. Ct. 2151, 2155, 132 L. Ed. 2d 238 (1995). Here, the district court's order finally determines Dr. Iovino's right to conduct discovery without the burden of complying with the *Touhy* regulations—a right that is separate from her underlying whistleblower retaliation claim, which will be irrevocably harmed if the magistrate judge and district court's decisions are not immediately reviewed and reversed.

Moreover, the order leaves no room for the court to reconsider or modify its decision. Unlike a typical discovery order that might be revisited as the case progresses, the court's ruling on the applicability of *Touhy* regulations sets a fixed framework for all future discovery in this case. This finality further underscores the conclusive nature of the determination, satisfying the first prong of the *Cohen* test.

### 2. *Resolving an Important Issue Completely Separate from the Merits*

The second requirement of the *Cohen* doctrine is also met because the district court's order resolves an important issue that is completely separate from the merits of Dr. Iovino's whistleblower retaliation claim under 41 U.S.C. § 4712. The Supreme Court has explained that an order is separate from the merits if it "resolve[s] an issue completely separate from the merits of the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988). The orders at issue here do precisely that. The question of whether DoS can use its *Touhy* regulations to restrict discovery

from a private contractor in a suit between private parties is a purely collateral issue. It does not

overlap with the underlying merits of Dr. Iovino's claim that MSA terminated her contract in

retaliation for her protected disclosures. The court can resolve the *Touhy* issue without delving

into the facts surrounding Dr. Iovino's whistleblowing activities or MSA's reasons for

terminating her contract.

Furthermore, the order presents a significant and unsettled question of law concerning the

scope of a federal agency's authority under the Housekeeping Statute, 5 U.S.C. § 301, to

promulgate regulations that effectively assert control over discovery in private litigation. The

importance of this issue extends beyond the confines of this case, potentially affecting numerous

other whistleblower actions and private lawsuits involving government contractors. The

Supreme Court and Fourth Circuit have also recognized that an order may be immediately

appealable if it involves a "serious and unsettled" question of law. *See Under Seal*, 326 F.3d at

481; *McDonald v. Smith*, 472 U.S. 479, 482 n.3 (1985). The question of how far *Touhy*

regulations can reach in restricting discovery from private parties certainly qualifies as a serious

and unsettled issue, further underscoring the importance of immediate appellate review.

### 3.  *Effectively Unreviewable on Appeal from a Final Judgment*

The third and perhaps most crucial requirement of the *Cohen* doctrine is satisfied because

these orders will be effectively unreviewable on appeal from a final judgment. This prong of the

test focuses on whether the right at stake will be irretrievably lost absent an immediate appeal.

*See Mohawk Industries*, 558 U.S. at 107 ("the decisive consideration is whether delaying review

until the entry of final judgment 'would imperil a substantial public interest' or 'some particular

value of a high order.'" (citations omitted)). Requiring Dr. Iovino to comply with DoS's *Touhy*

regulations imposes a substantial burden on her ability to gather the evidence necessary to prove

her whistleblower retaliation claim. If MSA succeeds in using the *Touhy* regulations to limit the
scope of testimony and documents available to Dr. Iovino, she may be unable to establish the
elements of her claim, leading to an adverse judgment. In such a scenario, a post-judgment
appeal would be too late to remedy the harm caused by the improper application of the *Touhy*
regulations.

This situation is analogous to that in *Mitchell v. Forsyth*, where the Supreme Court held
that an order denying qualified immunity to an Attorney General was immediately appealable
because the asserted right to avoid the burdens of litigation would be "effectively lost if a case is
erroneously permitted to go to trial," 472 U.S. 511, 526-27 (1985). The Court in *Mitchell* "spoke
of the threatened disruption of governmental functions, and fear of inhibiting able people from
exercising discretion in public service." *See Will v. Hallock*, 546 U.S. 345, 352 (2006). Similarly,
Dr. Iovino's right to conduct unfettered discovery in support of her whistleblower claim would
be effectively lost if she is forced to comply with the *Touhy* regulations in order to obtain
deposition testimony from Defendant's employees and representatives. The magistrate judge and
district court's rulings inhibit Dr. Iovino from exercising her full rights under the law to protect
Americans from government fraud and abuse and create a significant risk that future
whistleblowers may be prevented from exercising their rights.

Moreover, the district court's order implicates important public interests in government
transparency and whistleblower protection that warrant immediate appellate review. If allowed
to stand, the order would effectively allow federal agencies to insulate their contractors from
meaningful discovery in whistleblower retaliation cases, undermining the robust safeguards
Congress intended to provide for employees who come forward to disclose waste, fraud, and
abuse in government contracting. As the Fourth Circuit has noted, the "common thread" in cases

Case 5:21-cv-00064-TTC-CKM    Document 181-1    Filed 08/02/24    Page 8 of 22
Pageid#: 1490

justifying the application of collateral order jurisdiction is "a 'particular value of a high order,' or
a 'substantial public interest.'" *Cobra Nat. Res., LLC v. Fed. Mine Safety & Health Rev.
Comm'n*, 742 F.3d 82, 92 (4th Cir. 2014) (*citing Will*, at 352–53).

      The Supreme Court's decision in *Nixon v. Fitzgerald,* involving presidential immunity, is
instructive on this point. There, the Court recognized collateral order jurisdiction because the
issue involved "compelling public ends" that were "rooted in the constitutional tradition of the
separation of powers." 457 U.S. 731, 753, 758, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). The
orders at issue here similarly raise an issue of compelling public interest that is rooted in the
constitutional tradition of the separation of powers, further justifying immediate appeal.

**B.  <u>Success on the Merits</u>**

      Plaintiff is likely to succeed on the merits because the magistrate judge and district court
erred in holding that she must comply with DoS's *Touhy* regulations before deposing
representatives of the Defendant, MSA Security, in this private whistleblower action. The *Touhy*
regulations do not apply in this context for three primary reasons: (1) the plain language and
purpose of the whistleblower protection provisions in 41 U.S.C. § 4712 foreclose imposing such
restrictions on a whistleblower's right to obtain evidence; (2) MSA is a private party to this
litigation, not a federal agency, and is therefore not subject to the *Touhy* regulations; and (3)
allowing a federal agency to control discovery directed at its contractor through the *Touhy*
process would raise serious separation of powers concerns and undermine Congress's intent to
provide robust protection for whistleblowers. The magistrate judge and district court's contrary
rulings misapply the relevant statutes and case law and should be reversed.

### 1.   *Section 4712 Protects Whistleblowers' Right to Litigate Free from Agency Interference and Chilling of Witnesses*

First and foremost, requiring Dr. Iovino to submit *Touhy* requests to DoS before deposing MSA's representatives cannot be squared with the plain language and core purposes of the whistleblower protection provisions Congress enacted in 41 U.S.C. § 4712. Section 4712 establishes a comprehensive scheme to shield contractor and grantee employees from retaliation when they disclose evidence of "gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract." 41 U.S.C. § 4712(a)(1). Importantly, the statute expressly protects disclosures not just to agency officials and inspectors general, but also to "a court or grand jury." *Id.* § 4712(a)(2). This deliberately broad language shows that Congress intended to safeguard whistleblowers' right to report wrongdoing directly to federal courts, free from agency interference.

Indeed, the statute's multi-tiered enforcement mechanism underscores Congress's intent to provide an unimpeded judicial remedy if the normal agency process fails to protect the whistleblower. The statute instructs a whistleblower to submit a retaliation complaint to the agency's inspector general, who must investigate and make recommendations to the agency head. *Id.* § 4712(b), (c). But crucially, it also empowers the whistleblower to bring "a de novo action at law or equity" in federal court if the agency denies relief or fails to issue a decision within 210 days. *Id.* § 4712(c)(2). This failsafe mechanism ensures that a whistleblower has a direct path to an independent judicial forum if the agency process proves futile.

Allowing agencies to control the evidence available in these de novo proceedings through the *Touhy* process would frustrate this vital statutory purpose.[2] It would enable an agency to impede whistleblowers from proving their claims, thereby defeating Congress's aim to provide a meaningful judicial check against agency intransigence or foot-dragging. *See* H.R. Rep. 117-334, at 7-11. The House report accompanying the most recent amendments to Section 4712 explains that Congress expressly established new protections for whistleblowers to combat issues that otherwise deter potential whistleblowers from exposing the kind of gross mismanagement and abuse of authority alleged in Dr. Iovino's complaint, including "several procedural improvements to ensure that whistleblowers have rights to effective process and equitable relief." *See id.* at 10-11.  The report explicitly states that the provision authorizing whistleblowers to bring a de novo action in law or equity is designed to "empower an employee to file an action directly with the appropriate United States district court… [to] provide a new avenue of relief for employees whose claims have been stymied." *Id.* at 11. Requiring compliance with agency *Touhy* regulations as a precondition to obtaining relevant deposition testimony from a contractor defendant would create the very obstacles to judicial relief that Section 4712 was designed to eliminate.

Tellingly, DoS's *Touhy* regulations do not even purport to apply to litigation between private parties. The regulations are focused on discovery propounded on the government itself,

---

[2] The Supreme Court's *Touhy* authorization was articulated in the context of a settled system of reasonable and limited agency control of its own employees and an agency's respect for the judicial discovery process. DoS, whether a party or a non-party, is obligated to honor the intent of that discovery litigation system. *See United Therapeutics Corp. v. Watson Lab'ys, Inc.*, 200 F. Supp.3d 272, 280 (D. Mass. 2016) (*citing Graham v. John Deere Co.*, 383 U.S. 1, 9 (1966) (Rule 26 broad discovery not to be applied to impose discovery obligations that would have the effect of "chilling" rights contrary to Congressional intent in patent context). Iovino has argued that DoS's claim to control the civil discovery system will obviously have a chilling effect on whistleblowers in Section 4712 cases.

not demands directed to private entities. While the definition of "employee" includes contractors, 22 C.F.R. § 172.1(b), that expansive scope simply ensures that the regulations reach the maximum range of current and former agency personnel. It does not suggest that the regulations extend to all activities of private companies doing business with the government as contractors or grantees.[3]

Basic principles of administrative law reinforce the narrow scope of the *Touhy* regulations. It is blackletter law that an agency may not by regulation exceed the authority granted to it by Congress. *See, e.g., FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000). An agency's authority to protect and control disclosure of its information extends only to demands made on the agency itself or those acting as the functional equivalent of agency employees. It does not encompass the right to control discovery directed at a private company, even one that contracts with the agency.

For all these reasons, Section 4712's robust whistleblower protections foreclose subjecting depositions of a private contractor to the strictures and delays of the *Touhy* process. The district court's contrary interpretation misreads the statute and the limited scope of DoS's regulatory authority.

---

[3] Construing the 5 U.S.C. § 301 language that an agency "may prescribe regulations for… the conduct of its employees" as authorizing that agency to control depositions through its contractor corporation under FRCP 30 in a Section 4712 whistleblower action defies the canon that "tells courts to avoid construing a statute in a way that would lead to absurd consequences." *Bostock v. Clayton Cty.*, 590 U.S. 644, 789 n.4 (2020). Allowing such abrogation of statutes protecting civil and speech rights defies "the elemental need for order without which the guarantees of civil rights to others would be a mockery," *AFGE v. Office of Special Counsel,* 1 F.4th 180, 185 (4th Cir. 2021) (*quoting United Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 95 (1947)); and "would be absurd, not least because it would make a mockery of the techniques of statutory interpretation which have heretofore been used by the courts." *Ex parte Collett,* 337 U.S. 55, 67, 69 S. Ct. 944, 951 (1949). Courts should avoid "subordinating substance to form and mak[ing] a mockery of the law." *Utnage v. Dep't of the Army*, 119 Fed.Appx. 269, 272 (Fed. Cir. 2004).

**2.**   ___As a Private Party, MSA Cannot Invoke DoS's Touhy Regulations___

It is undisputed that Defendant MSA Security is a private party to this litigation. As such, it cannot avoid its discovery obligations as a defendant by invoking DoS's *Touhy* regulations. Those regulations govern only discovery sought from agencies themselves, or those acting as the functional equivalent of agency employees, through a Rule 45 subpoena or other third-party discovery request. *See, e.g., Upsher-Smith Lab'ys, Inc. v. Fifth Third Bank*, No. 16-CV-556 (JRT/HB), 2017 WL 7369881, at *5 (D. Minn. Oct. 18, 2017) ("*Touhy* regulations, enable federal agencies to restrict the types of information that its employees may produce in response to a Rule 45 subpoena… [and] do not supersede the Federal Rules of Civil Procedure...")

A growing body of case law recognizes this crucial distinction between discovery propounded on federal agencies and that served on private litigants. In *Menocal v. GEO Group, Inc.*, 2017 WL 4334000 (D. Colo. June 6, 2017), for instance, the court rejected a private contractor's effort to resist the plaintiffs' discovery requests by invoking its federal agency partner's *Touhy* regulations. The court found Plaintiffs' "unquestionably correct" that "as a party to the litigation, [Defendant] was beyond the reach of the *Touhy* regulations and cannot rely on them to circumvent its discovery obligations." *Id.* at *2-3. "The conspicuous and sensible purpose of the *Touhy* regulations is to protect an agency of government from unrestricted disclosure of official documents when that agency or its 'employees' are not parties to the litigation. The purpose is not to create obstacles or shields from the normal rules of discovery when that agency or its 'employees' are parties. In the latter case, the law requires them to be treated equally without special and predictably stilted advantage." *Id.* at *3.

Likewise, in *In re Hitchcock*, No. AP 22-4021, 2023 WL 6150320, at *2 (Bankr. D. Neb. Sept. 20, 2023) dealing with the, "narrow issue… [of] how to harmonize a federal agency's *Touhy* regulations with the Federal Rules of Civil Procedure where documents are sought from

an opposing litigant and not subpoenaed or requested from the federal agency," the court

surveyed a broad split of authority, mostly involving subpoenas served directly on a federal

agency, and concluded that the underlying foundation for *Touhy* regulations is not implicated

when a plaintiff seeks to compel a private, opposing litigant to act, rather than the government.

*Id.* at *2-3.

The *Hitchcock* and *Menocal* courts highlight the perverse implications of applying *Touhy*

to government contractors when they are sued in their private capacities. Under that approach,

nearly any government contractor could shield itself from civil discovery, simply because it

possesses information that originated from its federal agency partner and may be of interest to

litigants in other cases. Every agency's *Touhy* regulations would become both a sword and a

shield, deterring lawsuits against entities that do business with the government, while also

thwarting effective judicial review in cases that do get filed.

Such a regime would render whistleblower suits like Dr. Iovino's a virtual nullity. If

entities like MSA could avoid their discovery duties simply because they hold information

relating to their federal contracts, whistleblowers would face often insurmountable hurdles in

proving contractor malfeasance. Likewise, agencies accused of complicity in that wrongdoing

would have every incentive to slow-walk or stonewall *Touhy* compliance in order to shield their

private sector partners. That result would turn congressionally enacted whistleblower protections

on their head.

In short, *Touhy* provides no haven for private defendants to resist discovery of relevant,

non-privileged information in their possession. MSA's mere status as a DoS contractor does not

entitle it to avoid the normal duties of a party litigant. The district court's erroneous extension of *Touhy* to this context warrants reversal.[4]

### 3. Applying Touhy to Discovery Propounded on MSA Would Raise Serious Separation of Powers Concerns

Finally, interpreting DoS's *Touhy* regulations to govern discovery propounded on its contractor would raise grave constitutional concerns. It is axiomatic that the judiciary has exclusive authority to control access to evidence and manage discovery in cases before federal courts. *See, e.g., United States v. Reynolds*, 345 U.S. 1, 9-10 (1953) ("Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."). A rule that allows an agency to decide what evidence a court may consider in a suit between private parties would mark an unprecedented and dangerous abandonment of that essential duty.

---

[4] Nor should the law of the case argument impact the merits assessment. The Magistrate stated that "Judge Cullen's ruling necessarily implies that Iovino's requests for MSA's Rule 30(b)(6) testimony relating to or derived from these same documents are subject to the same regulations," quoting Judge Cullen in *Epperson v. Smith*, 2022 WL 2287416, at *4 (W.D. Va. June 24, 2022) for the rule that the law of the case "applies both to questions actually decided as well as to those decided by necessary implication." (ECF No. 172 at p. 8). The Magistrate further concluded that Judge Cullen "indicated that the State Department's Touhy regulations apply whenever the agency must decide 'whether an employee called upon to testify or to produce evidence in litigation [will be] permitted to disclose the requested information.'" *Id.*

Iovino disputes that the "law of the case" doctrine regarding *document production* under *Touhy* can have any application to DoS *control of depositions*. "The law of the case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," *Ogunsula v. Md. State Police*, No. CV ELH-20-2568, 2022 WL 3290713, at *12, 2022 U.S. Dist. LEXIS 144409, at *28 (D. Md. Aug. 11, 2022) (internal quotation marks and citations omitted), and applies to "questions actually decided as well as to those decided by necessary implication, [but] it does not reach questions which might have been decided but were not." *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008). Here, no *Touhy* application has been "decided by necessary implication." Any claim that the law of the case doctrine applies in any manner to Iovino would be "clearly erroneous and would work manifest injustice." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (*quoting United States v. Aramony*, 166 F.3d 655, 661 (4th Cir.1999)).

The Supreme Court has long emphasized that the power to control discovery in judicial proceedings belongs to the courts alone. In *Touhy* itself, the Court "f[ou]nd it unnecessary, … to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession." *Touhy*, 340 U.S. at 467. Rather, the case simply upheld the agency's authority to promulgate internal regulations governing how its employees respond to such subpoenas. *Id.* at 468.

These precedents underscore that an agency cannot arrogate to itself unreviewable authority to control the evidence in private litigation. Especially in the whistleblower context, such a regime cannot be reconciled with the judiciary's essential role as a check on arbitrary agency action and a bulwark against government abuse. When a whistleblower alleges serious misconduct that the agency itself is accused of ignoring or enabling, the court's authority to compel discovery from the alleged wrongdoers is crucial to fulfilling its constitutional function. Deferring to the agency's unilateral decisions about what evidence the whistleblower may obtain would make a mockery of that solemn duty.

In sum, interpreting the *Touhy* regulations to govern discovery directed at a private defendant in a whistleblower suit would raise substantial separation of powers concerns. It would mark an unprecedented and dangerous abandonment of the judiciary's critical role in ensuring executive accountability through fair and impartial adjudication.

## IV. IRREPARABLE INJURY TO PLAINTIFF ABSENT A STAY

Allowing discovery to proceed while this important issue is appealed to the Fourth Circuit would impose irreparable harm on Dr. Iovino and frustrate her right to appellate review. Most critically, if the Fourth Circuit ultimately agrees that DoS's *Touhy* regulations are inapplicable, any discovery taken in reliance on those regulations in the interim will have been improperly restricted and subject to possible manipulation by the agency. There will be no way

to un-ring that bell or cure the prejudice of having to litigate the case under the wrong evidentiary rules.

Conducting depositions of MSA's representatives under the *Touhy* framework will irremediably skew the factual record and the parties' strategic calculus. MSA's witnesses will tailor their testimony to match the cherry-picked evidence DoS chooses to clear for release. And both sides will make tactical decisions based on an incomplete evidentiary mosaic. Even if Dr. Iovino ultimately prevails on appeal, she will have no way to recapture the more fulsome discovery she was wrongly denied.

Crucially, this harm will occur regardless of the outcome of the litigation. Even if Dr. Iovino somehow manages to prevail under the constrained *Touhy* procedures, she will have been forced to bear the substantial costs and burdens of proving her claim while wearing an evidentiary blindfold. No subsequent appellate remedy can undo that injury or restore the level playing field that Congress mandated when it authorized whistleblowers to litigate their claims unencumbered by agency interference. The bell cannot be unrung.

Courts also find irreparable harm where an issue will effectively become moot absent a stay. *See, e.g., John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989). Here, if Dr. Iovino prevails on the merits without a stay, the *Touhy* issue will be rendered academic. She will have already obtained the discovery she seeks, albeit under protest and subject to the agency's improper control. Conversely, if she loses on the merits, the prejudicial impact of the discovery rulings will be baked into the final judgment, likely without any separate right of appeal. Either way, the *Touhy* issue will evade meaningful appellate review.

The district court's suggestion that Dr. Iovino can simply challenge DoS's specific *Touhy* determinations after the fact provides cold comfort. Piece-meal objections to particular discovery

rulings cannot substitute for the threshold right to obtain evidence without interference from the agency alleged to have enabled the defendant's misconduct. And the harm Dr. Iovino seeks to avoid extends beyond any single evidentiary ruling. It is the cumulative distortion of having to prove her claim under the wrong framework. Only an immediate appeal can secure the full scope of her statutory rights.

In sum, being forced to litigate this important whistleblower case under the wrong discovery rules would work a serious and irreparable injury. A stay is essential to preserve Dr. Iovino's right to appellate review and the integrity of the truth-seeking process Congress prescribed.

## V.  NO SUBSTANTIAL INJURY TO MSA OR DOS

In contrast, the defendants will suffer no meaningful prejudice from a short stay pending appeal. This case is still at an early stage, and the remaining discovery can readily be completed if Dr. Iovino does not prevail in the Fourth Circuit. The marginal delay from a stay will not hinder the defendants' ability to prepare their case or put on probative evidence.

DoS also has no cognizable interest in the stay. The agency is not a party to this litigation. Its sole interest lies in preserving its asserted authority to limit discovery under the *Touhy* regulations. Far from harming that interest, a stay will conserve the agency's time and resources while ensuring that any *Touhy* process ultimately implemented rests on solid legal footing. And if Dr. Iovino prevails on appeal, the agency will be spared the burden of conducting a legally erroneous review.

Granting a stay, therefore, will protect Dr. Iovino from irreparable harm while imposing no substantial injury on the defendants or the agency. That decisive balance amply supports putting the litigation on hold while the *Touhy* issue is resolved.

## VI.  ISSUANCE OF A STAY MEETS THE PUBLIC INTEREST

Finally, the public interest strongly favors a stay. There is an overwhelming public interest in ensuring that whistleblower suits like this one proceed under the evidentiary framework Congress prescribed. That framework reflects a careful legislative judgment about how best to identify and remedy reprisal against those courageous individuals who come forward to report abuse, mismanagement, and illegality in government programs.

As Congress has recognized, whistleblower protections like Section 4712 serve vital public purposes. Allowing this case to proceed under legally flawed procedures would undermine those weighty public interests. It would send a dangerous signal that agencies can use the *Touhy* process as both a shield and a sword to insulate their private partners from accountability. And it would deter whistleblowers from coming forward by erecting arbitrary barriers to proving their claims.

The public also has a strong interest in avoiding duplicative discovery proceedings. If the Fourth Circuit reverses the district court's erroneous *Touhy* order, any evidence obtained through the improper application of the *Touhy* process may have to be re-procured through ordinary civil discovery. That would impose substantial unnecessary costs on both the court and the parties, undermining the "just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1.

Conversely, there is no public interest in requiring discovery to proceed under the wrong legal standard. To the contrary, the strong public interest in proper resolution of whistleblower claims counsels in favor of ensuring that the governing rules are definitively settled before the evidentiary record is developed. A short stay to resolve that dispositive legal issue will cause no meaningful harm to any public or private interests.

In short, the public interest decisively supports granting a stay pending appeal. Holding this case in abeyance while the Fourth Circuit resolves the pure question of law presented by the

district court's *Touhy* ruling will conserve judicial and party resources, avoid piecemeal or duplicative litigation, and safeguard the integrity of the congressionally mandated framework for adjudicating whistleblower actions. The stay should be granted.

## VII.  PLAINTIFF SHOULD NOT BE PUT TO A HOBSON'S CHOICE OF WAIVING OR MOOTING HER *TOUHY* CHALLENGES

Denial of this motion to stay leaves Plaintiff with a choice between seeking permission from DoS to conduct full and fair depositions, or taking no depositions of Defendant's representatives at all. Such a Hobson's choice is inherently unfair and contrary to American legal values. Regardless of DoS's purported assurances that Plaintiff's deposition requests will be expediently processed, unless the *Touhy* process is purely perfunctory, DoS's demand to submit not just the deponents, but also the subject matter of their testimony, for pre-approval, is a potentially serious infringement of Plaintiff's Rule 30 deposition rights.

In cases where deposition testimony or other documentary evidence has been sought from an agency or agency employee *as a non-party*, through a Rule 45 subpoena, the tension between *Touhy* regulations and the FRCP has created a circuit split surrounding the scope of agency power to refuse valid subpoenas under *Touhy* regulations. *See* Annecca H. Smith & Richard E. Willi III, Longstanding Debate: *Touhy* Regulations vs. the FRCP, Am. Bankr. Inst. J., April 2024, at 34, 35. Central to this split is the applicability of sovereign immunity.

The Second, Fourth, and Eighth Circuits have concluded that a third-party subpoena is a "suit" triggering the federal government's sovereign immunity. *See Aero Tech, Inc. v. Great Am. Ins. Co.*, No. CV 22-476 WJ/GJF, 2023 WL 5002618, at *4 (D.N.M. Aug. 3, 2023) (collecting cases). Accordingly, in those circuits, *Touhy* regulations control and "the proper method for judicial review of the agency's final decision pursuant to its regulations is through the Administrative Procedure Act." *See e.g., COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277

(4th Cir. 1999) (*quoting United States v. Williams*, 170 F.3d 431, 434 (4th Cir.1999)).

Conversely, the Ninth and D.C. Circuits have generally held that sovereign immunity does not

apply to third-party subpoenas and the FRCP holds primacy over *Touhy* regulations. *See, e.g.,*

*Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007); *Exxon Shipping Co. v. U.S. Dep't of Interior*,

34 F.3d 774, 778-80 (9th Cir. 1994).

    In jurisdictions where *third-party subpoenas* have been held to trigger sovereign

immunity, courts review challenges to an agency's refusal to comply with a subpoena under a

highly deferential standard. The Fourth Circuit, for example, has held that the APA waives

sovereign immunity and permits a federal court to order a non-party to comply with a subpoena

only if the government has refused production in an arbitrary, capricious, or otherwise unlawful

manner. *Lamb v. Wallace*, No. 7:16-CV-44-FL, 2018 WL 847242, at *3 (E.D.N.C. Feb. 13,

2018) (*citing COMSAT*, 190 F.3d at 277).

## VIII.   CONCLUSION

    Subjecting Plaintiff to the bureaucracy and deferential standard of trying to appeal a

*Touhy* decision - merely to obtain deposition testimony from past and present employees and

representatives of her former private employer, in a whistleblower action brought pursuant to a

statute that was designed to create meaningful access to judicial review when cases have been

stymied - is entirely at odds with her rights as a private litigant under 41 U.S.C. § 4712 and the

Federal Rules of Civil Procedure. Indisputably, the concerns of sovereign immunity that have

compelled some circuits to give *Touhy* regulations primacy over the FRCP in the context of

third-party subpoenas are completely absent in this case, where Plaintiff here seeks merely to

obtain deposition testimony from a corporate defendant, her former employer. Moreover,

holding such requests subject to agency-approval through *Touhy* regulations will only further

compound and extend the litigation of this case, as Plaintiff will challenge any unlawful or

improper restrictions DoS imposes, first to the magistrate judge, and then to the Article III

district court judge.

Respectfully Submitted,

/s/ Thad M. Guyer

Thad M. Guyer (pro hac vice)
T.M. Guyer and Ayers & Friends, PC
116 Mistletoe Street
Medford, OR 97501
thad@guyerayers.com
(202) 417-3910


GOVERNMENT ACCOUNTABILITY PROJECT
John A. Kolar (DCB No. 953292)
1612 K St., N.W., Suite 808
Washington, DC 20006
Jackk@whistleblower.org


Nate L. Adams III (VSB No. 20707)
11 S. Cameron Street
Winchester, VA 22601
nadams@nadamslaw.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and to:

>Ryan C. Berry (VSB 67956)
>Daniel S. Ward (VSB 45978)
>WARD & BERRY, PLLC
>ryan@wardberry.com
>dan@wardberry.com
>Attorneys for MSA
>
>And
>
>Laura Day Taylor
>Civil Chief/Appellate Chief
>United States Attorney's Office
>Laura.Taylor@usdoj.gov
>
>Krista Consiglio Frith (VSB No. 89088)
>Assistant United States Attorney
>Email: Krista.Frith@usdoj.gov
>
>Attorney for U.S. Department of State (non-party)

/s/ Thad M. Guyer
Thad M. Guyer