UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **KAREN IOVINO,**<br><br>*Plaintiff,*<br><br>v.<br><br>**MICHAEL STAPLETON ASSOCIATES, LTD.**<br>   **d.b.a. MSA SECURITY, INC.,**<br><br>*Defendant.* | CASE NO. 5:21-cv-00064 |

**DECLARATION OF JOHN A. KOLAR IN SUPPORT OF
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

Pursuant to 28 U.S.C. § 1746, I John A. Kolar, declare under the laws of the United States of America under penalty of perjury that the following statements are true and correct.

1. I have engaged in the practice of law for the past approximately 46 years, first as a paralegal (for the initial 3 years) and trial attorney with the United States Department of Justice for approximately 40 years, and then with the Government Accountability Project (GAP), a non-profit law firm specializing in advocacy and legal representation for whistleblowers for the past 6 years. I am a member of the bar of the District of Columbia.

2. Throughout my six years with GAP, I have held the title of Director of Litigation. I oversee GAP's litigation efforts before administrative tribunals such as the Merit Systems Protection Board (MSPB), district courts, courts of appeal, and the U.S. Supreme Court.

1

3. I have not been reprimanded or disciplined, either privately or publicly, by the D.C. Bar for ethical violations at any time since my admission in 1979. Nor have I been sanctioned under Rule 11 of the Federal Rules of Civil Procedure since my admission.

4. Thad Guyer is a contracted attorney who litigates cases for GAP under my general oversight. In the Iovino case, Mr. Guyer is lead counsel for the case, although I entered my appearance. I work very closely with Mr. Guyer on this matter, participate in strategy and drafting meetings, comment on drafts of pleadings and letters, attend oral arguments, etc. Notwithstanding my relatively high level of involvement in the case, I still rely on Mr. Guyer to alert me to important or concerning issues that arise in the litigation. Often, when Defendant MSA files a motion or brief, Mr. Guyer, being lead counsel, will be the first GAP lawyer to read that filing, and will brief me and others in the organization on the Defendant's issues and contentions.

5. The Court's Memorandum Order (ECF No. 177), noted that Plaintiff did not respond to Defendant's pointing out that case citations appeared to be nonexistent. See pp. 4, 13-15. The simple fact is that with the press of work I was handling, I did not read Defendant's filing at that time, and did not see the allegation about so-called fictitious case citations. Had I seen it, I would have insisted that we respond and clarify what happened. Once I saw the Court's Memorandum Order with its "Show Cause" Order, I reacted with alarm and chagrin and quickly held a meeting of GAP lawyers to discuss our the events and outline how we would respond. Mr. Guyer took full responsibility for the situation, and offered to withdraw from the client's

representation. The client expressed continuing, full confidence in Mr. Guyer, as did I.

6. At the same time, I have taken prompt and remedial actions in reviewing the situation with Mr. Guyer, as discussed below. Moreover, GAP has assigned another, mid-level lawyer to do manual cite-checking on this case as a back-up to our review of filings in this case.

7. Although Mr. Guyer is an employee of T.M. Guyer & Friends, PC which is an independent contractor handling cases for some of GAP's clients, I have asked him to voluntarily agree to add additional cite and quality checking methodologies of his choice to all AI generated legal authorities on GAP work, and to submit final drafts for manual citation checking to and sign-off by GAP's designated attorney for that task. Mr. Guyer has agreed to that double-checking regime.

8. For my part, at this time, I do not use Artificial Intelligence (AI) in my own practice of law.

9. Although Mr. Guyer is a contractor and not a staff member and is busy with his own law firm practice, he has provided continuing valuable technical support to GAP staff on law office technology. (1) During the pandemic, he presented participatory staff training on Zoom use for depositions and exhibit handling. (2) He has provided mentoring on using technological tools for managing our eDiscovery. And (3) he has provided input to GAP's internal working group on GPT use and policies. We are benefiting from this Court's show cause order and the events underlying it as a valuable "lessons learned" in moving forward with GPT use, and in considering

3

future budgetary decisions regarding the cost-effectiveness of Lexis and Westlaw AI GPT subscriptions.

The foregoing is true and correct under penalties of perjury of the laws of the United States pursuant to 28 U.S.C. § 1746. Given this 25th day of August, 2024

/s/ John A. Kolar

*John Kolar*