# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | | |
|---|---|---|
| **KAREN IOVINO,** | ) | |
| | ) | |
| **Plaintiff and** | ) | **Case No. 5:21-CV-00064-TTC** |
| **Counterclaim Defendant,** | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF DEFENDANT** |
| | ) | **AND COUNTERCLAIM** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **PLAINTIFF'S MOTION FOR** |
| **d/b/a MSA SECURITY, INC.** | ) | **A PROTECTIVE ORDER** |
| | ) | |
| | ) | |
| **Defendant and** | ) | |
| **Counterclaim Plaintiff** | ) | |

Respectfully submitted,

Date: June 16, 2025

*/s/ Daniel S. Ward*

_____

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton*
*Associates, Ltd., d/b/a MSA Security, Inc.*

**TABLE OF CONTENTS**

I.      INTRODUCTION      .................................................................................................1

II.     BACKGROUND      .................................................................................................2

III.    LEGAL STANDARD..............................................................................................4

IV.     ARGUMENT      .....................................................................................................4

        A.      Plaintiff's Request to Take Fifteen Depositions is Disproportionate to the Claim
            and Alleged Damages in this Case..............................................................6

            1.   The First Factor: The Importance of the Issues at Stake in the Action..............6

            2.   The Second and Sixth Factors: The Amount in Controversy,
               And Whether the Burden or Expense of the Proposed Discovery
               Outweighs Its Likely Benefits ...........................................................8

            3.   The Third Factor: The Parties' Relative Access to Relevant Information.........9

            4.   The Fourth Factor: The Parties' Resources .......................................10

            5.   The Fifth Factor: The Importance of the Discovery in Resolving the Issues ..11

        B.      Certain Proposed Topics Should Be Limited...........................................13

            1.   Plaintiff's Request to Depose MSA, DoS, and DoS OIG About
               A Non-Suited Case is Inappropriate ................................................13

            2.   Plaintiff's Request to Depose MSA, DoS, and DoS OIG About
               An Irrelevant Case is Inappropriate ................................................14

        C.      MSA Will Be Prejudiced Without a Protective Order...........................................15

V.      CONCLUSION      .................................................................................................16

i

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                          <u>**Page**</u>

*Beach v. Costco Wholesale Corp.,*
    No. 5:18-cv-00092, 2019 WL 1495296 (W.D. Va. 2019)............................4, 5, 13, 14, 15

*Bhattacharya v. Murray,*
    No. 3:19-cv-00054, 2022 WL 1510550 (W.D. Va. May 12, 2022)...................................12

*C.K. through P.K. v. McDonald,*
    345 F.R.D. 262, (E.D.N.Y. 2023).....................................................................................5

*Haukaas v. Liberty Mutual Ins. Co.,*
    No. 4:20-CV-04061-KES, 2022 WL 1719412 (D.S.D. May 27, 2022) .............................7

*Iovino v. Michael Stapleton Assocs.,*
    No. 5:21-cv-00064, 2024 WL 2412694 (W.D. Va. May 23, 2024)...................................5

*Kelly v. Boeing,*
    No. 3:18-cv-659-SI, 2019 WL 281294 (D. Or. Jan 22, 2019)............................................5

*Kendrick v. Carter Bank & Trust, Inc.,*
    No. 4:19-cv-00047, 2024 WL 3550112 (W.D. Va. May 19, 2023)...................................5

*Milazzo v. Elite Cont. Grp., Inc.,*
    No. 19-cv-1607 (TSE/TCB), 2020 WL 13499534 (E.D. Va. Aug. 10, 2020)...................14

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978)..........................................................................................................5

*Riddick v. U.S.,*
    No. 2:04-cv-00278, 2005 WL 1667757 (E.D. Va. July 5, 2005).....................................12

*RLI Ins. Co. v. Nexus Servs., Inc.*
    No. 5:18-cv-00066, 2020 WL 2311668 (W.D. Va. May 8, 2020)..................................4, 5

*Rogers v. English,*
    No. 19-3145-JAR-ADM, 2022 WL 2290537 (D. Kan. June 24, 2022) ........................7, 8

*Santa Rosa Dev., LLC v. Santa Rosa Cnty.,*
    No. 322-cv-660-MCR/MJF. 2022 WL 19333304 (N.D. Fla. Oct 31, 2022).....................7

*Temple v. Mary Washington Hosp., Inc.,*
    762 S.E.2d 751 (Va. 2014)..............................................................................................13

*Winchester Homes Inc. v. Osmose Wood Preserving, Inc.,*
    37 F.3d 1053 (4th Cir. 1994) .................................................................................13

## Statutes and Rules

22 C.F.R. § 172.2      .................................................................................................3

22 C.F.R. § 172.8      .................................................................................................3

41 U.S.C. § 4712      ............................................................................................7, 14

Fed. R. Civ. P. 26      .........................................................................................5, 6, 7

Fed. R. Civ. P. 26(b)   .......................................1, 2, 4, 6, 7, 8, 9, 10, 11, 13, 15

Fed. R. Civ. P. 26(c)   .......................................................1, 2, 3, 4, 5, 12, 15

Fed. R. Civ. P. 30(d)   ........................................................................................8

## Other

*Olivia Hynes, Women's History Month: Dr. Karen Iovino,*
GOVERNMENT ACCOUNTABILITY PROJD T (Mar 24, 2025) ...........................................10

iii

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by counsel, respectfully submits this memorandum in support of its Motion for a Protective Order under Federal Rule of Civil Procedure ("FRCP") 26(c).

## I.    INTRODUCTION

On May 21, 2025, Plaintiff and Counterclaim Defendant Karen Iovino ("Plaintiff" or "Iovino") noticed fifteen depositions. The fifteen deposition notices include:

- Three 30(b)(6) notices to MSA, the U.S. Department of State ("DoS"), and DoS's Office of Inspector General ("OIG");

- Eight deposition notices to current and/or former MSA employees; and

- Four deposition notices to current and/or former DoS employees and/or contractors.

While Plaintiff is entitled to issue deposition notices, the discovery sought must be relevant and proportional to the needs of the case. FRCP 26(b)(1). It is not.

First, the deposition notices issued by Plaintiff are disproportionate to the needs and facts of this case for two reasons. The time, effort, and expense it will take to defend fifteen depositions is disproportionate to the one claim Plaintiff alleges and the damages she believes she is entitled to. In fact, the damages Plaintiff alleges in her Amended Complaint have been mitigated – both she and her expert admit that Plaintiff has made more money since she departed MSA. Faced with this undeniable fact, Plaintiff argues that she needs these fifteen depositions to defend against Defendant's counterclaim. Other than the 30(b)(6) deposition of MSA, the proposed depositions have absolutely no bearing on Defendant's counterclaim.

Second, the 30(b)(6) deposition notices issued by Plaintiff contain topics that are irrelevant to this case and should be limited accordingly.

The fifteen deposition notices issued by Plaintiff subject MSA to undue expense (FRCP 26(c)(1)), are disproportionate to the case (FRCP 26(b)(1)), and are requested for the sole purpose of annoying or embarrassing MSA (FRCP 26(c)(1)). As such, MSA respectfully requests that the Court issue a protective order 1) limiting the number of depositions each party is permitted to take to 4, a number that is proportionate to this matter; and 2) precluding Plaintiff the Parties from seeking testimony regarding a non-suited Virginia state court case in any of the discovery depositions.

## II.    BACKGROUND

On May 15, 2025, the Parties attended a virtual status conference with Judge Cullen. The Parties discussed resetting this case for trial and what outstanding discovery issues remained. Counsel for Plaintiff stated that, while the document exchange portion of discovery is complete, Plaintiff still needed to take numerous depositions. Status Conference Tr. 4:18–24, May 15, 2025. Undersigned counsel voiced MSA's concern with Plaintiff's numerous deposition notices, stating there is a proportionality issue that will likely lead to at least twelve more months of discovery to parse through the *Touhy* issues. *Id.* at 13:12; 14:15–19.

On May 15, 2025, the Court entered an order directing Plaintiff "to serve notices for all depositions subject to *Touhy* regulations on or before May 23, 2025" and to "file a notice with the court stating when the deposition notice was served and on whom." Dkt. 213.

On May 21, 2025, Plaintiff emailed MSA and counsel for the United States (who is not a party to this case but is otherwise involved in the discovery process due to DoS's *Touhy* regulations) fifteen deposition notices. On May 22, 2025, counsel for Plaintiff filed a notice with the Court certifying Plaintiff's compliance with the Court's May 15, 2025 Order. Dkt. 218.

On May 23, 2025, counsel for Plaintiff emailed MSA and counsel for the United States a copy of Plaintiff's *Touhy* request to be filed on the public docket and asked whether MSA or the United States requested anything in the *Touhy* request to be redacted. **Exhibit A** at 3 (06/10/25 Email Thread). That same day, counsel for MSA responded, stating that MSA does not have any redaction requests for the *Touhy* request and noted that the *Touhy* request was improperly addressed to Krista Frith (AUSA for the United States) as opposed to the DoS's executive offices as required by 22 C.F.R. § 172.2(a). *Id.* at 2. AUSA Frith also responded that same day, confirming that the *Touhy* request needed to be sent to DoS's executive offices. *Id.* AUSA Frith also had follow-up questions about the *Touhy* request and asked that Plaintiff provide additional information as outlined in DoS's *Touhy* regulations at 22 C.F.R. § 172.8. AUSA Frith asked Plaintiff to "provide the requested information in the most efficient manner possible consistent with the Department's regulations." *Id.* Counsel for Plaintiff did not respond. Rather, counsel for Plaintiff sent a separate email to AUSA Frith and DoS, attaching a courtesy copy of Plaintiff's *Touhy* request and all fifteen deposition notices that Plaintiff "will be serving" by first-class mail to the DoS's executive offices. **Exhibit B** (05/23/25 Email).

On May 28, 2025, AUSA Frith sent a follow-up email to counsel for Plaintiff requesting answers to her questions listed in her May 23, 2025 email. Counsel for Plaintiff responded on June 10, 2025, but refused to provide any further information until Plaintiff received a response from DoS. Exhibit A at 1.

On June 12, 2025, the Parties (and the USG) has a status conference with Judge Memmer. During that conference, the Court set deadlines for the parties (and the USG) to meet and confer about the outstanding *Touhy* issues and set a briefing schedule for this Motion.

III.    LEGAL STANDARD

If a party is served with unreasonable discovery requests, it can move for the entry of a protective order. FRCP 26(c). Under FRCP 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . prescribing a discovery method other than the one selected by the party seeking discovery . . . [or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FRCP 26(c)(1). "The movant bears the burden of establishing 'good cause' by showing that 'specific prejudice or harm will result if no protective order is granted.'" *Beach v. Costco Wholesale Corp.*, No. 5:18-cv-00092, 2019 WL 1495296, at *2 (W.D. Va. Apr. 4, 2019) (finding good cause to implement a protective order limiting deposition examination).

The party moving for the protective order "bears the burden of establishing 'good cause' by showing that "specific prejudice or harm will result if no protective order is granted." *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2020 WL 2311668, at *2 (W.D. Va. May 8, 2020).

IV.    ARGUMENT

The fifteen deposition notices issued by Plaintiff on May 21, 2025 are (1) disproportionate to the needs of this case; (2) list irrelevant subject matter topics in the 30(b)(6) notices; and (3) will result in substantial unnecessary cost to Defendant.

A party "may obtain discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense ***and proportional to the needs of the case***." FRCP 26(b)(1) (emphasis added). To determine if the requested discovery is "proportional," a court will consider "the

4

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

While a party is entitled to "obtain discovery" under FRCP 26, there are "necessary boundaries" that prevent a party from unreasonably requesting discovery. *Kendrick v. Carter Bank & Trust, Inc.*, No. 4:19-cv-00047, 2023 WL 3550112, at *3 (W.D. Va. May 18, 2023) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (finding good cause to deny a party's request to take an additional four depositions); *RLI Ins. Co.*, 2020 WL 2311668, at *2 (finding good cause to issue a protective order precluding a deposition); *Beach*, 2019 WL 1495296, at *2 (finding good cause to implement a protective order limiting deposition examination); *see also, e.g.*, *C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 267 (E.D.N.Y. 2023) ("The number of depositions, like use of all discovery devices, is of course to be considered through the lens of proportionality."); *Kelly v. Boeing Complany [sic.]*, No. 3:18-cv-659-SI, 2019 WL 281294, at *3–4 (D. Or. Jan. 22, 2019) (granting a motion for protective order when the plaintiff requested "to take the depositions of 14 people identified in Defendant's initial disclosures as 'persons likely to have discoverable information'").

A protective order is one way for trial courts to implement "necessary boundaries." FRCP 26(c); *Kendrick*, 2023 WL 3550112, at *3. In doing so, "[t]rial courts have 'broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Iovino v. Michael Stapleton Assocs.*, No. 5:21-cv-00064, 2024 WL 2412694, at *4 (W.D. Va. May 23, 2024) (entering a protective order to implement DoS's *Touhy* regulations with respect to obtaining deposition testimony).

5

For the reasons discussed herein, there is good cause for the Court to issue a protective order limiting the number of depositions Plaintiff is permitted to take and the scope of the same.

### A. Plaintiff's request to take Fifteen Depositions is Disproportionate to the Claim and Alleged Damages in this Case.

In the beginning stages of this case (February 2022), the Parties filed a Joint Rule 26(f) Report and Discovery Plan, which allocated a maximum of 15 fact depositions by each party. Dkt. 21. Defendant reluctantly agreed to this large number of depositions at that time, given Plaintiff's broad-based claims. Since then, MSA has learned, through Plaintiff's sworn deposition testimony and her expert's report, that Plaintiff's claims are much narrower than originally anticipated.

FRCP 26(b)(1) states that discovery must be relevant and proportional to the needs of the case. To determine proportionality, courts consider the following factors: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Taking these six factors[1] into consideration, a protective order is warranted because Plaintiff's requested fifteen depositions are not proportional to the needs of this case.

#### 1. The First Factor: The Importance of the Issues at Stake in the Action.

When determining whether requested discovery is proportional to the needs of the case, FRCP 26(b)(1) first directs courts to consider "the importance of the issues at stake in the action." Courts must look at whether the "issues at stake" are issues such as public policy, free speech, civil rights, government action, or business concerns "that may have importance far beyond the

---

[1]     The [bracketed] numbers were added by undersigned counsel to the above quotation to clarify which of the factors are being discussed below (*e.g.*, First Factor, Second and Sixth Factors, etc.).

monetary amount involved" or will implicate persons far beyond those involved in the matter at hand. *See* FRCP 26 advisory committee's note to 2015 amendment (stating that the "importance" of issues at stake in the action often turns to "the significance of the substantive issues, as measured in philosophic, social, or institutional terms"); *see also, e.g.*, *Santa Rosa Dev., LLC v. Santa Rosa Cnty.*, No. 3:22-cv-660-MCR/MJF, 2022 WL 19333304, at *3 (N.D. Fla. Oct. 31, 2022) (finding the "importance" of the issues at stake in the action low because the resolution of a civil breach of contract dispute "will not have a significant impact on anyone other than the parties to this action"); *Rogers v. English*, No. 19-3145-JAR-ADM, 2022 WL 2290537, at *7 (D. Kan. June 24, 2022) (internal citations omitted) ("The first proportionality factor looks at whether the issues at stake implicate broader 'public policy spheres, such as employment practices, free speech, and other matters that may have importance far beyond the monetary amount involved,' or if the claims seek to 'vindicate vitally important personal or public values.'"); *Haukaas v. Liberty Mutual Ins. Co.*, No. 4:20-CV-04061-KES, 2022 WL 1719412, at *6 (D.S.D. May 27, 2022) (explaining that the "value" of the case to consider is whether the "action implicates public policy and business-practice concerns that may benefit" multiple individuals).

Here, Plaintiff alleges one count of discrimination in violation of 41 U.S.C. § 4712, claiming that she was improperly "terminated" after making protected disclosures when MSA eliminated Plaintiff's part-time position of at-will employment. Dkt. 30 at 49. Plaintiff's claim is not significant "as measured in philosophic, social, or institutional terms." FRCP 26 advisory committee's note to 2015 amendment. Plaintiff's claim is a civil action that "will not have a significant impact on anyone other than the parties to this action." *Santa Rosa Dev., LLC*, 2022 WL 19333304, at *3. The elimination of Plaintiff's part-time at-will position to implement a full-time position is not the type of "significant impact" that FRCP 26(b)(1) envisions. Plaintiff's claim

7

does not invoke serious public policy concerns or business practices that could benefit individuals beyond those involved in this matter. *Rogers*, 2022 WL 2290537, at *7; *Haukaas*, 2022 WL 1719412, at *6.

For these reasons, Factor One favors the entry of a protective order.

> 2. *The Second and Sixth Factors: The Amount in Controversy, and Whether the Burden or Expense of the Proposed Discovery Outweighs Its Likely Benefits.*

The second and sixth factors that FRCP 26(b)(1) directs courts to consider are "the amount in controversy" and "whether the burden or expense of the proposed discovery outweighs its likely benefit."

MSA has learned in discovery that Plaintiff only seeks about $117,000 in lost wages.[2] The amount of hours and attorney's fees it will take to defend fifteen depositions is disproportionate to the one claim Plaintiff alleges and the damages she believes she is entitled to. Without including the hundreds of thousands of dollars of attorney's fees already expended in this at most $200,000 case to date, it would cost Defendant approximately $240,000[3] to have one partner and one associate prepare for all nine MSA depositions and defend all fifteen depositions (assuming each deposition runs the full 7 hours permitted by FRCP 30(d)(1)). The time, effort, and expense required to prepare for and defend these depositions far exceed the amount Plaintiff thinks she is entitled to for lost wages (on her best day). Even if only one partner prepares for and defends each

---

[2]    Defendant is not attaching the referenced documents it received during discovery to this memorandum as they are marked "confidential," and per the Confidentiality Order cannot be filed on the public record. ECF 67 ¶ 15.

[3]    Estimate based on counsel's current partner and associate rates on this matter, 7 hours of preparation per MSA witness, and 9 hours of attendance at each deposition (a 7-hour deposition ordinarily takes at least 9 hours to complete).

deposition (eliminating the use of an associate), it would still cost MSA over $145,000 to prepare for and defend all fifteen depositions.

Further, Plaintiff has mitigated the damages that she alleges in her Amended Complaint. In Plaintiff's September 6, 2023 deposition, she admits that she has earned more money since leaving MSA than she would have had she stayed at MSA. **Exhibit C** (Iovino Dep. 38:15-17, Sept. 6, 2023 ("Q. Now, would it surprise you that some of those years, you made more money than you did at MSA? A. I might have, yes . . . .")). Further, in Plaintiff's expert report dated May 21, 2023, Plaintiff's expert stated in her report that Plaintiff has made more money since she left MSA. **Exhibit D** at 5 (05/21/23 Pl's Expert Report of Hankins & Hankins). Plaintiff's expert report further stated that, while Plaintiff worked at MSA (from 2015 to 2017), she earned about **$178,578.66**. *Id.* ("2015 - $7,735.00; 2016 - $97,833.04; 2017 - $73,010.62."). Since leaving MSA (2018 – 2022), Plaintiff has earned about **$641,547.00**. *Id.* ("2018 - $110,335; 2019 - $143,846; 2020 - $141,158; 2021 - $112,125; 2022 - $134,083.").

Given that Plaintiff believes she is only entitled to $117,000 in lost wages (Exhibit A), the fact that it would cost *more* in attorney's fees to defend 15 depositions than the amount of lost wages Plaintiff believes she is entitled to, and that Plaintiff has made more money since leaving MSA (thus making her $117,000 lost wages claim virtually unattainable), the burden created by Plaintiff's proposed depositions of 15 fact witnesses outweighs the likely benefits.

For these reasons, Factors Two and Six favor the entry of a protective order.

### 3. The Third Factor: The Parties' Relative Access to Relevant Information.

The third factor that FRCP 26(b)(1) directs courts to consider is "the parties' relative access to relevant information."

Not only has the DoS OIG conducted a thorough investigation of Plaintiff's claims (which were ultimately denied by DoS (Dkt. 8-2 at 7)), but the Parties have engaged in extensive document discovery. MSA has produced over 9,000 documents to Plaintiff in response to Plaintiff's numerous requests for documents. Dkt. 175 at 7. Among those documents is the administrative record from the DoS OIG investigation, including OIG's notes from interviews with various MSA and/or DoS employees. Dkt. 8-2 at 3. DoS OIG has interviewed many of the individuals Plaintiff wants to depose and included information from those interviews in her Amended Complaint. *See, e.g.*, Dkt. 30 at ¶¶ 85, 94, 165.

The Parties have been litigating these issues since the inception of Plaintiff's OIG claim (August 7, 2017). Dkt. 30 at 2. From Plaintiff's access to OIG's investigation (including interviews) to the extensive paper discovery the parties have engaged in, the parties have, at this point, equal access to relevant information.

For these reasons, Factor Three favors the entry of a protective order

### 4.  *The Fourth Factor: The Parties' Resources.*

The fourth factor that FRCP 26(b)(1) directs courts to consider is "the parties' resources."

As stated above, Plaintiff's claim is for, at best $200,000. Regardless of this low dollar amount, Plaintiff (and the public interest law firm representing her) has spared no expense litigating this matter. Plaintiff has retained concurrent law firms to "fight" MSA on every position, including multiplying litigation at every turn by taking meritless positions on discovery matters that have already resulted in multiple appeals. This, in addition to *Touhy* inefficiencies caused in large part by Plaintiff's unwillingness to comply with DoS' *Touhy* policies and procedures is why this 2021 case is still limping along in June 2025.

10

Plaintiff and her lawyers are using this case to paint Plaintiff as a "hero" and fundraise for the Government Accountability Project *See, e.g.*, **Exhibit E** (Olivia Hynes, *Women's History Month: Dr. Karen Iovino*, GOVERNMENT ACCOUNTABILITY PROJECT (Mar. 24, 2025), https://whistleblower.org/blog/womens-history-month-dr-karen-iovino/.). Plaintiff's litigation of this case (including the filing of appeals to the Fourth Circuit) does not evidence a litigant with limited resources. While Plaintiff is acting as if time and expense do not matter, MSA has been forced to expend resources many times what this case is worth due to Plaintiff's unreasonable conduct.

For these reasons, Factor Four favors the entry of a protective order.

> 5. *The Fifth Factor: The Importance of the Discovery in Resolving the Issues.*

The fifth factor that FRCP 26(b)(1) directs courts to consider is "the importance of the discovery in resolving the issues."

In the May 15, 2025 status conference before the Court, counsel for Plaintiff stated that Plaintiff needs to depose each person MSA listed in its initial disclosures so that Plaintiff is "not surprised at trial" as the listed persons "are people that [MSA] named as people who it may rely on to prove its case."[4] Status Conference Tr. 5:23–25, May 15, 2025. First, MSA is the Defendant in this case and therefore does not have a case to "prove." Second, when pressed on the fact that Plaintiff's claim is only worth "$200,000 best case," counsel for Plaintiff clarified that Plaintiff needs to depose each person MSA list in its initial disclosures because "she's entitled . . . to rebut the counterclaim." *Id.* at 15:8–9.

---

[4]    It is worth noting that neither Plaintiff's *Touhy* request nor Plaintiff's deposition notices include any information regarding the topics on which Plaintiff intends to depose the twelve individual fact witnesses.

MSA's February 25, 2022 initial disclosures list thirteen individuals as persons that are "likely to have discoverable information." **Exhibit F** (MSA's 02/25/22 Initial Disclosures) at 2–5. Under each person listed, MSA stated that the individual "is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her [Amended] *Complaint* in the instant action." *Id.* (emphasis added). The initial disclosures, given to Plaintiff back in February of 2022, list persons with knowledge pertaining to Plaintiff's Amended Complaint—not MSA's counterclaim that was not filed months later (May 16, 2022).

MSA asserts one breach of contract claim in its counterclaim. Dkt. 31 at 45–47. There, MSA states that "*MSA* has suffered financial and reputational harm as a direct and proximate result of Counterclaim-Defendant's actions." *Id.* at 47, ¶ 49 (emphasis added). The damages that MSA seeks in its counterclaim are for damages that MSA, as an entity, has lost due to Plaintiff's actions – actions Plaintiff admitted to taking in her deposition. It is unlikely that anyone other than an MSA corporate representative can speak to how and for how much MSA was damaged. That testimony would be explored in MSA's 30(b)(6) deposition, not in individual depositions of MSA's current and/or former employees (especially those in non-executive positions such as the current and former veterinarian technicians and kennel technicians that Iovino seeks to depose).

Deposing current and former MSA and DoS employees about MSA's damages as an entity is entirely disproportionate to the facts of this case. It appears that Plaintiff issued these 15 deposition notices to annoy, embarrass, and/or oppress MSA and subject MSA to undue burden and expense. FRCP 26(c)(1). This type of fishing expedition should not be permitted by the Court. *See Bhattacharya v. Murray*, No. 3:19-cv-00054, 2022 WL 1510550, at *8 (W.D. Va. May 12, 2022) (denying with prejudice plaintiff's proposition to take ten extra depositions) (citing *Riddick*

12

*v. U.S.*, No. 2:04-cv-00278, 2005 WL 1667757, at *7 (E.D. Va. July 6, 2005) ("The discovery process is not a fishing expedition, and a party is not entitled to discovery simply in hope that something will turn up.")).

The "importance" of the discovery that Plaintiff seeks in deposition testimony is slight. Plaintiff now states that her main concern is Defendant's counterclaim, not Plaintiff's one count Amended Complaint. However, as stated above, Plaintiff is seeking testimony from individuals who have no knowledge and/or information about MSA's damages alleged in the counterclaim. For these reasons, Factor Five favors the entry of a protective order.

*    *    *    *    *

Taking the six FRCP 26(b)(1) proportionality factors discussed above into consideration, a protective order is warranted. All of the factors listed in FRCP 26(b)(1) favor a protective order. Therefore, MSA respectfully requests that the Court issue a protective order limiting the number of depositions Plaintiff is permitted to take.

## B. Certain Proposed Deposition Topics Should be Limited.

This Court can limit the breadth of proposed deposition topics. *See Beach v. Costco Wholesale Corp.*, No. 5:18-cv-00092, 2019 WL 1495296, at *3 (W.D. Va. Apr. 4, 2019) (limiting proposed deposition topics to relevant issues). MSA respectfully requests that the Court issue a protective order precluding Plaintiff from seeking improper testimony.

### 1. *Plaintiff's Request to Depose MSA, DoS, and DoS OIG About a Non-Suited Case is Inappropriate.*

In Plaintiff's 30(b)(6) notice, she states that she will depose MSA, DoS, and DoS OIG about their communications "regarding MSA's submission of the complaints and summons in . . . MSA v. Karen Iovino, Case No. CL 19-901, Circuit Court for Arlington County, Virginia . . . ."

13

(the "Virginia State Court Litigation"). *See* Dkt. 227; Exhibit B to MSA's 30(b)(6) Notice at ¶ 34; Exhibit B to DoS's 30(b)(6) Notice at ¶ 34; Exhibit B to DoS OIG's 30(b)(6) Notice at ¶ 34.

The Virginia State Court Litigation was non-suited pursuant to Va. Code Ann. § 8.01-380 in August 2020. Therefore, under Virginia law, it is "as if the suit had never been filed." *See Temple v. Mary Washington Hosp., Inc.*, 762 S.E.2d 751, 754 (Va. 2014) (citing *Winchester Homes Inc. v. Osmose Wood Preserving, Inc.*, 37 F.3d 1053, 1058 (4th Cir. 1994)). No "aspect" of the Virginia State Court Litigation may be "incorporated into" the present action, unless explicitly ordered. *Id.*; *see also Milazzo v. Elite Cont. Grp., Inc.*, No. 1:19-cv-1607 (TSE/TCB), 2020 WL 13499534, at *2 (E.D. Va. Aug. 10, 2020) (finding that discovery and prior discovery rulings in a nonsuited case no longer apply unless court ordered). Because the Virginia State Court Litigation was nonsuited, it is as if the case never existed. Therefore, Plaintiff is not entitled to depose any person and/or corporation in this matter about a case that legally does not exist.

MSA respectfully requests that the Court issue a protective order precluding Plaintiff from seeking improper testimony about a nonsuited case. *See Beach*, 2019 WL 1495296, at *3 (limiting proposed deposition topics to relevant issues).

> 2.  *Plaintiff's Request to Depose MSA, DoS, and DoS OIG About an Irrelevant Case is Inappropriate.*

The Virginia State Court Litigation described above is also not relevant to this case. Plaintiff's Amended Complaint consists of one count of "Discrimination in Violation of 41 U.S.C. § 4712." 41 U.S.C. § 4712(a)(1) states that an "employee" may not be "discharged, demoted, or otherwise discriminated against as a reprisal for disclosing" certain information to specific persons.

First, the Virginia State Court Litigation was filed against Iovino in March 2019. This is well after Iovino's employment with MSA ended in August 2017. Section 4712 did not and cannot afford Iovino any protections as she was not an "employee" when the Virginia State Court

14

Litigation was filed. The whistleblower protections provided under § 4712 do not cover former employees for actions that occurred post-employment.

Second, there is no such thing as "retaliation by litigation" under § 4712. Section 4712 states that it protects employees from being "discharged, demoted, or otherwise discriminated against as a reprisal for disclosing" certain information to specific persons. The Virginia State Court Litigation is not a discharge, a demotion, or an act of discrimination.

MSA respectfully requests that the Court issue a protective order precluding Plaintiff from seeking improper testimony about an irrelevant case. *See Beach*, 2019 WL 1495296, at *3 (limiting proposed deposition topics to relevant issues).

### C.  MSA Will be Prejudiced Without a Protective Order.

For all the reasons discussed above, good cause exists to issue a protective order. The discovery requested will subject MSA to undue expense (FRCP 26(c)(1)), is disproportionate to the case (FRCP 26(b)(1)), and is requested for the purpose of annoying, embarrassing, or oppressing MSA (FRCP 26(c)(1)).

Defending fifteen depositions will cost MSA more than Plaintiff's case could possibly be worth. Not only is this entirely disproportionate to the case, but it also places an undue burden and expense on MSA. Expecting MSA to defend fifteen depositions back-to-back, when Plaintiff has not deposed a single fact witness yet, is nothing more than Plaintiff's attempt to annoy, embarrass, or oppress MSA.

MSA respectfully requests that the Court issue a protective order precluding Plaintiff from seeking irrelevant and disproportionate discovery depositions.

15

## V.    CONCLUSION

For all the reasons stated herein, Defendant and Counterclaim Plaintiff, MSA, respectfully requests this Court grant its Motion for Protective Order, limit the number of depositions to be taken by the Parties, and limit the breadth of proposed deposition topics as described herein.

Respectfully submitted,

Date: June 16, 2025                    */s/ Daniel S. Ward*

_____
Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Jack Kolar
Government Accountability Project
1612 K St. NW, Suite 1100
Washington, DC 20006
(202) 926-3311
jackk@whistleblower.org

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street
P.O. Box 1061
Medford, OR 97501
(206) 954-1203
thad@guyerayers.com

*/s/ Daniel S. Ward*

_____
Daniel S. Ward

17