# EXHIBIT C



# Transcript of **Karen Iovino**

Wednesday, September 6, 2023

*Karen Iovino v. Michael Stapleton Associates, Ltd.*

www.TP.One
www.aldersonreporting.com
www.accutrancr.com
800.FOR.DEPO (800.367.3376)
Scheduling@TP.One

Reference Number: 132786

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

HARRISONBURG DIVISION

------------------------------------------
                                          :
KAREN IOVINO,                             :
                                          :
Plaintiff and Counterclaim Defendant,     :
                                          :
     v.                                   :  Case No.
                                          :
MICHAEL STAPLETON ASSOCIATES, LTD.,       :  5:21-CV-
                                          :
d/b/a MSA SECURITY, INC.,                 :  00064-TTC
                                          :
Defendant and Counterclaim Plaintiff.     :
                                          :
------------------------------------------

          Video deposition of DR. KAREN IOVINO, the

Plaintiff and Counterclaim Defendant herein, held at

Ward & Berry, PLLC, 1751 Pinnacle Drive, Suite 900,

Tysons, Virginia, commencing at 10:49 a.m. on

Wednesday, September 6, 2023 and the proceedings

being taken down by stenotype and transcribed by

Catherine B. Crump, a Notary Public in and for the

Commonwealth of Virginia.

APPEARANCES:

On behalf of the Plaintiff and

Counterclaim Defendant:

    NATE L. ADAMS, III

    Adams & Associates

    11 South Cameron Street

    Winchester, Virginia  22601

    (504) 667-1330

    nadams@nadamslaw.com

    Also Present via Zoom:

    JACK KOLAR, ESQ.

    THAD M. GUYER, ESQ.

On behalf of the Defendant and

Counterclaim Plaintiff:

    DANIEL S. WARD, ESQ.

    CHELSEA PADGETT, ESQ.

    Ward & Berry, PLLC

    1751 Pinnacle Drive, Suite 900

    Tysons, Virginia  22102

    (202) 331-8160

    dan@wardberry.com

    VIDEOGRAPHER:  APRIL CARTER

                              I N D E X

WITNESS:  Dr. Karen Iovino

EXAMINATION                                              PAGE

  By Mr. Ward:                              6

  By Mr. Guyer:                            325


                           E X H I B I T S

EXHIBIT NO.              DESCRIPTION              IDENTIFIED

1:   First Amended Complaint                              15

2:   Plaintiff's Rule 26(a)(1) Initial

     Disclosures                                          15

3:   Plaintiff's Answers to Defendant's First

     Set of Interrogatories                              15

4:   Plaintiff's Responses to Defendant's

     Second Set of Interrogatories                       15

5:   Plaintiff's Responses to Defendant's

     First Set of Requests for Admissions                15

6:   Resume of Karen Ann Iovino, DVM                     16

7:   Employee Confidentiality, Invention

     Assignment and Non-Solicitation Agreement           47

8:   Job Posting                                        143

9:   Position Description                                144

EXHIBIT NO.                                                    PAGE

10:   Resume of Lee E. Palmer, DVM                        150

11:   Hiring Decision and Justification                   162

12:   April 22, 2016 Email Chain                          164

13:   February 2016 Email Chain        [Not discussed]

14:   Medical Records                                     266

15:   December 2016 Email Chain                           185

16:   December 2018 and July 2017 Email Chains    201

17:   January 2019 Email Chain with Scott

      MacFarlane                                          204

18:   August 2017 and November 2018 Email Chains    205


        [Exhibit Nos. 11 and 14 are marked

Confidential.]

know that it's a money pit.

Q.   Well, people are paying you as opposed to the little girl that wants a horse.  That's the money pit.

A.   The two horses that I board are retired horses.

Q.   Money pits?

A.   Sorry.

Q.   Then they are money pits?

A.   No.  They're good people taking care of their horses after they gave them --

Q.   That's very nice.

Okay.  So you board horses and that's -- but it's nominal income?

A.   Yes.

Q.   Your primary income is veterinary services?

A.   Yes.

Q.   Overwhelming primary?

A.   Yes.

Q.   It's 95 percent to five percent; is that fair?



A.    I would have to do the math, but yes, probably.

Q.    And since you left MSA, have you made more or less money per year?

A.    I would have to sit down and look at my W-2, s but I do know that since leaving MSA, my work schedule has gone from being something that was consistent and nice to working weekends, holidays, long shifts.  I am probably making close to what I was, but it's not the same schedule that I had while at MSA.

There's no snow days in veterinary medicine when you work ER.  You have to go in, unlike at MSA where they would close if there was heavy snow.

Q.    Now, would it surprise you that some of those years, you made more money than you did at MSA?

A.    I might have, yes, but I was also working myself into the ground, working crazy shifts. Some days, I worked 12 noon to 12 midnight, would get out of work at 1:30, get to bed at 3:30, still have to get up at seven in the morning for my horses.  The next day, I was at work at 7 a.m. and working until 7



p.m.

Q.    So since working at MSA, there were some periods where you were working more than full time?

A.    No, but I was working different hours. That really took a toll on me.

Q.    Okay.  Let's focus for a minute on your work at MSA.

A.    Okay.

Q.    What were your duties at MSA?

A.    You'll have to narrow that down to a specific time frame in order for me to answer that appropriately.

Q.    Well, can you take it through the time frame if it switched.

A.    Okay.  So starting in October of 2015, I was a staff veterinarian that assisted on the WPS side, and then probably towards the end of 2015, early 2016, Zane Roberts asked me to stand up the ATA hospital.  That is no small task, if you've never done that.  It requires a state inspection, radiation inspection, WDA license, things like that.

So at that time, I transitioned over to the

CERTIFICATE OF NOTARY PUBLIC

I, CATHERINE B. CRUMP, the officer before whom the foregoing deposition was taken, do hereby testify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me stenographically and thereafter reduced to typewriting under my direction; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto nor financially or otherwise interested in the outcome of the action.

_____

CATHERINE B. CRUMP

Notary Public in and for the

Commonwealth of Virginia

Registration No. 252644

My Commission Expires:  May 31, 2025