IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
07/30/2025
LAURA A. AUSTIN, CLERK
BY: **/s/ Amy Fansler**
DEPUTY CLERK

| | |
|---|---|
| KAREN IOVINO, | |
| Plaintiff, | Civil Action No. 5:21-cv-00064 |
| v. | **ORDER** |
| MICHAEL STAPLETON ASSOCIATES, LTD. d/b/a MSA Security, Inc., | By:  Hon. C. Kailani Memmer
United States Magistrate Judge |
| Defendant. | |

This matter is before the Court on Defendant and Counterclaim Plaintiff Michael Stapleton Associates, Ltd.'s ("MSA") motion for a protective order under Rule 26(c)(1) of the Federal Rules of Civil Procedure. (ECF No. 232.) MSA requests entry of a protective order limiting depositions to 4 per party and prohibiting discovery regarding a non-suited Virginia state court case between the parties. The matter is fully briefed and a hearing was held on July 23, 2025. As such, the matter is ripe for decision. For the reasons detailed below, MSA's motion is granted in part and denied in part.

## I.   Standard of Review

Generally, a party may conduct discovery, including taking depositions, regarding any non-privileged matter which is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1), 30(a)(1). However, the court has discretion to limit pretrial discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Additionally, the court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Ordinarily, the movant bears the

1

burden of establishing good cause by showing that specific prejudice or harm will result if no protective order is granted." *Kendrick v. Carter Bank & Tr., Inc.*, No. 4:19-CV-00047, 2023 WL 3550112, at *3 (W.D. Va. May 18, 2023), *aff'd*, No. 24-1377, 2025 WL 879703 (4th Cir. Mar. 21, 2025).[1]

## II.   Discussion[2]

The present motion concerns the 15 deposition notices issued by Plaintiff Dr. Karen Iovino on May 21, 2025. (*See* ECF No. 222.)[3] The 15 deposition notices include (1) three 30(b)(6) notices to MSA, the U.S. Department of State ("DoS"), and DoS's Office of Inspector General ("OIG"); (2) eight notices to current and/or former MSA employees; and (3) four notices to current and/or former DoS employees and/or contractors. MSA requests entry of a protective order for two purposes: (1) to limit the number of depositions taken by the parties and (2) to prohibit discovery regarding a Virginia state court case between the parties that was non-suited in August 2020 (*MSA v. Karen Iovino*,

---

[1] Rule 26(c)(1) of the Federal Rules of Civil Procedure requires the movant to include a certification in its motion that "the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Although MSA failed to directly address such certification requirement in its briefing, the court finds that the parties have engaged in at least *some* good faith discussions in an attempt to resolve this issue prior to filing this motion based upon the information shared during the initial discovery management conference on June 12, 2025. (*See* ECF Nos. 224, 229, 231.)

[2] The court has addressed the relevant facts, claims, and procedural history of this case on numerous occasions. *See* Memorandum Opinions and Orders entered by the Honorable Thomas T. Cullen, presiding District Judge, ECF Nos. 25, 26, 55, 56, 93, 94, 97, 177. As the court and parties are well-versed on the factual and procedural history of this case, the court relies upon such prior summaries. *Id.*

[3] Pursuant to Rule 30 of the Federal Rules of Civil Procedure, a party is generally not entitled to take more than ten depositions without leave of court. Fed. R. Civ. P. 30(a)(2)(A). However, the parties may stipulate to taking more than 10 depositions without court intervention. *Id.* As noted by MSA, the parties agreed to a maximum of 15 fact depositions by each party in its Joint Rule 26(f) Report and Discovery Plan, filed on February 25, 2022. (*See* ECF No. 21 at 3.) MSA now seeks court intervention to limit the number of depositions based upon proportionality.

Case No. CL 19-901, Circuit Court for Arlington County, Virginia) ("Virginia State Court Litigation").

   A.  Request to Limit Depositions

MSA requests entry of a protective order to limit the number of depositions each party is permitted to take based upon the proportional needs in the case. MSA proposes a reduction to 4 depositions per party from the initially agreed upon 15 per party. (*See* Joint Rule 26(f) Report and Discovery Plan, ECF No. 21 at 3.) ("A maximum of 15 fact depositions by Plaintiff, and 15 by Defendant. The duration of each will be limited to the time specified in Rule 30(d)(1), absent further order from the Court."). MSA claims it "reluctantly agreed" to 15 depositions at the outset of this case based upon Iovino's "broad-based claims." (ECF No. 232-1 at 6.) Now, after MSA deposed Iovino and received Iovino's expert report, MSA asserts Iovino's claims are narrower than anticipated warranting a reduction in the number of depositions taken by the parties. As such, MSA requests the court limit depositions to 4 per party. Iovino's main contention is that she must have the opportunity to depose 12 of the 13 individuals listed in MSA's Rule 26(a)(1) disclosures to determine what, if any, relevant information they have regarding Iovino's whistleblower claim. (*See* ECF No. 233.)

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that discovery must be relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In considering whether discovery is proportional to the needs of the case, the court is to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "Proportionality,

3

like other concepts, requires a common sense and experiential assessment." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018).

Whether the burden or expense outweighs the likely benefit is an important factor in this court's determination of whether discovery sought is proportional in the case. Notably, MSA barely touches on the relevance or potential benefit (or lack thereof) of the 15 depositions noticed by Iovino. (*See* ECF No. 232-1) (discussing Iovino's ability to rely upon the parties' "extensive document discovery" including "OIG's notes from interviews with various MSA and/or DoS employees" rather than proceeding with the noticed depositions). Instead, MSA's main argument is that the cost of preparing for and defending 15 depositions is not proportional to the claims and defenses in this case. Iovino briefly addresses the relevance of her noticed depositions in her opposition brief but mainly refers to her amended *Touhy* notice submitted to the DoS and DoS OIG.[4]

In consideration of the briefing and argument by the parties, the court does not have sufficient information to determine whether reducing depositions to 4 per party is proportional to the claims and defenses in this case. *See C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 266 (E.D.N.Y. 2023) (noting proportionality goes "hand-in-hand" with relevance), *aff'd*, No. 2:22-CV-01791 (NJC) (JMW), 2024 WL 127967 (E.D.N.Y. Jan. 11, 2024). As commonsense would dictate, as does the law, "the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate." *Id.* As noted by Iovino, MSA's Rule 26(a)(1) disclosures provide that 13 individuals "have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her

---

[4] Notably, Iovino does not attach the amended *Touhy* notice to her brief and it is not filed on the docket, sealed or otherwise. As such, the Court cannot consider it.

4

Complaint in the instant action." (ECF No. 233–1 at 2–5.) Iovino seeks to depose the majority of these individuals to learn what knowledge they possess that is relevant to her claims. Rather than address why the specific individuals should not be deposed, MSA primarily focused on the time and expense to conduct 15 depositions. As such, the Court finds that MSA failed to engage in the necessary discussion regarding relevance to drastically reduce the depositions from the previously agreed upon number of 15 to 4 per party.

An example will better illustrate this point. In its brief MSA assumes Iovino will use all 7 hours to depose all 15 deponents pursuant to Fed. R. Civ. P. 30(d)(1). If so, it is quite possible that the burden and expense would outweigh the benefit of taking 105 hours of depositions in this case (plus the time for any depositions noticed by MSA). However, it is possible Iovino could narrow its questioning of certain witnesses such that more than 1 deposition could take place in a single day. If so, and if each deponent were questioned about non-cumulative information relevant to the claims and defenses in this case, then the benefit may outweigh the expense and burden of preparing for and taking the depositions.

As the court lacks such detailed information regarding the relevance and proportionality of the 15 depositions, the court finds MSA failed to meet its burden.[5] Accordingly, MSA's request to limit the number of depositions to 4 per party is denied.

---

[5] Although the court is permitting the parties to proceed with 15 depositions per party, the parties are reminded that their conduct in taking and defending such depositions are expected to "promote the fundamental objectives of speedy, fair, and efficient litigation." *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:19-CV-249, 2021 WL 719898, at *1 (W.D. Va. Feb. 24, 2021); *see also* Fed. R. Civ. P. 1.

The parties are permitted to proceed with 15 depositions each as initially agreed upon and noted in the Joint Rule 26(f) Report and Discovery Plan. (*See* ECF No. 21 at 3.)

B. Request to Prohibit Discovery Regarding Non-Suited Virginia State Court Litigation

MSA also requests the court enter a protective order precluding Iovino from seeking testimony during depositions regarding the non-suited Virginia State Court Litigation. (ECF No. 232-1 at 13–15.) In support of its request, MSA claims the Virginia State Court Litigation is irrelevant to the claims and defenses in this case and the case is effectively nonexistent due to MSA's nonsuit. *Id.* Iovino claims the Virginia State Court Litigation is relevant to show that MSA had a motive to retaliate against her as a whistleblower. (ECF No. 233 at 11.)

The question of relevancy regarding information sought in discovery "essentially involves a determination of how substantially the information requested bears on the issues to be tried." *Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-CV-4480, 2017 WL 11674365, at *4 (S.D. W. Va. Feb. 24, 2017). "Deposition topics that are of minimal relevance are significantly disproportional to what is in dispute with the litigation." *Id.* (citation modified).

Iovino's deposition notices for MSA, DoS, and DoS OIG provide that Iovino intends to pursue questioning about the Virginia State Court Litigation as follows:

> [Iovino] will depose MSA as to its communications with and from DoS regarding MSA's submission of the complaints and summons . . . to DoS, and DoS permission, approval, guidance, use, non-use, and/or limitations on the use, disclosure or production of "contract information" in [the Virginia State Court Litigation.]
>
> [Iovino] will depose the DoS as to its communications with and from MSA regarding MSA's submission of the complaints and summons . . . to MSA, and MSA permission, approval, guidance, use, non-use, and/or limitations

6

> on the use, disclosure or production of "contract information" in [the Virginia State Court Litigation.]
>
> [Iovino] will depose the DoS-OIG as to its communications with and from MSA regarding MSA's submission of the complaints and summons . . . to MSA, and MSA permission, approval, guidance, use, non-use, and/or limitations on the use, disclosure or production of "contract information" in [the Virginia State Court Litigation.]

(ECF No. 227, at 13, 29, 44.)[6]

Iovino claims the Virginia State Court Litigation is relevant in proving her single whistleblower retaliation claim under 41 U.S.C. § 4712. Section 4712 prohibits government contractors from retaliating against their employees for reporting evidence of misconduct in certain circumstances. Specifically, under § 4712,

> An employee of contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1).

Section 4712 adopts the legal burdens of proof from the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 1221(e)(1). *See* 41 U.S.C. § 4712(c)(6); *see also Pritchard v. Metro. Washington Airports Auth.*, 860 Fed. App'x 825, 828 (4th Cir. 2021). As such, a claimant need only demonstrate that the protected disclosure was a "contributing factor" in the personnel action as provided in Section 1221(e)(1):

> The employee may demonstrate that the disclosure or protected activity was a contributing factor in the personnel action through circumstantial evidence, such as evidence that--

---

[6] These deposition notices are sealed on the docket. However, the court finds the information quoted herein does not warrant protection from the public.

7

> (A) the official taking the personnel action knew of the disclosure or protected activity; and
>
> (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action.

5 U.S.C. § 1221(e)(1). However, corrective action "may not be ordered if, after a finding that a protected disclosure was a contributing factor, the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2).

The Fourth Circuit recently applied the three-factor test adopted in *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318 (Fed. Cir. 1999) as "useful guidance" in evaluating an agency's claim that it would have taken the personnel action regardless of the disclosures. *Mikhaylov v. Dept. of Homeland Sec.*, 62 F.4th 862, 869–71 (4th Cir. 2023). The factors include

> the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Id.* at 869 (quoting *Carr*, 185 F.3d at 1323). Iovino claims the second *Carr* factor – "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision" – provides the justification for seeking deposition testimony regarding the Virginia State Court Litigation. Specifically, Iovino claims she is entitled to question MSA during its 30(b)(6) deposition about the non-suited conspiracy claim filed by MSA against Iovino as it could shed light on MSA's motive to retaliate against Iovino. (ECF No. 233 at 11.) ("MSA alleged in its State Court action that it believed that Iovino, with unnamed others, conspired to destroy it. That would have given MSA an

8

extremely strong motive to retaliate against her, and thus is relevant to this Court assessing MSA's state of mind when it took those actions.").

It is axiomatic that discovery in this case will overlap with some of the allegations asserted in the nonsuited Virginia State Court Litigation as both cases relate to Iovino's employment with MSA. In fact, MSA's counterclaim for breach of contract in the instant case was initially asserted in the Virginia State Court Litigation. But MSA's decision to file suit against Iovino almost two years after her employment ended with MSA has no bearing on the claims and defenses in this case. Neither do any communications between MSA, DoS, and/or DoS OIG "regarding MSA's submission of the complaints and summons" in the Virginia State Court Litigation. (*See* ECF No. 227, at 13, 29, 44.) As argued by MSA during the hearing on the instant motion, much if not all communications regarding the filing of the Virginia State Court Litigation would likely be protected under attorney-client privilege and/or work product privilege. And even if MSA harbored "ill motive" to retaliate against Iovino which then led MSA to file the Virginia State Court Litigation, such alleged retaliatory motive that existed in March 2019 has no bearing on Iovino's employment with MSA ending in August 2017. *See Mikhaylov*, 62 F.4th at 870– 71 (analyzing *Carr* factor 2 and focusing on evidence related to the decisionmaker's potential retaliatory motive at the time the alleged impermissible personnel action was decided); *see also Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1372 (Fed. Cir. 2001) ("[T]he action taken by the agency officials must be weighed in light of what they knew at the time they acted; thus, later developments cannot be used either to support or undercut the validity of the action taken.").[7]

---

[7] The court finds it necessary to make an important distinction to aid the parties as they continue discovery. If the decisionmakers (or those that influenced the decisionmakers) regarding Iovino's

9

In consideration of the above, the court finds MSA has demonstrated specific prejudice or harm will result if no protective order is granted limiting discovery regarding the Virginia State Court Litigation. In short, any questioning on this irrelevant topic would expose the parties to undue burden and expense and potentially veer towards harassment.[8] Accordingly, the parties are prohibited from questioning deponents or seeking further discovery about the filing of the Virginia State Court Litigation or communications between MSA, DoS, and/or DoS OIG regarding MSA's submission of the complaints and summons in the Virginia State Court Litigation.[9] [10]

## III. Future Discovery Disputes

The parties have been reminded on numerous occasions that this case needs to proceed with haste. It has been pending for almost 5 years. And the parties have been advised that the court "expects the parties confer in good faith, <u>at length if necessary</u>, to settle any future discovery disagreements." (*See* Mem. Op., ECF No. 177 at 16.) (emphasis

---

employment believed at or before the time Iovino's employment ended with MSA that Iovino's protected disclosures were part of a conspiracy to harm MSA's business, it is likely such evidence would be relevant to *Carr* factor 2. But whether such alleged retaliatory motive continued for two years and prompted or influenced the filing of a lawsuit in 2019 is of no consequence in the instant case.

[8] Iovino notes her frustration regarding MSA's decision to file the Virginia State Court Litigation against her, noting the amount of damages sought, the "outlandish, fanciful, and sensational" allegations, and her interpretation that the lawsuit amounted to MSA "thr[owing] the book" at her. (ECF No. 233 at 9–11.) However, this case is not to be used to "settle scores" between the parties on matters unrelated to the claims and defenses in this case. Both parties are advised that the continued mudslinging is unhelpful to the court's determination of the matters at issue.

[9] Although MSA's motion focuses on limiting Iovino's ability to question deponents about the Virginia State Court Litigation, the court also prohibits any document discovery on this topic for the reasons explained herein.

[10] As the court finds the Virginia State Court Litigation is irrelevant to the claims and defenses in this case, the court will not address MSA's second argument that the nonsuit of the Virginia State Court Litigation effectively makes it nonexistent and, thus, not a topic of discovery in future litigation.

10

added). Accordingly, if additional discovery disputes arise, counsel for the parties are required to meet and confer <u>at length and in detail</u> to try and reach an agreed-upon resolution prior to seeking court involvement.[11] If counsel is unable to reach an agreement without court involvement, the parties shall contact my chambers to schedule a status conference in an attempt to reach an agreed-upon and efficient resolution before filing a motion.

## IV. Conclusion

MSA's motion for protective order, ECF No. 232, is hereby **GRANTED in part** and **DENIED in part**.  MSA's request to limit the number of depositions to 4 per party is denied. MSA's request to prohibit discovery regarding the Virginia State Court Litigation is granted. Specifically, the parties are prohibited from questioning deponents or seeking further discovery regarding the filing of the Virginia State Court Litigation or communications between MSA, DoS, and/or DoS OIG regarding MSA's submission of the complaints and summons in the Virginia State Court Litigation.

It is so **ORDERED**.

Entered: July 30, 2025

C. Kailani Memmer
United States Magistrate Judge

---

[11] During the initial discovery management conference on June 12, 2025, it was mentioned that counsel for the parties cannot or will not agree on anything. Such unreasonable behavior is at odds with the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 1, and will not be tolerated moving forward. If it becomes apparent that counsel cannot work with one another to ensure this case proceeds in a speedy, fair, and efficient manner, the court will be forced to schedule status conferences on a regular basis.

11