IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KAREN IOVINO, | ) |
|     Plaintiff and<br>    Counterclaim Defendant, | ) Case No. 5:21-CV-00064-TTC |
| v. | ) |
| MICHAEL STAPLETON ASSOCIATES, LTD.,<br>d/b/a MSA SECURITY, INC. | ) |
|     Defendant and<br>    Counterclaim Plaintiff | ) |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. MSA hired Plaintiff in 2015 to work as a Part-Time Veterinarian on a sensitive contract with the United States Department of State ("DoS") (the "DoS Contract"). Am. Compl. (ECF 30) ¶¶ 8, 16.

2. MSA operates the Canine Validation Center ("CVC")[1] in Winchester, Virginia, to train and test explosive detection canines and their handlers in accordance with the DoS Contract. Am. Compl. ¶ 9.

3. The CVC includes a fully licensed veterinary hospital, which is staffed with veterinarians, veterinary technicians, and other support staff to provide top-notch veterinary care to the canines trained at the CVC. Am. Compl. ¶ 10.

4. The DoS Contract contains stringent requirements relating to the protection of confidential information of DoS and the programs serviced by MSA. In relevant part, the DoS Contract states:

---

[1] The facility that MSA currently maintains and operates is called the Diplomatic Security Global Canine Services Center. In 2017, the facility was called the Canine Validation Center ("CVC"), which is what the Parties have called it throughout this litigation. MSA will refer to the facility as the CVC herein.

"All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government." **Exhibit A** (2015 09 29 DoS Contract). DoS requires MSA to implement the DoS's confidentiality restrictions in "all contracts of employment and in all subcontracts." *Id.*

5. In support of this requirement, Plaintiff signed a "Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement" with MSA on October 16, 2015. **Exhibit B** (2015 10 16 Iovino Confidentiality Agreement). Plaintiff expressly agreed not to "disclose, publish, use or otherwise make available to the public or to any individual, firm or corporation any confidential information." *Id.*

6. In February 2017, Dr. Michael Ratcliff informed Plaintiff that the CVC was expanding, and the DoS Contract would likely require a full-time veterinarian in the future. **Exhibit C** (2017 02 26 K. Iovino Note); **Exhibit D** at GAPKI_000570 (2019 10 30 DoS Determination and Order); **Exhibit E** (Iovino Dep. 43:10–17, Sept. 6, 2023); Am. Compl. ¶ 45.

7. On February 13, 2017, DoS issued a "Request for Proposal" in order to execute Modification 1 of the DoS Contract. **Exhibit F** at IOVINO_00009207 (2017 06 26 MSA Performance Work Statement Response).

8. On March 29, 2017, MSA submitted a revised "Cost Price Proposal" to Anna Garcia (DoS Contracting Officer Representative assigned to the DoS Contract) in response to the DoS's "Request for Proposal to modification to Contract SAQMMA16D0106." **Exhibit G** (2017 03 29 MSA Cost Price Proposal – Revision 1).

9. In or about May 2017, MSA and DoS discussed replacing the part-time CVC veterinarian position with a full-time position. This change was required by the growing scope of the CVC program, which demanded greater veterinarian resources. **Exhibit H** (Bower Decl. ¶¶ 9–10, July

5, 2019); **Exhibit I** (Goss Decl. ¶ 6, July 5, 2019); **Exhibit J** (Ratcliff Decl. ¶ 17, July 5, 2019); *see also* **Exhibit K** (DoS 30(b)(6) Dep. 36:18–25, Feb. 26, 2026); Am. Compl. ¶ 54.

10. On or about June 26, 2017, MSA submitted a "Performance Work Statement (PWS) Response in response to DoS's February 13, 2017 Request for Proposal. **Exhibit F**.

11. On June 26, 2017, Ms. Garcia emailed Katie Brasfield (MSA Contracts Officer) stating that, starting in Option Year 1, the DoS Contract will increase the hours for the veterinarian position from 30 hours to 40 hours per week. **Exhibit L** (2017 06 26 Email Thread with K. Brasfield and A. Garcia). Per the DoS Contract, Option Year Number 1 would be from August 17, 2017, through August 16, 2018. **Exhibit G** at IOVINO_00007260; **Exhibit K** (DoS 30(b)(6) Dep. 37:4–12, Feb. 26, 2026).

12. On July 6, 2017, Plaintiff filed a "hotline" complaint with DoS OIG. **Exhibit M** (2017 07 06 Iovino OIG Hotline Submission Form); Am. Compl. ¶ 61.

13. On July 14, 2017, Plaintiff submitted an EEOC Charge of Discrimination claiming sex and age discrimination for allegedly being "demoted" and receiving "reprimands." **Exhibit N** (2017 07 14 Iovino EEOC Charge).

14. On July 14, 2017, Plaintiff sent Dr. Ratcliff an email stating she "would embrace the opportunity to move from 3/4 time to FT to help the ATA program grow." **Exhibit O** (2017 07 17 Email Thread with K. Iovino and M. Ratcliff). Plaintiff further stated that she "will plan on moving to FT status Aug 19, 2017." *Id.*

15. On July 17, 2017, Dr. Ratcliff responded to Plaintiff's July 14, 2017 email stating that, because it is a new "CLIN" on MSA's modified contract, Plaintiff will need to apply for the position. *Id.* Plaintiff responded, asking if the application was "just a formality." *Id.*; Am. Compl. ¶ 73.

16. On July 17, 2017, MSA opened the application process for the new full-time veterinarian role. Plaintiff submitted an application online on the same day. Am. Compl. ¶ 75; **Exhibit J** (Ratcliff Decl. ¶ 23, July 5, 2019); **Exhibit H** (Bower Decl. ¶ 13, July 5, 2019). The position called for, among other things, CONUS and OCONUS performance (*i.e.*, to perform services within and outside the continental United States) and the willingness to live and work in a "conflict/combat" area. **Exhibit P** (CVC Position Description for Veterinarian).

17. On July 25, 2017, Plaintiff emailed Peter Deegan (Human Resources) informing Mr. Deegan that she had filed an EEOC complaint against MSA and stating that there are "very serious issues at the CVC" which "seems to operate separately." **Exhibit Q** (2017 07 26 Email Thread with K. Iovino and P. Deegan). When Deegan asked what those "series issues" were, Plaintiff replied that she did not "feel it would be appropriate to elaborate on the issues at [the] CVC at this time," but "would be happy to have a face to face discussion at the appropriate time." *Id.* Deegan reminded Plaintiff that she has a fiduciary duty as an employee on a government contract to "bring allegations of impropriety to [MSA's] attention." *Id.* Plaintiff again refused to elaborate on what the "serious issues" were and stated again that she would "be happy to discuss these matters at the appropriate time face to face." *Id.*

18. On July 26, 2017, Dr. Ratcliff sent Mr. Deegan, Michael Hayes (Program Manager), and Alan Bower (Deputy Project Manager, Facilities and Support) an email attaching the "Hiring Decision & Justification" selecting Dr. Lee Palmer for the new full-time veterinarian position in the DoS Contract, as modified. **Exhibit R** (2017 07 26 Email from M. Ratcliff); **Exhibit S** (2017 07 26 Hiring Decision & Justification). When comparing Plaintiff versus Dr. Palmer, Dr. Palmer was more qualified for the position. *Id.*; **Exhibit T** (K. Iovino Resume); **Exhibit U** (L. Palmer

4

Resume); **Exhibit H** (Bower Decl. ¶ 14, July 5, 2019); **Exhibit J** (Ratcliff Decl. ¶¶ 28–31, July 5, 2019).

19. That same day, Plaintiff submitted a "Whistleblower Reprisal Form" to OIG alleging that she was terminated as a reprisal for engaging in alleged whistleblowing. At this time, Plaintiff was still employed at the CVC. **Exhibit V** (2017 07 26 Iovino's OIG Whistleblower Reprisal Form Submission).

20. On July 27, 2017, Plaintiff emailed with two journalists (Ellen Nakashima and Carol Morello) at The Washington Post regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009552– 9554 (Numerous Email Threads with K. Iovino and the Media).

21. On July 28, 2017, Plaintiff continued emailing Carol Morello at The Washington Post regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009552.

22. On July 28, 2017, Plaintiff forwarded her "Whistleblower Reprisal Form" to Cathy Read, the Director in the Office of Acquisitions Management ("AQM") at the DoS. **Exhibit X** (2017 07 28 Email Thread with K. Iovino and C. Read); Am. Compl. ¶ 83.

23. On July 31, 2017, Plaintiff was informed that she was not selected for the new full-time veterinarian position and that her current part-time veterinarian position with MSA would end as of August 17, 2017. **Exhibit Y** (2017 08 01 K. Iovino Note).

24. Sometime in late July 2017, Plaintiff admits that she told Jonah Ballenger and Ben Orndorff (CVC Kennel Technicians) that she was contemplating going to The Washington Post about MSA, the CVC, and the DoS Contract. **Exhibit E** (Iovino Dep. 55:3–10, 80:22, 81:1–14, 242:13–16, Sept. 6, 2023). Plaintiff states she made these threats because she had to apply for the new full-time veterinarian position that MSA was offering pursuant to the DoS's contract modification. *Id.* 55:6–17; Am. Compl. ¶¶ 72–74.

5

25. On August 1, 2017, Plaintiff emails with "NBC UNI News Tips New York" and David Paredes at NBC Universal, and Ms. Morello at the Washington Post regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009547–48, IOVINO_000009551.

26. On August 1, 2017, DoS issued M002 exercising Option Year Number 1, which allows the DoS Contract to continue for an additional period of performance from August 17, 2017 through August 16, 2018. **Exhibit Z (**2017 08 01 M002 of the DoS Contract).

27. On August 1, 2017, Josh Carter (DoS Program Manager) emails Dr. Ratcliff asking him to "confirm" that the answers to specific questions regarding the CVC hospital were correct. **Exhibit AA** (2017 08 17 Email Thread with J. Carter and M. Ratcliff). Embedded in that email thread (but not in the answers Mr. Carter asked Dr. Ratcliff to confirm) there is a reference to Iovino filing an OIG complaint. *Id.* at DOS-IOVINO-00247. Dr. Ratcliff does not recall seeing that portion of the email. Regardless, there is no dispute that this August 1, 2017 email was the first possible notification (opaque as it was) that MSA had of Iovino's OIG complaint – days after it chose to hire Dr. Palmer and days after it notified Iovino that she had not been chosen for the position.

28. OIG testified that it *believed* "Nick Sabruno [DoS Director of the Office of Protective Operations and Diplomatic Security] consulted with Mr. [Josh] Carter [DoS Program Manager] about" Plaintiff's alleged protected disclosures "in mid-July 2017," and *believed* that "Mr. Carter had spoken to other MSA employees about his knowledge of Dr. Iovino's complaints." **Exhibit BB** (McDermott Decl. ¶¶ 3–4, Mar. 6, 2026).

29. However, OIG clarified in the March 6, 2026 Declaration of Jeffrey McDermott that there was no credible evidence that MSA knew that Plaintiff had filed a complaint with OIG prior to August 1, 2017. *Id.* ¶¶ 5–9.

6

30. This "clarifying" declaration further stated that Zane Roberts did not tell OIG when or how MSA allegedly found out that Plaintiff was a whistleblower. *Id.* ¶¶ 10–14.

31. On August 2, 2017, Plaintiff continues emailing with Ms. Morello at the Washington Post regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009551.

32. On August 3, 2017, Plaintiff continues emailing with Mr. Paredes at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009547.

33. On or about August 3, 2017, Mr. Orndorff reported to Brett Harshberger (the Kennel Technician Manager) and Jennifer Houston (Veterinary Technician) that Plaintiff informed him and Mr. Ballenger that she was contemplating going to the media with DoS information. **Exhibit CC** (Orndorff Decl. ¶¶ 7, 12, July 5, 2019).

34. On or about August 4, 2017, Ms. Houston informed Mr. Bower and Dr. Ratcliff that two kennel technicians (Mr. Ballenger and Mr. Orndorff) stated that Plaintiff informed them that she thought she was going to be fired soon and threatened to go to the media (which, turns out, she already did) with her "concerns" about the CVC. **Exhibit H** (Bower Decl. ¶ 15, July 5, 2019); **Exhibit J** (Ratcliff Decl. ¶ 32, July 5, 2019).

35. Bower promptly told Gerald Goss (MSA's Executive Vice President for Government Programs) of this potential disclosure of confidential information. **Exhibit H** (Bower Decl. ¶ 16, July 5, 2019); **Exhibit I** (Goss Decl. ¶ 8, July 5, 2019).

36. On August 4, 2017, MSA placed Plaintiff on <u>paid</u> administrative leave while it investigated "concerns involving [Plaintiff] regarding the disclosure of confidential information." **Exhibit DD** (2017 08 04 Email from P. Deegan to K. Iovino); Am. Compl. ¶ 93. MSA reminded Plaintiff of her continuing confidentiality obligations. *Id.* The investigation into Plaintiff's unauthorized media disclosures continued for at least six weeks. **Exhibit I** (Goss. Decl. ¶ 15, July 5, 2019).

7

37. When MSA informed Plaintiff that she was being placed on paid administrative leave, she immediately threatened to call the Virginia state veterinary board and have the CVC's veterinary facilities shut down. **Exhibit J** (Ratcliff Decl. ¶ 33, July 5, 2019); **Exhibit EE** (2017 08 04 K. Iovino Note); Am. Compl. ¶ 92.

38. On or about August 4, 2017, Mr. Goss called Ms. Garcia to inform DoS and AQM about Plaintiff's threats to go to the media with confidential DoS information. **Exhibit FF** (2017 08 04 Email from G. Goss to A. Garcia); **Exhibit GG** (Goss Dep. 23:13–24:7, July 5, 2019). Ms. Garcia told Mr. Goss to submit a report via email explaining the situation. *Id.*

39. On August 4, 2017, Mr. Goss emailed Ms. Garcia a "Situational Report" providing DoS not only with notice of what MSA's knowledge was at the time but with advance notice of the potential that Plaintiff may make further unauthorized disclosures of confidential information relating to the program to non-authorized third parties and the press, as Plaintiff had threatened. **Exhibit FF.** Shortly after making this report to DoS, Mr. Goss went to the CVC to check the facility from a security standpoint. **Exhibit GG** (Goss Dep. 60:13–20, Jan. 30, 2026).

40. On August 4, 2017, the same day she was placed on paid administrative leave for making unauthorized disclosures to the media, Plaintiff emailed Ms. Read, stating that she feels "abandoned" by the OIG because it *could* take 180 days to investigate her claims. **Exhibit HH** (2017 08 04 Email from K. Iovino to C. Read).

41. On August 4, 2017, Plaintiff also filed a complaint with the OIG alleging wrongful termination (while she was still employed at MSA). **Exhibit D**; Am. Compl. ¶ 3.

42. On August 18, 2017, MSA sent Plaintiff a letter confirming that her part-time veterinarian position with MSA had concluded. **Exhibit II** (2017 08 18 MSA Letter to K. Iovino); Am. Compl. ¶ 95. At this point, the part-time position that Plaintiff held had been replaced by the new full-time

8

position, which was set to be filled by Dr. Palmer. *See also* **Exhibit I** (Goss Decl. ¶ 13, July 5, 2019); **Exhibit H** (Bower Decl. ¶ 19, July 5, 2019).

43. On April 20, 2018, the EEOC determined that Plaintiff's complaint was unfounded and dismissed the charge. **Exhibit JJ** (2018 04 20 EEOC Dismissal and Notice of Rights).

44. Sometime in August 2018, DoS OIG released a report titled "Management Assistance Report: Use of Confidentiality Agreements by a Department of State Contractor (the "Report"). **Exhibit KK** (2018 08 OIG Management Assistance Report).

45. On August 21, 2018, DoS emailed MSA referencing the DoS OIG's August 2018 Report and requesting that MSA modify or rescind its confidentiality agreements or else DoS "is at risk of violating the Anti-Deficiency Act." **Exhibit LL** (2018 08 21 DoS Letter to MSA).

46. On August 28, 2018, MSA responded to DoS's August 1, 2018 letter, acknowledging receipt and stating that MSA is taking immediate action to implement modifications. **Exhibit MM** (2018 08 28 MSA Letter to DoS).

47. On September 11, 2018, MSA sent a "Notice of Modification to All Employee Agreements" to "All MSA Security Employees" modifying the confidentiality provision of MSA's employee agreements. **Exhibit NN** (2018 09 11 MSA Letter to Employees).

48. On September 18, 2018, MSA sent a follow-up letter to DoS confirming that all MSA employee confidentiality agreements have been modified. **Exhibit OO** (2018 09 18 MSA Letter to DoS).

49. On November 29, 2018, Plaintiff continued to email with Ms. Morello at the Washington Post and Mr. Paredes at NBC Universal, and emailed Scott McFarlane at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009547, IOVINO_00009551, IOVINO_00009589-91.

50. On December 4, 2018, through December 5, 2018, Plaintiff continued to email with Ms. Morello at the Washington Post and Mr. McFarlane at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009556, IOVINO_00009602–03.

51. On December 6, 2018, through December 7, 2018, Plaintiff continued to email with Mr. McFarlane at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009556–57.

52. On December 10, 2018, Plaintiff continued to email with Ms. Morello at the Washington Post and Mr. McFarlane at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009550, IOVINO_00009558–59.

53. On December 12, 2018, through December 13, 2018, December 17, 2018, through December 20, 2018, December 26, 2018, January 1, 2019 through January 2, 2019, January 6, 2019, January 9, 2019, January 17, 2019, January 22, 2019 through January 23, 2019, January 28, 2019, through January 30, 2019 Plaintiff emailed with Mr. McFarlane and/or Katie Leslie at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009560–63, IOVINO_00009565–76, IOVINO_00009578–88, IOVINO_00009592, IOVINO_00009595.

54. On February 6, 2019, NBC Washington and the Washington Examiner posted articles about the DoS Contract, MSA, and the CVC. Plaintiff also appeared on NBC4 for a live TV interview about the information in the articles. NBC4 has repeatedly broadcast that video segment. **Exhibit PP** (2019 02 06 Washington Examiner article); **Exhibit QQ** (2019 02 06 NBC4 Article).

55. On February 8, 2019, February 11, 2019, and February 14, 2019, Plaintiff emailed with Mr. McFarlane and/or Katie Leslie at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009596–99.

56. On February 10, 2019, and February 13, 2019, Plaintiff emailed with Candace McCall (a former MSA veterinarian), encouraging her to go to the media (specifically, Mr. McFarlane) with information about the DoS Contract, MSA, and the CVC. **Exhibit RR** (2019 02 10 Email Thread with K. Iovino and C. McCall).

57. On March 5, 2019, Plaintiff emailed with Mr. McFarlane at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009600.

58. On March 7, 2019, Plaintiff emailed with Mr. McFarlane and/or Katie Leslie at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009555, IOVINO_00009600.

59. On March 11, 2019, Mike Larkin, a West Coast Sales Director for MSA, resigned and went to work for a competitor. Shortly thereafter, Mr. Larkin brought certain MSA business with him to the competitor, including, but not limited to, contracts with Delta Airlines and the San Francisco 49ers. **Exhibit SS** (2023 09 14 MSA's Responses and Objections to Plaintiff's 2nd Set of Interrogatories).

60. On April 8, 2019, Plaintiff emailed with Mr. McFarlane and/or Katie Leslie at NBC Universal regarding the DoS Contract, MSA, and the CVC. **Exhibit W** at IOVINO_00009555, IOVINO_00009601.

61. On October 30, 2019, DoS denied Plaintiff relief under 41 U.S.C. § 4712. **Exhibit D** at GAPKI_000570; Am. Compl. ¶ 104. After Plaintiff made her OIG complaint, OIG was required to investigate Plaintiff's complaints pursuant to 41 U.S.C. § 4712 and submit a report of its investigation. **Exhibit D** at GAPKI_000568. Once the report of investigation was submitted, it was sent to DoS to make a final determination as to "whether MSA had subjected [Plaintiff] to a reprisal prohibited by 41 U.S.C. § 4712 and, if so, to issue an order for remedial action." *Id.* DoS

reviewed the administrative record and determined that MSA did not subject Plaintiff to a reprisal and denied Plaintiff any relief. *Id.*

62. On March 31, 2021, the Government Accountability Project ("GAP") (Plaintiff's lawyers in this matter) posted an article discussing Plaintiff's claims, the DoS Contract, MSA, and the CVC. **Exhibit TT** (2021 03 31 GAP Article) and celebrating her bravery. GAP posted another article about Plaintiff and the fact that she "publicly disclosed" DoS information on their website on March 24, 2025. **Exhibit UU** (2025 03 24 GAP Article).

63. On February 25, 2022, Plaintiff submitted initial disclosures in this case admitting that she spoke with the media about the DoS Contract, MSA, and the CVC, and describing the emails discussed herein. **Exhibit VV** (2022 02 25 Plaintiff's Initial Disclosures).

64. On May 2, 2022, Plaintiff submitted verified answers to MSA's interrogatories admitting that she spoke with the media about the DoS Contract, MSA, and the CVC. **Exhibit WW** (2022 05 02 Plaintiff's Answers to Defendants First Set of Interrogatories).

65. On or about July 19, 2022, MSA terminated another veterinarian, Carolyn Olech, for, among other things, violating MSA's confidentiality agreement. **Exhibit XX** (MSA 30(b)(6) Dep. 102:1–5, Feb. 24, 2026). Kevin Dragnett, the deponent for MSA's 30(b)(6) deposition, stated that Dr. Olech was terminated for sending work emails to her personal email address. *Id.* Mr. Dragnett also recalled MSA terminating an employee in 2021 for violations of MSA's code of conduct, but more specifically for using confidential information for financial gain. *Id.* at 102:7–20. Mr. Dragnett stated the employee learned of a forthcoming change to the name and acronym of the DoS's CVC and, through a friend, purchased the new domain name before MSA could do so. *Id.*

12

66. On September 6, 2023, Plaintiff admitted in her deposition that she did not honor the terms of her confidentiality agreement because she spoke with the media about the DoS Contract, MSA, and the CVC. **Exhibit E** (Iovino Dep. 53:12–22, Sept. 6, 2023).

67. At first, Plaintiff stated that she first reached out to the media "in December of 2018" or "at the end of 2018" after she left MSA. *Id.* at 53:21–22, 54:1–9, 87:21–22, 88:1–9, 96:6–20. When asked if she waited to reach out to the media after finding out that the OIG "had made a finding that [the confidentiality agreement] was not enforceable," Plaintiff replied, "Absolutely." *Id.* at 54:6–9; *see also id.* at 170:1–21, 171:22, 172:1–4.

68. Plaintiff went to the media, in part, because she believed the OIG was not moving fast enough with investigating her claims. *Id.* at 66:21, 67:1–2, 97:1–10, 171:22, 172:1–4.

69. When shown the email threads between Plaintiff and various members of the media dating back to July 27, 2017 (well before the OIG Report was published and before Plaintiff's employment with MSA had ended), Plaintiff, rather than owning that she lied about the date that she first reached out to the media (in an attempt to say that she did not violate her confidentiality agreement) stated that the emails ***did not*** refresh her recollection. *Id.* at 202:3–22, 203:1–2. Plaintiff then deflected by saying that she "wasn't trying to be deceitful" and that counsel for MSA does not understand. *Id.* at 203:1–11.

70. After seeing the emails, Plaintiff was asked again if she "willingly violated the NDA" when reaching out to the media, to which Plaintiff replied, "Correct." *Id.* at 207:15–22.

71. Plaintiff admitted to sharing "MSA documents" with, at least, Mr. Paredes and Mr. MacFarlane, but could not remember what specific documents she shared. *Id.* at 100:14–21. She then added that she knew of sharing, at least, a photograph of a working dog and an email from Dr. Ratcliff regarding that working dog. *Id.* at 101:8–16.

13

72. Plaintiff states that the OIG (specifically, Zach Baumgart) was aware of her going to the media. *Id.* at 98:17–19.

73. Interestingly, OIG testified that they did not include this information in its investigative report even though "several MSA officials" corroborated Plaintiff's admissions, stating "that they had heard rumors [Plaintiff] threatened to go to the media." **Exhibit YY** (DoS OIG 30(b)(6) Dep. 86:13–25, 87:1–2, Jan. 9, 2026).

74. OIG knew that Plaintiff had taken DoS information to the media because Plaintiff told them she did but chose not to take that information into consideration when determining whether MSA had appropriately placed Plaintiff on administrative leave for threats of going to the media. *Compare* **Exhibit E** (Iovino Dep. 98:17–19, Sept. 6, 2023), *with* **Exhibit YY** (DoS OIG 30(b)(6) Dep. 86:13–25, 87:1–2, Jan. 9, 2026).

75. On January 10, 2024, counsel for MSA sent counsel for Plaintiff an email requesting to schedule depositions of Plaintiff's two expert witnesses and proposing potential dates. **Exhibit ZZ** (2024 01 09 Email Thread with D. Ward and T. Guyer). Plaintiff's counsel responded, stating they are "not going to agree to any deposition dates desired by MSA." *Id.*

76. On January 11, 2024, counsel for MSA sent counsel for Plaintiff two deposition notices to depose Plaintiff's experts, Jacqueline Garrick and A. Bentley Hankins. *Id.* Plaintiff's counsel responded, stating, "We do not control these witnesses and we are not going to take any responsibility to produce them." *Id.*

77. On October 31, 2025, Plaintiff provided responses to MSA's fourth set of requests for production of documents. **Exhibit AAA** (2025 10 31 Plaintiff's Responses to Defendant's 4th Set of Requests for Production of Documents). Here, Plaintiff admits that she, without authorization, took DoS documents and information from the CVC before leaving MSA. *Id.* Specifically, she

14

states that she "[p]reserved work-related communications and data (CVC phone lists, OPOT/ATA OCONUS deployment records)" and emailed them to her "personal account for preservation." *Id.*

78. On February 26, 2026, DoS appeared for its 30(b)(6) deposition, represented by Sharon James. **Exhibit K** (DoS 30(b)(6) Dep., Feb. 26, 2026). Ms. James stated that DoS "is not involved in employers' decisions with their employees" because "[c]ontractor personnel are not government employees." *Id.* at 32:18–20. She further stated that contractor employees are "employees of their respective company and not subject to the same rules, regulations as that of federal employees" and are therefore "subject to the terms and conditions of their employment contracts or agreements, as well as the terms and conditions of their employers' contract with the government." *Id.* at 32:21–25, 33:1.

                                                           Respectfully submitted,

March 16, 2026                                              */s/ Daniel S. Ward*

                                                        Daniel S. Ward (VSB 45978)
                                                        Ryan C. Berry (VSB 67956)
                                                        Chelsea A. Cruz (VSB 96177)
                                                        WARD & BERRY, PLLC
                                                        1751 Pinnacle Drive, Suite 900
                                                        Tysons, VA 22102
                                                        (202) 331-8160
                                                        (202) 505-7100 Fax
                                                        dan@wardberry.com
                                                        ryan@wardberry.com
                                                        chelsea@wardberry.com

                                                        *Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*