# EXHIBIT GG

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*

**Gerald Goss**
**January 30, 2026**

```
                                                    Page 1
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE WESTERN DISTRICT OF VIRGINIA

 3                   HARRISONBURG DIVISION

 4

 5                          Case No. 5:21-CV-00064-TTC

 6

 7

 8   **********************************

 9   KAREN IOVINO,

10              Plaintiff,

11   v.

12   MICHAEL STAPLETON ASSOCIATES, LTD,

13   d/b/a MSA SECURITY, INC.

14              Defendant.

15   **********************************

16

17              DEPOSITION OF: GERALD GOSS

18                 APPEARING REMOTELY FROM

19                   Tysons, Virginia

20         January 30, 2026        10:41 a.m.

21

22

23   By Kelly Berney

24   Guardian

25   APPEARING REMOTELY FROM MANATEE COUNTY, FLORIDA
```

**Gerald Goss**
**January 30, 2026**

```
                                                    Page 23
 1     relationship."

 2            A.    I considered, in 2017, that I knew Cathy Read

 3     professionally.

 4            Q.    So only professionally?

 5            A.    Yes, sir.

 6            Q.    Okay.  And do you recall Ms. Garcia -- when

 7     you called and you wanted to talk to Cathy Read, that

 8     Ms. Garcia said you should write it up, what you want to

 9     talk about?

10            A.    I don't recall exactly what we spoke about at

11     that time, but certainly I would have requested to make

12     such a call, as well as to others, given the circumstances.

13            Q.    Yeah.  But -- thank you so much.  What I'm

14     trying to get at is, you recall that you then -- you did

15     submit some sort of a written report for Cathy Read to

16     review regarding Ms. Iovino, correct?

17            A.    I actually submitted a report to Anna Garcia,

18     who is our COR, and we have responsibility to report to her

19     as well as the CO.  And the submission for Cathy Read was,

20     I think, more informational, to bring awareness type of

21     thing.

22            Q.    Okay.  And do you recall that you wrote that

23     report because Anna Garcia requested that you write that

24     report?

25            MR. WARD:  Objection:  Vague as to "report."  Don't
```

**Gerald Goss**
**January 30, 2026**

Page 24

```
 1    know what you're talking about here.
 2          MR. T. GUYER:  He knows.
 3          Q.    Go ahead.
 4          A.    So for clarification, the -- you're referring
 5    to the e-mail?
 6          Q.    Yeah, an e-mail.  That's right.
 7          A.    Okay.  Yes, sir.
 8          Q.    Okay.  And had -- do you know, as a regular
 9    business practice of yours, within the duties and scope of
10    your responsibilities, had Ms. Garcia not requested you to
11    submit that writing, would you have, in the normal course
12    of your business, submitted it anyway?
13          MR. WARD:  Objection:  Vague and calls for
14    speculation and compound.  Don't speculate.
15          Q.    Well, I don't want you to speculate.  My
16    question is very specific.  I want to know:  As a matter of
17    regular business practice within the scope of your
18    responsibilities at MSA in 2017, had Ms. Garcia not
19    requested you to submit a written report, would you have
20    submitted a written report anyway, in conformance with
21    regular business practices?
22          MR. WARD:  Same objection:  Vague, compound, calls
23    for speculation.  Don't speculate, but answer if you can do
24    it without speculating.
25          THE WITNESS:  Okay.
```

**Gerald Goss**
**January 30, 2026**

```
                                                      Page 60
 1    "regarding the whistleblowing" means.  It doesn't really

 2    coincide with the rest of the paragraph.  I mean, it looked

 3    like two separate topics to me.  Whistleblowing doesn't

 4    have a lot to do with an investigation or the topic of

 5    media disclosures and confidentiality information or

 6    otherwise.  So I'm not exactly sure what the topic around

 7    the topic of whistleblowing was, but it seems as though

 8    that particular -- those three words are a little bit

 9    misplaced for the context with the paragraph, unless --

10         Q.    Okay.  So --

11         A.    -- my memory's refreshed.  If my memory's

12    refreshed, then maybe I would feel otherwise.

13         Q.    Okay.  So let's take that phrase out and let's

14    just break it down.  Do you disagree with the rendition by

15    Mr. McDermott that, quote, Mr. Goss said he went to CVC the

16    next day or day after and talked with the program

17    management team at CVC and also checked the facility to see

18    if anything was missing from a security standpoint?  Do you

19    disagree with that statement?

20         A.    That seems correct, sir.

21         Q.    Okay.  And then last sentence, "He thought

22    they may have a rogue employee on their hands," do you

23    disagree with that statement?

24         A.    That sounds correct.  Yes, sir.

25         Q.    Next paragraph starting with "Mr. Goss noted
```