# EXHIBIT MM

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



IN THE BUSINESS OF BUSINESS AS USUAL™

NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | + 971-2-550-6760

August 28, 2018

By Electronic Transmission and Regular Mail

█████████████

Senior Contracting Officer
Worldwide Protective Services
Diplomatic Security Contracts Division
Office of Acquisitions Management
US Department of State

      Re: MSA Security Confidentiality Agreement
         US Dept of State Reference No: IDIQ SAQMMA16D0106

Dear ████████

This letter acknowledges your August 21, 2018 letter directing MSA Security ("MSA") to rescind or modify its employee confidentiality agreements to include an exception for reporting fraud, waste, or abuse to a designated investigative or law enforcement representative (the "Excluded Activities"), and further asks you to confirm the sufficiency of MSA's intended actions to comply with your directive.

MSA is prepared to immediately take action to clarify its original intention that its employee confidentiality requirements do not apply to the Excluded Activities. MSA has different employee agreements with various groups of its employees. In order take action on the broadest basis possible, MSA proposes to issue a blanket modification to all employee confidentiality requirements in any agreement MSA has with its employees. We intend to effect this by having an officer of the company, who is authorized to execute employee contracts, circulate an email to all employees attaching a signed Notice of Modification in the form attached as Exhibit A hereto. In the email transmission of this notice MSA would request that each employee acknowledge their receipt and acceptance of the modification by providing their electronic signature using the link provided in the transmission and would follow up in 15 days with an additional notice if the employee did not transmit an acknowledgement.

Additionally, we have modified the form of our At-Will Employment, Proprietary Information and Restrictive Covenant Agreement to be entered into by any future employees who will provide services under the Department of State contract IDIQ SAQMMA16D0106 to clarify that the Excluded Activities are not prohibited. A copy of this modified agreement, with the addition of a new Section 1.H., is attached hereto as Exhibit B.

We intend to implement the modification as described above on September 10, 2018. If you have any questions or concerns relating to the foregoing please contact me.

Sincerely,

Katie Brasfield
Contracts Officer, MSA Security

9 Murray Street, 2nd Floor, New York, NY 10007
Phone: 212.509.1336  Fax. 212.509.1372  Web: www.msasecurity.net

IOVINO_00000729

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



IN THE BUSINESS OF BUSINESS AS USUAL™

NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | + 971-2-550-6760

**Exhibit A**

<u>Notice of Modification to Employee Agreements</u>

From:        Michael Kennedy, Chief Financial Officer

To:          All MSA Security Employees

Date:        September 10, 2018

Re:          Modification to Employee Requirements Regarding Confidentiality

Effective immediately, any agreement between MSA Security and any of its employees which contains a provision which requires the employee to keep certain information confidential or otherwise restricts the employee's ability to disclose information (an "Employee Agreement") shall be modified and supplemented to include an additional paragraph which reflects the substance of the below paragraph providing an exception to any restriction on the disclosure of information contained in such Employee Agreement. All other terms of the Employee Agreement shall remain in full force and effect.

<u>Exception to Confidentiality Duty in Compliance with FAR sections 3.909-2 and 52.203-19.</u> The employee understands that nothing in this Agreement shall be construed to prohibit or restrict the employee from lawfully reporting fraud, waste, or abuse, related to the performance of a Government Contract to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information (e.g., agency Office of the Inspector General), including where such reporting requires the disclosure of Confidential Information. The employee further understands that the employee is under an affirmative duty to report fraud, waste, and abuse related to the performance of a Government Contract to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information. For purposes of this Agreement, a "Government Contract" means any mutually binding agreement for the provision of supplies and services where the ultimate recipient of the supplies or services is any agency or instrumentality of the United States Government. "Government Contract" includes subcontracts at any tier under a prime contract with the United States Government.

IOVINO_00000730

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



IN THE BUSINESS OF BUSINESS AS USUAL™

NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | + 971-2-550-6760

**Exhibit B**

## AT-WILL EMPLOYMENT,
## PROPRIETARY INFORMATION and
## RESTRICTIVE COVENANT AGREEMENT

In consideration and as a condition of my employment, or continuing employment, and the compensation paid or to be paid to me by Michael Stapleton Associates, Ltd. d/b/a MSA Security and/or by its related concerns or companies which it owns, controls, or is affiliated with, and all of their respective successors or assigns (the "**Company**"), I acknowledge that my services and responsibilities are of a particular and unique significance to the Company and that my position with the Company has given and/or will give me a close knowledge of its internal business practices, legal affairs, policies, research and development, customer lists, business practices, marketing policies and/or business and trade secrets, and therefore I agree as follows:

1.    **Confidentiality.**

   A.    [ HYPERLINK "https://www.lawinsider.com/usage/confidential-information/former-employer-information-clause-uses-in-confidentiality-agreement" \o "Click to see all Former Employer Information clauses" ]. I agree that (i) I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former employer or concurrent employer or any other third party; and (ii) I will not bring onto the premises of the Company any proprietary information or trade secrets belonging to any such former employer or concurrent employer or third party, unless such former employer or concurrent employer or third party gives its prior unconditional consent in writing and such written consent is submitted to the Company.

   B.    Third Party Confidences.  The Company's past, present and prospective clients, counterparties, creditors, vendors, partners, and service providers and trust the Company with certain responsibilities frequently with the expectation that the Company will hold all such matters, including in many cases the fact that they are doing business with the company and the specific matters on which they are doing business, in the strictest confidence ("**Third-Party Confidences**"). Therefore, I understand, acknowledge and agree that both during and after my employment with the Company I will hold and maintain all Third-Party Confidences in a fiduciary capacity and will not in any way disclose or use such information except as may be necessary in the good faith performance of my duties for the Company when authorized by the Company.

   C.    Definition of Confidential Information.   For the purposes of this Agreement, "**Confidential Information**" means any information, whether disclosed orally, in writing or otherwise, by the Company to me, or which I may produce, obtain or otherwise acquire during the course of my employment, relating to the Company's business, including but not limited to: trade secrets, business activities, products, processes, formulas, financial data, prices, pricing structure, discoveries, ideas, concepts, know-how, techniques, diagrams, flow charts, work product, data, training or promotional materials, contracts, internal communications, prospect lists, client agreements or specifications, client information (including identities, personal identifying information, preferences and financial information), client files, computer software, source code, technology, operations, solutions, tools, marketing and development plans, investors, transactions, acquisitions, marketing plans, strategies and forecasts and other technical or business information, regarding existing and/or contemplated products, processes, techniques or know-how, or any data or information developed by me

9 Murray Street, 2nd Floor, New York, NY 10007
Phone: 212.509.1336  Fax. 212.509.1372  Web: www.msasecurity.net

IOVINO_00000731
*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



IN THE BUSINESS OF BUSINESS AS USUAL™

pursuant to the performance of my services hereunder. The term "Confidential Information" also includes information of third parties that the Company is contractually bound to keep confidential. The term "Confidential Information" also includes the terms and conditions of this Agreement.

D.   Duty Not to Disclose. I understand, acknowledge and agree that the Company has a compelling business interest in preventing competition stemming from the unauthorized use or disclosure of Confidential Information. During the term of my employment, and for all times thereafter, I will treat as confidential and, except as required in the good faith performance of my employment duties and responsibilities, will not disclose, divulge, exploit, publish, use or otherwise make available to the public or to any individual, firm or entity any Confidential Information. I further agree that I will take all reasonable measures to protect the secrecy of, and avoid disclosure or use of, Confidential Information in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized hereunder to have any such information, which measures shall include the highest degree of care that I utilize to protect my own information of a similar nature. Moreover, I agree to be bound to any Company confidentiality agreements upon receipt/notification of same.

E.   Excluded Information. The term "Confidential Information" does not include information that I can document: (i) prior to the time of disclosure by me had become publicly available and generally known to the public, not as the direct or indirect result of any inaction or action by me or by any other person in violation of confidentiality obligations; (ii) is approved in advance by the Company for release; or (iii) I am required to disclose pursuant to a valid order of a court or other governmental body; provided, however, in connection with any such disclosure of Confidential Information under this subsection (iii) that I shall: (w) first have given written notice of such required disclosure to the Company, (x) provide the Company with a reasonable opportunity to interpose an objection or obtain a protective order requiring that the Confidential Information so disclosed be used only for the purposes for which the order was issued, (y) reasonably cooperate with the Company's efforts in connection with (x) above, and (z) minimize the extent of any such disclosure only to that which is absolutely required to be disclosed.

F.   Return of Confidential Information.   All Confidential Information, together with all notes and records relating thereto, and all copies, duplicates, reproductions, facsimiles or excerpts thereof in my possession, are the exclusive property of the Company. In the event of my termination of employment with the Company for any reason whatsoever, or at any time upon the Company's request, I agree to promptly surrender and deliver to the Company all records, materials, equipment, drawings and data of any nature pertaining to any Work Product (as defined below) or Confidential Information or to my employment other than contracts between me and the Company. I will not take with me any description containing or pertaining to any Confidential Information of the Company which I may produce or obtain during the course of my employment. Specifically, upon termination of my employment for any reason, I will, within twenty-four (24) hours, return any and all copies (in printed, taped, computer retrievable or other forms) of the foregoing nature to the Company, as well as all equipment, supplies, passwords, records and other property of the Company, plus my personal calendars, diaries and personal computers, if they contain any such confidential or proprietary information. The Company shall have a period of thirty (30) working days to delete any confidential or proprietary information found in my personal calendar, diary or computer(s) and return my personal property to me. The Company shall not be responsible for any damage caused to my personal property, unless such damage was caused intentionally or due to gross negligence. The removal of paper and/or loss of data or programs shall not be considered damage to personal property.

9 Murray Street, 2nd Floor, New York, NY 10007
Phone: 212.509.1336  Fax. 212.509.1372  Web: www.msasecurity.net

IOVINO_00000732

SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL



G.    Application and Immunity Under the Economic Espionage Act of 1996, as amended by the Defend Trade Secrets Act of 2016. I understand, acknowledge and agree that I have been advised that the unauthorized access, appropriation, copying, or possession of Confidential Information with the intent to use or convert such information for the economic benefit of any person or entity other than the Company could subject me to criminal liability under the Economic Espionage Act of 1996. However, notwithstanding any other provision of this Agreement, I understand that I will not be held criminally or civilly liable under any federal or state trade secret law for any disclosure of Confidential Information or a trade secret that is made: (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (ii) in a complaint or other document that is filed under seal in a lawsuit or other proceeding. I also understand that if I file a lawsuit for retaliation by the Company for my having reported a suspected violation of law, I may disclose the Company's Confidential Information or trade secrets to my attorney and use the Confidential Information or trade secret information in the court proceeding if I file any document containing the Confidential Information/trade secret under seal and do not disclose the trade secret, except pursuant to court order.

H.    Exception to Confidentiality Duty in Compliance with FAR sections 3.909-2 and 52.203-19. I understand that nothing in this Agreement shall be construed to prohibit or restrict me from lawfully reporting fraud, waste, or abuse, related to the performance of a Government Contract to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information (e.g., agency Office of the Inspector General), including where such reporting requires the disclosure of Confidential Information. I further understand that I am under an affirmative duty to report fraud, waste, and abuse related to the performance of a Government Contract to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information. For purposes of this Agreement a "Government Contract" means any mutually binding agreement for the provision of supplies and services where the ultimate recipient of the supplies or services is any agency or instrumentality of the United States Government. "Government Contract" includes subcontracts at any tier under a prime contract with the United States Government.

2.    **Proprietary Rights**.

A.    Work Product. All creations, inventions, ideas, discoveries, know-how, works of authorship, formulas, codes, methods, software, source code, techniques, processes, designs, concepts, improvements, enhancements and developments, in each case whether or not patentable or copyrightable or subject to similar protection, together with all patents, copyrightable materials and trademarks, and any related improvements, derivatives or modifications and other technologies, or innovations relating to any activities of the Company that are conceived or developed by me in the course of my employment or that relate to my employment with the Company, whether conceived alone or with others and whether or not conceived or developed during regular business hours, and if based on Confidential Information including whether conceived during or after the term of my employment (collectively, "Work Product") shall be the sole and exclusive property of the Company and, to the maximum extent permitted by applicable law, shall be deemed "works made for hire" as the term is used in the United States Copyright Act. The Company alone shall be entitled to all benefits, profits, inventions, discoveries and results arising from or incidental to my performance of services for the Company.

B.    Assignment of Rights. To the extent that any Work Product does not constitute a work made for hire, and I retain any right, title or interest with respect to any Work Product, I hereby, effective as of the date hereof, unconditionally and irrevocably transfer and assign to the Company all rights, title and interest I have or

IOVINO_00000733
*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*


IN THE BUSINESS OF BUSINESS AS USUAL™

NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | + 971-2-550-6760

may come to have, by operation of law or otherwise in or to any Work Product, including but not limited to all copyrights, patents, trademarks (the "Intellectual Property") in and to the Work Product, and any renewals, extensions, and/or continuations of the term of such Intellectual Property.  The above assignment shall include all causes of action in law or equity, including those for infringement of the Intellectual Property in and to any Work Product, whether now known or unknown to me or the Company,  and all rights to (i) to modify all or any portion of such Work Product, regardless of the medium (now or hereafter known) into which such Work Product may be modified and regardless of the effect of such modifications on the integrity of such Work Product, and (ii) to identify me, or not to identify me, as one or more authors of or contributors to such Work Product or any portion thereof, whether or not such Work Product or any portion thereof has been modified. .

      C.    <u>Further Assurances.</u> I will promptly inform the Company of any Work Product. I agree (whether during my employment or after the termination of my employment) to execute and deliver to the Company any transfers, assignments, documents or other instruments and do other such acts which the Company may deem necessary or appropriate to secure the Company's rights in the title and ownership of any Work Product, and all associated rights, exclusively in the Company, and to register such rights with government offices or agencies as the Company directs.  I hereby irrevocably appoint the Company and any of its officers as my attorney in fact to undertake such acts in my name.

      D.    <u>Moral Rights.</u>  To the extent, if any, that I retain any right, title or interest with respect to any Work Product that are delivered to the Company or relate to my employment with the Company, I further waive any "moral" rights, or other rights with respect to attribution of authorship or integrity of such Work Product that I may have under any applicable law, whether under copyright, trademark, unfair completion, defamation, right of privacy, contract, tort or other legal theory.

**3.    Non-Compete.**

During the period of employment and for a period of twelve (12) months following termination of employment, notwithstanding the cause or reason for the separation of service, I agree not to (a) undertake any employment or activity competitive with Company's business and/or its related entities in which the loyal and complete fulfillment of the duties of the competitive employment or activity would call on me to reveal, to make judgments on, or otherwise to use any trade secrets or Confidential Information; or (b) seek employment opportunities with a client or business partner of the Company.

**4.    Non-Solicitation.**

I understand, acknowledge and agree that (i) all of the Company's clients I come into contact with while employed by the Company are doing business with the Company and not me personally, (ii) in the course of dealing with clients, the Company established goodwill with respect to each Client that is created and maintained at the Company's expense and (iii) by virtue of my engagement with the Company I have gained or will gain knowledge of the business needs and other information concerning clients and of the Company's plans and approaches for serving them and that I would inevitably have to draw on were I to solicit or service any of the clients on my own behalf or on behalf of a competitor. In order to protect the Company's Confidential Information and goodwill, during my employment and for a period of eighteen (18) months following the termination of my employment for any reason, I will not or assist others to, in any way, directly or indirectly, take any of the following actions, and to the extent

9 Murray Street, 2ⁿᵈ Floor, New York, NY 10007
Phone: 212.509.1336  Fax. 212.509.1372  Web: www.msasecurity.net

IOVINO_00000734

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



IN THE BUSINESS OF BUSINESS AS USUAL™

NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | + 971-2-550-6760

that I own, manage, operate, control, am employed by or participate in the ownership, management, operation or control of, or am connected in any manner with, any business of the type and character engaged in or competitive with the business of the Company or any of its subsidiaries or affiliates during the period of my employment, I will use my best efforts to ensure that such business does not take any of the following actions:

     a.    In any way attempt to interfere with the Company's contractual or business relationship with any of the Company's clients or vendors including persuading or attempting to persuade any client or vendor of the Company to cease doing business with the Company, or to reduce the amount of business it does with the Company, or attempt to divert or take away from the Company the business of any client or prospective client;

     b.    Solicit or service the business of any client of the Company or any individual that was a client of the Company within six (6) months prior to the termination of my employment (except this restriction will not apply to those clients with which I had a pre-existing professional relationship prior to the commencement of my employment with the Company);

     c.    In any way attempt to interfere with the Company's contractual or employment relations with any of its employees or independent contractors including persuading or attempting to persuade any employee of or consultant to the Company to sever or reduce its relationship with the Company; or

     d.    Solicit, engage or hire any employee of or consultant to the Company or any individual that was an employee of or the consultant to the Company within six (6) months prior to the termination of my employment.

In the event that I violate any provision of this Section 4 then the restrictions set forth in this Section 4 shall be extended for a period of 12 months from the date of such violation (including violations during any extension period).

**5.**     **Conflicts of Interest/No Conflicting Employment.**

     a.    In order to safeguard the activities and assets of the Company, I agree that during my employment with the Company I will not engage in any other employment, occupation, consulting or other activity or maintain an Interest in an Outside Business. An "Outside Business" includes any person, firm, corporation or government agency that sells or provides a service to, purchases from, or competes with the Company. An "Interest" in an Outside business includes me or a member of my immediate family holding an ownership interest in said business or its property, furnishing goods or services to said business, or being a creditor, employee, agent, officer, director, or consultant of said business.

     b.    Furthermore, I agree that during my employment, I will refrain from engaging in activities outside the scope of my employment if such activities would detract from or interfere with the fulfillment of my responsibilities as an employee of the Company.

**6.**     **Ethical Standards**

I understand that the Company expects its employees to observe the highest standards of business ethics, and agree that I will not take any action on behalf of the Company that I know, or reasonably should

IOVINO_00000735

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



know, violates any applicable law or regulation, including but not limited to bribery, kickbacks, falsehoods and misrepresentation.

**7.      Company Property.**

I acknowledge that all equipment and other assets owned or leased by the Company, for use in aiding me in my performance of duties as employed, are the sole property of the Company and agree that such equipment is for the sole use of performing these duties and may not be used for personal gain or advantage unless otherwise instructed.  In the event of my termination of employment with the Company for any reason whatsoever, or at any time upon the Company's request, I agree to promptly surrender and deliver to the Company all cell phones, computer or electronic equipment, reports, files, memoranda, records and software, credit cards, cardkey passes, door and file keys, computer access codes or disks, instructional material, and other physical or personal property which I receive or prepare in connection with my employment with the Company.

**8.      Maintenance of Records & Preservation of Data.**

I agree to keep and maintain adequate and current written records applicable to Company business, which records shall be available to and remain the sole property of the Company at all times. I agree to take all reasonable steps to preserve materials and data (including Confidential Information) provided by the Company or created by me in connection with this Agreement for the benefit of the Company, including, without limitation, maintaining password protections, ensuring that all data is backed up, complying with the Company's policies and procedures with respect to electronic data and systems, and ensuring that the Company's authorized representatives have reasonable access to all material prepared or used in connection with this Agreement.

**9.      Reasonableness of Restrictions.**

I agree and acknowledge that the provisions and the restrictions contained in this Agreement are fair and reasonable in all respects and are reasonably required for the protection of the proprietary information of the Company and the goodwill associated with the Company.  I hereby further acknowledge that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought.  If any tribunal having jurisdiction determines that any of the provisions herein, or any part thereof, is invalid, unreasonable or unenforceable, such tribunal shall have the power to reduce the scope of such provision so that such restrictions may be enforced to the fullest extent of the law.  If any particular provision, or part thereof, shall be adjudicated to be prohibited, invalid or unenforceable, such that it cannot be amended to be enforceable, then such provision shall be deemed null and void, but shall not invalidate or render unenforceable any other provision contained within this Agreement.

**10.      Employment-At-Will**

I understand that my employment with the Company is at will and not for any specific duration and nothing in this Agreement shall be construed to create anything other than an at-will employment relationship between me and the Company, which may be terminated at any time by either me or the Company, with or without cause or notice.

IOVINO_00000736

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



IN THE BUSINESS OF BUSINESS AS USUAL™

NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | + 971-2-550-6760

**11.    Injunctive Relief & Damages.**

I acknowledge that any violation of this Agreement will cause the Company immediate and irreparable harm and that the damages which the Company may suffer may be difficult or impossible to measure. Therefore, upon any actual or impending violation of this Agreement, the Company shall be entitled to immediate interim equitable relief (including without limitation the issuance of an *ex parte* restraining order and a preliminary and permanent injunction), without the necessity of showing actual damages or posting a bond, from a court of competent jurisdiction or pursuant to the dispute resolution procedures provided for in this Agreement, at the election of the party seeking equitable relief, restraining or enjoining such violation by me or any entity or person acting in concert with me, and the Company has the right to request that I account for, and pay over to the Company, all compensation, profits, monies, accruals, increments or other benefits (collectively, "Benefits") derived or received by me as the result of any transactions constituting a breach of any of the provisions of this paragraph and I hereby agree to account for and pay over such Benefits to the Company.  Such remedies shall be in addition to and not in limitation of any other remedy or other claim which may otherwise be available to the Company.

**12.    Governing Law.**

I understand and agree that this Agreement, and all matters or disputes relating to the validity, construction, performance or enforcement hereof, and all matters relating to the Company's employment of me, shall be governed and construed under the laws of the State of New York.

**13.    Dispute Resolution.**

I understand and agree that any dispute involving my employment with the Company, the hiring of me to work for the Company, my termination from employment from the Company or the interpretation or application of this Agreement (other than a claim for unemployment or worker's compensation insurance) shall be resolved by final and binding arbitration before one arbitrator designated by the American Arbitration Association ("AAA"), pursuant to the then prevailing rules of the AAA for the resolution of employment disputes, in New York County, New York or the AAA office closest to my primary residence, whose decision shall be final and binding and subject to confirmation in a court of competent jurisdiction.  This shall include, but not be limited to, disputes concerning workplace discrimination, wage and/or overtime claims and/or all other statutory claims.  I further understand and agree that pursuant to this Arbitration Agreement, I cannot participate in a representative capacity or as a member of any class of claims pertaining to any claim subject to Dispute Resolution provision in this Agreement.  There is no right or authority for any claims subject to this Dispute Resolution provision to be arbitrated on a class or collective action basis or on any basis involving claims brought in a purported representative capacity on behalf of any other person or group of people similarly situated. Such claims are prohibited.  Furthermore, claims brought by or against either me or the Company may not be joined or consolidated in the arbitration with claims brought by or against any other person or entity unless otherwise agreed to in writing by all parties involved.  Any arbitration hereunder shall be conducted in a manner that is intended to preserve the confidentiality of the proceedings and to prevent disclosure of any information concerning the dispute, controversy or claim to the public, the media or any other persons other than the AAA staff, the arbitrator(s), the parties and their counsel, experts and witnesses (the "Arbitration Participants").  The arbitration and all materials exchanged between the parties and/or

IOVINO_00000737
*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | +971-2-550-6760

IN THE BUSINESS OF BUSINESS AS USUAL™

submitted to the arbitrator(s), the award resulting therefrom and the existence of the dispute, controversy or claim submitted to arbitration shall be kept confidential by the Arbitration Participants and not disclosed to the public, the media or anyone other than an Arbitration Participant. Nothing in this paragraph shall preclude the Company from seeking injunctive relief in a New York court of competent jurisdiction in the event of a breach or threatened breach of this Agreement as provided for in paragraph 11 of this Agreement.

**14.    Warranty.**

I represent and warrant to the Company that I am not under any obligation of a contractual or other nature to any person, firm or corporation which is inconsistent or in conflict with this Agreement, or which could prevent, limit or impair in any way the performance by me of my obligations hereunder. Further, I give permission for the Company to advise any future employer or others that I may perform services for that I am bound by this Agreement.

**15.    Modification.**

I understand that this Agreement and/or the provisions hereof may not be changed, modified, released, discharged, abandoned, or otherwise amended, in whole or in part, except by an instrument in writing, signed by me and the Company. I agree that any subsequent change or changes in my duties, title, salary or compensation shall not affect the validity or scope of this Agreement.

**16.    Entire Agreement.**

I acknowledge receipt of this Agreement and agree that with respect to the subject matter hereof, it is my entire agreement with the Company, superseding any previous oral or written communications, representations, understanding, or agreements with the Company or any officer or representative thereof. I have not relied upon any statement or representations by the Company or its agents other than as stated herein.

**17.    Successors and Assigns.**

This Agreement shall be binding upon my heirs, executors, administrators or other legal representatives and is for the benefit of the Company, its successors and assigns.

**18.    Waiver.**

Waiver by the Company of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

**19.    Survival.**

The provisions of this Agreement that should by their nature survive termination of my employment shall survive such termination.

*          *          *

9 Murray Street, 2nd Floor, New York, NY 10007
Phone: 212.509.1336 Fax. 212.509.1372 Web: www.msasecurity.net

IOVINO_00000738

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



IN THE BUSINESS OF BUSINESS AS USUAL™

NATIONAL CAPITAL REGION | 703-391-6014

NEW YORK | 212-509-1336

BOSTON | 617-438-0521

MIDDLE EAST | + 971-2-550-6760

9 Murray Street, 2nd Floor, New York, NY 10007
Phone: 212.509.1336  Fax. 212.509.1372  Web: www.msasecurity.net

IOVINO_00000739

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*



NATIONAL CAPITAL REGION | 703-391-6014
NEW YORK | 212-509-1336
BOSTON | 617-438-0521
MIDDLE EAST | + 971-2-550-6760

IN THE BUSINESS OF BUSINESS AS USUAL™

Please indicate your acceptance and agreement to be bound by the terms and conditions of the Agreement by signing and dating below.

**I ACKNOWLEDGE THAT I HAVE BEEN GIVEN AN OPPORTUNITY TO READ THIS AGREEMENT AND ASK QUESTIONS CONCERNING ITS CONTENT OR MEANING TO THE COMPANY AND/OR TO OUTSIDE COUNSEL OF MY CHOICE. I HAVE BEEN GIVEN A COPY OF THIS AGREEMENT. I UNDERSTAND THAT IS IT A LEGALLY BINDING AGREEMENT AND BY EXECUTING IT I AGREE TO COMPLY WITH AND BE BOUND BY ALL OF ITS TERMS AND CONDITIONS INCLUDING WITHOUT LIMITATION ALL OF THE RESTRICTIONS IMPOSED ON ME AND THE RIGHTS PROVIDED TO THE COMPANY. I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ALL OF ITS TERMS, AND KNOWINGLY AND VOLUNTARILY AGREE TO BE BOUND BY ITS TERMS AND CONDITIONS.**

Accepted and Agreed:

Employee Name _____   _____   _____
                        Print                        Signature              Date

IOVINO_00000740

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*