# EXHIBIT YY

*SUBJECT TO PROTECTIVE ORDER (PO) - PO CONFIDENTIAL*

**30(b)(6) Jeffrey McDermott**
**January 9, 2026**

```
                                                              Page 1
 1               IN THE UNITED STATES DISTRICT COURT

 2              FOR THE WESTERN DISTRICT OF VIRGINIA

 3                     HARRISONBURG DIVISION

 4

 5                                 Case No. 5:21-CV-00064-TTC

 6                                 Dated: December 31, 2025

 7

 8   **********************************

 9   KAREN IOVINO,

10              Plaintiff,

11   v.

12   MICHAEL STAPLETON ASSOCIATES, LTD,

13   d/b/a MSA SECURITY, INC.

14              Defendant.

15   **********************************

16
                 30(b)(6) DEPOSITION OF: THE DEPARTMENT OF STATE
17                         OFFICE OF INSPECTOR GENERAL

18                         BY: JEFFREY MCDERMOTT
                           APPEARING REMOTELY FROM
19                            Arlington, Virginia
                       January 9, 2026      9:04 a.m.
20

21

22

23   By Daniel Kramer

24   Guardian

25   APPEARING REMOTELY FROM LANCASTER COUNTY, PENNSYLVANIA
```

**30(b)(6) Jeffrey McDermott**
**January 9, 2026**

```
                                                         Page 86
 1         Q.    -- but also the media disclosures that Dr.
 2   Iovino was threatening to make?
 3         A.    Yes.
 4         Q.    Okay.  Thank you.  And then you said -- one
 5   second.  And then -- okay.  So after the first sentence,
 6   the second sentence, blah, blah, blah.  Can you read the
 7   third sentence too, "Mr. Goss heard"?
 8         A.    "Mr. Goss heard from a kennel technician that
 9   Dr. Iovino had e-mailed concerns directly to people outside
10   her chain of command, including officials at the
11   department, including an AQM and OIG, and also heard that
12   she planned to talk about her concerns with the media."
13         Q.    Okay.  So earlier you had testified that you
14   weren't aware of Dr. Iovino going to the media with any
15   department information.  Taking this into consideration, is
16   that still correct?
17         A.    So the -- at the time that she filed her
18   complaint with our office, I had no information that she
19   had -- we had no evidence that she had gone to the media
20   with her complaints or allegations.
21         Q.    Okay.  But you did learn about it through the
22   investigation if it's in your report, correct?
23         A.    We heard that -- we -- several MSA officials
24   told us that they heard rumors that she had threatened to
25   go to the media.  But as we say in the report, they -- MSA
```

**30(b)(6) Jeffrey McDermott**
**January 9, 2026**

```
                                                          Page 87
 1   never conducted a formal investigation as to whether that,
 2   you know, was accurate or not.
 3        Q.    Well, they do say in the report that they --
 4   let me go back to that.  What did that just say?  You're
 5   saying nobody ever told you that MSA was investigating
 6   that?
 7        A.    Let me -- let's see.
 8        Q.    Go down -- let's look at the last paragraph of
 9   that same page and read the first few sentences there.
10        A.    Just give me one second, please.
11        Q.    No, that's fine.  Take your time.
12        A.    So MSA did conduct an investigation as to
13   looking at Dr. Iovino's e-mails, but they did not
14   investigate the allegations that she had threatened to go
15   to the media.
16        Q.    Okay.  I'm going to -- can you read the first
17   three sentences of the last paragraph?  "Mr. Goss had no
18   direct knowledge," and that's on 000142, the top Bates
19   stamp 000142.  The bottom one is Iovino 163.
20        A.    All right.  So what sentence do you want me to
21   read?
22        Q.    Where it says, "Mr. Goss has no direct
23   knowledge," that paragraph.  Read the first three
24   sentences.
25        A.    "Mr. Goss has no direct knowledge of the
```