CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 31, 2026

LAURA A. AUSTIN, CLERK
BY: s/ K. SAVILLE
       DEPUTY CLERK

**IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF VIRGINIA HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **KAREN IOVINO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:21-CV-00064-TTC-CKM** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **JOINT STATUS REPORT** |
| **d/b/a MSA SECURITY, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff Karen Iovino ("Iovino") and Defendant Michael Stapleton Associates, Ltd., d/b/a

MSA Security, Inc. ("MSA"), and the U.S. Department of State ("the Department"), by and

through undersigned counsel, hereby submit their Joint Status Report pursuant to this Court's

March 24, 2026 Order (via email from Judge Memmer's chambers).

1. On February 24, 2026, Iovino's counsel sent MSA and the Department a "courtesy
   copy of a subpoena duces tecum to the U.S. Department of State concerning
   investigation findings from Zach Baumgart (DOS OIG) related to Dr. Iovino's case."
   **Exhibit 1** (02/24/26 Email From K. Berg). Plaintiff's counsel stated that the subpoena
   "will be served to the Department of State's Office of the Executive Secretariat." *Id.*

2. On February 27, 2026, the Department requested that counsel for Iovino withdraw the
   subpoena. **Exhibit 2** (03/18/26 Email Thread Between K. Frith and S. Ayers).

3. On March 18, 2026, Iovino's counsel responded to the Department's February 27, 2026
   email requesting an update. *Id.*

4. That same day, on March 18, 2026, the Department responded to Iovino's counsel,
   stating that the Department had taken Iovino's silence as a withdrawal of the subpoena.
   *Id.*

1

5.  The deadline to complete discovery in this case was March 3, 2026. ECF 17.

**Plaintiff's Position:**

Plaintiff's subpoena for documents and testimony, served on the Department of State on February 24, 2026, was timely, as the requested production deadline of March 3, 2026, fell within the discovery period. Counsel for Plaintiff conferred with the government. The requested information is relevant to the issues of this case and are not available from any other source. Were it not for the bureaucratic obstacles of the *Touhy* process, the subpoenaed discovery would have been completed. Plaintiff will be prejudiced if the discovery is denied.

**MSA's Position:**

Discovery in this case closed on March 3, 2026. MSA filed its Motion for Summary Judgment on March 16, 2026. Plaintiff filed her Motion for Summary Judgment on March 17, 2026. Oppositions to those motions are due on March 30, 2026, and March 31, 2026. The Court set a hearing on the motions for summary judgment on May 1, 2026. Trial is scheduled for June 1-5 and 8-12, 2026. Reopening the discovery in this case will not only disrupt all these upcoming deadlines, but it could also impact the motions for summary judgment that both parties filed under the impression that discovery was closed.

Plaintiff has known that Zach Baumgart was the investigator on her OIG complaints for years. Indeed, Plaintiff testified in her September 6, 2023 deposition that Zach Baumgart was the "lead investigator" on her "numerous IG investigations." **Exhibit 3** (Iovino Dep. 97:1, 16 (Sept. 6, 2023)). Further, on May 24, 2022, during the discovery period in this case (when it was open), *Plaintiff produced to MSA* an April 2019 Affidavit from Zach Baumgart (Bates Nos. GAPKI_001469 – GAPKI_001470) detailing Mr. Baumgart's involvement with other OIG investigations. **Exhibit 4** (04/23/19 Baumgart Affidavit). Plaintiff chose to wait until days before

2

the discovery period in this case ended to issue a subpoena (albeit to the wrong entity) requesting more information on an issue Plaintiff had known about since, at the latest, 2019. Plaintiff's delay in litigating her own case is not prejudicial to Plaintiff. It is, however, prejudicial to MSA, which is preparing for and anticipating a motion for summary judgment hearing and trial.

**The Department's Position:**

On February 24, 2026, Plaintiff issued a subpoena duces tecum to Sharon James, an employee of the Department, who was designated as the Department's 30(b)(6) witness. *See* Exhibit 1. The subpoena sought production of the following:

> All findings, reports, recommendations, and summaries, resulting from investigations involving Zachary Baumgart, Assistant Special Agent-in-Charge, (OIG), State Department, concerning the complaint filed by Karen Iovino, operations at the CVC, EDC detection failures, and the effect of the civil action by MSA against Karen Iovino on witnesses via deposition or email by March 3, 2026

*Id.* The email containing the subpoena had a "rider" to the subpoena listing five areas of document requests. *Id.* The email also stated the subpoena would be served on the Department of State's Office of the Executive Secretariat. *Id.*

On February 25, 2026, AUSA Frith spoke with Stephani Ayers regarding the subpoena. AUSA Frith explained that the subpoena was issued to the wrong agency as it sought documents from Department of State Office of Inspector General (OIG) but was issued to a Department of State employee. Further, AUSA Frith pointed out that the request was quite cumbersome, particularly considering the impending discovery deadline. AUSA Frith and Ms. Ayers discussed further what Plaintiff was looking for with the subpoena and AUSA Frith agreed to discuss the matter with OIG and follow-up with Plaintiff's counsel.

AUSA Frith then followed-up via email on February 27, 2026, requesting Plaintiff withdraw the subpoena. *See* Exhibit 2. AUSA Frith outlined several issues with the subpoena: (1)

it was not sent to the correct agency; (2) there was no *Touhy* request; (3) the request was very belated as it sought information Plaintiff could have requested years ago instead of less than a week before the close of discovery; and (4) the information did not appear to be relevant and appeared to be subject to a protective order (ECF No. 239). *Id.*

On March 18, 2026, Plaintiff's counsel responded to AUSA Frith's February 27 email seeking compliance with the subpoena. *Id.* AUSA Frith responded the same day again requesting withdrawal of the subpoena for the reasons outlined in the February 27 email. *Id.*

The *Touhy* process for the Department of State and OIG has been well-litigated in this case. The case has been in discovery since 2022, and AUSA Frith first filed a Notice of Appearance on behalf of the Department on September 29, 2022. ECF No. 60. Plaintiff understands that the Department of State and OIG are separate entities, and that serving the Department with a request for the OIG is improper. Indeed, in a June 2025 letter from the Department to Plaintiff, the Department explained:

> The Department's *Touhy* regulations require service of a *Touhy* request upon the Department, through the Executive Office of the Office of the Legal Adviser. 22 C.F.R. § 172.2. OIG, however, is an independent entity from the Department, so that it can execute its directive to provide independent oversight of the Department. Accordingly, it is improper to treat the Department and OIG as a single entity. You seem to recognize this by serving separate Rule 30(b)(6) notices to the Department and OIG, but you nonetheless served them together, in the same package, only to the Department.

(**Exhibit 5** at 2, June 16, 2025 Letter from Department of State to Plaintiff's Counsel.) The letter goes on to explain that, in that circumstance, the OIG authorized the Department to accept service of the *Touhy* request on behalf of the OIG, but then stated, "[m]oving forward, the Department and OIG request that you communicate with each entity independently." *Id*. Plaintiff did so, while coordinating the various depositions in this litigation, including a Rule 30(b)(6) deposition for a Department employee and a Rule 30(b)(6) deposition for an OIG employee.

Further, Plaintiff's delay here is inexplicable. The impetus for Plaintiff's subpoena is an OIG investigation, that Plaintiff apparently knew about since at least April 2019. *See* Topic 5 of Rider (identifying an Affidavit of Zachary Baumgart dated April 23, 2019). Despite this, Plaintiff waited until seven days before a four-year discovery period ended to request documents from OIG related to the April 2019 investigation. This alone is a basis for quashing the subpoena.

Most importantly, however, Plaintiff did not issue the subpoena to the correct entity and has not submitted a *Touhy* request to the OIG. Nearly a month after being reminded of this obligation, Plaintiff has still not sent a *Touhy* request explaining the relevance of the information sought to the pending litigation. Failure to comply with the *Touhy* process requires quashing the subpoena as the Court has repeatedly required Plaintiff's compliance with the applicable *Touhy* regulations.

Respectfully submitted,

Date: March 26, 2026

*/s/ Thad M. Guyer*

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street
P.O. Box 1061
Medford, OR 97501
(202) 417-3910
thad@guyerayers.com

*Attorney for Plaintiff Karen Iovino*

Date: March 26, 2026

*/s/ Chelsea A. Cruz*

Chelsea A. Cruz (VSB 96177)
Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton
Associates, Ltd., d/b/a MSA Security, Inc.*

Date: March 26, 2026

*/s/ Krista Consiglio Frith*

Krista Consiglio Frith
Assistant United States Attorney
P.O. Box 1709
Roanoke, VA 24008
(540) 857-2250
Krista.frith@usdoj.gov

*Attorney for the U.S. Department of State*

6

**Wednesday, March 25, 2026 at 3:56:48 PM Eastern Daylight Time**

---

**Subject:** [EXTERNAL] Iovino v. MSA/Subpoena to DOS

**Date:** Tuesday, February 24, 2026 at 12:56:31 AM Eastern Standard Time

**From:** Kristin Berg

**To:** Greenstein, Jaclyn D, Frith, Krista (USAVAW), Daniel Ward, Chelsea Cruz

**CC:** Stephani Ayers, Jack Kolar, Thad Guyer, Marianne Fichtel, karenvet93@gmail.com, Jared Guyer, Legal1Up Project Management, Michel Salas, Nate Adams

**Attachments:** Subpoena_DOS_Sharon James.pdf, Rider to Subpoena.pdf

All,

Attached please find a courtesy copy of a subpoena duces tecum to the U.S. Department of State concerning investigation findings from Zach Baumgart (DOS OIG) related to Dr. Iovino's case.

Documents are requested to be provided at the DOS 30(b)(6) deposition on February 26, 2026, or via email by the March 3, 2026, discovery deadline.

It will be served to the Department of State's Office of the Executive Secretariat.

Best regards,

**Kristin Berg**
*Paralegal*
Government Accountability Project
1612 K St., NW, Suite 808
Washington, DC 20006
Main Office Number: (202) 457-0034
My Direct Line: (202) 449-6040
E-mail: Kristinb@whistleblower.org
Website: http://www.whistleblower.org
Pronouns: she/her/hers

1 of 1

**Wednesday, March 25, 2026 at 3:57:10 PM Eastern Daylight Time**

**Subject:** RE: Iovino v. MSA/Subpoena to DOS

**Date:** Wednesday, March 18, 2026 at 12:59:22 PM Eastern Daylight Time

**From:** Frith, Krista (USAVAW)

**To:** Stephani Ayers

**CC:** Kristin Berg, Daniel Ward, Chelsea Cruz, Jack Kolar, T. M. Guyer and Ayers & Friends PC

Stephani:

No, I have not heard from anyone in response to my February 27 email. I took the silence as a withdrawal of the subpoena, particularly considering the discovery deadline has long since passed. If you are not withdrawing the subpoena, then let me know by the end of the day so that I can contact Judge Memmer's chambers to get this issue resolved.

I understand the intent, but these issues were addressed as to how to properly handle these types of requests quite a while ago in this case, and I emphasize my concern that the request is quite belated at this point in the litigation.

DOS and DOS OIG are indeed separate entities, which has been well established during the life of this litigation. A DOS employee is not a DOS OIG employee and does not have access to DOS OIG documents or reports. DOS and DOS OIG also have separate Touhy regulations. I explained this on our phone call after the deposition on February 25, 2026.

With respect to your question on the court order, Judge Memmer prohibited discovery regarding the non-suited Virginia State Court Litigation. Specifically, Judge Memmer held: "[T]he parties are prohibited from questioning deponents or seeking further discovery about the filing of the Virginia State Court Litigation or communications between MSA, DoS, and/or SoS OIG regarding MSA's submission of the complaints and summons in the Virginia State Court Litigation." ECF No. 239 at 10. The subpoena requests "[a]ll findings, reports memoranda, analyses, or conclusions by Zachary Baumgart or OIG concerning whether the civil action filed by Michael Stapleton Associates against Dr. Karen Iovino in Arlington County Circuit Court (Virginia) had a chilling effect on witnesses or potential witnesses in the related OIG investigation, including any materials referenced in or related to the Affidavit of Zachary Baumgart dated April 23, 2019." Thus, the subpoena requests information for which the court has issued a protective order.

As to your last question on "whether the report exists," the subpoena does not suggest that you are seeking a single report, but instead seeks documents and reports on a variety of topics, so we are unable to answer this question.

I look forward to your response by the end of the day as to whether you are withdrawing this subpoena.

1 of 4

Thanks,
Krista

---

**From:** Stephani Ayers <Stephania@whistleblower.org>
**Sent:** Wednesday, March 18, 2026 7:53 AM
**To:** Frith, Krista (USAVAW) <Krista.Frith@usdoj.gov>
**Cc:** Kristin Berg <kristinb@whistleblower.org>
**Subject:** [EXTERNAL] Re: Iovino v. MSA/Subpoena to DOS

Hi Krista:

Did someone speak to you about this?

Thank you for sharing your concerns with us.  Just to reassure you, it definitely was not my intent to bother an employee but rather that she was a witness with which  we had a connection.

My understanding is the OIG is part of DOS.  Are you representing that a DOS employee cannot see OIG reports and/or are you representing DOS generally doesn't  have access to the final reports?

What do you think is the violation of order?

Can you confirm whether someone has simply looked to see whether this report exists and is accessible ?

Stephani

---

**From:** Frith, Krista (USAVAW) <Krista.Frith@usdoj.gov>
**Sent:** Friday, February 27, 2026 2:24 PM
**To:** Kristin Berg <kristinb@whistleblower.org>; Greenstein, Jaclyn D <greensteinjd@state.gov>; Daniel Ward <dan@wardberry.com>; Chelsea Cruz <chelsea@wardberry.com>
**Cc:** Stephani Ayers <Stephania@whistleblower.org>; Jack Kolar <jackk@whistleblower.org>; Thad Guyer <thad@guyerayers.com>; Marianne Fichtel <mariannef@whistleblower.org>; karenvet93@gmail.com <karenvet93@gmail.com>; Jared Guyer <JaredG@whistleblower.org>; Legal1Up Project Management <projects@legal1up.com>; Michel Salas <mich@legal1up.com>; Nate Adams <nadams@nadamslaw.com>
**Subject:** RE: Iovino v. MSA/Subpoena to DOS

Hi Kristen and Stephani,

As a follow-up to this subpoena, we are asking for Plaintiff to withdraw it for several reasons.

First, the subpoena is not sent to the correct agency. The subpoena seeks documents from DOS OIG, but it is sent to a DOS employee.

Second, you indicate that the subpoena was sent to DOS, but even if that were the right agency, there needs to be a Touhy request in accordance with the regulations in addition to any subpoena.

Third, the request is very belated. It was sent on Tuesday, less than a week before the close of discovery in this case, seeking information on topics that Plaintiff appears to have known about for several years and could have been included in the original Touhy request to OIG.

Last, we note that the information does not seem relevant and appears to seek information that Judge Memmer issued a protective order on (ECF No. 239).

I am out of the office on Monday and Tuesday with no availability, but if we need to raise the issue with Judge Memmer, perhaps we can do that Wednesday.

Thanks,

Krista

---

**From:** Kristin Berg <kristinb@whistleblower.org>
**Sent:** Tuesday, February 24, 2026 12:57 AM
**To:** Greenstein, Jaclyn D <greensteinjd@state.gov>; Frith, Krista (USAVAW) <Krista.Frith@usdoj.gov>; Daniel Ward <dan@wardberry.com>; Chelsea Cruz <chelsea@wardberry.com>
**Cc:** Stephani Ayers <Stephania@whistleblower.org>; Jack Kolar <jackk@whistleblower.org>; Thad Guyer <thad@guyerayers.com>; Marianne Fichtel <mariannef@whistleblower.org>; karenvet93@gmail.com; Jared Guyer <JaredG@whistleblower.org>; Legal1Up Project Management <projects@legal1up.com>; Michel Salas <mich@legal1up.com>; Nate Adams <nadams@nadamslaw.com>

3 of 4

**Subject:** [EXTERNAL] Iovino v. MSA/Subpoena to DOS

4 of 4

All,

Attached please find a courtesy copy of a subpoena duces tecum to the U.S. Department of State concerning investigation findings from Zach Baumgart (DOS OIG) related to Dr. Iovino's case.

Documents are requested to be provided at the DOS 30(b)(6) deposition on February 26, 2026, or via email by the March 3, 2026, discovery deadline.

It will be served to the Department of State's Office of the Executive Secretariat.

Best regards,

**Kristin Berg**
*Paralegal*
Government Accountability Project
1612 K St., NW, Suite 808
Washington, DC 20006

Main Office Number: (202) 457-0034

My Direct Line: (202) 449-6040
E-mail: Kristinb@whistleblower.org
Website: http://www.whistleblower.org
Pronouns: she/her/hers

Case 5:21-cv-00064-TTC-CKM   Document 266   Filed 03/31/26   Page 12 of 26
Pageid#: 3252

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

HARRISONBURG DIVISION

----------------------------------------
                          :

KAREN IOVINO,                     :

Plaintiff and Counterclaim Defendant, :

   v.                       : Case No.

MICHAEL STAPLETON ASSOCIATES, LTD.,  : 5:21-CV-

d/b/a MSA SECURITY, INC.,        : 00064-TTC

Defendant and Counterclaim Plaintiff. :

----------------------------------------

Video deposition of DR. KAREN IOVINO, the Plaintiff and Counterclaim Defendant herein, held at Ward & Berry, PLLC, 1751 Pinnacle Drive, Suite 900, Tysons, Virginia, commencing at 10:49 a.m. on Wednesday, September 6, 2023 and the proceedings being taken down by stenotype and transcribed by Catherine B. Crump, a Notary Public in and for the Commonwealth of Virginia.

A.    There were numerous IG investigations. They were investigating my complaint of waste, fraud, and abuse and they were also investigating my retaliation claim.

Q.    And your contention was they weren't moving fast enough?

A.    We were in a furlough.

Q.    Okay.  I understand the reason, but your contention is they weren't moving fast enough?

A.    Correct.

MR. ADAMS:  Asked and answered.

MR. WARD:  It wasn't answered.

MR. ADAMS:  Yeah.

BY MR. WARD:

Q.    Who were you dealing with at the IG?

A.    The lead investigator was Zach Baumgart. I don't know if I'm pronouncing his last name correctly.

Q.    And did you -- did he say anything to you about we're not moving fast because we're in a furlough?

A.    No.



# AFFIDAVIT

COMMONWEALTH OF VIRGINIA AT LARGE,
CITY/COUNTY OF _Arlington_____, to-wit:

This day came before me, _Katrice Miles Mueller_, a Notary Public in and for the jurisdiction aforesaid, Zachary Baumgart, after sufficient proof of identity, in the above styled cause who after being duly sworn, did state, under oath, as follows:

1. My name is Zachary Baumgart and I am a Federal Law Enforcement Officer serving as an Assistant Special Agent-in-Charge with the Office of Inspector General (OIG) of the U.S. Department of State. Among other duties, I supervise criminal investigations carried out by OIG and manage law enforcement officers who conduct those investigations.

2. On or about July 26, 2017, Dr. Karen Iovino contacted OIG and reported a series of allegations of misconduct involving employees of Michael Stapleton Associates (MSA) and employees of the Department of State who were associated with the Canine Validation Center (CVC) in Winchester, Virginia. Certain matters reported by Dr. Iovino are part of an ongoing federal criminal investigation I am supervising. Among the targets of the criminal investigation are multiple MSA employees and MSA as a corporate entity.

3. On numerous occasions between June 4, 2018 and April 18, 2019 I had phone conversations and email exchanges with Ryan Berry, a private attorney representing MSA to OIG, regarding the ongoing investigation. In the course of these conversations, I told Mr. Berry that the OIG investigation of MSA was being treated as a criminal matter and would continue to be investigated as a criminal matter as OIG evaluated and reviewed the evidence. Specifically on March 13, 2019, I told Mr. Berry that OIG was investigating allegations of improper kickbacks, false claims submitted to the Government, and other Federal crimes involving MSA and MSA personnel.

4. Dr. Karen Iovino (a former MSA employee), Mr. Zane Roberts (a former MSA employee), and Mr. Garrett Lancaster (a current MSA employee) are witnesses in this ongoing Federal criminal investigation. All three have provided information to OIG that was directly related to the ongoing Federal criminal investigation.

5. On or about April 2, 2019, I learned that Mr. Berry, on behalf of MSA, filed a civil complaint in Arlington County (VA) Circuit Court against Dr. Iovino. Based on my review of that complaint and other documents, I learned that MSA issued subpoenas to Dr. Iovino and Mr. Roberts for a multitude of documents and records including those related to their communication with OIG and other Federal Government entities. Further, MSA also subpoenaed all documents related to MSA that Iovino exchanged with Mr. Roberts and Mr. Lancaster.

6. As this matter pertains to an ongoing Federal criminal investigation, this affidavit is not a complete account of all facts known to me. However, all facts presented are truthful and

GAPKI_001469

presented in an accurate context.

I hereby attest that the information furnished in this statement is true and accurate to the best of my knowledge, information and belief:

(SEAL)

Zachary Baumgart

COMMONWEALTH OF VIRGINIA, AT LARGE
CITY/COUNTY OF Alalington           , to-wit:

The foregoing instrument was sworn and attested to before me this 23rd day of April, 2019, by **ZACHARY BAUMGART**.

Notary Public
My commission expires: 10/31/2019
Notary Registration No: 762.3975

KATRICE GILES MUELLER
NOTARY PUBLIC
REG. #7623975
My Comm. Exp.
Oct 31, 2019
COMMONWEALTH OF VIRGINIA

GAPKI_001470



United States Department of State

Washington, D.C.   20520

June 16, 2025

Jack Kolar
Government Accountability Project
1612 K Street, NW – Suite No. 808
Washington, DC 20006
JackK@whistleblower.org

***BY EMAIL ONLY***

Re:    *Touhy* Request to the Department of State concerning *Iovino v. Michael
       Stapleton Associates, Ltd.*, Case No. 5:21-CV-00064-TTC (W.D. Va.)

Mr. Kolar:

The Department of State (Department) received the *Touhy* request from
your office, on behalf of Plaintiff Doctor Karen Iovino concerning the above
referenced case.[1]  With the *Touhy* request, you served twelve deposition notices
directed at the following individuals:

1. Alan Bower
2. Peter Deegan
3. Anna Garcia
4. Gerald Goss
5. Mike Hayes
6. Jennifer Houston
7. Sharon James
8. James Olds
9. Ben Orndorff
10. Dr. Lee Palmer
11. Michael Ratcliff
12. Cathy Reed

---

[1] The letter containing the *Touhy* request is undated. The Department first received the letter
via email on May 23, 2025, at 5:48 p.m. The Department subsequently received a copy of the
letter via courier mail on May 28, 2025.

Each deposition notice included the name of the deponent, the proposed date and time of the deposition, and notice that the deposition would be conducted electronically. The *Touhy* request did not contain any specific information concerning any of the deponents, for example, where they worked,[2] or what topics Plaintiff intends to inquire about during the depositions, or what topics concerned Department official information. We understand that pursuant to the Court's June 13, 2025 Order, you will be providing an amended *Touhy* request for these depositions.

You also served on the Department two Rule 30(b)(6) deposition notices, one directed to the Department, and the other to the Department's Office of Inspector General (OIG). These Rule 30(b)(6) deposition notices each include 39 topics, which this letter references as requests. The 39 requests directed at the Department and at OIG are nearly identical. You have not served any Rule 45 subpoenas on the Department or any of its employees.

With respect to the *Touhy* request pertaining to the Rule 30(b)(6) depositions, the Department explains below that it intends to grant or grants the request in part, intends to deny or denies the request in part, and on the remaining portions, requests additional information so as to be able to render a decision.

**Consolidated service on the Department and OIG is improper, but OIG authorized the Department to accept service and will respond separately.**

The Department's *Touhy* regulations require service of a *Touhy* request upon the Department, through the Executive Office of the Office of the Legal Adviser. 22 C.F.R. § 172.2. OIG, however, is an independent entity from the Department, so that it can execute its directive to provide independent oversight of the Department. Accordingly, it is improper to treat the Department and OIG as a single entity. You seem to recognize this by serving separate Rule 30(b)(6) notices to the Department and OIG, but you nonetheless served them together, in the same package, only to the Department.

---

[2] Only four proposed deponents (Garcia, James, Olds, and Reed) are or were employed by the Department.

After consultation with counsel for OIG, OIG has authorized the Department to accept service of the *Touhy* request and Rule 30(b)(6) notice for OIG because OIG recognizes it does not have separate *Touhy* regulations from the Department. Moving forward, the Department and OIG request that you communicate with each entity independently. Counsel for OIG is copied on this letter. In hopes of streamlining the *Touhy* process, this letter notes when the Department believes OIG has the information requested in the Rule 30(b)(6) deposition notices. The Department suggests that OIG be included in future meet and confers between the parties and the Government.

**The *Touhy* request for individual depositions is deficient because it fails to explain, with specificity, what official information Plaintiff seeks, but Plaintiff has agreed to resubmit the deposition requests with additional information.**

As discussed in the June 12, 2025 discovery conference before Magistrate Judge Menner, Plaintiff's individual *Touhy* requests do not comply with the Department's *Touhy* regulations. The *Touhy* regulations require that a request "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought."  22 C.F.R. § 172.5(a). The Department's *Touhy* regulations allow it to "require from the party seeking such testimony or documents a plan of all reasonably foreseeable demands, including but not limited to the names of all employees and former employees from whom discovery will be sought, areas of inquiry, expected duration of proceedings requiring oral testimony, and identification of potentially relevant documents." *Id.* 22 C.F.R. § 172.5(b). And, the regulations require the Department to consider the factors laid out in 22 C.F.R. § 172.8 in determining whether to grant or deny a private party's *Touhy* request.

We request that Plaintiff provide the necessary specificity, including anticipated "areas of inquiry" and information that will allow the Department to consider the 22 C.F.R. § 172.8 factors. For example, will Plaintiff be seeking deposition testimony about fraud, waste, and abuse allegations only by Plaintiff? Will Plaintiff be inquiring about relationships among Department employees? What employees?  What time frame are you seeking information about?  What Department contracts will you be inquiring about?

The Department requires this information so it can determine if the information you seek in these depositions is unduly burdensome or otherwise inappropriate under the applicable rules of discovery, as the Department is required to evaluate under 22 C.F.R. § 172.8(a)(1), and whether the official information Plaintiff seeks from each proposed deponent would involve privileged, deliberative process, or sensitive information, as the Department is required to consider under 22 C.F.R. § 172.8(a)(2). Further, the Department needs to ensure that providing the requested depositions would "conserve the time of Department employees for the conduct of official business," "avoid spending the time and money of the United States for private purposes," "maintain impartiality between private litigants," not "have an adverse effect on performance by the Department of its mission and duties," and not "involve[e] the Department in controversial issues not related to its mission." 22 C.F.R. § 172.8(a)(4)–(8).

We appreciate Plaintiff's agreement to resubmit the *Touhy* requests for individual depositions, and the Department will wait until it receives the new *Touhy* request and deposition notices to make its decision.

**The Rule 30(b)(6) deposition requests are either incomprehensible or improper, but the Department anticipates granting certain requests, as discussed below.**

As noted above, Plaintiff has served nearly identical Rule 30(b)(6) notices on both the Department and OIG. This letter contains only the response on behalf of the Department because, as discussed above, OIG is a separate, independent entity, which the Department cannot speak on behalf of. These Rule 30(b)(6) notices are insufficient in various ways, as discussed further below, but the Department is prepared to confer with Plaintiff concerning appropriate subjects and to grant a modified *Touhy* request after further discussion with counsel.

As an initial matter, Federal Rule of Civil Procedure 30(b)(6) requires that the party serving the deposition notice should consult with the party served before or promptly after service. The rule states, in relevant part:

> (6) *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent . . . a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. . . Before or promptly after

the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. . .

The deposition notices do not notify the Department of this requirement to confer as required by the Rule, and it is unclear if, but for the June 12 discovery conference, Plaintiff would have endeavored to confer with the Department on these notices. Still, as discussed on June 12, the Department will engage in meet and confers with Plaintiff and Defendant in the coming weeks. To facilitate this process, the Department offers the following responses to the 39 requests in the notice:

With respect to **Request 1**, Plaintiff seeks to depose the Department concerning whether it "understand[s]" MSA's legal defenses in the case and whether it contends that "MSA acted at the request of an executive branch official." Rule 30(b)(6) provides that the agency designate a person to "testify about information known or reasonably available to the organization." F.R.C.P. 30(b)(6). Questions regarding legal opinion or legal analysis in a Rule 30(b)(6) deposition are improper. *See Stowers v. Supreme Court of Appeals of W. Va.,* 2019 WL 2319305, at *1 (S.D. W.Va. 2019) (finding proposed topics that "ask the witness to offer a legal opinion" are "inappropriate inquiries for a Rule 30(b)(6) deposition"). As such, the Department intends to deny Request 1 under 22 C.F.R. § 172.8(a)(1) and (2) (whether compliance is proper under applicable rules of discovery), but agrees to confer with counsel as to whether the request may be modified to be proper.

In **Request 2**, Plaintiff seeks information held by Ms. Cathy Reed, a fact witness. To the extent you seek factual information, that query is most appropriately addressed to Ms. Reed as a fact-witness because it seeks information about her personal knowledge, not about the Department. As noted above, Plaintiff also seeks to take the deposition of Ms. Reed. The Department respectfully suggests that Plaintiff seek information in Request 2 from Ms. Reed. The Department notes, if Plaintiff were to include this as a topic in the *Touhy* request for the deposition of Ms. Reed, the Department would authorize Ms. Reed to speak on this topic. Because Request 2 is duplicative of that individual

deposition, the Department intends to deny it because of the need to conserve time and resources of the Department. *See* 22 C.F.R. § 172.8(a)(1), (4), (5).

With respect to **Requests 3-6** and **10,** Plaintiff seeks information concerning a July 5, 2018 memorandum from Jeffrey McDermott, Acting Assistant Inspector General, OIG. For these topics, the Department refers Plaintiff to OIG. Any further inquiry should be directed to Seth Gilmore at seth.m.gilmore@stateoig.gov. This information is in the custody and control of OIG, not the Department. *See* Fed. R. Civ. P. 34(a)(1) (explaining a party may request "items in the responding party's possession, custody, or control"); *Anderson v. Wang*, 2025 WL 1171588, at *1 (W.D. Va. Apr. 22, 2025) ("Dr. Wang is not required to produce something that is not in his possession."). And so these Requests are denied pursuant to 22 C.F.R. § 172.8(a)(1) and (2).

**Requests 7-9** and **11-12** are addressed below, as they are primarily document requests.

With respect to **Requests 13-15**, Plaintiff seeks information concerning MSA's employee manuals, MSA's procedures for employees reporting fraud, waste, and abuse, and MSA's procedures for performance evaluations. This information would be in the ownership and control of MSA, not the Department. *See* Fed. R. Civ. P. 34(a)(1); *Anderson*, 2025 WL 1171588, at *1. To the extent Plaintiff believes that these materials would include Department "official information", it is unclear why that is or what is that information. Accordingly, the Department intends to deny Requests 13-15. *See* 22 C.F.R. § 172.8(a)(1) and (2). The Department agrees to confer with counsel as to whether the requests actually seek Department official information.

In **Requests 16-19,** Plaintiff appears to be seeking information concerning Plaintiff's complaints of fraud, waste, or abuse, to OIG. Again, the Department refers you to OIG and Seth Gilmore at seth.m.gilmore@stateoig.gov. To the extent these requests seek information concerning Plaintiff's complaints made to MSA, these requests should be directed to MSA. If Plaintiff is seeking authority to depose other parties (e.g., OIG or MSA) about Plaintiff's allegations of fraud, waste, or abuse, to OIG or to MSA, and to the extent Plaintiff believes these queries might reveal Department official information, the Department authorizes the *Touhy* request for these lines of questioning, as directed to OIG or MSA.

With respect to **Requests 20-31**, each of these requests seeks factual information related to MSA's counterclaim against Plaintiff for which the Department does not possess any information. The Department declines to identify a Rule 30(b)(6) deponent on these matters, as this information is not reasonably in the custody or control of the Department. *See* Fed. R. Civ. P. 34(a)(1); *Anderson*, 2025 WL 1171588, at *1. If Plaintiff is seeking authority to depose other parties (e.g., MSA) about how MSA interprets its obligations to the Department to protect Department information, the Department authorizes the *Touhy* request for this line of questioning, as directed to MSA.

**Requests 32** and **34** are poorly drafted requests, making it difficult to comprehend what information Plaintiff seeks. Plaintiff appears to be asking the Department to provide a Rule 30(b)(6) representative to testify about the Department's policies in providing discovery in civil litigation or the Department's practice in responding to *Touhy* requests in civil litigation. These are inappropriate subjects for a Rule 30(b)(6) deposition. They are not related to any claim or defense, and they are not relevant under Rule 26 discovery. *See* Fed. R. Civ. P. 26(b)(1) ("[A party] may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); *Minke v. Page Cty., Va.*, 2019 WL 2411450, at *1 (W.D. Va. June 7, 2019) ("The scope of discovery from a non-party is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue." (internal quotation mark and citation omitted)); *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("[U]nder Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient. . . . [C]ourts must give the recipient's non-party status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally." (internal quotation mark and citation omitted)); *see also* Fed. R. Civ. P. 45(d)(2)(B)(ii) ("A party . . . must take reasonable steps to avoid imposing undue burden or expense on a [non-party]."). Further, any requests for information concerning how the Department made determinations concerning the *Touhy* process or discovery in this matter would be protected by the deliberative process privilege. *See Dep't of Interior v. Klamath Water Users*

*Protective Ass'n*, 532 U.S. 1, 8 (2001) ("[D]eliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated . . . . The deliberative process privilege . . . protect[s] open and frank discussion among those who make [decisions] within the Government." (internal quotation marks and citations omitted)). Accordingly, the Department denies these requests. *See* 22 C.F.R. § 172.8(a)(1), (2), (4), (5).

The Department next addresses **Requests 33** and **36-37**. **Request 33** is another poorly drafted request, making it difficult to comprehend what information Plaintiff seeks. Plaintiff appears to be asking the Department how to interpret the provision in the Department-MSA contract that states that information generated in the performance of the contract is Department information. **Request 36** indicates an intent to depose the Department about its training, procedures, practices, and documentation for ensuring confidentiality provisions are understood, and **Request 37** asks how the Department ensures that employees and contractors are not chilled from engaging in protected activities in view of confidentiality policies. These requests are overbroad, in that they include no time frame or reference to a specific contract. However, if Plaintiff confirms which contract between the Department and MSA it is referencing, and confirms which contract provisions Plaintiff seeks information concerning, the Department should be able to provide a contracting officer to speak to these topics in a Rule 30(b)(6) deposition. Thus, the Department neither approves nor denies Requests 33, 36, and 37, but notes with the provision of this additional information, the Department anticipates approving these requests.

With respect to **Request 35**, Plaintiff seeks information about MSA's confidentiality policies. This information is not in the custody or control of the Department and so the Department declines to provide a witness. *See* Fed. R. Civ. P. 34(a)(1); *Anderson*, 2025 WL 1171588, at *1. Further, the request seeks information about all Department employees "in the past seven years who have been subjected to action, discipline or counseling under any written or unwritten policies disseminated to employees stating the employees maintain confidentiality of all MSA or Department of State" information. This is overbroad, given the substance of the current litigation, as the request does not seem relevant to any party's claim or defense, nor does it seem proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *Vaigasi v. Solow Mgmt. Corp.*, 2016

WL 616386, at *7 (S.D.N.Y. 2016) ("Discovery may not, however, be used to impose unnecessary burden on an adversary or to seek information that has no or minimal relevance to the claims or defenses . . . ."). Further, provision of this information would violate the Privacy Act. *See* 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains [subject to 12 exceptions]."); *Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 650 (7th Cir. 2013) ("[The government] is bound by the Privacy Act not to disclose any personal information and to take certain precautions to keep personal information confidential."). Therefore, as currently written, the Department denies Request 35. *See* 22 C.F.R. § 172.8(a)(1), (2), (4), (5). Nonetheless, the Department is willing to confer with Plaintiff to narrow this Rule 30(b)(6) request.

Finally, **Requests 38-39** seek information from OIG. The Department refers Plaintiff to OIG. Any further inquiry should be directed to Seth Gilmore at seth.m.gilmore@stateoig.gov.

**At this time, the Department denies requests seeking document discovery.**

Multiple of Plaintiff's Rule 30(b)(6) requests include document requests. The Department denies these requests, however, because they are overbroad, vague, and unduly burdensome, and thus improper under the Federal Rules of Civil Procedure. *See* 22 C.F.R. § 172.8(a)(1), (2), (4), (5).

**Requests 7-9** ask the Department to identify "all communications between MSA" and the Department's Office of Acquisitions Management (Request 7); the Department's Bureau of Diplomatic Security (Request 8); and the Department *en masse* (Request 9), that are either "related to or discussing Dr. Iovino."

And **Requests 11-12** ask the Department to identify and discuss all communications in any way related to Plaintiff, sent or received by over a dozen Department or MSA employees, during an unspecified time. MSA has indicated that it will seek to depose some of these same people (Alan Bower, Mike Hayes, Mike Ratcliff, Jennifer Houston, Lee Palmer, Peter Deegan, Gerald Goss, Anna Garcia, Ben Orndorff, James Olds, Sharon James) while others appear only in this

document request (Zane Roberts, Mark Potter, Garrett Lancaster, Carolyn Olech, Brett Harshbarger, Josh Carter, Jonah Ballenger, Jessie Bellone, Amy Callihan, Candace McCall, Loren Bachman).

These requests include no time limitation, which makes them overbroad. *See Alexander v. FBI*, 188 F.R.D. 111, 118 (D.D.C. 1998) (no date limitations placed on Rule 30(b)(6) notice and court restricted the subject area to the relevant time period); *see also United Healthcare Services, Inc. v. Next Health*, LLC, 2021 WL 9146632 at * 3 (N.D. Tex. 2021) (Rule 30(b)(6) deposition topics that contained no temporal limitation were overly broad) ("topics with no temporal restriction or element are routinely found to be overbroad.") (citations omitted).

In addition, these document requests are unduly burdensome on the Department, which is not a party to this litigation. Fed. R. Civ. P. 45(d)(2)(B)(ii) ("A party . . . must take reasonable steps to avoid imposing undue burden or expense on a [non-party]."). And the requests are not proportional to the claims in the litigation or the Department's role in that litigation. *See* Fed. R. Civ. P. 26(b)(1); *Minke*, 2019 WL 2411450, at *1.

Each of these requests includes communications with MSA, which is a party to the litigation. The Department understands from MSA counsel that the current requests appear to ask the Department to separately search its records and reproduce documents already produced by MSA, making them duplicative of earlier discovery efforts.[3] And, to the extent the requests seek exchanges between MSA employees and the Department, these records would be equally available in MSA's files.  The Department, a non-party, should not be mandated to search its files for information equally available to a party. *Va. Dep't of Corr. v. Jordan*, 921 F.3d at 189 (Courts should consider if the information requested from the non-party is available from some other source).

Also, with respect to the extensive list of individuals for which Plaintiff seeks emails, the Rule 30(b)(6) does not explain the relevance of any of these people to Plaintiff's claims or MSA's defenses.

---

[3]  Over the course of this litigation, the Department reviewed thousands of pages of MSA-produced documents, though the Department has not reviewed all of the exchanged discovery.

As such, unless there is additional information or explanation, the Department denies these requests because of the need to conserve time and resources of the Department. *See* 22 C.F.R. § 172.8(a)(1), (4), (5).

Despite these deficiencies, the Department agrees to instruct Department employees and former Department employees who the Plaintiff seeks to individually depose to search their records for documents from a limited time frame related to Plaintiff in advance of their depositions. Further, the Department agrees to meet and confer concerning these requests.

Should you have any questions, you may contact Attorney Adviser Jaclyn Greenstein at (571) 345-3003 or greensteinjd@state.gov.

Sincerely,

*/s/ Amanda Wall*

Amanda Wall
Assistant Legal Adviser
Office of the Legal Adviser
U.S. Department of State

CC:    Krista Frith (DOJ) (krista.frith@usdoj.gov)
Seth Gilmore (OIG) (seth.m.gilmore@stateoig.gov)
Chelsea Cruz (counsel for MSA) (chelsea@wardberry.com)
Daniel Ward (counsel for MSA) (dan@wardberry.com)