**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **KAREN IOVINO,** | ) | |
| | ) | |
| **Plaintiff and** | ) | **Case No. 5:21-CV-00064-TTC** |
| **Counterclaim Defendant,** | ) | |
| | ) | |
| **v.** | ) | **DEFENDANT AND** |
| | ) | **COUNTERCLAIM PLAINTIFF'S** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **REPLY IN SUPPORT OF ITS** |
| **d/b/a MSA SECURITY, INC.** | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| **Defendant and** | ) | |
| **Counterclaim Plaintiff** | ) | |

Respectfully submitted,

April 8, 2026

*/s/ Daniel S. Ward*

_____

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton
Associates, Ltd., d/b/a MSA Security, Inc.*

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ...............................................................................................1

II.  ARGUMENT          ..............................................................................................................1

    a.  The Undisputed Timeline Is Fatal To Plaintiff's Retaliation Claim.........................1

        i.  The Calendar Doesn't Lie...............................................................................1

        ii.  Plaintiff's Reliance On Circumstantial Evidence And Speculation
            Does Not Create A Genuine Factual Dispute ..............................................3

    b.  Plaintiff's Remaining Arguments Fail.......................................................................5

        i.  The "Contributing Factor" Standard Does Not Save Plaintiff's
            Claim. MSA's Personnel Actions Were Justified and Non-Retaliatory......5

        ii.  Plaintiff's Manufactured "Pretext" Arguments Are Meritless.....................6

        iii.  MSA's Comparator Evidence Supports Summary Judgment.......................7

    c.  Summary Judgment Is Proper On MSA's Counterclaim...........................................7

        i.  The Agreement Is Valid And Enforceable.....................................................7

        ii.  Plaintiff's Arguments That The Agreement Is Void Are Meritless.............8

        iii.  Plaintiff Admits Breaching The Agreement .................................................9

        iv.  MSA Has Suffered Damages......................................................................10

III.  CONCLUSION          .........................................................................................................10

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                    <u>**Page**</u>

*Cameron v. K Mart Corp.,*
    No.3:09cv00081, 2010 WL 2991014, (W.D. Va. July 30, 2010).......................................3

*Capstone Bus. Funding, LLC v. Shames Constr. Co.,*
    205 A.D.3d 606 (NY App. Div. 2022) ................................................................................7

*Mikhaylov v. Dep't of Homeland Sec.,*
    62 F.4th 862 (4th Cir. 2023) ..............................................................................................5

*Olech v Michael Stapleton Assocs., Ltd. d.b.a MSA Sec., Inc.*
    No. 5:25-cv-00152-JHY-JCH ............................................................................................7

*Resetarits Constr. Corp. v. Elizabeth Pierce Olmsted, M.D. Ctr. for the Visually Impaired,*
    118 A.D.3d 1454, 988 N.Y.S. 2d 797 (N.Y. App. Div. 2014) ...........................................8

## <u>Statutes and Rules</u>

5 U.S.C. §1221(e)(2) ................................................................................................................5

41 U.S.C. § 4712 ..........................................................................................................3, 5, 9, 10

48 U.S.C. §3.909 ......................................................................................................................8

Fed. R. Civ. P. 56 ......................................................................................................................1

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by counsel, respectfully submits this Reply in Support of its Motion for Summary Judgment under Federal Rule of Civil Procedure ("FRCP") 56.

## I.    PRELIMINARY STATEMENT

There is no need to bury the Court with further redundant argument. Iovino's opposition to MSA's Motion fails to create any genuine dispute of material fact. The undisputed dispositive timeline favors resolution by summary judgment of Plaintiff's claim. Iovino's manufactured "factual disputes" rely on speculation and inadmissible evidence. MSA's counterclaim for breach of contract is supported by Plaintiff's admissions, undisputed evidence (her emails to the media), and a legally binding contract. These facts are also beyond dispute.

## II.    ARGUMENT

The materials Plaintiff cites to dispute the facts in MSA's Motion for Summary Judgment ("MSA's MSJ") do not establish the absence or presence of a genuine dispute. FRCP 56(c). MSA is entitled to judgment as a matter of law. *Id.*

### a.    The Undisputed Timeline Is Fatal To Plaintiff's Retaliation Claim.

#### i.    *The Calendar Doesn't Lie.*

Every material personnel decision MSA made concerning Plaintiff occurred before MSA had any knowledge of her protected activity. The key dates are undisputed:

- **February 2017**: The U.S. Department of State ("DoS") initiated the contract modification process to replace the part-time veterinarian position, months before Plaintiff's July 6, 2017 OIG complaint. DSUMF ¶ 6. Dr. Michael Ratcliff informed Plaintiff that the CVC was expanding and the DoS Contract would likely require a full-time veterinarian in the future. *Id.* On February 13, 2017, DoS issued a "Request for Proposal" to execute Modification 1

of the DoS Contract—initiating the contract modification process to replace the part-time veterinarian position months before Plaintiff's July 6, 2017 OIG complaint. *Id.* ¶ 7.

- **May–June 2017**: DoS finalized the contract modification, discontinuing the part-time position and creating a new full-time role with expanded duties. *Id.* ¶¶ 9–11.

- **July 6, 2017**: Plaintiff files her "hotline" complaint with DoS OIG. *Id.* ¶ 12.

- **July 25–26, 2017**: Plaintiff emailed Peter Deegan (Human Resources), informing him of her EEOC complaint and stating there are "very serious issues at the CVC." *Id.* ¶ 17. When Mr. Deegan asked what those "serious issues" were, Plaintiff refused to elaborate, stating she did not "feel it would be appropriate to elaborate on the issues at [the] CVC at this time." *Id.* Mr. Deegan reminded Plaintiff of her fiduciary duty as an employee on a government contract to "bring allegations of impropriety to [MSA's] attention." *Id.* Plaintiff again refused to elaborate. *Id.*

- **July 26, 2017**: MSA selects Dr. Palmer for the full-time position based on superior qualifications, before any knowledge of the OIG complaint. *Id.* ¶ 18.

- **July 31, 2017**: Plaintiff was informed that she was not selected for the new full-time veterinarian position and that her current part-time position would end as of August 17, 2017. *Id.* ¶ 23.

- **August 1, 2017**: **The earliest possible date MSA could have learned of Plaintiff's OIG complaint**. *Id.* ¶ 27–30.

In her Complaint, Plaintiff promised that she would produce evidence that MSA officials had actual knowledge of her OIG complaint by July 19, 2017. After 4.5 years of discovery, 10,000+ pages of documents, 15 depositions, and now summary judgment briefing, she has failed to do so.

Indeed, OIG confirmed that Plaintiff's theory fails. *Id.* ¶¶ 29–30. While OIG initially believed that "Nick Sabruno [DoS Director] consulted with Mr. [Josh] Carter [DoS Program Manager] about" Plaintiff's alleged protected disclosures "in mid-July 2017," and believed that "Mr. Carter had spoken to other MSA employees about his knowledge of Dr. Iovino's complaints," OIG subsequently clarified in a March 6, 2026 Declaration that "there was no credible evidence that MSA knew that Plaintiff had filed a complaint with OIG prior to August 1, 2017." *Id.* This "clarifying" declaration also stated that Zane Roberts did not tell OIG when or how MSA allegedly found out that Plaintiff was a whistleblower. *Id.*

The administrative record is equally dispositive. On October 30, 2019, DoS itself denied Plaintiff relief under 41 U.S.C. § 4712, determining that "MSA did not subject Plaintiff to a reprisal" after reviewing the full administrative record. *Id.* ¶ 61. Plaintiff's conduct underscores that she knew her position was ending due to the contract modification—not any protected activity. On July 14, 2017, before MSA made any hiring decision, she expressed enthusiasm about moving to full-time status. *Id.* ¶ 14. When told she would need to apply, she asked if it was "just a formality." *Id.* ¶ 15. And when given the opportunity to alert MSA to the "serious issues" she claimed to have identified, she twice refused to elaborate. *Id.* ¶ 17.

The personnel decisions Plaintiff challenges were set in motion months before her protected activity and finalized before MSA had any knowledge of it. The calendar doesn't lie.

> ii. *Plaintiff's Reliance on Circumstantial Evidence and Speculation Does Not Create a Genuine Factual Dispute.*

Plaintiff argues that knowledge can be inferred from circumstantial evidence, timing, and an alleged "leak chain." ECF 270 at 10–15. But speculation and conjecture cannot defeat summary judgment. *Cameron v. K Mart Corp.*, No. 3:09cv00081, 2010 WL 2991014, at *1 (W.D. Va. July 30, 2010).

3

The alleged "leak chain" through Cathy Read, Nick Sabruno, Josh Carter, and MSA is speculation bordering on fantasy. Plaintiff *believes* this happened, but after years of discovery, has no evidence to support it, because there is none. Iovino Dep. 253:12–22, 254:1–16. In the March 6, 2026 Declaration of Jeffrey McDermott, OIG stated that there was no credible evidence that MSA knew that Plaintiff had filed a complaint with OIG prior to August 1, 2017. DSUMF ¶ 29. This OIG declaration further stated that Zane Roberts did not tell OIG when or how MSA allegedly found out that Plaintiff was a whistleblower. DSUMF ¶ 30. MSA did not know of Plaintiff's protected disclosures before the relevant personnel actions. Of this, there is no dispute.

Plaintiff's communications with DoS are similarly beyond dispute. On July 28, 2017—two days after MSA selected Dr. Palmer for the full-time position—Plaintiff forwarded her "Whistleblower Reprisal Form" to Cathy Read, the Director in the Office of Acquisitions Management ("AQM") at DoS. DSUMF ¶ 22. This communication occurred *after* the decision to hire Palmer had already been made, and there is no evidence that Ms. Read communicated Plaintiff's complaint to MSA. Indeed, the first possible notification MSA had of Plaintiff's OIG complaint was the August 1, 2017 email from Josh Carter to Dr. Ratcliff—and even then, the reference to Iovino filing an OIG complaint was embedded pages deep in an email thread forwarded to Ratcliff, not in the section of the email thread Mr. Carter asked Dr. Ratcliff to confirm. DSUMF ¶ 27. Dr. Ratcliff does not recall seeing that portion of the email. DSUMF ¶ 27.

Further, as explained in MSA's opposition to Plaintiff's Motion for Summary Judgment, Statements attributed to John Hoover and Josh Carter are inadmissible hearsay. Neither had any authority over MSA personnel decisions. ECF 274 at 27. Hoover was not an employee with any decision-making power, and Carter was a DoS employee. DoS is not involved in contractor employment decisions. DSUMF ¶ 78; DoS 30(b)(6) Dep. 43:13–22 (MSA MSJ, Exh. K).

4

### b.  Plaintiff's Remaining Arguments Fail.

*i.  The "Contributing Factor" Standard Does Not Save Plaintiff's Claim. MSA's Personnel Actions Were Justified and Non-Retaliatory.*

Even under the "broad and forgiving" contributing-factor standard, Plaintiff must show that an MSA decisionmaker knew of the protected activity. She failed to do so for any personnel action prior to August 1, 2017.

Employer knowledge is a prerequisite to any temporal-proximity inference. Here, the contract-driven conversion and the decisive non-selection occurred before any possible MSA knowledge, severing causation/contributing-factor arguments as a matter of law.

There is no dispute that every material personnel decision—the contract modification process, the creation of the new full-time position, and the selection of Dr. Palmer—occurred before August 1, 2017, the earliest date MSA could have learned of Plaintiff's OIG complaint. DSUMF ¶ 27. OIG, through the March 6, 2026 Declaration of Jeffrey McDermott, testified that there was no credible evidence that MSA knew that Plaintiff had filed a complaint with OIG prior to August 1, 2017. DSUMF ¶ 29. DoS denied Plaintiff relief under 41 U.S.C. § 4712, determining after reviewing the full administrative record that "MSA did not subject Plaintiff to a reprisal." DSUMF ¶ 61. Similarly, on April 20, 2018, the EEOC determined that Plaintiff's complaint was unfounded and dismissed the charge. DSUMF ¶ 43.

Even if this Court finds that Plaintiff's actions were a contributing factor to MSA's personnel decisions (they were not), there is clear and convincing evidence that MSA would have taken the same actions in the absence of such disclosures. *Mikhaylov v. Dep't of Homeland Sec.*, 62 F.4th 862, 864 (4th Cir. 2023) (quoting 5 U.S.C. § 1221(e)(2)); *cf.* ECF 270 at 22.

First, DoS began the contract modification process (replacing the part-time position with a full-time position) in **February 2017**. DSUMF ¶¶ 6–7. On **June 26, 2017 (**before Iovino's **July 6,**

**2017** OIG filing), DoS confirmed a 40-hour requirement and amended the PWS to a fundamentally different full-time role (including OCONUS travel and government-representative duties). *Id.* ¶ 11. DoS's amendment discontinued the part-time position and directed MSA to create/fill a new full-time role, with the part-time position to be defunded effective mid-August 2017. *Id.* MSA posted the new full-time role and invited Iovino to apply on **July 17, 2017**; she applied the same day. *Id.* ¶ 16.

Second, regarding the non-selection for the full-time position: when comparing Plaintiff versus Dr. Palmer, Dr. Palmer was more qualified for the position. DSUMF ¶ 18. The new full-time position called for, among other things, CONUS and OCONUS performance and the willingness to live and work in a "conflict/combat" area. DSUMF ¶ 16. MSA's selection of Dr. Palmer was based on superior qualifications, not any protected activity. DSUMF ¶ 18.

Third, regarding the administrative leave: MSA placed Plaintiff on administrative leave because she was a security risk, threatening to disclose confidential information to the media. *Id.* ¶ 36. In **late July 2017**, Plaintiff admitted that she told Jonah Ballenger and Ben Orndorff (CVC Kennel Technicians) that she was contemplating going to The Washington Post about MSA, the CVC, and the DoS Contract. *Id.* ¶ 24. Indeed, Plaintiff had already begun emailing journalists at The Washington Post on **July 27, 2017**. *Id.* ¶¶ 20–21. Once this information was reported to higher-ups at MSA on or about **August 4, 2017** (*id.* ¶¶ 33–35), MSA placed Plaintiff on paid administrative leave while it investigated the threats. *Id.* ¶ 36.

### ii.    Plaintiff's Manufactured "Pretext" Arguments Are Meritless.

The absence of performance documentation is consistent with MSA's position. Plaintiff was placed on leave because she was a security risk, not for any performance reasons. MSA's justifications have been consistent throughout this litigation: (1) DoS eliminated the part-time

6

position (*id.* ¶¶ 6–7, 11), (2) Dr. Palmer was the more qualified candidate to fill the full-time role (*id.* ¶ 18), and (3) Plaintiff was a security threat (*id.* ¶ 36).

### iii.  *MSA's Comparator Evidence Supports Summary Judgment.*

As explained in MSA's opposition to Plaintiff's Motion for Summary Judgment (ECF 274), MSA has terminated other employees for confidentiality violations who were not whistleblowers, including Carolyn Olech in 2022 and another employee in 2021. ECF 274 at 23–25. In 2022, MSA terminated Olech for sending work emails to her personal email address. DSUMF ¶ 65.

The Court should not take judicial notice of the Olech matter (No. 5:25-cv-00152-JHY-JCH). *Cf.* ECF 270 at 26. Other than Olech violating MSA's confidentiality policies and having the same counsel represent them, the two cases (Iovino and Olech) are not related. MSA denies Olech's allegations, making the entire case subject to reasonable dispute. Fed. R. Evid. 201.

Jennifer Houston (Hartley) is not a valid comparator because her conduct involved entirely different circumstances, time periods, and considerations. ECF 270 at 10, ¶ 43; *see also* ECF 274 at 24–25.

### c.  **Summary Judgment Is Proper On MSA's Counterclaim.**

### i.  *The Agreement Is Valid And Enforceable.*

Whether a document is an enforceable contract is a question of law. *Capstone Bus. Funding, LLC v. Shames Constr. Co.*, 205 A.D.3d 606, 607 (N.Y. App. Div. 2022). Thus, this Court can determine whether the Plaintiff's signed confidentiality agreement with MSA (the "Agreement") is valid and enforceable. The Agreement satisfies all essential elements of a valid contract under New York law: offer, acceptance, consideration, mutual assent, and intent to be

7

bound. *Resetarits Constr. Corp. v. Elizabeth Pierce Olmsted, M.D. Ctr. for the Visually Impaired*, 118 A.D.3d 1454, 1455, 988 N.Y.S. 2d 797 (N.Y. App. Div. 2014).

The Agreement reflects a bargained-for exchange. In consideration of Plaintiff's employment and access to sensitive, non-public DoS and CVC information, Plaintiff expressly agreed not to "disclose, publish, use or otherwise make available to the public or to any individual, firm or corporation any confidential information." DSUMF ¶ 5. These restrictions were required by DoS under Section H-009 of the DoS Contract, which mandates that MSA "include the substance of this provision in all contracts of employment." *Id.*; MSA's MSJ, Exh. A.

Plaintiff's conduct confirms she understood the Agreement to be binding. She testified she waited to contact the media until after she believed the OIG had found the Agreement unenforceable, demonstrating her contemporaneous recognition that she was otherwise bound by its terms. DSUMF ¶¶ 67–68. She admitted she "willingly violated" the confidentiality agreement. DSUMF ¶ 70. Plaintiff admits she also took DoS documents and information from the CVC without authorization and emailed them to her personal account. DSUMF ¶ 77. No reasonable jury could conclude otherwise. Liability is irrefutable.

### ii.  *Plaintiff's Arguments That The Agreement Is Void Are Meritless.*

Federal Acquisition Regulation ("FAR") § 3.909 regulates the government's ability to contract with entities, not the validity of confidentiality agreements between private employers and employees. FAR § 3.909-1 provides that "[t]he Government is prohibited from using fiscal year 2015 and subsequent fiscal year funds for a contract with an entity" that requires employees to sign certain internal confidentiality agreements. FAR § 3.909-1. The regulation governs how the Government may allocate funds; it does not prohibit federal contractors from doing anything, nor does it invalidate agreements between contractors and their employees. As this Court has

8

recognized, FAR "regulations prohibit certain NDAs; they do not obviously mandate the inclusion of exceptions." ECF 55 at 8. The federal government cannot dictate the terms and conditions of contractor employees' relationships with their private employers.  DoS 30(b)(6) Dep. at 43:13–22.

The 2018 "Management Assistance Report: Use of Confidentiality Agreements by a Department of State Contractor" report, released by OIG (the "Report"), is not binding—it merely made "recommendations," and OIG has no authority to bind DoS. DSUMF ¶ 44. Indeed, DoS did not follow OIG's recommendations and denied Plaintiff any relief because it found MSA met its burden in presenting clear and convincing evidence that it would have made the same employment decisions absent Plaintiff's disclosures. DSUMF ¶ 61.

The Agreement was not "superseded." When DoS requested modifications in August 2018, it did so because DoS—not MSA—was "at risk of violating the Anti-Deficiency Act." DSUMF ¶ 45. MSA modified its agreements for current employees, but Plaintiff was no longer an MSA employee at that time.  DSUMF ¶ 48. MSA never rescinded the Agreement. DSUMF ¶¶ 46–48.

### iii.    Plaintiff Admits Breaching The Agreement.

Plaintiff argues that MSA depends on "a later event" to "provide[] an independent explanation for the adverse action." ECF 270 at 21. Not true. Plaintiff informed MSA employees that she was going to the media. DSUMF ¶ 24. This provided MSA with an independent contemporaneous reason to place her on administrative leave while MSA investigated the situation. MSA contemporaneously notified Anna Garcia, DoS's Contracting Office Representative at the time, and documented the actions it was taking. DSUMF ¶¶ 38–39. The information that MSA discovered after placing Plaintiff on administrative leave only further justified MSA's reaction and decision.

9

Plaintiff admits she disclosed confidential DoS information to journalists at the Washington Post and NBC4, persons not covered under 41 U.S.C. § 4712(a)(2). DSUMF ¶ 63–64, 66–72. Plaintiff admits she willingly violated the confidentiality agreement. DSUMF at ¶ 70. Iovino's emails to the media are undisputed evidence. DSUMF ¶¶ 20–21, 25, 31–32, 49–53, 55, 57–58, 60; MSA's MSJ, Exh. W. Plaintiff admits she took DoS documents and information from the CVC without authorization. DSUMF ¶ 77.

The Agreement is enforceable. Plaintiff admits breach. Liability is clear. All that remains is to determine damages.

### iv. *MSA Has Suffered Damages.*

Plaintiff's improper disclosures caused concrete harm, including:

- Loss of Delta Airlines contract (~$5.3 million in revenue). DSUMF ¶ 59; ECF 274 at 13, 15.

- Loss of San Francisco 49ers as a client (~$1.6 million). *Id.*

- Loss of Expeditors International contract (~$1.9 million). *Id.*

- Loss of a Google contract opportunity. ECF 274 at 13, 15.

- Resignation of West Coast Sales Director Mike Larkin. DSUMF ¶ 59; ECF 274 at 13, 15.

MSA also requests injunctive relief because monetary damages are inadequate to compensate for MSA's injuries and to prevent future harm to MSA. ECF 274 at 14–16.

## III.    CONCLUSION

For all the foregoing reasons, MSA respectfully requests that the Court:

1. Grant MSA's Motion for Summary Judgment on Iovino's retaliation claim under 41 U.S.C. § 4712;

10

2. Grant summary judgment in favor of MSA on its counterclaim for breach of contract, with

damages to be determined at trial; and

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Date: April 8, 2026

*/s/ Daniel S. Ward*

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton
Associates, Ltd., d/b/a MSA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, I electronically filed the foregoing with the Clerk of

the Court for the United States District Court for the Western District of Virginia by using the

CM/ECF system. I certify that the following participants in the case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

11

Jack Kolar
Government Accountability Project
1612 K St. NW, Suite 1100
Washington, DC 20006
(202) 926-3311
jackk@whistleblower.org

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street
P.O. Box 1061
Medford, OR 97501
(206) 954-1203
thad@guyerayers.com

*/s/ Daniel S. Ward*

_____

Daniel S. Ward