IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION


KAREN IOVINO,

      Plaintiff,

v.                                                                    Case No. 5:21-cv-00064

MICHAEL STAPLETON ASSOCIATES, LTD.,
d/b/a MSA SECURITY, INC.,


      Defendant.

## PLAINTIFF'S [CORRECTED]OPPOSITION TO THE GOVERNMENT'S MOTION TO QUASH SUBPOENA


## INTRODUCTION

1.      Plaintiff Karen Iovino opposes the Government's Motion to Quash (Doc. 267) her subpoena seeking Office of Inspector General investigation documents. OIG is a nonparty federal agency. When a federal agency is not a party to the litigation, its refusal to comply with a subpoena is governed not solely by Rule 45 but by the *Touhy* framework and the Administrative Procedure Act. *See Comsat Corp. v. NSF*, 190 F.3d 269 (4th Cir. 1999). Iovino has been working with DOS refining the request since the inception of the subpoena and has not made unreasonable demands.  To the contrary, when asked, counsel for Iovino immediately explained back in February the goal was to get the reports created by Baumgart as soon as possible. Therefore, Plaintiff asks the Court to deny the motion to the extent it seeks to foreclose Plaintiff from pursuing these materials through a proper Touhy-compliant request and to enable Plaintiff to receive the reports of Zach Baumgart investigating Iovino's disclosures.  The subset of

1

document that entails has always been anticipated by Plaintiff (and she thought understood by Government) to be a small, focused set.

2.    The OIG investigation documents are central to Iovino's 41 U.S.C. Section 4712 whistleblower retaliation claim. OIG Special Agent Zachary Baumgart investigated the misconduct Iovino reported, and his findings bear directly on Iovino's reasonable belief and MSA's motive to retaliate.  Am. Compl., Paragraphs 61, 113. Without these documents, Iovino will oppose summary judgment without access to the agency files generated by the very disclosures at issue.

3.    The Government raises three arguments: (a) the subpoena is addressed to the wrong recipient; (b) the compliance deadline is unreasonable; and (c) the requests impose undue burden.  Rather than debate alleged procedural deficiencies, Iovino offers to cure those to DOS's reasonable expectations.  Any deficiencies warrant accommodation within the *Touhy* framework — not permanent foreclosure of all OIG discovery. Although courts sometimes cure overbreadth by narrowing a subpoena rather than eliminating the discovery altogether, the principal point here is that any further request to OIG can proceed through a *Touhy*/APA channel.

## BACKGROUND

### A. Iovino's Whistleblower Retaliation Claim

4.    Iovino filed this action in September 2021 under 41 U.S.C. Section 4712, alleging that MSA retaliated against her for disclosing contractor misconduct to OIG. Am. Compl. Paragraphs 1-5. Iovino's disclosures concerned fraud and safety failures at the Canine Validation Center ("CVC") in Winchester, Virginia, where MSA operated under contract with the Department of State. Am. Compl. Paragraphs 42-55, 61-68, 113.

5.    Within days of Iovino's disclosures to the OIG in July 2017, MSA took adverse employment actions against Iovino, including changes to her duties and working conditions. Am. Compl. Paragraphs 82, 92-95. Iovino's single-count complaint alleges that these actions constituted retaliation for her protected whistleblowing activity. Am. Compl. Paragraph 170-177.

6.    OIG Special Agent Zachary Baumgart led or supervised the investigations into the misconduct Iovino reported. Ex. M.  The Baumgart investigations examined fraud at the CVC, explosive detection canine ("EDC") failures under the Anti-Terrorism Assistance Program, and the chilling effect of MSA's state-court lawsuit against Iovino on OIG witnesses.  (Ex. M, Baumgart Declaration, Rider Categories 1, 3, 5 (Doc. 267-3)).

**B. <u>Four Years of Discovery and the Department's Participation</u>**

7.    Discovery has been ongoing for four years, with the deadline set for March 3, 2026. The Department has been actively involved throughout, including through OIG's partial response to Plaintiff's Touhy request in July 2025 and the agency's participation in fifteen depositions between January and February 2026. AUSA Frith filed a Notice of Appearance on September 29, 2022 (Doc. 60), and the Department has participated in discovery through the Touhy process across at least 17 docket entries. (Doc. 267 at 1).

8.    Between January 8 and February 26, 2026, Iovino took 15 depositions of current and former Department employees, including Sharon James as a fact witness (January 28, 2026) and as the Department's Rule 30(b)(6) designee (February 26, 2026). Doc. 267 at 2, Ex. K. These depositions revealed the scope and significance of the Baumgart investigations, underscoring the need for the underlying documents.

9.      Plaintiff has pursued OIG materials through the Touhy process since at least September 2022. On September 16, 2022, the Department's Office of the Legal Adviser acknowledged Plaintiff's Touhy request, identified the relevant proceeding as OIG Whistleblower Case 2017-0044, and stated that the administrative record 'is being reviewed and will be produced once it is available.' Ex. A. The Department also described the Touhy request as 'substantially overbroad' and identified several issues requiring resolution before an official response could issue. Ex. A.

10.      On or around May 23, 2025, Plaintiff served updated Touhy requests on the Department and OIG seeking authorization for a Rule 30(b)(6) deposition and related testimony. As described in the Department's Supplemental Response, the Department provided its initial response on June 16, 2025. Ex. B at 2. Plaintiff submitted an Amended Touhy request on June 20, 2025. Exs. B, C. OIG provided its initial response on June 23, 2025. Ex. C at 1. On June 24, 2025, counsel for Plaintiff, Defendant, OIG, and the Department held a video-conference meet and confer to address the amended notices. Exs. B at 2, C at 1.

11.    The Department issued its Supplemental Touhy Response on July 17, 2025, granting several deposition requests and limiting others. Ex. B. OIG issued its own Supplemental Response on July 18, 2025, authorizing testimony on specified topics and incorporating the Department's response by reference. Ex. C. Both responses imposed conditions including scope limitations, protective-order compliance, and pre-filing review of testimony and exhibits. Exs. B, C. Plaintiff thereafter continued to pursue underlying investigative materials through the Touhy process, culminating in a formal Touhy request submitted to the Department pursuant to 22 C.F.R. Part 172 on March 27, 2026. Ex. D.

4

C. **The Subpoena and the Government's Objections**

12.      On February 20, 2026, Iovino issued a Rule 45 subpoena seeking testimony and documents related to OIG investigations. The subpoena was addressed to Sharon James and sent to AUSA Frith on February 24, 2026. Doc. 267 at 2; Doc. 267-2. An accompanying Rider identified five categories of documents. Doc. 267-3. Every single category was directed to the reports of one individual, Zach Baumgart.  *Id*.  The Touhy request followed. Ex. D. As the Fourth Circuit has held, Rule 45 requires delivery to the named person; actual notice alone does not satisfy the service requirement. See *In re Application of Newbrook Shipping Corp. of Monrovia*, 31 F.4th 889 (4th Cir. 2022). Iovino acknowledges this deficiency and addresses it below.  Attorney Frith immediately looped in Greenstein and Greenstein looped in Gilmore that same day as counsel for DOS OIG. Ex. L.

13.      The Government objected on February 27, 2026, and requested withdrawal. Iovino did not withdraw the subpoena. The Government filed this Motion to Quash on March 31, 2026 — 35 days after its objection and 28 days after the discovery deadline. Doc. 267.

**GOVERNING FRAMEWORK: TOUHY, APA, AND NONPARTY FEDERAL AGENCY SUBPOENAS**

14.      Because OIG is a nonparty federal agency, the legal framework governing this dispute differs from an ordinary Rule 45 motion to quash. Three principles control.

15.      First, because OIG is a nonparty federal agency, this dispute is not governed solely by Rule 45's ordinary subpoena standards. In the Fourth Circuit, when the government is not a party, an agency's refusal to comply with a subpoena is reviewed under the APA/Touhy framework. The immediate consequence here is not that the Court's only option is to compel compliance with the subpoena as served, but that Plaintiff should be permitted to continue to

5

pursue the requested materials through the proper agency channel. *Comsat Corp. v. NSF*, 190 F.3d 269 (4th Cir. 1999). The *Touhy* process in this case is not theoretical. Plaintiff engaged it by at least September 2022, with documented agency responses in September 2022 and July 2025 and a four-party meet and confer in June 2025. Exs. A-C. This sustained engagement demonstrates good faith.

16.     Second, a federal employee cannot be compelled to provide testimony or records contrary to valid Touhy regulations. *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989). Iovino does not seek to circumvent the Touhy process. Plaintiff does not seek to compel any individual employee to disregard agency instructions. To the contrary, Iovino's proposed remedy works within the Touhy framework: she asks to reissue a subpoena via the method that will satisfy whatever procedural objections the government has, --  to OIG through the regulatory channel if that is their preference, as opposed to Sharon James individually to produce agency records.  However, Ms. James has access to whatever OIG documents she wants to review, and this division is at best a fiction.  Ex. K, James deposition indicating DOS nearly immediately aware of OIG filings and informing contractor of the same.

17.     Third, the consequence of these principles is that the Court should evaluate the Government's motion not as a binary choice between enforcing a defective subpoena and permanently quashing all OIG discovery, but as a question of whether Iovino should be permitted to pursue these documents through the channel DOS claims is proper or necessary. The alleged procedural defects in the subpoena as served do not warrant with-prejudice foreclosure of Plaintiff's effort to seek these materials through a corrected process.

## ARGUMENT

**A. Any Service Defect Is Real but Curable — The Remedy Is Reissuance, Not Permanent Foreclosure.**

18.    Iovino will accept as true the Government's position the subpoena should not have been addressed to Sharon James individually. Doc. 267 at 4.   Iovino does not minimize the Government's position. However, she can reissue the subpoena to wherever the Defendant directs including — the Department of State Office of Inspector General — directed to the agency custodian, and served in compliance with applicable Touhy regulations to address any procedural concern.  Plaintiff can direct it to the official or custodian designated by the applicable Touhy regulations and can provide a reasonable compliance period.

21.    The point is any service or recipient defects are curable, and the appropriate relief is a corrected Touhy-compliant request rather than a ruling that bars Plaintiff from seeking the materials at all.

22.    The Government's footnote arguments — that the Rider was not referenced in the subpoena itself (Doc. 267 at 4 n.2), that notice to MSA was untimely (Doc. 267 at 4 n.3), and that *Touhy* procedures were not followed (Doc. 267 at 4 n.4), even if true, are likewise curable procedural defects. None goes to the relevance or discoverability of the documents sought. Iovino's proposed reissuance will cure each of these deficiencies.

**B. The Timing Deficiency Warrants Deferral, Not Permanent Foreclosure.**

23.    The Government argues that two-to-five business days was not a reasonable time for compliance. Doc. 267 at 5.  The subpoena was issued on February 20, 2026, sent to the government on February 24, and the discovery deadline was March 3 — leaving at most five business days before the close of discovery. But DOS and OIG did not have to make their

production in that timeframe.  Plaintiff was in communications within that timeframe explaining the scope, how focused and what they wanted, including providing Baumgart's affidavit. Ex. J.

24.    But the remedy for an unreasonable compliance deadline is modification of the deadline, not quashing the subpoena entirely. Rule 45(d)(3)(A)(i) states the Court "must quash *or modify"* a subpoena that fails to allow reasonable time. The Government asks only for quashing; the Court should instead defer ruling or set a reasonable compliance date that accommodates the Touhy review process.

25.    The Government's citation to *Pennsylvania National Mutual Casualty Insurance Co. v. Generali-U.S. Branch*, 2025 WL 906280 (D. Md. Mar. 25, 2025), is distinguishable: there, the court based its decision in part on the fact that granting third-party discovery would delay the case further after multiple extensions. *Id*. at *2. Here, the OIG documents are needed for Iovino to oppose summary judgment, and a brief extension for document production would ensure the summary judgment record is complete.

26.    Plaintiff proposes a compliance date 30 days after service of the corrected subpoena, or such other date as fits the Court's summary-judgment schedule.

27.    The timing of the subpoena reflects a sustained effort to obtain OIG materials through proper channels. Plaintiff submitted a Touhy request to the Department no later than September 2022. Ex. A. The Department acknowledged that request on September 16, 2022, identified the relevant OIG case file, and stated that the administrative record would be produced once available. Ex. A. In 2025, the Touhy process continued through updated requests, amended requests, multiple agency responses, and a four-party meet and confer. Exs. B, C. The January-February 2026 depositions then clarified the scope of the Baumgart investigations and the

significance of underlying investigative materials not addressed by the prior Touhy responses, leading Plaintiff to seek those materials directly.

28.     The Government's own citation to *BMO Harris Bank v. Richert Funding*, 2016 WL 11531451 (N.D. Ga. 2016), supports this flexibility: reasonableness of a compliance timeline is a case-by-case inquiry that accounts for the nature and volume of documents, whether they are readily accessible, and whether the requesting party had good cause for the timing. Doc. 267 at 5. The *Touhy*-governed nature of these records, the depositions that revealed their scope in January-February 2026, and the approaching summary judgment briefing deadlines each support accommodation rather than quashing.

29.     The Government's characterization of the subpoena as a last-minute "ambush" certainly mischaracterizes the very low amount of documents requested and completely ignores the *Touhy* record. Plaintiff sought OIG materials through the proper channel no later than September 2022, received the Department's acknowledgment on September 16, 2022, served updated requests in May 2025, participated in a four-party meet and confer in June 2025, and received supplemental agency responses in July 2025. *See* Exs. A-C. When the January-February 2026 depositions provided additional information about the scope of the Baumgart investigations and the underlying materials, Plaintiff sought those materials directly.  On March 27, 2026, Plaintiff submitted a formal *Touhy* request pursuant to 22 C.F.R. Part 172. *See* Ex. D. The February 2026 subpoena was the culmination of a sustained effort to obtain DOS/OIG cooperation, not a sudden  bolt from out of the blue.

30.     The Government's own September 2022 letter underscores the point. In that letter, the Department acknowledged Plaintiff's *Touhy* request, identified OIG Whistleblower Case 2017-0044, and stated that the administrative record was under review for production. *See* Ex. A.

The February 2026 subpoena sought, in part, the same investigative materials the Department had already identified, but not produced in 2022.

**C. The Government Has Not Met The Requirement to Show Undue Burden Under the Applicable Standard.**

31.    The Government bears the burden of showing that the subpoena, as narrowed, would impose an undue burden under Rule 45. In applying that standard to a "nonparty" subpoena, the Court must weigh the burden of production against the requesting party's need for information unavailable elsewhere. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). The Government has not met that burden here. It asserts that the Rider's five categories are overbroad and would require reviewing "thousands of OIG investigative documents" (Doc. 267 at 8), but it offers no affidavit, declaration, or concrete evidence quantifying the burden. Conclusory assertions of burden are insufficient. *See Jordan*, 921 F.3d at 189.

32.    Under *Comsat*, because OIG is a nonparty federal agency, the Court should allow Plaintiff to proceed through the proper Touhy/APA channel rather than treating the present subpoena defects as permanently dispositive. *See Comsat*, 190 F.3d at 276. The Government has not explained why the narrowed categories Iovino proposes would impose an unreasonable burden on OIG.

33.    Iovino proposes concrete narrowing that demonstrates her requests are confined and manageable:

(a) Identified investigations: All requests target specific Baumgart investigations, not open-ended agency-wide searches.

(b) Materials unavailable from MSA or party discovery: OIG is the sole custodian of its own investigation files. These documents cannot be obtained through any other discovery channel.

(c) Limited production period: Categories are limited to 2015-2019, corresponding to Iovino's employment and the relevant retaliation period.

(d) Privilege review accommodated: Iovino's proposed modifications limit production to final or near-final findings, reports, recommendations, summaries, and affidavits — not raw investigative notes or working files. This substantially reduces the privilege review burden.

34.    Iovino acknowledges that some categories, as drafted, are broader than necessary. Rather than defending every request as written, Iovino proposes the following modifications to reduce the burden on OIG while preserving access to relevant evidence.

35.    Rider Category 1 (Whistleblower Complaint Investigations): This is the core request. It seeks findings, reports, and recommendations from Baumgart's investigations of the misconduct Iovino reported at the CVC. These documents go directly to the merits of Iovino's Section 4712 claim — whether her disclosures concerned genuine misconduct and whether the investigation corroborated her reports. Iovino proposes narrowing the time frame to August 2015 through December 2019, consistent with the category's own language.

36.    Rider Category 2 (MSA and CVC Investigations): This category seeks OIG investigation documents about MSA's CVC operations from 2015 to the present. Iovino proposes limiting this to 2015 through 2019 to correspond with the period of her employment and the relevant retaliation. Iovino further proposes limiting this to investigations directly involving MSA's contract performance at the CVC, excluding any broader OIG audits not related to Iovino's disclosures.

11

37. Rider Category 3 (EDC Detection Failures — ATA Program): EDC detection failures under the ATA Program are relevant because Iovino's disclosures concerned these very failures. Am. Compl. Paragraphs 47-50. Iovino proposes narrowing this to 2016 through 2019 and limiting it to investigations involving MSA-provided EDC canines specifically.

38. Rider Category 4 (Diplomatic Security EDC Detection Failures): Plaintiff withdraws Rider Category 4. It is more attenuated from the claims than the remaining categories, and removing it substantially narrows the burden on OIG.

39. Plaintiff already withdrew any broader request for materials concerning the alleged chilling effect of subsequent civil litigation. In light of the Government's stated objection to that subject, Plaintiff proceeds on the narrower requests set forth in Categories 1, 2, and 3 only.

**D. Iovino Has a Substantial Need for These Documents, and They Are Available From No Other Source.**

40. Under *Jordan*, courts applying the heightened proportionality standard for nonparty subpoenas must consider "the requesting party's need" for the information sought. 921 F.3d at 189-90. The Fourth Circuit in *Jordan* quashed the subpoena because the requesting party failed to demonstrate need: the party had not shown why the nonparty was a better source than the parties themselves or other third parties, and much of the information had already been produced. *Id*. at 190-91. Iovino's case is the opposite.

41. The OIG investigation documents are uniquely held by OIG. They are not in the possession of either party. MSA does not have them. Iovino does not have them. They cannot be obtained through party discovery. OIG is the sole custodian of its own investigation files, findings, and reports. This distinguishes Iovino's subpoena from the one quashed in *Jordan*,

where the requesting party had alternative sources and could not explain why it needed the nonparty's documents specifically. *Id.* at 190.

42.    Iovino's need is not theoretical — it is urgent. The OIG published a report in July 2018 based in part on Iovino's disclosures. The underlying OIG findings and related investigative materials are likely to figure prominently in the parties' summary-judgment presentation of the whistleblower issues. Iovino needs those underlying materials to address the scope of the misconduct she reported and the investigative conclusions that followed. Without them, the summary-judgment record will be incomplete and one-sided.

43.    These are not collateral documents from a tangentially related proceeding. OIG investigated the precise misconduct Iovino disclosed. Baumgart's findings, reports, and recommendations go to the heart of whether Iovino's disclosures were protected under Section 4712 — and whether MSA knew or should have known its retaliation was targeting a legitimate whistleblower.

44.    The burden on the Government, while real, is substantially reduced by the narrowing Plaintiff now proposes. The modified requests target a defined set of investigations by a single agent (Baumgart) within a defined time frame (2015-2019 for most categories). The Government's assertion that compliance would require reviewing "thousands of OIG investigative documents" (Doc. 267 at 8) does not account for the narrowed scope: the requests seek findings, reports, recommendations, and summaries — not the full investigative files.

45.    The "more demanding variant of the proportionality analysis" applicable to nonparty subpoenas, does not require quashing where the requesting party demonstrates genuine need and proposes reasonable limitations. *Jordan*, 921 F.3d at 189. Iovino has done both.

46.     The Government's observation that Iovino "knew about" the Baumgart investigations since 2022 (Doc. 267 at 3 n.1) does not diminish her need for the documents. Knowing an investigation exists is not the same as possessing its findings. The Baumgart Affidavit is only a single document — not the full body of OIG findings, reports, and recommendations that the subpoena seeks. Ex. E.

**PROPOSED MODIFICATIONS**

47.     To address the Government's legitimate concerns and to comply with the Touhy framework, Iovino proposes the following modifications: (a) Recipient: Reissue subpoena to the Department of State Office of Inspector General, directed to the proper agency custodian under the applicable Touhy regulations. (b) Service: Serve on the designated Touhy official, not an individual employee or AUSA counsel. (c) Compliance deadline: 30 days from service of the corrected subpoena, or such other date as the Court sets in connection with the summary-judgment briefing schedule. (d) Category 1: Narrow to August 2015 through December 2019. (e) Category 2: Narrow to 2015 through 2019 and limit to MSA contract performance at the CVC. (f) Category 3: Narrow to 2016 through 2019 and limit to investigations involving MSA-provided EDC canines under the ATA Program. (g) Category 4: Withdrawn. (h) Category 5: Withdrawn. (i) Document types: Limit to final or near-final findings, reports, recommendations, summaries, and affidavits — not raw investigative notes or working files. This limitation is consistent with the narrowing principles reflected in the Department's Supplemental Touhy Response dated July 17, 2025, and OIG's Supplemental Response dated July 18, 2025, both of which imposed scope limitations and protections for sensitive information. Exs. B, C. (j) Notice: Iovino will comply with Rule 45(a)(4) notice requirements. (k) Touhy compliance: Iovino will submit the request through the proper Touhy channel and comply with all applicable regulations.

**CONCLUSION**

48.    The Government's Motion to Quash should not result in permanent foreclosure of all OIG discovery. The subpoena's procedural deficiencies — the addressing and service errors, the unreasonable compliance deadline, and the failure to proceed through the proper Touhy channel — are serious but curable. Under the Touhy/APA framework applicable to nonparty federal agencies, the proper question is not whether the defective subpoena should be enforced as served, but whether Iovino should be permitted to pursue these uniquely relevant materials through a corrected process. She should.

49.    Plaintiff has demonstrated a substantial need for materials uniquely held by OIG and unavailable from party discovery, and she has proposed concrete narrowing to reduce burden on the agency.

50.    Plaintiff respectfully requests that the Court quash the February 20, 2026 subpoena without prejudice and permit Plaintiff promptly to serve a corrected, properly directed, and Touhy-compliant subpoena incorporating the narrowed categories set forth above, with a reasonable compliance deadline set by the Court if necessary. In the alternative, Plaintiff requests that the Court hold the motion in abeyance briefly to permit service of the corrected subpoena and an agency response through the proper channel.

Respectfully submitted,

Dates: April 27, 2026

Respectfully Submitted,

/s/ John A. Kolar

John A. Kolar
Government Accountability Project

15

1612 K Street, N.W.
Suite 1100
Washington, D.C. 20006
(202) 926-3311
Cell: (301) 452-8543
(No fax number)
JackK@whistleblower.org

Sponsored by:
Nate L. Adams III
Nate L. Adams III, P.C.
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601
(540) 667-1330
*nadams@nadamslaw.com*


Counsel for Plaintiff Karen Iovino