Iovino v. Michael Stapleton Associates, Ltd.
Case No. 5:21-cv-00064 (W.D. Va.)

# EXHIBIT G



1612 K Street NW Suite 1100
Washington, DC, 20006
(202) 457-0034
Whistleblower.org

July 25, 2022

Honorable Richard C. Visek
Acting Legal Adviser
United States Department of State
2201 C Street, N.W,
HST, Room 6421
Washington, DC 20520

Via email to: legal-fo-support-dl@state.gov

Attn: Jaclyn Greenstein, Esq.

Dear Acting Legal Adviser Visek:

This is a request by Dr. Karen Iovino, DVM, by her undersigned counsel, pursuant to the decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and the Department of State Touhy regulation, 22 C.F.R. § 172.5. As you know, Dr. Iovino is the Plaintiff in *Karen Iovino v. Michael Stapleton Associates, Ltd.*, Case No. 5:21-CV-00064-TTC (W.D. Va.). Dr. Iovino sued Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA") pursuant to 41 U.S.C. § 4712, for retaliating against her for her exercise of her whistleblower rights. This litigation presently is in the discovery phase in the U.S. District Court.

Per the attached letter to MSA's legal counsel (Attachment 3), it is apparent to us that because a contractor like the MSA is merely "an employee" under Part 172, and because the Department of State ("DoS") is allowing that contractor to be represented by a private law firm, DoS has already authorized or acquiesced to that law firm to administer DoS's compliance with Part 172. Unless MSA has failed to promptly report being served with the complaint and summons, the very fact that MSA is controlling the litigation (and DoS' contract documents and materials), *prima facie* establishes the delegation to MSA by DoS of its Part 172 obligations. If we are incorrect, please correct us immediately. We are confident DoS will take a "substantially justified" position within the meaning of the Equal Access to Justice Act for purposes of costs and attorney's fees. See 5 U.S. Code § 504. If we are correct, then please disregard the alternative request below.

Alternatively, we hereby request that the Department of State ("DoS") produce the documents described on Attachment 1 to this letter. The information contained therein is relevant to Dr. Iovino's claims, and/or to MSA's defenses, and is therefore discoverable pursuant to Rule 26(b) of the Federal Rules of Civil Procedure.

Dr. Iovino's claims are laid under 41 U.S.C. § 4712. Under this statute, Congress has specified that the legal burdens of proof specified in 5 U.S.C. § 1221(e) are controlling for purposes of any judicial proceeding under this whistleblower protection statute. *See* § 4712(c)(6). Under 5 U.S.C. § 1221(e), an employee must present evidence that he or she made a protected disclosure, which was a contributing factor in a personnel action taken against him or her. The employee may demonstrate that the disclosure was a contributing factor in the personnel action through circumstantial evidence, such as evidence that {a) the official taking the personnel action knew of the disclosure and (b) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *See, e.g., Busselman v. Battelle Memorial Institute*, 2019 WL 7763845 *7 (E.D. Wash. Nov. 15, 2019).

As far as MSA's defense is concerned, once the employee has met this burden, the burden of proof shifts to the employer, which must present clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure. In *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), the court adopted the following test:

> [W]hen determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the following factors [should be considered]: the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

It is apparent that the documents Dr. Iovino seeks as described in Attachment 1 are relevant to her claims and to MSA's defenses. For example, we submit that correspondence between MSA and DoS may reveal that either or both acted with a motive to retaliate against Dr. Iovino due to embarrassment that he protected disclosures may have caused for the involved government and contractor officials.

The requested documents also are relevant to the question of whether MSA took the actions it did against Dr. Iovino at the request or direction of DoS officials, or with their concurrence, ratification, and acquiescence. Section 4712(a)(3)(B) shows the relevancy of such concerns. It provides:

> [A] reprisal described in paragraph (1) is prohibited even if it is undertaken at the request of an executive branch official, unless the request takes the form of a non-discretionary directive and is within the authority of the executive branch official making the request.

Dr. Iovino is entitled to discovery all communications between the government and its contractor because it may show the degree of collusion between them in respect of Dr. Iovino's case.

The same considerations apply to establish the relevance of the testimony of the individuals listed in Attachment 2. In its initial Rule 26(a)(1) disclosures, MSA was required to identify "(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party [Defendant MSA] may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). MSA listed the individuals we

have listed in Attachment 2. Certainly, Dr. Iovino is entitled to depose the persons that MSA has identified may used to support its claims and defenses.

Any depositions Dr. Iovino conducts of the persons listed in Attachment 2 will comply with the limits on duration contained in the Fed. R. Civ. P.

Sincerely,


/s/ Jack Kolar
John A. (Jack) Kolar
Government Accountability Project
1612 K Street NW — Suite No. 1100
Washington, DC 20006
Tel (202) 457-0034, Ext. 197
Email jackk@whistleblower.org

**Attachment 1**

1.     Produce all documents referenced in paragraph II.a. of Defendant's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26, dated February 25, 2022, filed in *Karen Iovino v. Michael Stapleton Associates, Ltd.*, Case No. 5:21-CV-00064-TTC (W.D. Va.).

2.     Produce all documents referenced in paragraph II.b. of Defendant's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26, dated February 25, 2022, *Karen Iovino v. Michael Stapleton Associates, Ltd.*, Case No. 5:21-CV-00064-TTC (W.D. Va.).

3.     Produce all communications and documents exchanged between MSA, and any of its directors, officers, owners, employees, agents, and representatives, and any person within the Office of Acquisitions Management, U.S. Department of State ("AQM"), in any way related to or discussing Karen Iovino.

4.     Produce all communications and documents exchanged between MSA, and any of its directors, officers, owners, employees, agents, and representatives, and any person within the Bureau of Diplomatic Security, U.S. Department of State, in any way related to or discussing Karen Iovino.

5.     Produce all communications and documents exchanged between MSA, and any of its directors, officers, owners, employees, agents, and representatives, and any person within the U.S. Department of State ("DoS"), in any way related to or discussing Karen Iovino.

6.     All communications and documents exchanged between MSA, and any of its directors, officers, owners, employees, agents, and representatives, and any person within DoS's Office of Inspector General ("OIG"), in any way related to or discussing Karen Iovino.

7.     Produce all communications and documents authored, sent, or received by any of the following individuals in any way related to or discussing Karen Iovino:

Alan Bower, Zane Roberts, Mark Potter, Garrett Lancaster, Mike Hayes, Mike Ratcliff, Jennifer Houston, Ben Orndorff, Carolyn Olech, Brett Harshbarger, Jonah Ballenger, Lee Palmer, Peter Deegan, Amy Callihan, Candace McCall, and Gerald Goss.

8.	Produce all communications and documents authored, sent, or received by any of the following individuals in any way related to or discussing Karen Iovino: Josh Carter, Cathy Read, Loren Bachman, Anna Garcia, James Olds, and Sharon James.

9.	Produce organization charts showing the organization of MSA, the Canine Validation Center (CVC), and the Anti-Terrorism Assistance Program (ATA) during the period from 2015 to 2022.

10.	Produce maps, diagrams, and floor plans showing the physical premises utilized by MSA for operations of the Canine Validation Center (CVC), and the Anti-Terrorism Assistance Program (ATA) during the period from 2015 to 2022, and for the MSA's campus in or around Winchester, Virginia during that time period.

11.	Produce the contracts between MSA and any and all of its components and the U.S. Department of State relating to the CVC and the ATA.

12.	Produce all personnel files and documents MSA and DoS created and maintained regarding Karen Iovino.

13.	Produce MSA's employee manuals during the period from 2015 to 2022.

14.	Produce MSA's procedures for employees in reporting suspected fraud, waste, or abuse during the period 2015 to 2022.

15.	Produce MSA's procedures for evaluating employees' performance during the period from 2015 to 2022.

16.     Produce all communications and documents relating to anything of value provided by MSA, and any of its directors, officers, owners, employees, agents, and representatives, to any employee or representative of the Department of State.

17.     Produce all communications and documents relating to the performance of Jennifer Houston, and complaints by Dr. Iovino and other MSA personnel regarding her possibly being impaired by alcohol or drugs while being on the job at the CVC and/or ATA program.

18.     Produce all documents regarding Josh Carter's use of a room on MSA's campus for residential and/or sleeping quarters and/or to store his personal belongings such as clothing, and any payment Mr. Carter made to MSA for such use.

19.     Produce all documents regarding Josh Carter's use of a truck, automobile, or other vehicle owned, leased, or operated by MSA, the purposes for which it was used, and any payment Mr. Carter made to MSA for such use.

20.     Produce the form of MSA "Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement" in effect in August 2017 when MSA terminated Dr. Iovino's employment.

21.     Produce the form of the "Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement" that were amended in light of or in response to the "*Management Assistance Report: Use of Confidentiality Agreements by a Department of State Contractor*," ("Management Assistance Report") published by the Department of State, Office of the Inspector General ("DOS-OIG") and numbered as ESP-18-03, *i.e.*, that DOS-OIG published in August 2018.

22.     Produce all communications between MSA and the Department of State and/or the DOS-OIG relating to the MSA "Employee Confidentiality, Invention Assignment and Non-Solicitation Agreement" in effect when MSA terminated the employment of Dr. Iovino", and all

such communications regarding amendments to that agreement made by MSA in light of or in response to DOS-OIG's  August 2018 *Management Assistance Report.*

23.     As alleged in ¶ 38 of the Counterclaim MSA filed on May 16, 2022, produce all of the allegedly "confidential information, including confidential internal communications, confidential internal photographs" that Dr. Iovino allegedly disclosed to the Washington Post and NBC 4  Washington.

24.     As alleged in ¶ 39 of the Counterclaim MSA filed on May 16, 2022, produce all of the allegedly "confidential information, including confidential internal communications, confidential internal photographs" that Dr. Iovino allegedly disclosed to Ellen Nakashima at the Washington Post.

25.     As alleged in ¶ 40 of the Counterclaim MSA filed on May 16, 2022, produce all of the allegedly "confidential information, including confidential internal communications, confidential internal photographs" that Dr. Iovino allegedly disclosed to David Paredes at NBC 4 Washington.

26.     As alleged in ¶ 41 of the Counterclaim MSA filed on May 16, 2022, produce all of the allegedly "confidential information, including confidential internal communications, confidential internal photographs" that Dr. Iovino allegedly disclosed to Carol Morello at the Washington Post.

27.     As alleged in ¶ 42 of the Counterclaim MSA filed on May 16, 2022, produce all of the allegedly "confidential information, including confidential internal communications, confidential internal photographs" that Dr. Iovino allegedly disclosed Scott MacFarlane at NBC 4 Washington.

28.     As alleged in ¶ 43 of the Counterclaim MSA filed on May 16, 2022, produce all of the allegedly "confidential information, including confidential internal communications, confidential internal photographs" that Dr. Iovino allegedly disclosed to Katie Leslie at NBC 4 Washington.

29.     As alleged in ¶ 44 of the Counterclaim MSA filed on May 16, 2022, produce all of the articles that NBC 4 Washington and the Washington Examiner allegedly have published as a result of Dr. Iovino's allegedly prohibited disclosures.

30.     As alleged in ¶ 45 of the Counterclaim MSA filed on May 16, 2022, produce all documents relevant to MSA's allegation that as a result of Dr. Iovino's alleged breach of the Non-Disclosure Agreement, and the articles NBC 4 Washington and the Washington Examiner allegedly have published as a result of Dr. Iovino's allegedly prohibited disclosures, that other news outlets and organizations have also have allegedly published Dr. Iovino's allegedly unauthorized and confidential disclosures.

31.     As alleged in ¶ 47 of the Counterclaim MSA filed on May 16, 2022, produce all documents relevant to MSA's allegation Dr. Iovino's alleged breach of the Non-Disclosure Agreement jeopardized MSA's obligations of confidentiality to the State Department.

32.     As alleged in ¶ 48 of the Counterclaim MSA filed on May 16, 2022, produce all documents relevant to MSA's allegation that Dr. Iovino's alleged breach of the Non-Disclosure Agreement created concern among other MSA clients and potential clients that their confidential information would not be protected by MSA.

33.     As alleged in ¶ 49 of the Counterclaim MSA filed on May 16, 2022, produce all documents relevant to MSA's allegation that MSA has suffered financial and reputational harm as a direct and proximate result of Dr. Iovino's alleged breach of the Non-Disclosure Agreement

and, further, that as news stories resulting from Counterclaim-Defendant's unauthorized

disclosures of information continue to be published, MSA's losses will continue to accrue.

**Attachment 2**

a. Alan Bower
c/o Ryan Berry
Ward & Berry, PLLC
1751 Pinnacle Drive
Suite 900
Tysons, VA 22102
Tel: (202) 331-8160
Mr. Bower is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

b. Gerald Goss
c/o Ryan Berry
Ward & Berry, PLLC
1751 Pinnacle Drive
Suite 900
Tysons, VA 22102
Tel: (202) 331-8160
Mr. Goss is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

c. Jennifer Houston
c/o Ryan Berry
Ward & Berry, PLLC
1751 Pinnacle Drive
Suite 900
Tysons, VA 22102
Tel: (202) 331-8160
Ms. Houston is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

d. Ben Orndorff
c/o Ward & Berry, PLLC
1751 Pinnacle Drive
Suite 900
Tysons, VA 22102
Tel: (202) 331-8160
Mr. Orndorff is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

e. Dr. Michael Ratcliff

c/o Ryan Berry
Ward & Berry, PLLC
1751 Pinnacle Drive
Suite 900
Tysons, VA 22102
Tel: (202) 331-8160
Dr. Ratcliff is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

f. Josh Carter
United States Department of State
Mr. Carter is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

g. Sharon James
United States Department of State
Ms. James is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

h. Cathy Reed
United States Department of State
Ms. Reed is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

i. Anna Garcia
United States Department of State
Ms. Garcia is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

j. James Olds
United States Department of State
Mr. Olds is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

k. Peter Deegan
c/o Ryan Berry
Ward & Berry, PLLC
1751 Pinnacle Drive
Suite 900
Tysons, VA 22102

Tel: (202) 331-8160
Mr. Deegan is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

l. Michael Hayes
c/o Ryan Berry
Ward & Berry, PLLC
1751 Pinnacle Drive
Suite 900
Tysons, VA 22102
Tel: (202) 331-8160
Mr. Hayes is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

m. Dr. Lee Palmer
Current contact information for this individual is not readily available to MSA. Dr. Palmer is likely to have knowledge of the facts and circumstances relevant to this action, including, but not limited to, the alleged incidents of discrimination pled by Iovino in her Complaint in the instant action.

**Attachment 3**



1612 K Street NW Suite 1100
Washington, DC, 20006
(202) 457-0034
Whistleblower.org

July 22, 2022

Daniel Ward, Esq.
Ward & Berry, PLLC
2000 Pennsylvania Ave, N.W. Suite 7000
Washington, D.C. 20006

Re: *Karen Iovino v. Michael Stapleton Associates, Ltd.*, Case No. 5:21-CV-00064-TTC (W.D. Va.)

Dear Dan,

We are writing one last time before a Zoom face-to-face meeting which will include a new member of our legal team, Thad Guyer. Admittedly, when we first read MSA's position, some on our team initially thought the following objection by MSA might have facial appeal:

> MSA is bound by the U.S. Department of State's ("DoS") Touhy regulations, found at 22 C.F.R. § 172 et seq. The DoS Touhy regulations include contractors within the definition of employee at § 172.1(b) ("the term employee includes. . . United States nationals, foreign nationals, and contractors."). Any information that a DoS contractor obtains "as part of their official duties or because of their official status within the Department while such individuals were employed by or served on behalf of the Department" is treated by DoS as official information. Id. § 172.1(d). The relevant contract between DoS and MSA contract reiterates this point: "All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government."

Nonetheless, we disputed your reading of this regulation for the reasons set forth in my letter dated July 12, 2022. If our position in that letter is correct—which we continue to think it is—your position is unsound.

On further analysis, your argument is a deceptively circular, illusory *reductio ad absurdum*. If MSA is a DoS "employee" per the definition of section §172.1(b), then it has been conducting this litigation as a "rogue employee" inconsistently with many of its other obligations under Part 172. The "contractor" status you have asserted is not a free-standing category under Part 172, but is simply part of the definition of DoS "employees". MSA by your logic is like any other employee. MSA can't claim employee status only in responding to "responses to

interrogatories, *document production, or other litigation-related matters, pursuant to the Federal Rules of Civil Procedure" (see* §172.1(2)), but deny being bound by all the rest of the rules governing "employees" in Part 172.

MSA's strictures as an "employee" spans the entire Part 172 scheme from start to finish, from service of the complaint and summons on an "employee" under §172.2(b) which then must be defended by the Executive Office of the Office of the Legal Adviser (L/H-EX), all the way to §172.5(c) and (d), which require the DoS to instruct the "employee" (i.e. MSA) on what to do with the document request and then consult with the DOJ "regarding legal representation for Department employees" (i.e. MSA). Under these provisions, MSA as an "employee" could not even participate or respond to this action without L/H-EX approval.

Following MSA's logic further, under §172.4(a) and (c), as an "employee" MSA has already repeatedly in its *court filings* violated the subsection (a) prohibition of "provid[ing] oral or written testimony by deposition, declaration, affidavit, or otherwise concerning *any information* acquired while such person is or was an employee of the Department"; and the subsection (c) prohibition of "produc[ing] for use at such proceedings *any document or any material* acquired as part of the performance of that employee's duties or by virtue of that employee's official status".

The legal absurdity of MSA's position is brightly illustrated when considering that MSA's motions, answer and counterclaim all produce alleged facts, information and other "material acquired as part of the performance of" the MSA contract. Under § 172.2(b) MSA was not even allowed to respond to this action, for upon the --

> summons or complaint described in § 172.1(a) [being] delivered *to an employee* of the Department other than in the manner specified in this part, such attempted service shall be ineffective, and *the recipient thereof shall either decline to accept the proffered service or return such document* under cover of a written communication which directs the person attempting to make service to the procedures set forth herein. (Emphasis added.)

The only work around to the conclusion that MSA has been a serial violator of Part 172 is the one allowable exception for MSA to the mandatory § 172.2(b) applicability to employees: MSA has been authorized by the Department to participate in this litigation under § 172.3(a). That authorization moots the rest of Part 172 because "in cases in which the Department *is represented by legal counsel who have entered an appearance* or otherwise given notice of their representation," Part 172 and Touhy procedures are inapplicable-- they are moot. (Emphasis added). If MSA is, as it professes, an "employee of the Department" under the "contractor" inclusion of that term, then by its logic Plaintiff must assume that Ward & Berry PLLC is an authorized legal counsel for the employee of the DoS, and the DoS is a party to this proceeding. (They normally use DOJ, we believe per §172.5(d).). Consequently, the Touhy regulations do not apply to demands for DoS and MSA information in this lawsuit.

We think you should concede your objection for you will unlikely succeed when this is presented to the Judge. As you know, per paragraph 11 of the Scheduling Order: " Prior to filing

any discovery motions, the parties are directed to contact Judge Hoppe's chambers by telephone in an effort to resolve the issue.

We would appreciate the courtesy of a response to this letter on or before close of business on Tuesday, July 26, 2022.

Sincerely,
/s/
John A. Kolar
Counsel for Plaintiff Karen Iovino