Iovino v. Michael Stapleton Associates, Ltd.
Case No. 5:21-cv-00064 (W.D. Va.)

# EXHIBIT K

**Sharon James 30b6 DoS**
**February 26, 2026**

Page 30

OPP. EX K

guardian or should I just --

THE GUARDIAN:  Sure.

MS. FRITH:  -- try to pop it in the chat?

THE GUARDIAN:  You can send it to me.  It's Roberta, R-O-B-E-R-T-A --

MS. FRITH:  Okay.  Hang on.  Sorry.  Roberta.  Yep.

THE GUARDIAN:  -- dot Ebhert, E-B-H-E-R-T --

MS. FRITH:  Okay.

THE GUARDIAN:  -- at Readback, all one word, dot legal.

MS. FRITH:  Okay.  No dot com, huh?

THE GUARDIAN:  No.

MS. FRITH:  Okay.  Then this would be, I guess, Exhibit 21.

THE GUARDIAN:  Okay.  It might take a minute.  It likes to send things to junk.  All right.  I got it.  And I got it pulled up.  All right.  It's all pulled up.  And we're still on the record.

MS. FRITH:  Oh, we're still on the record?

THE GUARDIAN:  Mm-hmm.  And you want me just to scroll to the bottom, Attorney Guyer?

MR. GUYER:  No.  I just want you to go -- still just to attachment B.  You don't need to do anything with the letter as far as I'm concerned.  I'm just going to rely on Krista to keep me on track.

**Sharon James 30b6 DoS**
**February 26, 2026**

Page 31

THE GUARDIAN:  Okay.

MR. GUYER:  It'll just be more efficient.

MS. FRITH:  I'll do my best.

THE GUARDIAN:  Let's go back.  All right.  There we go.

MR. GUYER:  All righty.  So are we ready?

THE GUARDIAN:  We are, yep.

Q.    Okay.  So looking at attachment B and matter 1, the question is:  Does the DOS understand that MSA relies on 41 USC 4712(a)(3)(B) in defending this case?

MS. FRITH:  And for that question, the Touhy request was not approved.  The remainder of Topic 1 was approved.

MR. GUYER:  Okay.  Thanks.  All right.

Q.    So we'll move then to the second sentence of 1.  "Does the DOS contend that in its actions vis-à-vis Dr. Iovino in 2017, MSA acted at the request of an executive branch official?"

THE GUARDIAN:  And you're muted, Ms. James.

A.    I'm sorry, the question again?  Sorry.

Q.    Oh, yeah.  So she'll bring it up where you can read it yourself.  So we're in question -- we're in Matter No. 1 of attachment B, and we're going to start at the second sentence, which is a question.  And if you could find it there and then read it to yourself and just let me know what the answer is.

**Sharon James 30b6 DoS**
**February 26, 2026**

Page 32

MS. FRITH:  I should clarify that the Touhy approval letter says that the request 1 is granted and that the department will provide a deponent to speak to the department's general practice and policy of involvement or non-involvement in a contractor's employment decisions and any related information specifically concerning Dr. Iovino in 2017.

MR. GUYER:  Okay.  Great.  Wonderful.

MS. FRITH:  And so, Ms. James, I think you can provide the answer that you prepared for this --

MR. GUYER:  Yes.

MS. FRITH:  -- based on that approval.

MR. GUYER:  Yes.  I agree.

Q.    **You can just give us whatever answers you are --**

A.    Sure.

Q.    **-- prepared to give.**

A.    So in response to this, The department is not involved in employers' decisions with their employees. Contractor personnel are not government employees.  They're employees of their respective company and not subject to the same rules, regulations as that of federal employees. Contractor personnel are subject to the terms and conditions of their employment contracts or agreements, as well as the terms and conditions of their employers'

**Sharon James 30b6 DoS**
**February 26, 2026**

Page 33

contract with the government.

Q.    Okay.  And then we'll go on to matter 2.  If you already just have the answers, you know, I don't want to, you know, waste any time here at all.  So if you're able to then just read to us what answer you prepared to give as to matter 2.

A.    Okay.  In response to Topic 2?

Q.    Yes.

A.    Okay.  Just pointing out that information within the department is shared on a need-to-know basis, policy guidance.  Where information is shared, an individual has a -- and an individual has a legitimate work-related program that requires access to perform their specific job functions; information can be shared.  Ms. Read's sharing of information was appropriate in her role as head of contracting activity, and she did so in a professional manner to inform program leadership of an OIG complaint.

Q.    Okay.

MR. GUYER:  Now, Krista, just for the record, I'm going to ask the first question on No. 1, which I understand you're then going to say that Touhy says no to that or whatever.  You'll instruct her not to answer.

Q.    One is, I'm asking you this question now, Ms. James, but I understand you'll be told not to answer.  Does