**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| KAREN IOVINO, | ) | |
| | ) | |
|     **Plaintiff and** | ) | Case No. 5:21-CV-00064-TTC |
|     **Counterclaim Defendant,** | ) | |
| | ) | **DEFENDANT AND** |
| **v.** | ) | **COUNTERCLAIM PLAINTIFF'S** |
| | ) | **MEMORANDUM IN SUPPORT** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **OF ITS MOTION IN LIMINE** |
| **d/b/a MSA SECURITY, INC.** | ) | **NO. 2: MOTION TO EXCLUDE** |
| | ) | **THE OPINIONS AND** |
|     **Defendant and** | ) | **TESTIMONY OF JACQUELINE** |
|     **Counterclaim Plaintiff** | ) | **GARRICK, LCSW-C, SHRM-CP** |

Respectfully submitted,

April 28, 2026

*/s/ Daniel S. Ward*

_____

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton
Associates, Ltd., d/b/a MSA Security, Inc.*

Pursuant to Federal Rules of Civil Procedure ("FRCP") 26(a)(2) and 37(c)(1), and Federal Rule of Evidence 702, Defendant and Counterclaim Plaintiff Michael Stapleton Associates, Ltd., d/b/a/ MSA Security, Inc. ("MSA"), through counsel, respectfully files this memorandum in support of its motion to exclude the opinions and testimony of Jacqueline Garrick, LCSW-C, SHRM-CP.

## I.    INTRODUCTION

Plaintiff Karen Iovino has designated Jacqueline Garrick, LCSW-C, SHRM-CP, as an expert witness in this matter. Ms. Garrick submitted an expert report dated May 22, 2023, titled "Whistleblower Retaliation Checklist (WRC) Assessment," in which she purports to diagnose Iovino with Post-Traumatic Stress Disorder ("PTSD") and Persistent Depressive Disorder caused by alleged whistleblower retaliation. MSA moves to exclude Ms. Garrick's opinions and testimony in their entirety on three independent grounds.

First, Plaintiff's expert disclosures fail to comply with the mandatory requirements of FRCP 26(a)(2)(B). The disclosure omits a complete list of cases in which Ms. Garrick has testified as an expert, fails to include any exhibits, and does not adequately disclose compensation for testimony. These deficiencies warrant exclusion or, at a minimum, preclusion of testimony on undisclosed matters under FRCP 37(c)(1).

Second, Ms. Garrick's opinions fail to satisfy the reliability requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Her opinions are based on a novel, unvalidated assessment instrument—the "Whistleblower Retaliation Checklist"—that she developed. It has not been subjected to empirical testing or peer review, has no known error rate, and has not achieved general acceptance in the relevant scientific community.

Third, Ms. Garrick lacks the qualifications to render clinical diagnoses of PTSD and Persistent Depressive Disorder. Her background is in pro-whistleblower policy advocacy and program administration, not clinical forensic psychology. Moreover, her four-year prior relationship with Iovino as a peer support provider and whistleblower advocate compromises her objectivity as an expert witness.

## II.      LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. As amended, Rule 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702.

In *Daubert*, the Supreme Court established a non-exclusive list of factors for assessing reliability, including (1) "whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; (4) "the existence and maintenance of standards controlling the technique's operation"; and (5) whether the theory or technique has attracted "[w]idespread acceptance" within a relevant scientific community. 509 U.S. at 593–94.

The Fourth Circuit and this Court have emphasized that the trial court must act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th

2

Cir. 2017); *Dillard v. Smith,* 558 F.Supp.3d 308, 314 (W.D. Va. 2021). The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). Expert opinions that are "connected to existing data only by the *ipse dixit* of the expert" are properly excluded. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Additionally, FRCP 26(a)(2)(B) imposes mandatory disclosure requirements for retained expert witnesses. A party must disclose a written report prepared and signed by the expert containing: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the preceding 10 years; (v) a list of all cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." FRCP 26(a)(2)(B). A party that fails to comply with FRCP 26(a) "is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." FRCP 37(c)(1).

### III.    ARGUMENT

#### a. **Plaintiff's Expert Disclosure Violates Rule 26(a)(2)(B).**

Plaintiff's expert disclosure for Ms. Garrick fails to satisfy multiple mandatory requirements of FRCP 26(a)(2)(B). These deficiencies are neither justified nor harmless, and they warrant exclusion of Ms. Garrick's testimony under FRCP 37(c)(1).

##### i.  *The Disclosure Fails To Disclose Prior Testimony.*

FRCP 26(a)(2)(B)(v) requires disclosure of "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Ms. Garrick's

disclosure fails to provide any such list. Her curriculum vitae contains only two vague references to prior testimony—"*Czarny vs. Hyatt* forensic testimony," which is undated and "Arizona Court testimony on Whistleblower Retaliation Checklist and PTSD" in "July"—along with a general statement that she has "been asked to provide expert opinions on several civilian court cases and Federal government proceedings." **Exhibit 1** (Garrick Resume) at 1, 9; **Exhibit 2** (Garrick Report) at 16. This is insufficient. FRCP 26 requires a complete list of all cases, not a selective sampling with vague references to unspecified "several" proceedings. Plaintiff refused to make Ms. Garrick available for deposition, preventing MSA from exploring Dr. Hankins's reliance on Ms. Greene's psychotherapy notes (and opinions in general). DSUMF ¶ 76 (ECF 251-1). As such, MSA has been deprived of the opportunity to review Ms. Garrick's prior testimony for inconsistencies, methodological criticisms, or admissibility rulings in other courts.

### ii.    The Disclosure Fails To Disclose Exhibits.

FRCP 26(a)(2)(B)(iii) requires disclosure of "any exhibits that will be used to summarize or support" the opinions. Ms. Garrick's disclosure contains no exhibits. The Whistleblower Retaliation Checklist ("WRC") instrument itself—the foundational assessment tool upon which her entire opinion rests—was not disclosed to Defendant. Nor were any scoring sheets, raw assessment data, charts, or tables summarizing her findings. Without the actual WRC instrument and scoring data, MSA cannot evaluate the validity, reliability, or proper application of the assessment methodology. This omission is particularly prejudicial given that the WRC is a novel instrument developed by Ms. Garrick.

### iii.    The Disclosure Fails To Adequately Disclose Compensation.

FRCP 26(a)(2)(B)(vi) requires "a statement of the compensation to be paid for the study and testimony in the case." The disclosure includes only an invoice for $2,000 covering the initial

assessment, interview, and document review at a rate of $250 per hour. **Exhibit 3** (Garrick Invoice). However, no information is provided regarding compensation for trial testimony, deposition testimony, or ongoing case consultation. FRCP 26 explicitly requires disclosure of compensation for "testimony," not merely the initial assessment. This omission prevents MSA from exploring potential financial bias on cross-examination.

> iv. *The Disclosure Inadequately Discloses All Facts And Data Considered By The Expert.*

FRCP 26(a)(2)(B)(ii) requires disclosure of "the facts or data considered by the witness in forming" her opinions. While Ms. Garrick's report references certain documents—Iovino's CV, the First Amended Complaint, a State Department OIG report, and MSA's website—no formal, comprehensive list of all materials reviewed is provided. The materials are mentioned incidentally throughout the narrative rather than enumerated as required. The disclosure fails to identify what, if any, medical or mental health records were reviewed, whether any collateral interviews were conducted, or whether any validated psychological testing was administered.

### b. **Ms. Garrick's Opinions Fail *Daubert*'s Reliability Requirements.**

Even if the disclosure deficiencies were excused, Ms. Garrick's opinions should be excluded because they fail to satisfy the reliability requirements of Rule 702 and *Daubert*. Her diagnoses of PTSD and Persistent Depressive Disorder rest entirely on a novel, self-created assessment instrument—the Whistleblower Retaliation Checklist ("WRC")—that fails every *Daubert* factor.

> i. *The WRC Has Not Been Tested.*

The first Daubert factor asks whether the theory or technique "can be (and has been) tested." *Daubert*, 509 U.S. at 593. Ms. Garrick describes the WRC as an 83-item checklist she developed based on "a literature review, survey results, interviews, and other commonly used

clinician and self-administered scales." Exhibit 2 at 2. However, there is no evidence that the WRC has been empirically tested for diagnostic validity. There is no evidence that validation studies have been conducted to determine whether the WRC accurately identifies individuals suffering from whistleblower retaliation trauma. The Fourth Circuit has emphasized that "[g]enerally, scientific methodology involves 'generating hypotheses and testing them to see if they can be falsified.'" *Nease*, 848 F.3d at 232 (citing *Daubert*, 509 U.S. at 593). An untested instrument (such as the WRC) cannot satisfy this fundamental requirement.

### ii. The WRC Has Not Been Subjected To Meaningful Peer Review.

The second *Daubert* factor considers whether the technique has been "subjected to peer review and publication." *Daubert*, 509 U.S. at 593.

There is no published third-party critique of Garrick's WRC in peer-reviewed literature, legal periodicals, or reported case law. Garrick's WRC has not generated any independent scholarly engagement at all — favorable or otherwise — in the six years since the WRC was published. While Ms. Garrick published an article about the WRC in Crisis, Stress and Human Resilience: An International Journal in 2020, this publication merely introduces the instrument; it does not constitute independent validation research. No other researchers have published studies testing the WRC's reliability or validity. The publication venue—a journal published by the International Critical Incident Stress Foundation—does not represent the rigorous peer review expected for a clinical diagnostic instrument. A single self-authored article introducing an instrument is not peer review.

### iii. The WRC Has No Known Error Rate.

The third *Daubert* factor examines the "known or potential rate of error." *Daubert*, 509 U.S. at 594. No information exists regarding the WRC's sensitivity (ability to correctly identify

true cases), specificity (ability to correctly exclude non-cases), false positive rate, false negative rate, or reliability coefficients. Standard psychological assessment instruments, such as the Clinician-Administered PTSD Scale (CAPS-5) or the PCL-5, have been subjected to extensive psychometric evaluation and have published error rates. The WRC has no such data. The Fourth Circuit has recognized that the absence of error rate information weighs heavily against admissibility. *See Sardis*, 10 F.4th at 281, 296.

### iv.   No Standards Control The WRC's Operation.

The fourth *Daubert* factor considers "the existence and maintenance of standards controlling the technique's operation." *Daubert*, 509 U.S. at 594. No standardized administration protocol, scoring manual, or quality control standards exist for the WRC. Without such standards, the assessment is inherently subjective and unreproducible. Different administrators could reach different conclusions using the same instrument on the same subject, undermining any claim of reliability. If the WRC were held to any sort of standard, it would fail:

- The WRC consisted of a sample of 100 participants, of which only 72 had completed the full survey. The article states that participants "were either referred to or randomly found the website survey by googling words, such as, 'whistleblower' and 'retaliation'" — then were asked during follow-up if they had completed it.[1] That is the definition of self-selection bias.

- The Sample was drawn from and by an advocacy organization. Respondents were recruited through the Whistleblowers of America ("WoA") website. The WoA exists to support

---

[1]   *Whistleblower     retaliation     checklist     (Garrick,     J     2020)*,     NMCWATCH, https://nmcwatch.org.uk/whistleblower-retaliation-checklist-garrick-j-2020/ (last visited April 28, 2026).

people who already self-identify as retaliation victims. The population, therefore, has an endorsement bias baked in.

- There was no control group. There is no comparison group of non-whistleblowers, non-retaliated employees, or employees who reported workplace stress from non-retaliatory causes. The WRC, therefore, cannot distinguish retaliation-induced symptomatology from (for example) generic job stress, preexisting psychopathology, or malingering.

- The respondents are not a representative demographic. The article's own demographics show 84.7% white, 59.7% female, 94.6% college-educated, and 27.8% earning over $100,000.[2] This is not representative of the U.S. working population that the WRC purports to assess.

### v.  The WRC Has Not Achieved General Acceptance.

The fifth *Daubert* factor asks whether the technique has achieved "general acceptance" in the relevant scientific community. *Daubert*, 509 U.S. at 594. The WRC is not a generally accepted diagnostic instrument in clinical psychology or psychiatry. It does not appear in any diagnostic manual, is not taught in clinical training programs, and is not used by clinicians outside of Ms. Garrick's own practice. Standard instruments for PTSD assessment—such as the CAPS-5, PCL-5, or the PTSD Symptom Scale—have achieved widespread acceptance and validation. Ms. Garrick's report does not indicate that any of these validated instruments were used to corroborate her diagnoses. An expert's reliance on a novel, self-created instrument that has not been accepted by the relevant professional community is a hallmark of unreliable testimony.

---

[2] *See supra* note 1.

8

c.  **Ms. Garrick Lacks Qualifications and Objectivity.**

Independent of the foregoing deficiencies, Ms. Garrick's testimony should be excluded because she lacks the qualifications to render clinical forensic opinions and because her prior relationship with Iovino compromises her objectivity.

i.  *Ms. Garrick's Expertise Is In Advocacy, Not Clinical Diagnosis.*

Ms. Garrick is neither a medical doctor, a psychiatrist, a Ph.D. psychologist, or a neuropsychologist. She is a licensed clinical social worker (LCSW-C) in Maryland, but her career has been devoted primarily to policy advocacy and program administration rather than clinical forensic practice. Her clinical experience appears concentrated in the period from 1986 to 1995. Since then, she has served in administrative and advocacy roles, including as Director of the Defense Suicide Prevention Office, founder of Whistleblowers of America, and policy consultant. While these positions reflect valuable experience in workplace dynamics and whistleblower issues, they do not establish the clinical forensic expertise necessary to render reliable diagnoses of PTSD and Persistent Depressive Disorder in litigation. Notably, her disclosed prior testimony experience is sparse, consisting of only two identified cases over four years.

This Court should exclude Ms. Garrick, a licensed social worker, from rendering a PTSD diagnosis in expert testimony because she is not qualified to do so. *See, e.g.*, *Lee v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 3:10–CV–00392–CWR–LRA, 2012 WL 92363, at *3 (S.D. Miss. Jan. 11, 2012) (excluding a licensed social worker from rendering a PTSD diagnoses in expert testimony because the expert was not qualified to do so and stating that "*treating* someone for PTSD is an altogether different matter than *diagnosing* it") (original emphasis).

9

ii. *Ms. Garrick's Prior Relationship With Iovino Compromises Her Objectivity, And Is Not A Neutral Clinician.*

Ms. Garrick's report reveals that she has been engaged with Iovino in a "peer support" capacity since April 2019—more than four years before the May 2023 assessment, and prior to the filing of this lawsuit. Exhibit 2 at 1. During this period, Ms. Garrick served as Iovino's advocate and supporter through Whistleblowers of America ("WoA"). This prior relationship fundamentally compromises Ms. Garrick's ability to serve as an objective expert witness. An expert who has spent years as a client's advocate cannot be expected to render an impartial clinical assessment. The Fourth Circuit has recognized that courts should be "conscious" that "expert witnesses have the potential to be both powerful and quite misleading." *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 481 (4th Cir. 2018) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). Ms. Garrick's dual role as advocate and purported objective expert presents precisely the kind of bias that undermines reliability.

Further, Ms. Garrick is not a neutral clinician. She is the founder and principal spokesperson for WoA, a 501(c)(3) advocacy organization that exists to support whistleblowers. She is a former federal whistleblower who prevailed on a retaliation claim before the Merit Systems Protection Board in 2020. She authored the WRC, owns the copyright on it, and is the lead author of the only article purporting to validate it. Her co-author on that article, Martina Buck, Ph.D., is identified in public-facing WoA materials as a whistleblower. The sample on which the WRC was developed was recruited from and interpreted by an advocacy organization whose *raison d'être* is to establish that whistleblowers suffer psychological harm. Under *Gen. Elec. Co. v. Joiner*, a court may exclude expert testimony where the analytical gap between the data and the expert's conclusion is too great. 522 U.S. 136, 146 (1997). When the "data" consists of self-selected respondents recruited by an advocacy group through its own website, interpreted by the

10

group's founder, and published in a journal for which no peer-reviewed data is available, *Joiner*'s analytical-gap doctrine applies.

Ms. Garrick's book (published by Springer in 2022) markets the WRC framework to "[l]awyers, especially those specializing in employment, labor, and Qui Tam cases," as a "lexicon for forensic evaluations" and "a means to describe the psychosocial impacts of retaliation and [Workplace Traumatic Stress] on their clients when filing for compensatory damages for pain and suffering during judicial proceedings." Courts are widely skeptical of expert methodologies developed principally for litigation use. *See Daubert*, 43 F.3d 1311, 1317 (9th Cir. 1995) (on remand) (noting that research generated "expressly for purposes of testifying" receives heightened scrutiny); *see also, e.g.*, *Clinton v. Mentor Worldwide LLC*, No. 4:16–CV–00319 (CEJ), 2016 WL 7491861, at *12 (E.D. Miss. Dec. 30, 2016) ("Under the Eighth Circuit's Daubert analysis, the district court is guided to look skeptically when expert opinion is developed for the sole or primary purpose of litigation."); *Martinez v. McGraw*, No. 3–08–0738, 2013 WL 495502, at *1 (M.D. Tenn. Feb. 7, 2013) ("The Sixth Circuit Court of Appeals has long recognized that expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution."); *Board of Trustees of AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686(SAS), 2011 WL 6288415, at *13 (S.D.N.Y. Dec. 15, 2011) ("[C]ourts disfavor untested methodologies that are not generally accepted in the relevant expert community."). Ms. Garrick's published writings (and marketing materials) frame the WRC's purpose in litigation terms.

### d.  Ms. Garrick's Opinions Are Speculative And Conclusory.

Finally, even if Ms. Garrick were qualified and her methodology reliable, several of her opinions are impermissibly speculative and should be excluded.

11

Ms. Garrick's causation opinions are unsupported by differential diagnosis. She concludes that Iovino's PTSD and depression are "related to Whistleblower Retaliation." Exhibit 2 at 15. However, Ms. Garrick's report acknowledges that Iovino has a prior trauma history, including the death of her sister in a car accident when Iovino was seventeen years old, and ongoing strained family relationships. No differential diagnosis methodology is evident to rule out alternative causes or pre-existing conditions. An expert opinion on causation that fails to consider alternative explanations is unreliable. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001) ("[I]f an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony.").

Ms. Garrick's prognosis opinions are equally speculative. She opines that PTSD "is not considered curable" and that Iovino's condition "might improve with vindication of her claims." Exhibit 2 at 15. The suggestion that a favorable litigation outcome would have therapeutic value is rank speculation, unsupported by any clinical methodology. Such opinions would invite the jury to award damages based on conjecture rather than reliable expert testimony. Further, it is noteworthy that Iovino's psychotherapist's notes indicate that Iovino's emotional distress is caused by the lawsuit itself, not by any alleged retaliation. **Exhibit 4** (5/18/23 Letter from C. Greene).

### IV.  RELIEF REQUESTED

For the foregoing reasons, MSA respectfully requests that the Court enter an order:

1.  Excluding in their entirety the opinions and testimony of Jacqueline Garrick;

2.  In the alternative, precluding Ms. Garrick from testifying regarding any matters not properly disclosed under Rule 26(a)(2)(B), including but not limited to any opinions based on the undisclosed Whistleblower Retaliation Checklist instrument;

3.  In the further alternative, precluding Ms. Garrick from offering clinical diagnoses of PTSD and Persistent Depressive Disorder and limiting her testimony, if any, to observations regarding workplace dynamics and whistleblower retaliation patterns; and

4.  Granting such other and further relief as the Court deems just and proper.

## V.    CONCLUSION

Plaintiff's expert witness Jacqueline Garrick has submitted a disclosure that fails to comply with FRCP 26(a)(2)(B), relies on an untested and unvalidated assessment instrument that fails Daubert's reliability requirements, and reflects a four-year advocacy relationship that compromises objectivity. Under Rule 702, the Court serves as a gatekeeper to ensure that expert testimony is reliable. Ms. Garrick's testimony fails to meet that standard. MSA respectfully requests that the Court grant this motion and exclude Ms. Garrick's opinions and testimony.

Respectfully submitted,

Date: April 28, 2026

*/s/ Daniel S. Ward*

_____
Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton
Associates, Ltd., d/b/a MSA Security, Inc.*

13

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, I electronically filed the foregoing with the Clerk

of the Court for the United States District Court for the Western District of Virginia by using the

CM/ECF system. I certify that the following participants in the case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Jack Kolar
Government Accountability Project
1612 K St. NW, Suite 1100
Washington, DC 20006
(202) 926-3311
jackk@whistleblower.org

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street
P.O. Box 1061
Medford, OR 97501
(206) 954-1203
thad@guyerayers.com

*/s/ Daniel S. Ward*

_____
Daniel S. Ward

14