# EXHIBIT 15

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF VIRGINIA**

**HARRISONBURG DIVISION**

KAREN IOVINO,

*Plaintiff,*

v. Case No. 5:21-cv-00064-TTC

MICHAEL STAPLETON ASSOCIATES, LTD.,

d/b/a MSA SECURITY, INC.,

*Defendant.*

**DECLARATION OF DR. KAREN IOVINO UNDER 28 U.S.C. § 1746**

I, Dr. Karen Iovino, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

**BACKGROUND**

1. I am a Doctor of Veterinary Medicine ("DVM"). I earned my DVM from the Ross University in the West Indies. I have extensive experience in canine health and welfare, including strength and conditioning, emergency care, and behavioral assessment. (Iovino Depo. I at 27:3–6)

2. The Defendant in this action, Michael Stapleton Associates, Ltd. d/b/a MSA Security, Inc. ("MSA"), is a government contractor that provides security-related services, including explosive detection canine services, to the United States Department of State ("DoS") under Contract No. SAQMMA16D0106 (the "Contract"). (FAC ¶¶8-11)

3. The Contract required MSA to provide canine training, handling, and veterinary services at the Canine Validation Center ("CVC") in Winchester, Virginia, where I was employed as a part-time veterinarian. (FAC ¶¶9–10; FAC ¶7)

4. I was employed by MSA as a part-time veterinarian at the CVC beginning October 9, 2015. My duties included providing veterinary care to explosive detection canines, monitoring their health and welfare, ensuring compliance with veterinary standards, supervising Kennel Technicians, overseeing the ATA hospital licensing, and serving as Veterinarian-in-Charge. (FAC ¶4)

5. During my employment, the CVC was managed by MSA under the supervision of the DoS Bureau of Diplomatic Security, Antiterrorism Assistance ("DS/ATA") program. (FAC ¶¶8, 10)

6. MSA's on-site management at the CVC included Dr. Michael Ratcliff, Lead Veterinarian, MSA, who became my direct supervisor in October 2016, and Alan Bower, first as MSA Human Resources/Facilities Manager and later as Deputy Program Manager, MSA. Gerald Goss served as Defendant's Vice President for Business Development, MSA, with oversight responsibilities. (FAC ¶¶18, 29, 41, 56)

7. DoS personnel involved in overseeing the Contract included Ms. Cathy Read, Head of Contracting Activity and Senior Procurement Executive (Sharon James Dep. 14:23–15:2); Nick Sabruno, Senior Executive for the Bureau of Diplomatic Security and Director for Overseas Procurement Operations (OPO) with high-level responsibility for the program (Sharon James Dep. 15:11–19); and Anna Garcia-Durr, Supervisory Branch Chief and Contracting Officer for the MSA contract (Sharon James Dep. 13:8–11). Sharon James served as Division Director for Diplomatic Security Contracts, not as Division Director of AQM, reporting directly to Ms. Read. (Sharon James Dep. 12:9–11, 14:20–22)

8. Josh Carter was a Program Manager, DoS Employee/contractor assigned to the CVC. Carter served for the canine program and had significant influence over MSA's operations at the CVC. (FAC ¶18)

9. Zane Roberts was the former Program Manager, MSA, at the CVC before Alan Bower replaced him. Roberts was my direct supervisor for a period and was supportive of my work. He was subsequently terminated by MSA in October 2017 after refusing to answer questions about my emails during an interrogation by MSA HR VP Peter Deegan, MSA, and CFO Michael Kennedy, MSA. (Roberts OIG Interview, DOS OIG000145-146)

10. I understand that Jeffrey McDermott served as Assistant Inspector General for Whistleblower Integrity and Special Projects with the DoS Office of Inspector General ("OIG") and was designated as the OIG's 30(b)(6) deponent in this litigation. (McDermott 30(b)(6) Depo., Jan. 9, 2026, pp. 18:2–6, 14:21–25)

11. During my employment, I received consistently positive feedback about my work. No supervisor ever issued me a written warning, a performance improvement plan, or any form of discipline. James Olds, a Department of State subject matter expert (not an MSA employee), worked with me and described me as "a competent veterinarian" (Olds Depo., Page 34:3–4) who never treated anyone rudely (Olds Depo., Page 33:16–21) and was never observed committing any misconduct (Olds Depo., Page 43:2–6).

12. In February 2017, Michael Ratcliff, CVC Site Lead, MSA, offered me a full-time position. He told me he had been given authority to increase my hours and staff the CVC per his discretion. He said, "What can I do to make you come on full time?" and told me there were "no complaints, everyone loves you" and that CVC leadership was "very happy" with my work. I accepted and we agreed on a schedule. There was no discussion of needing to apply or compete for the position. (PLT-AB-014, Iovino Contemporaneous Notes, Feb. 26, 2017; Iovino Depo. I at 43:10–44:11; FAC ¶¶45–46)

13. In his OIG interview, Zane Roberts, former Program Manager, MSA, described me as a "phenomenal employee" and recounted that I saved a dog's life through what he called "heroic"

efforts. Roberts also stated that many MSA employees assumed the full-time position advertisement was "just a means to get rid of Iovino." ((Roberts OIG Interview, April 9, 2018 DOS OIG000145–146))

14. Roberts further revealed to the OIG that Josh Carter, a State Department Contracting Officer's Representative (COR), had been using his position to get jobs for his friends, specifically Alan Bower and John Hoover. Roberts told the OIG that Hoover referred to Iovino with a vulgar epithet (calling her a "cunt") and told Carter she "needed to go." (DOS OIG000145–146, Roberts OIG Interview, April 9, 2018)

**PROTECTED ACTIVITY**

15. On April 1 and 15, 2017, I made additional disclosures to my supervisors regarding what I reasonably believed to be violations of law, rule, or regulation, gross mismanagement, and abuse of authority related to the MSA canine program at the CVC. (FAC ¶¶48, 50)

16. In April 2017, I disclosed to Dr. Michael Ratcliff, Lead Veterinarian, MSA, and Alan Bower, Deputy Program Manager, MSA, concerns regarding manipulation of the BambooHR timekeeping system, including that employees were claiming paid time off ("PTO") hours while simultaneously billing for overtime work. James Olds, a Department of State subject matter expert assigned to the CVC, had also become aware that I was not being compensated for overtime work and told me he would look into it. On February 11, 2017, Ratcliff told me to take a PTO day I had requested off but instructed me not to submit it in BambooHR. (FAC ¶48; Iovino Depo. I at 139:10-21, 215:11-216:18)

17. In approximately June 2017, I reported concerns to Ratcliff about the health and welfare of canines being sent to Jordan, including concerns about veterinary care standards and the treatment of animals in the overseas program. (FAC ¶50; Iovino Depo. I at 220:13–222:5)

18. On January 4, 2017, Alan Bower, Deputy Program Manager, MSA, called me to a meeting with Dr. Michael Ratcliff, Lead Veterinarian, regarding my documentation of performance and attendance issues with Jenn Houston (a Licensed Veterinary Technician). Bower instructed me to stop documenting Houston's performance issues. Zane Roberts, my direct supervisor, subsequently expressed that he disagreed with Bower's approach and supported my documentation of these concerns. (PLT-AGD-013, PLT-JH-011, PLT-MH-015; FAC ¶34)

19. On January 4, 2017, I reported concerns to Dr. Ratcliff about Ms. Jenn Houston's continued attendance problems (leaving early, coming in late, not showing up) and alcohol-related issues (having alcohol on her breath), which affected job performance and posed a serious threat to the safety of the canines. (FAC ¶¶57–58; Iovino Depo. I at 56:7–13)

20. On December 21, 2016, I discovered that Jennifer Houston, a Licensed Veterinary Technician, had made a medical error during the treatment of canine Blake that, had it not been caught in time, would have likely resulted in the canine's death. I reported this incident to Dr. Ratcliff, who agreed via text message that the error could have resulted in the suffocation of Blake. I reported this to my supervisors as an example of the serious risk posed by Houston's ongoing performance issues. (FAC ¶57; Iovino Depo. I at 109:7-110:2; PLT-AB-014, Contemporaneous Notes, Dec. 22, 2016)

21. On July 28, 2017, I reported concerns about canine welfare conditions at the CVC to Cathy Read, Director of the Office of Acquisitions Management (AQM), DoS, because I believed MSA was not adequately addressing my concerns through internal channels. I contacted Ms. Read after having met her during a site visit at the CVC, where I learned she was an advocate for canine welfare. (FAC ¶83; Iovino Depo. I at 122:2–10)

22. In her OIG interview, Cathy Read, Director of the Office of Acquisitions Management (AQM), DoS, characterized my contact with her as 'highly improper' and stated that it violated MSA's confidentiality agreements and that there are other mechanisms in place for these types of complaints.' However, Mr. McDermott (the OIG investigator) immediately noted that confidentiality agreements in government contracts are against the law, directly refuting Read's characterization. Read also forwarded 4 to 6 of my emails directly to Nick Sabruno in the Bureau of Diplomatic Security (DS), routing my protected disclosures to a government official in the same bureau that oversees personnel who had conflicts of interest with me. This routing made Read's characterization appear to legitimize the forwarding of whistleblower disclosures outside proper OIG channels. (OIG Interview with Cathy J. Read, April 20, 2018, DOS OIG Production pages 147; 41 U.S.C. § 4712)

23. On May 10–11, 2017, my supervisory responsibilities over kennel technicians were stripped without explanation. I was excluded from meetings I had previously attended, including Leadership meetings discussing significant ATA OCONUS canine issues. Brett Harshberger, newly promoted to lead kennel technician, told me in private that all the kennel technicians saw how I had been treated unfairly by Leadership and that it bothered them. (PLT-AGD-014, Contemporaneous Notes, May 10–11, 2017, GAPKI_006241–006242; FAC ¶55)

24. I also disclosed concerns about Josh Carter, a Department of State (DoS) Contracting Officer's Representative (COR), living at the CVC facility, which I believed was improper use of government property and in violation of regulations concerning explosives storage. (FAC ¶¶67–68; Iovino Depo. I at 228:13–22 and 229:1–5)

25. On or about July 6, 2017, I filed a complaint with the DoS Office of Inspector General ("OIG") Hotline, reporting concerns about fraud, waste, abuse, and canine welfare violations at the CVC, including the overtime and timekeeping fraud, canine welfare deficiencies, and Carter living at the government facility. (FAC ¶61 [specifically pp. 17-18, listing complaint items including "Time sheet fraud," "living at facility (illegal [sic] as explosives are housed on site)"]; Iovino Depo. I at 122:6–18 [testimony confirming July 6, 2017 OIG hotline complaint filing]; McDermott Depo. at 25:23 [OIG confirmation of July 6, 2017 hotline complaint date])

26. In mid-July 2017, OIG official David Holmes asked me for photographs I had taken documenting canine welfare concerns at the CVC, and I provided them. These photographs subsequently made their way to Josh Carter, who shared them with MSA officials, attempting to determine who had taken them. Shortly thereafter, Carter was heard yelling in the hallway that the whistleblower would be fired. (McDermott Depo. at 88:15–89:22; Iovino Depo. I at 228:13–232:11, 245:1–8, 80:5–11; FAC ¶¶67–68)

27. I was informed that in approximately mid-to-late July 2017, Josh Carter yelled in the hallway that "whoever had filed the OIG complaint would be fired," a clear reference to my

whistleblower complaint and related to the photographs taken. I waived anonymity with the OIG on July 19, 2017. (FAC ¶76; Iovino Depo. I at 80:5-11, 123:9-11, 233:4-7; Sabruno Depo. at 19:23-20:13)

**ADVERSE ACTIONS**

28. On July 14, 2017 — eight days after I filed my OIG complaint — Ratcliff informed me that the February full-time offer "isn't going to be honored" and that the part-time veterinarian position was being "abolished." I would now have to compete for a newly created full-time position with requirements that had not previously existed. (FAC ¶73; PLT-AB-014, Contemporaneous Notes, July 14, 2017 (Bates IOVINO_00000038); PLT-MR-010, Iovino FT Memo (7/14/17) (Bates IOVINO_00000038); Iovino Depo. I at 45:10–13)

29. On July 24, 2017, CVC leadership excluded me from a meeting regarding the ATA laptop canine program. When I asked Dr. Ratcliff why I had not been invited, he said he had 'forgot.' Yet he had remembered to invite two Kennel Technicians, Mr. Brett Harshberger and Mr. Jonah Ballenger. This was part of a broader pattern of excluding me from meetings that directly affected my work in the ATA program, including my exclusion from medical records system meetings in May 2017 and my denial of a request to attend bimonthly ATA leadership meetings on May 11, 2017. (PLT-MH-019, Iovino Contemporaneous Notes, July 24, 2017 (Bates DOS OIG000019); FAC ¶80; Iovino Depo. I at 69:17–22, 70:1–9)

30. On July 31, 2017, Michael Hayes, Site Manager, MSA, informed me that my position would cease on August 17 and that they were "still working on applications" for the full-time position. No interview had been scheduled with me. (PLT-MH-020, Contemporaneous Notes, July 31, 2017)

31. On August 2, 2017, I learned that Alan Bower, Program Manager, MSA, had told staff not to speak to me. Jonah Ballenger, a Kennel Technician, told me, "you should be the obvious person for the job." I felt increasingly isolated and targeted. (PLT-AGD-015, Contemporaneous Notes, Aug. 2, 2017; PLT-JH-010; PLT-MH-011)

32. Meanwhile, Ratcliff personally recruited Dr. Lee Palmer, Veterinarian, MSA, for the position while they were teaching classes together. Palmer lived in Ratcliff's basement during his early period of employment. (FAC ¶74-81; Palmer Depo. at 15:16–18, 16:22–25, 17:1–2; PLT-MSA-003, Hiring Decision Memo)

33. Ratcliff added selection criteria — including OCONUS and combat zone veterinary experience — that were not included in the original job posting and that I could not have anticipated or prepared for. (FAC ¶83; PLT-MR-007, Job Posting)

34. On August 4, 2017, I was placed on paid administrative leave by Bower (FAC ¶93). Bower admitted he never asked me about the media allegations before suspending me and did not investigate (Bower Depo. 17:4–19:13). The OIG later found that the confidentiality agreement MSA had required me to sign was "contrary to the law" (PLT-DoS-011, OIG Management Assistance Report, Aug. 2018; McDermott Depo. 42:10-45:16).

35. On August 18, 2017, MSA terminated my employment, citing the elimination of the part-time veterinarian position. (FAC ¶¶95–96; Goss Depo. 61:4–62:13)

36. I believe the true reason for my termination was my protected disclosures about fraud, canine welfare violations, and my OIG complaint. The timing — termination within weeks of my OIG complaint — and the circumstances described herein support this belief. (FAC ¶168-169)

37. Following the OIG's investigation, the DoS issued a determination ordering MSA to reinstate me. MSA did not comply. (FAC¶¶99-100; PLT-MR-018; PLT-AB-018)

38. In October 2017, MSA interrogated Zane Roberts, former Program Manager, MSA, specifically about my emails — why I had forwarded photographs to his personal email account. Roberts was terminated after refusing to answer their questions. His termination confirms that MSA conducted a campaign to identify and punish anyone who had assisted me. (Roberts OIG Interview, DOS OIG000145-146)

39. OIG Investigator McDermott testified that the OIG report itself was never redacted and was sent unredacted to DoS, MSA, and Dr. Iovino. McDermott confirmed he never redacted witness statements, only PII from case files. OIG has disclosed unredacted copies of the Roberts and Read OIG interviews to the parties in this litigation, revealing Sabruno's role in the leak chain and Roberts' account of MSA's campaign against Dr. Iovino. (McDermott Depo. at 43:4-12; McDermott Depo. at 45:7-16; Roberts OIG Interview, DOS OIG000145)

**<u>EMOTIONAL DISTRESS</u>**

40. As a direct result of the actions described above, I have suffered severe emotional distress, including anxiety, depression, loss of sleep, and a profound sense of betrayal by the employer and government officials I had trusted. (FAC ¶177)

41. The emotional distress I suffered was exacerbated by MSA's and the DoS's continued refusal to acknowledge the wrongfulness of their actions, and the stigma associated with being terminated in circumstances suggesting I had engaged in misconduct. (FAC ¶177)

42. I continue to experience emotional distress and its effects, which have impacted my personal relationships, my professional confidence, and my overall quality of life. (FAC ¶177)

**<u>FINANCIAL DAMAGES</u>**

43. As a result of my termination, I lost wages and benefits, including salary, health insurance, and retirement contributions, to which I would have been entitled had I continued in the full-time position I was offered in February 2017. (FAC ¶178)

44. I have diligently sought comparable employment since my termination and have been unable to obtain a position with equivalent compensation and benefits. (FAC ¶178)

45. I have incurred additional expenses as a direct result of my termination, including costs associated with seeking new employment and medical and counseling expenses related to the emotional distress I suffered. (FAC ¶178)

46. The financial harm I have suffered is ongoing and continues to accrue. (FAC ¶178)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 1, 2026.

Dr. Karen Iovino

# EXHIBIT 16

# RE: Continuation of issues at the CVC

**From:** "Read, Cathy J" <readcj@state.gov>
**To:** "Sabruno, Dominic A" <sabrunoda@state.gov>
**Date:** Mon, 07 Aug 2017 15:00:13 +0000

Gerald Goss just called me; all good.

Thanks for everything here.

Cathy J. Read
Director, Office of Acquisitions Management
Department of State
[redacted]
readcj@state.gov

**Official - Privacy/PII**
**UNCLASSIFIED**

---

**From:** Sabruno, Dominic A
**Sent:** Friday, August 04, 2017 5:09 PM
**To:** Read, Cathy J
**Subject:** Continuation of issues at the CVC

Hi Cathy,

I see your out of the office today, but just to keep you updated on what is going on. Karen (vet that filed the OIG hotline complaint) apparently was contacted by the OIG and told the issues were MSA specific and unless she had something more to offer to the OIG there was not further investigation required. Karen apparently became upset and then told her colleagues that because the OIG did nothing she's lined up an interview with a reporter to tell all about the CVC. Everyone at the CVC knows Karen filed the OIG hotline complaint because she affirmed it. MSA was supposed to terminate her last week for poor performance, I don't want to appear to be influencing that process, but the program office is going to inquire with MSA today about the disposition of her employment. My personal opinion is that if MSA has documented poor performance and they are going to fire her, I can't see how keeping her around is going to improve anything. MSA must reiterate the social media policy to her, although I'm not sure if she is being terminated there is any real "teeth" to the policy. Any competent reporter will find her allegations baseless, but just like the allegations related to ATA in 2015, we went through an exhaustive GAO inspection over nothing at all. We were informed by late afternoon that MSA has placed her on administrative leave, while they investigate her allegations. I believe Gerald Goss is going to be reaching out to you. Nothing further for now. Thanks, Nick

**Official - Privacy/PII**
**UNCLASSIFIED**

# RE: OIG Requests for Information and Hotline Complaints related to the CVC E-mail to Chris Schurman related to CVC allegations - please let me know if I got the facts right and if you think there should be edits. thanks

**From:** "Sabruno, Dominic A" <sabrunoda@state.gov>
**To:** "Bachman, Loren M" [redacted]@state.gov>, "Barno, Courtney E" [redacted]@state.gov>
**Date:** Tue, 01 Aug 2017 20:[redacted]

---

That's luxury for Josh. We can shack him up with the ATA students!

**Personal**
**UNCLASSIFIED**

---

**From:** Bachman, Loren M
**Sent:** Tuesday, August 01, 2017 4:45 PM
**To:** Sabruno, Dominic A; Barno, Courtney E
**Subject:** RE: OIG Requests for Information and Hotline Complaints related to the CVC E-mail to Chris Schurman related to CVC allegations - please let me know if I got the facts right and if you think there should be edits. thanks

We can still fire the vet, and I have a GP medium for Josh to use on the back 40.

**Official**
**UNCLASSIFIED**

---

**From:** Sabruno, Dominic A
**Sent:** Tuesday, August 01, 2017 4:32 PM
**To:** Barno, Courtney E; Bachman, Loren M
**Subject:** RE: OIG Requests for Information and Hotline Complaints related to the CVC E-mail to Chris Schurman related to CVC allegations - please let me know if I got the facts right and if you think there should be edits. thanks

Thank god the two of you understood all of this and made method of the madness. As the day unfolded I was simply content with getting Josh a tent to live in and firing the veterinarian!..........

Thanks! Packaging for CJS now.

**Official**
**UNCLASSIFIED**

---

**From:** Barno, Courtney E
**Sent:** Tuesday, August 01, 2017 4:26 PM
**To:** Sabruno, Dominic A; Bachman, Loren M
**Subject:** RE: OIG Requests for Information and Hotline Complaints related to the CVC E-mail to Chris Schurman related to CVC allegations - please let me know if I got the facts right and if you think there should be edits. thanks

Recommend the below now that we've gotten to the bottom of this confusion!

**Courtney Barno**
Special Assistant – Office of Overseas Protective Operations
U.S. Department of State | Bureau of Diplomatic Security
Office: [redacted] | Blackberry: [redacted]
Email [redacted]@state.gov

SBU
This email is UNCLASSIFIED.

---

**From:** Sabruno, Dominic A
**Sent:** Tuesday, August 01, 2017 10:53 AM
**To:** Barno, Courtney E; Bachman, Loren M
**Subject:** RE: OIG Requests for Information and Hotline Complaints related to the CVC E-mail to Chris Schurman related to CVC allegations - please let me know if I got the facts right and if you think there should be edits. thanks

Sounds good. I'll standby. Here is the edited version I'm using right now.

Chris,

Cathy Read called me this morning related to allegations of misconduct and mismanagement at the CVC. She met with the OIG yesterday and subsequently provided me materials (including statements and images) associated with an open OIG Hotline Complaint (#H20171635) filed by an MSA employee at the CVC. The employee claims widespread allegations of fraud, misuse of government property, mismanagement, unethical hiring, and EEO violations. The OIG sent the Bureau two distinct RFIs related to this complaint rather than forwarding DS/EX the complaint in its entirety and having relevant offices draft a response. The first RFI was directed to DS/T and inquired specifically about the proceedings for transferring canines to foreign countries and the death of a canine in Jordan. DS/T answered this RFI yesterday, July 31. The second RFI was directed to OPO and inquired specifically about pre-deployment medical procedures for canines at the CVC. We drafted a WPS-specific response and today, 8/1, routed our response through DS/EX for ATA to review.

Our team sat down and conducted a thorough review of the lengthier hotline information (received from Cathy) in its entirety. The majority of it looks like allegations that should be directed to MSA rather than the USG. The individual who filed the complaint is a MSA-employed veterinarian currently in the process of being terminated for documented ongoing poor performance. All allegations made were either misconstrued, taken out of context, or MSA internal issues. There was one allegation – that Josh Carter was sleeping at the CVC – that we addressed immediately. At some point Josh began living at the CVC. Loren Bachman spoke with him today and shared the story about a guy I inherited that lived in ATA. Loren also conveyed my concerns about Josh's immediate situation. Josh acknowledged the optics and direction to find alternate living arrangements immediately. Josh will not be made aware of the allegations in the OIG hotline report because, as previously mentioned, the filer is being terminated shortly and it will only add credence to the appearance of retaliation if Josh were informed.

The OIG hotline information that Cathy provided does not require a response at this time as the full text of it was received informally. DS has not been tasked through DS/EX to do anything beyond responding to the RFI, which we have done. However, recognizing that OIG will likely eventually ask DS to respond to the data Cathy passed; Loren Bachman is drafting comments related to each allegation the OIG hotline filer has made to hold for now.

The OIG CVC hotline complaint Cathy provided us and the two associated RFIs are NOT to be confused with another OIG Hotline Complaint we are addressing related to the recent death of K-9 dogs at the Constellis Moyock facility. We are addressing this complaint consistent with the press guidance we have worked with DS/PA to date.

I have the hotline data if you would like to see it. I just wanted to pass on a summary of OIG related matters related to the CVC and to let you know we are actively working the issues now.

Thanks, Nick

**Official - Privacy/PII**
**UNCLASSIFIED**

**Official**
**UNCLASSIFIED**

---

**From:** Barno, Courtney E
**Sent:** Tuesday, August 01, 2017 10:33 AM
**To:** Sabruno, Dominic A; Bachman, Loren M
**Subject:** RE: OIG Requests for Information and Hotline Complaints related to the CVC E-mail to Chris Schurman related to CVC allegations - please let me know if I got the facts right and if you think there should be edits. thanks

Sir,

Popped out to get a second cup of coffee. Back now.

There may be a few nomenclature-type items we want to change on the below – let me do some due diligence with EX and confirm the below before we fire off to Chris.

**Courtney Barno**
Special Assistant – Office of Overseas Protective Operations
U.S. Department of State | Bureau of Diplomatic Security
Office: [redacted] Blackberry: [redacted]
Email [redacted]ov

SBU
This email is UNCLASSIFIED.

---

**From:** Sabruno, Dominic A
**Sent:** Tuesday, August 01, 2017 10:16 AM
**To:** Bachman, Loren M; Barno, Courtney E
**Subject:** OIG Requests for Information and Hotline Complaints related to the CVC E-mail to Chris Schurman related to CVC allegations - please let me know if I got the facts right and if you think there should be edits. thanks

Chris,

Cathy Read called me this morning related to allegations of misconduct and mismanagement at the CVC. She met with the OIG yesterday and subsequently she provided me a raw OIG hotline complaint about the CVC. As it stands right now we have reviewed the hotline information and the majority of it looks like allegations that should be directed to MSA rather than the USG. A veterinarian that is being terminated for documented ongoing poor performance filed widespread allegations of fraud, misuse of government property, mismanagement, unethical hiring, and EEO violations.

We discussed the content of the hotline data and with the exception of Josh Carter sleeping at the CVC all of the allegations at this point are either misconstrued, taken out of context or MSA vendor issues. At some point Josh began sleeping at the CVC and Loren Bachman is directing him today to find alternate living arrangements immediately without stating what prompted the request for him to move. Josh is not going to be made aware of the allegations in the report because the filer is being terminated shortly and it will only add credence to the appearance of retaliation if Josh were informed.

The OIG CVC hotline complaint is NOT to be confused with two OIG Requests for Information related to the CVC recently received by DS/EX requiring a DS response – 1. Was an RFI specific to ATA dogs in Jordan and 2. the other RFI is related to the recent death of K-9 dogs at the Constellis Moyock facility.

The OIG hotline information that Cathy provided does not require a response at this time and DS has not been tasked to do anything at this point. However, recognizing that OIG will likely eventually ask DS to respond to the data Cathy passed; Loren Bachman is drafting comments related to each allegation the OIG hotline filer has made to hold for now. DS/T was asked to comment on the RFI related to ATA Jordan dogs and we have their response that we are reviewing now. We are also answering the other RFI related to the K-9 deaths at the Moyock Constellis facility.

I have the hotline data if you would like to see it. I just wanted to pass on a summary of OIG related matters related to the CVC and to let you know we are actively working the issues now.

Thanks, Nick
**Official - Privacy/PII**
**UNCLASSIFIED**