IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KAREN IOVINO, | ) | |
| | ) | |
|     **Plaintiff and** | ) | Case No. 5:21-CV-00064-TTC |
|     **Counterclaim Defendant,** | ) | |
| **v.** | ) | DEFENDANT AND |
| | ) | COUNTERCLAIM PLAINTIFF'S |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | OPPOSITION TO PLAINTIFF |
| **d/b/a MSA SECURITY, INC.** | ) | AND COUNTERCLAIM |
| | ) | DEFENDANT'S MOTION IN |
|     **Defendant and** | ) | LIMINE NO. 4 |
|     **Counterclaim Plaintiff** | ) | |

Defendant and Counterclaim Plaintiff Michael Stapleton Associates, Ltd. d/b/a/ MSA Security, Inc. ("MSA"), through counsel, respectfully files this opposition to Plaintiff and Counterclaim Defendant's ("Plaintiff" or "Iovino") Motion in Limine No. 4.

## I.    INTRODUCTION

Plaintiff's Motion in Limine seeks wholesale or sweeping exclusion of MSA's labor-economics expert, Dr. Dubravka Tosic, by recasting settled Fed. R. Evid. ("FRE") 702 principles as a vehicle for premature, merits-style disputes about weight, not admissibility. The motion identifies no disqualifying methodological flaw, no undisclosed "novel" technique, and no Fed. R. Civ. P. ("FRCP") 26 deficiency that warrants exclusion. At most, Plaintiff raises cross-examination points about how Dr. Tosic applied standard forensic economics tools to the facts. That is not a basis to bar the testimony. The motion should be denied, or at most denied with narrowly tailored guardrails consistent with FRE 702.

## II.    LEGAL AUTHORITY

"A motion in limine 'should be granted only when the evidence is clearly inadmissible on all potential grounds' because 'a court is almost always better situated during the actual trial to

1

assess the value and utility of evidence.'" *Centripetal Networks, LLC v. Palo Alto Networks, Inc.*, No. 2:21cv137, 2024 WL 219080, at *1 (E.D. Va. Jan. 9, 2024) (internal citations omitted).

FRE 702 assigns the proponent the burden to show qualification, helpfulness, sufficient facts or data, reliable principles and methods, and reliable application. Reliability is a flexible inquiry. Disagreements with inputs, assumptions, or the selection of data typically go to weight, not admissibility. The Court's gatekeeping role is not a substitute for cross-examination and contrary proof.

### III.    ARGUMENT

Dr. Dubravka Tosic is a labor economist with a B.A. in economics from the University of Maryland and an M.A. and Ph.D. in economics with a labor-economics concentration from Florida State University. ECF 298-2 (Dr. Tosic's Report) at 2. Her curriculum vitae reflects extensive experience calculating economic losses, applying statistical analyses in employment matters, publications in the field, professional presentations, and multiple instances of recent trial and deposition testimony. *Id.* at 24–30.

Regardless of Plaintiff's baseless accusations in her motion, Dr. Tosic's credentials and report satisfy FRCP 26's and FRE 702's requirements.

### a.    **Plaintiff Identifies No FRCP 26(a)(2)(B) Deficiency Warranting Exclusion.**

Plaintiff asks the Court to "evaluate" the completeness of MSA's FRCP 26(a)(2)(B) disclosures and to preclude any supposedly undisclosed matter at trial, but points to no concrete omission in Dr. Tosic's report or disclosure package. ECF 350 at 4. Plaintiff's speculation cannot support the extraordinary remedy of exclusion under FRCP 37(c)(1).

MSA disclosed Dr. Tosic's expert report on December 15, 2023, and has not filed any supplemental disclosure. Dr. Tosic's report discloses her opinions, bases, data considered, exhibits,

qualifications, prior testimony within the past four years, and compensation rate, and lists the documents and literature reviewed in Attachment A and her CV in Attachment B. ECF 298-2 at 2, 22–24. This satisfies the expert disclosure requirements and affords Plaintiff full opportunity to examine and test her opinions. The fact that Plaintiff did not attempt to depose Dr. Tosic[1] is not grounds for disqualification.

On this posture, there is no identified late-supplemented opinion, no missing compensation statement, no absent prior-testimony list, and no undisclosed exhibit—only a request for an advisory ruling. The Court should deny that request and permit cross-examination at trial.

**b. <u>Dr. Tosic's Methods Are Conventional and Satisfy FRE 702.</u>**

Dr. Tosic's report sets out a structured methodology with clearly identified but-for scenarios (full-time continuation at MSA; continuation of part-time work at MSA and Valley Veterinary Emergency and Referral Center), corresponding mitigating earnings, and year-by-year calculations of earnings and fringe benefits, including a stated 401(k) match rate, growth assumptions, unemployment adjustments, and discounting to present value using U.S. Treasury yields. ECF 298-2 at 10–14. She identifies the precise data sources and documents relied upon, including W-2s, paystubs, Social Security records, deposition testimony, BLS labor statistics, published work life tables (Skoog/Ciecka/Krueger 2019), and Federal Reserve H.15 interest rates. *Id.* at 22.

Plaintiff does not contend that labor economics damages modeling is novel or unreliable as a field. Instead, Plaintiff isolates one conclusion—the projected "catch-up" period—and asks the Court to preclude it on "analytical gap" grounds. The challenge fails.

---

[1] Defendant sought to depose Plaintiff's experts. Plaintiff refused to make them available. Conversely, Plaintiff never sought to depose any of Defendant's experts.

        i.   *The "catch-up" opinion rests on published, peer-reviewed vocational-economic literature and standard migration principles.*

Dr. Tosic cites peer-reviewed vocational economics literature (Shahnasarian 2003) for the proposition that a period of three to five years generally suffices for an individual to reestablish prior career earnings levels and applies that framework to Iovino's circumstances. *Id.* at 7, 11–12. She corroborates the catch-up assessment with Plaintiff's actual earnings trajectory. *Id.* at 12.

Plaintiff concedes that Dr. Tosic's source for the "catch-up" framework (the Shahnasarian article) is peer reviewed and generally inadmissible. ECF 350 at 5. That concession resolves the threshold reliability of the principle. Disputes over how the principle applies to Plaintiff's facts go to application and weight, which should be left to the jury.

        ii.   *Plaintiff is confusing an "analytical gap" with simple questions that she could ask on cross-examination.*

In *Gen. Elec. Co. v. Joiner*, the Court determined that it "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." 522 U.S. 136, 146 (1997). That is not the case here. Plaintiff's principal premise is that Winchester's veterinary labor market is "constrained," and therefore a three-to-five-year catch-up horizon is too optimistic.[2] ECF 350 at 5–6. But Plaintiff's own description of Dr. Tosic's report confirms that Dr. Tosic considered regional data and publicly available BLS sources in forming her view. *Id.* at 5. Plaintiff states that Dr. Tosic's report cites BLS data on the number of veterinarians in the Winchester VA–WV MSA in 2016 and 2017. *Id.* That is evidence of engagement with the relevant labor market, not a failure

---

[2] Indeed Dr. Tosic explains that, "[b]ased on Dr. Iovino's total earnings since her departure from MSA and her history of working for multiple employers at any given time, it appears that her total earnings have already *fully caught up* to the total earnings she had while employed by MSA." *See* ECF 298-2 at 8 (emphasis added). Dr. Tosic's report was published in 2023. It is now 2026, which means that Plaintiff's total earnings have *more* than caught up to the total earnings she had while employed at MSA.

to consider it. Whether Plaintiff's specialty, earnings history, search intensity, or market concentration lengthens or shortens the catch-up path is fertile ground for cross and competing expert testimony; it is not a reason to exclude an economist's projection grounded in published literature and market data. It is not an "analytical gap" for purposes intended by the Court in *Joiner*.

iii.   *The motion seeks to impose extra-statutory prerequisites.*

Plaintiff requests that the Court require Dr. Tosic to identify post-2003 literature considered and rejected, explain the application of the catch-up window to a constrained market, and state the weight given to BLS data. ECF 350 at 6. FRE 702 does not mandate a literature-review compendium or an *ex ante* weighting ledger. FRE 702 requires reliable principles and a reliable application to sufficient facts or data. Those criteria are met where, as here, the expert uses standard labor-economics sources, recognized vocational principles (including mitigation and earnings convergence), and regional market data. Any perceived incompleteness can be explored on cross.

c.   <strong><u>Plaintiff's Data-And-Assumptions Arguments Go To Weight.</u></strong>

Plaintiff broadly insinuates that Dr. Tosic may have selected favorable wage data, omitted controls, or relied uncritically on party narratives, but identifies no specific datum or omitted control in the disclosed report (because Plaintiff cannot do so). ECF 350 at 6. Plaintiff argues that FRE 702 requires sufficient facts or data and urges exclusion if Dr. Tosic did not control for macroeconomic conditions, Plaintiff's post-termination earnings and job search, non-retaliation income sources, and standard life-table assumptions. *Id.* at 6–7. These are generic checklists divorced from any identified shortcoming in Dr. Tosic's analysis. Without a concrete methodological failure, the motion asks the Court to displace the jury's role in weighing assumptions. That is not *Daubert*'s function.

5

### d. **If Any Limitation Is Imposed, It Should Be Narrowly Tailored To The Report's Four Corners.**

MSA agrees that Dr. Tosic's trial testimony should remain within the scope of her disclosed opinions and methodologies. Plaintiff's request for a broad, preemptive exclusion of categories of opinions should be denied. *Id.* at 7. If the Court believes a limitation is appropriate, it should simply confine testimony to the opinions, bases, and data disclosed in the December 15, 2023 report and materials served with it—an outcome that is already the norm under FRCP 26. Plaintiff asks, in the alternative, that the Court "tightly limit" testimony, including precluding opinions resting on undisclosed methodology, any catch-up opinion "that lacks peer-reviewed support," and opinions resting on "unsourced wage data." *Id.* at 7. Given Plaintiff's concession that the catch-up framework is supported by peer-reviewed literature and the absence of any identified undisclosed method or unsourced data, no further limitation is warranted.

## IV. CONCLUSION

The Motion offers generalized *Daubert* platitudes but identifies no concrete FRCP 26 violation, no novel methodology, and no unreliability that would justify exclusion. The disputes raised are classic issues for cross-examination and competing proof. The Court should deny Plaintiff's Motion in Limine No. 4 in full. In the alternative, the Court should, at most, confirm that Dr. Tosic's testimony will be confined to the opinions, bases, and data disclosed in her December 15, 2023 report and accompanying materials.

Respectfully submitted,

Date: May 11, 2026

*/s/ Daniel S. Ward*

_____

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Cruz (VSB 96177)
WARD & BERRY, PLLC

1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton
Associates, Ltd., d/b/a MSA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Jack Kolar
Government Accountability Project
1612 K St. NW, Suite 1100
Washington, DC 20006
(202) 926-3311
jackk@whistleblower.org

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street
P.O. Box 1061
Medford, OR 97501
(206) 954-1203
thad@guyerayers.com

*/s/ Daniel S. Ward*

_____

Daniel S. Ward

7