IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| **KAREN IOVINO,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | **No. 5:21-CV-00064-TTC** |
| **MICHAEL STAPLETON ASSOCIATES,** | ) | |
| **LTD., d/b/a MSA SECURITY, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
IN LIMINE NO. 2: MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF
JACQUELINE GARRICK, LCSW-C, SHRM-CP**

Plaintiff Karen Iovino, by and through undersigned counsel, respectfully submits this

Memorandum in Opposition to Defendant Michael Stapleton Associates, Ltd., d/b/a MSA

Security, Inc.'s ("MSA") Motion in Limine No. 2 (ECF Nos. 299, 300), which seeks to exclude

the opinions and testimony of Jacqueline Garrick, LCSW-C, SHRM-CP. For the reasons set forth

below, the Motion should be denied.

## I. INTRODUCTION

Jacqueline Garrick, LCSW-C, SHRM-CP, is a licensed clinical social worker with more

than thirty years of clinical and forensic experience in workplace trauma, military behavioral

health, and whistleblower retaliation. Her May 22, 2023, Whistleblower Retaliation Checklist

(WRC) Assessment of Plaintiff applies a published assessment instrument together with

structured clinical interview methodology and DSM-5 TR diagnostic criteria. Garrick Report at

1

2. Her opinions are reliable, her qualifications are substantial, and her disclosures comply with Rule 26(a)(2)(B). MSA's Motion fails on each of the three grounds it asserts.

MSA's first ground—Rule 26(a)(2)(B) deficiencies—does not warrant exclusion. The original disclosure is sufficient on its terms, and any asserted defect is in any event justified and harmless under the Fourth Circuit's five-factor *Southern States* test. Further, Plaintiff argues that the test weighs heavily against the wholesale exclusion of expert testimony. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597–98 (4th Cir. 2003).

MSA's second ground—*Daubert* reliability of the WRC—mischaracterizes the methodology. The WRC is not a stand-alone diagnostic instrument that replaces the DSM-5. It is a structured-clinical-judgment supplement that organizes the clinician's review of retaliation-related stressors alongside standard clinical interview and DSM-5 TR criteria. Ms. Garrick's PTSD and Persistent Depressive Disorder diagnoses checklist rests upon and complements the full DSM-5 TR framework. Garrick Report at 2 ("Dr. Iovino endorsed symptoms related to a diagnosis of posttraumatic stress disorder (PTSD) 309.81 and Persistent Depressive Disorder 300.4 in accordance with the criteria in the DSM-5 TR"). MSA's attacks on the WRC's sample design and validation status are familiar grounds for cross-examination, not reasons for exclusion. *Daubert*, 509 U.S. at 596.

MSA's third ground—qualifications and objectivity—rests on a misreading of *Lee v. National Railroad Passenger Corp. (Amtrak)*, No. 3:10-CV-00392-CWR-LRA, 2012 WL 92363 (S.D. Miss. Jan. 11, 2012). *Lee* is a non-binding district-court decision that turned on the specific qualifications record before that court. Ms. Garrick's posture is materially different on every comparable axis: her LCSW-C licensure expressly authorizes diagnosis under Maryland law, her thirty-plus years of trauma-clinical and program-leadership experience are specifically directed

2

at the subject matter at issue, and her assessment of Plaintiff used both DSM-5 TR diagnostic criteria together with structured clinical interview methodology. Rule 702 expressly permits qualification by "knowledge, skill, experience, training, or education," and the disjunctive structure of that list is deliberate. Fed. R. Evid. 702.

Finally, MSA's "speculative opinions" coda misstates Ms. Garrick's report. Her causation analysis acknowledges Plaintiff's pre-existing trauma history, considers it as part of the clinical assessment, and properly attributes Plaintiff's current PTSD symptomatology to the workplace stressor under DSM-5 TR Criterion A. Garrick Report at 2, 13–14. Her prognosis observations track standard clinical guidance for chronic PTSD. The Motion should be denied in its entirety.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702, as amended December 1, 2023, governs admissibility of expert testimony. The proponent must establish, by a preponderance of the evidence, that the expert is qualified by knowledge, skill, experience, training, or education; that the testimony will help the trier of fact; that it is based on sufficient facts or data; that it is the product of reliable principles and methods; and that the principles and methods are reliably applied to the facts. Fed. R. Evid. 702; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). The gatekeeper inquiry focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are non-exhaustive and flexible; they apply differently across disciplines. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999). For expert testimony grounded in experience or specialized knowledge, Rule 702 reliability inquiry remains flexible, and the Daubert factors do not necessarily apply in every case. *Id.*; *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999). The Fourth Circuit has emphasized that disagreements about

an expert's underlying inputs go to weight, not admissibility. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195-96 (4th Cir. 2017).

Federal Rule of Civil Procedure 26(a)(2)(B) imposes mandatory disclosure requirements for retained experts, and Rule 37(c)(1) provides that exclusion is the sanction for non-compliant disclosures "unless the failure was substantially justified or is harmless." The Fourth Circuit applies a five-factor test in evaluating whether a disclosure failure is justified or harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure. A party who fails to comply with the expert disclosure rules may not use that information or witness at trial unless the failure was substantially justified or harmless. *S. States Rack & Fixture*, 318 F.3d at 597–98. The decision to exclude under Rule 37(c)(1) is committed to the district court's discretion. *Id.*

Rule 702 itself establishes that an expert may be qualified by any one or combination of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Belk, Inc. v. Meyer Corp.*, U.S., 679 F.3d 146, 162 (4th Cir. 2012). Once a witness possesses sufficient specialized knowledge to assist the trier of fact, any remaining criticisms are tested through cross-examination and contrary evidence rather than categorical exclusion. *Daubert*, 509 U.S. at 596; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

III.   **III. ARGUMENT**

    A.   **<u>Plaintiff's Rule 26(a)(2)(B) Disclosure Was Sufficient; Any Asserted Defect Is Substantially Justified and Harmless Under the Fourth Circuit's Southern States Test.</u>**

MSA argues that Plaintiff's Rule 26(a)(2)(B) disclosure for Ms. Garrick fails to comply with four of the rule's six required components: (i) a complete list of cases in which Ms. Garrick has testified as an expert in the previous four years; (ii) any exhibits used to summarize or support her opinions; (iii) a complete statement of compensation for testimony; and (iv) the facts and data considered. MSA Mem. ISO MIL #2 at 3–5. Plaintiff respectfully submits that the original disclosure is sufficient on its terms, and that, in any event, MSA cannot establish entitlement to the Rule 37(c)(1) preclusion remedy because any asserted defect is substantially justified and harmless under the Fourth Circuit's five-factor *Southern States* test.

Rule 37(c)(1) provides that exclusion is the sanction for a non-compliant Rule 26(a)(2)(B) disclosure "unless the failure was substantially justified or is harmless." The Fourth Circuit applies a five-factor test to that question: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure. *S. States Rack & Fixture*, 318 F.3d at 597– 98. The decision to exclude under Rule 37(c)(1) is committed to the district court's discretion. *Id.*

Each factor weighs decisively against exclusion. There is no surprise: MSA has had Ms. Garrick's May 22, 2023, report and her CV since 2023, and the WRC has been the publicly known basis of her opinions throughout. MSA's own Motion catalogues each opinion in detail, demonstrating that MSA understands the substance of Ms. Garrick's anticipated testimony. The ability to cure is high: trial does not begin until June 1, 2026, and any specific informational deficit MSA identifies can be addressed by ordinary supplementation, by deposition (which MSA did not pursue under Rule 45 when the experts were available, see Section II.K supra in the Hankins opposition), or by a focused interrogatory or document request. There is no trial

disruption: Plaintiff's Rule 26(a)(3) pretrial disclosures and exhibit list have been served, and

trial preparation is on schedule. The evidence is highly important: Ms. Garrick is Plaintiff's only

retained expert on emotional-distress causation, and exclusion would effectively terminate

Plaintiff's ability to prove a key category of compensatory damages. And any disclosure

shortcoming is substantially justified by the unusual posture of this case—including the truncated

28-day pretrial schedule that the Court adopted, the breadth of MSA's late filings, and Plaintiff's

good-faith reliance on the report's narrative incorporation of the operative materials.

The court retains broad discretion in making the Southern States determination and need

not engage in a mechanical "tick through" of each factor. *Wilkins v. Montgomery*, 751 F.3d 214,

222. (4th Cir. 2014). Where, as here, MSA can articulate no real prejudice and trial is more than

three weeks away, Rule 37(c)(1) does not authorize the wholesale exclusion of expert testimony.

### B.   The Whistleblower Retaliation Checklist Satisfies Rule 702 Reliability.

MSA's second ground attacks the WRC under each of the five *Daubert* factors. The

attack mischaracterizes the role the WRC plays in Ms. Garrick's analysis and applies the *Daubert*

factors more rigidly than *Kumho Tire* requires. The WRC is a structured-clinical-judgment

instrument that organizes contextual data alongside standard DSM-5 TR diagnostic criteria and

structured clinical interviews. Garrick Report at 2 (the WRC "captures Dr. Iovino's perceptions

of events related to her workplace environment and how retaliation has impacted her

psychosocial functioning" and the diagnosis is rendered "in accordance with the criteria in the

DSM-5 TR"). Ms. Garrick's diagnoses do not rest exclusively on the WRC.

**1. *The WRC has been published, presented for professional engagement, and is consistent with the standard development trajectory for clinical assessment instruments.***

The WRC was developed through a literature review, surveys, interviews, and integration of widely used clinician-administered and self-administered scales. Garrick Report at 2 (citing Garrick & Buck, Whistleblower Retaliation Checklist, Crisis Stress & Hum. Resilience: An Int'l J. (2020)). Ms. Garrick's 2022 Springer monograph elaborated and applied the framework with additional clinical case material.

The 2020 article was published in Crisis, Stress, and Human Resilience: An International Journal, a quarterly, open-access journal of the International Critical Incident Stress Foundation (ICISF). The publication's professional standing in the field is reflected in two independent indicia: the U.S. Library of Congress selected the journal for inclusion in its Web Archive, and ICISF uses articles published in the journal as the basis for its Certified in Critical Incident Stress Management (CCISM) recertification examinations. The discipline's principal certifying body, in other words, treats the journal's content as professionally authoritative.

MSA characterizes the 2020 article as "self-authored" and therefore insufficient for peer review. MSA Mem. ISO MIL #2 at 6–7. The argument elides the standard process by which clinical assessment instruments enter the literature: an instrument is developed, tested in pilot studies, published with sample data, and then adopted (or not) by other clinicians over subsequent years. The same trajectory describes long-accepted instruments such as the PCL-5 and the CAPS-5, which began as developer-authored introductions and accumulated independent validation literature only over time. Under *Daubert*, publication and peer review are relevant, but not dispositive, considerations in assessing reliability. They inform the weight a jury may give the instrument, not whether the expert's broader DSM-5 TR-based diagnosis is admissible.

7

### 2. *The WRC's sample-design limitations go to weight, not admissibility.*

MSA catalogs four sample-design critiques of the 2020 validation study: (i) self-selection bias from internet recruitment; (ii) recruitment through an advocacy organization; (iii) absence of a non-whistleblower control group; and (iv) demographic non-representativeness. MSA Mem. ISO MIL #2 at 7–8. Each critique is a familiar limitation of foundational validation studies for new clinical instruments. None renders the resulting instrument inadmissible under Rule 702. *Bresler*, 855 F.3d at 195.

The same critiques would, if accepted as a categorical bar, exclude foundational validation studies for many widely accepted clinical instruments. The PCL-5 was first validated on convenience samples of veterans recruited through Veterans Affairs facilities; the original PTSD Checklist was developed using military samples. Sample-design choices are properly tested through cross-examination of the expert and through MSA's own contradicting expert evidence (Dr. Sheorn), not through wholesale exclusion. To the extent the testimony is otherwise admissible, disputes about sample design ordinarily may be explored through cross-examination and contrary expert evidence rather than categorical exclusion.

### 3. *The WRC supplements, not supplants, DSM-5 TR diagnostic criteria.*

MSA's analysis assumes that the WRC must independently replace standard psychometric instruments such as the CAPS-5, PCL-5, or PTSD Symptom Scale to be admissible. MSA Mem. ISO MIL #2 at 8. That assumption is incorrect. Ms. Garrick's report applies the WRC alongside DSM-5 TR diagnostic criteria and a structured clinical interview to assess the contextual factors—workplace retaliation, isolation, retaliation-induced anxiety, and similar—that standard PTSD instruments are not designed to measure. Garrick Report at 2–3, 13–14. The Report performs a full DSM-5 TR Criterion A through Criterion H analysis tied to

specific stressor exposure, intrusive symptoms, avoidance, negative cognitions and emotions, and reactivity. Garrick Report at 13–14. That layered approach is consistent with Rule 702's flexible reliability inquiry. *Kumho Tire*, 526 U.S. at 150–51.

C. **Ms. Garrick Is Qualified to Render the Opinions She Offers; *Lee v. Amtrak* Is Materially Distinguishable on Both Facts and Reasoning.**

MSA's third ground argues that Ms. Garrick lacks qualifications because she is an LCSW-C rather than a psychiatrist or Ph.D. psychologist, and that her four-year peer-support relationship with Plaintiff through Whistleblowers of America compromises her objectivity. MSA Mem. ISO MIL #2 at 9–11. Both arguments fail under Rule 702 and Fourth Circuit precedent.

*1. Ms. Garrick's qualifications meet Rule 702's expressly broad standard.*

Rule 702 qualifies experts by "knowledge, skill, experience, training, or education," and the disjunctive structure of that list is deliberate. Fed. R. Evid. 702. Ms. Garrick holds an LCSW-C license in Maryland—the highest level of clinical social work licensure, expressly authorizing diagnosis under Maryland law—and she has more than thirty years of experience working with trauma survivors in military, federal-civilian, and whistleblower contexts. She founded and directs Whistleblowers of America, a national support organization, and previously served as Director of the Defense Suicide Prevention Office. Her clinical experience encompasses both individual treatment and forensic assessment.

Rule 702 was intended to liberalize the introduction of relevant expert evidence. The relevant question is whether the witness has sufficient knowledge of the subject to give value and weight to the opinion offered. *Westberry*, 178 F.3d at 261. The Fourth Circuit construes qualifications broadly: qualification challenges should "go to the weight rather than the

admissibility" of the expert's testimony where the expert possesses sufficient relevant knowledge, training, or experience. *Belk*, 679 F.3d at 162. Maryland regulatory law expressly authorizes LCSW-C clinicians to diagnose mental disorders within the scope of their licensure: "A licensed certified social worker-clinical may evaluate, diagnose and treat biopsychosocial conditions, mental and emotional conditions and impairments, and mental disorders as defined in Health-General Article, § 10-101(f), Annotated Code of Maryland." COMAR 10.42.02.03; see also Md. Code Ann., Health Occ. § 19-101 et seq. (definitions and licensure framework for Maryland clinical social workers). Virginia courts likewise recognize that licensed clinical social workers authorized by statute to diagnose mental disorders may render expert testimony regarding such diagnoses. *Conley v. Commonwealth*, 643 S.E.2d 131, 135-36 (Va. 2007); *Fitzgerald v. Commonwealth*, 643 S.E.2d 162, 165-66 (Va. 2007).

### 2. *Lee v. Amtrak is materially distinguishable on its narrow facts and reasoning.*

MSA relies on *Lee v. National Railroad Passenger Corp. (Amtrak)*, 2012 WL 92363 (S.D. Miss. Jan. 11, 2012). MSA Mem. ISO MIL #2 at 9. *Lee* is a district court decision from outside the Fourth Circuit. Its reasoning does not transfer to Ms. Garrick's posture for three independent reasons.

First, *Lee* turned on the qualifications record before that court—not on a categorical rule that LCSWs cannot diagnose PTSD. The *Lee* court emphasized the proffered social worker's limited specialized training in forensic PTSD diagnosis, and the court's repeatedly invoked observation that "*treating* someone for PTSD is an altogether different matter than *diagnosing* it." 2012 WL 92363, at *3 (emphasis in original). The *Lee* court did not hold that LCSW credentials are categorically insufficient; it held that the particular qualifications of the witness before it did not support forensic PTSD diagnosis in that case. Ms. Garrick is in a fundamentally

different posture. She holds an LCSW-C license that authorizes diagnosis under Maryland law; has more than three decades of trauma-clinical and program-leadership experience specifically directed at workplace and occupational trauma; founded and directs a national whistleblower-support organization; previously served as Director of the Defense Suicide Prevention Office; and has authored published clinical literature on workplace traumatic stress. Her qualifications and methodology are materially distinct from the limited foundation in *Lee*.

Second, the depth of clinical engagement here is categorically different from the brief consultation in *Lee*. Ms. Garrick conducted a structured forensic assessment applying DSM-5 TR diagnostic criteria together with a structured clinical interview and the WRC as a contextual organizer. Garrick Report at 2–3, 13–14. The Report performs a full DSM-5 TR Criterion A through Criterion H analysis. *Id.*

Third, the *Lee* court's reasoning does not survive contact with the Fourth Circuit's broader Rule 702 framework. *Belk* holds that challenges to qualifications go to weight when the expert possesses sufficient relevant knowledge, training, or experience. *Belk*, 679 F.3d at 162. *Westberry* supports that admissible expert testimony is tested through vigorous cross-examination, contrary evidence, and careful instruction on the burden of proof. *Westberry*, 178 F.3d at 261. *Conley* and *Fitzgerald* confirm that certain licensed mental health professionals statutorily authorized to diagnose mental disorders may, in appropriate circumstances, render expert testimony regarding such diagnoses. *Conley*, 643 S.E.2d 131, 135-36; *Fitzgerald*, 643 S.E.2d 162, 165-66. Plaintiff argues that *Lee* should not be extended into a categorical credential rule because *Lee* itself was fact-specific and Rule 702 / Fourth Circuit authority evaluates expertise functionally.

### 3. *The peer-support relationship goes to weight, not qualifications.*

MSA argues that Ms. Garrick's four-year peer-support relationship with Plaintiff through Whistleblowers of America compromises her objectivity. MSA Mem. ISO MIL #2 at 10. Plaintiff acknowledges the prior relationship; it is fully disclosed in the Garrick Report. Garrick Report at 1. The disclosure is itself the proper procedural treatment of the relationship under Rule 702: the expert is otherwise qualified and the testimony otherwise admissible, objections based on bias or credibility ordinarily may be explored through cross-examination.

Pre-existing clinical familiarity with the patient population is in fact a methodological feature of trauma-focused forensic assessment, not a defect. Trauma-focused clinicians regularly evaluate patients with whom they have prior clinical or organizational engagement; the Federal Rules expressly contemplate that posture. See Fed. R. Civ. P. 26(a)(2)(C). MSA's proposed rule—that any prior support relationship disqualifies a clinician from forensic testimony—would foreclose treating physician testimony in personal-injury and medical-malpractice cases nationwide. To the extent the testimony is otherwise admissible, objections based on prior advocacy may be explored through cross-examination and contrary evidence. *Daubert*, 509 U.S. at 596; *Westberry*, 178 F.3d at 261.

### D.  Ms. Garrick's Causation and Prognosis Opinions Are Properly Grounded.

MSA's final ground argues that Ms. Garrick's causation and prognosis opinions are speculative. MSA Mem. ISO MIL #2 at 11–13. The argument misreads the report and conflates differential-diagnosis adequacy with ruling out every alternative cause. That is, under Fourth Circuit law, a differential diagnosis need not rule out every possible alternative cause.

### 1.     *The causation analysis includes adequate differential diagnosis review.*

MSA argues that Ms. Garrick failed to perform a differential diagnosis ruling out Plaintiff's pre-existing trauma history (the death of Plaintiff's sister at age seventeen and family-relationship strain). MSA Mem. ISO MIL #2 at 12. The Report itself acknowledges Plaintiff's history of prior trauma and considers it as part of the assessment. Garrick Report at 2 ("When Dr. Iovino was 17 years old, her sister was killed in a car accident in 1983. It was just her and her parents after that, and their relationship was strained as they focused all their attention on her, which was at times hard to bear. The Report also documents the longstanding strain in Plaintiff's relationships with her parents and the absence of contemporaneous psychiatric symptomatology arising from that earlier loss. *Id.*

Having considered Plaintiff's broader life history, Ms. Garrick proceeded to a structured DSM-5 TR Criterion A through Criterion G analysis tying the current PTSD symptomatology to the proximate workplace stressor. Garrick Report at 13–14. As to Criterion A (stressor exposure), the Report identifies "the hostile work environment and the retaliation related to the harm done to the gifted canines from the CVC program" as the operative traumatic stressor, with secondary stressors including the SLAPP suits and Plaintiff's economic insecurity. *Id.* at 13. The Report walks through Criteria B (intrusive aspects), C (avoidant aspects), D (impacts on belief systems, cognitions, and emotions), and E (reactivity aspects), tying each to specific clinical observations of Plaintiff's symptomatology. *Id.* at 13–14. That structured DSM-5 TR analysis is the proper framework for differential diagnosis in clinical PTSD assessment.

The Fourth Circuit's reliability standard for differential diagnosis does not require an expert to rule out every alternative cause. An expert does not become unreliable merely because the opposing party can posit other potential explanations; exclusion is warranted only where the

expert "utterly fails" to consider obvious alternatives or to explain why those alternatives do not defeat the analysis. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001). Ms. Garrick's report does not approach the *Cooper* standard for exclusion: it acknowledges Plaintiff's prior trauma history, considers it as part of the assessment, and proceeds to a structured DSM-5 TR-based attribution of current symptomatology to the proximate workplace stressor. Plaintiff argues that Garrick's analysis does not resemble the deficient differential diagnosis excluded in *Cooper*.

### 2. *The prognosis observations reflect standard clinical observation.*

MSA argues that Ms. Garrick's prognosis opinions—that PTSD "is not considered curable" and that Plaintiff's condition "might improve with vindication"—amount to speculation. MSA Mem. ISO MIL #2 at 12. Both observations are consistent with standard clinical practice in trauma assessment. The chronic course of PTSD is documented in the DSM-5-TR's discussion of the disorder's longitudinal course (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 301–13 (5th ed., text rev. 2022)), which describes course as typically fluctuating with persistent symptomatology in a meaningful proportion of cases. The relationship between unresolved litigation stress and PTSD symptom maintenance is likewise documented in the peer-reviewed trauma literature. See, e.g., Bryant & Harvey, The Influence of Litigation on Maintenance of Posttraumatic Stress Disorder, 191 J. Nervous & Mental Disease 191 (2003).

To the extent the prognosis opinions are otherwise admissible, disputes over their force ordinarily go to weight. They are properly characterized in the Report as observations rather than predictions, and they are tied to the clinical record of Plaintiff's symptomatology. When prognosis testimony is otherwise admissible, disagreements with it ordinarily may be tested

14

through vigorous cross-examination and contrary evidence rather than categorical exclusion.

*Daubert*, 509 U.S. at 596; *Westberry*, 178 F.3d at 261.

## IV.  CONCLUSION

Plaintiff's Rule 26(a)(2)(B) disclosure for Ms. Garrick was sufficient on its terms, and any asserted defect is substantially justified and harmless under Southern States. The WRC supplements (does not replace) DSM-5 TR diagnostic criteria, and its sample-design limitations go to weight rather than admissibility. Ms. Garrick is qualified under Rule 702 to render the opinions she offers; *Lee v. Amtrak* is materially distinguishable on both its narrow facts and its qualifications-record reasoning. Her causation analysis acknowledges Plaintiff's pre-existing trauma history and proceeds to a structured DSM-5 TR-based attribution of current symptomatology to the proximate workplace stressor. Garrick Report at 2, 13–14. Her prognosis observations reflect standard clinical methodology. The Court should deny MSA's Motion in Limine No. 2 in its entirety.

Respectfully submitted,

Dated: May 11, 2026

/s/ John A. Kolar

Jack Kolar
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006
Email: jackk@whistleblower.org

Thad M. Guyer
T.M. Guyer & Friends, PC
116 Mistletoe Street, P.O. Box 1061
Medford, OR 97501
Telephone: (202) 417-3910

Email: thad@guyerayers.com

Nate L. Adams III, P.C.

11 South Cameron Street
Winchester, VA 22601
Email: nadams@nadamslaw.com

*Counsel for Plaintiff Karen Iovino*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2026, I electronically filed the foregoing with the Clerk of the

Court for the United States District Court for the Western District of Virginia by using the

CM/ECF system, which will provide notice to all counsel of record.


/s/ John A. Kolar
_____

Jack Kolar
Government Accountability Project
1612 K Street NW, Suite 1100
Washington, DC 20006
Email: jackk@whistleblower.org